IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, *et al.* | * | |
| | * | |
|     Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. PJM # 05-1547 |
| | * | |
| COMPUTER SCIENCES | * | |
| CORPORATION, *et al.* | * | |
| | * | |
|     Defendants. | * | |

## OPINION

Petitioners Eileen and James Thaden, Jennifer Dieux, and Eric MacKay, whose homes were destroyed in Hurricane Isabel, are Plaintiffs in this action. They have been living in Federal Emergency Management Agency ("FEMA") trailers since 2003. In their Petition for Preliminary Injunction now before the Court, they seek to enjoin FEMA from evicting them from or charging them rent for the trailers. They further seek to enjoin FEMA from interfering with their rights to seek funds to rebuild their homes from the FEMA-funded Hazard Mitigation Project or from state funding sources. At various points during the pendency of their request for preliminary relief, Petitioners have requested that the Court order FEMA to send a letter to Maryland authorities clarifying that FEMA's policies have no impact on how state agencies may choose to administer their programs. FEMA opposes the Petition and has moved to dismiss the Petition for Preliminary Injunction.

On August 7, 2006, the Court heard oral argument on these motions and took the matter under advisement. At a November 6, 2006 conference with counsel, the Court inquired as to the status of these issues. Because Petitioners' counsel informed the Court that certain actions were being taken by various state agencies that would likely moot the Petition, the Court agreed to defer ruling. Since that time, Petitioners' counsel has advised the Court that Petitioners Jennifer Dieux and Eric MacKay, who share a trailer, have recently moved or are about to move from their FEMA

1

trailer, presumably mooting their claims.[1]  Petitioners Eileen and James Thaden, however, remain in a FEMA trailer and have yet to secure the assistance of any State of Maryland agency that might provide them relief.  Petitioners' counsel reports that while the state authorities, including FEMA's Maryland counterpart, the Maryland Emergency Management Agency ("MEMA"), have assumed ownership of eleven other FEMA-supplied Isabel trailers pursuant to a contract between FEMA and MEMA, the Thadens' trailer has not yet been transferred to state control.  Petitioners' counsel alleges, without however giving specifics, that FEMA has somehow prevented the transfer of the Thadens' trailer to MEMA in reprisal for the Thadens' role in this lawsuit.  Counsel bases his accusation on correspondence from MEMA to the Thadens to the effect that MEMA will not "comment" on the status of the Thadens' requested relief "[d]ue to the fact that this case is currently involved in federal litigation."  FEMA denies that it has in any way interfered with MEMA's decisionmaking.  According to FEMA, the problem with the Thadens is that they have not submitted an acceptable permanent housing plan to FEMA, a requisite step for getting their trailer transferred to the state under the contract between FEMA and MEMA.

In fairness, the Court can no longer defer ruling on the pending Motions and must consider their merits.  For the reasons that follow, Plaintiffs' Petition for Temporary Restraining Order and Preliminary Injunction is **MOOT IN PART AND DENIED IN PART**.  FEMA's Motion to Dismiss the Complaint for Preliminary Injunction is **GRANTED**.

### I.

FEMA is authorized to lease trailers to disaster victims under the Stafford Act, 42 U.S.C. § 5121 *et seq.*  By regulation, FEMA may provide for temporary housing assistance for up to 18 months after an initial disaster declaration.[2]  FEMA argues that after the first 18 months, it has the

---

[1] Accordingly, "Petitioners" as used hereinafter refers only to the Thadens.

[2] "Temporary housing assistance may be provided as of the date of the incident of the major disaster or emergency as specified in the Federal Register notice and may continue for 18 months from the date of declaration." 44 C.F.R. § 206.101(k)(1); *see also* 44 C.F.R. § 206.110(e)

discretion to continue or terminate the assistance.[3]  Recipients whose assistance is terminated have a right to appeal.  *See* 44 C.F.R. § 206.101(m).

Following Isabel, Petitioners entered into a standard agreement with FEMA to lease a trailer for the period beginning October 21, 2003 and ending October 31, 2003, renewable on a month-to-month basis thereafter.  As part of the lease, they agreed "to diligently undertake to obtain permanent accommodations at the earliest possible date."  As their two-year term as lessees was coming to a close, on September 2, 2005, Petitioners received eviction notices from FEMA.  Apparently at the urging of then-Maryland Governor Robert L. Ehrlich, Jr., however, FEMA agreed to a temporary extension of the lease.  Then, on March 27, 2006, Petitioners received a notice from FEMA informing them that, as of May 1, 2006, they would have to pay rent for the trailers ($691 per month), or face eviction and claims for back-rent and penalties.  Petitioners contended then as they do now that they cannot afford the rent.  On May 9, 2006, Petitioners received a final eviction notice.  They took an appeal within FEMA, but their appeal was denied.

FEMA has agreed not to evict Petitioners until such time as the Court rules on the Petition for Preliminary Injunction.  Thus, given the length of time the Court has deferred its ruling to allow Petitioners an opportunity to resolve the matter out of Court, they have already received the practical benefits that a preliminary injunction order might have provided.

**II.**

---

("FEMA may provide assistance under this subpart for a period not to exceed 18 months from the date of declaration.  The Associate Director (AD) may extend this period if he/she determines that due to extraordinary circumstances an extension would be in the public interest").

[3] Indeed, the regulation establishing the 18-month limit for temporary housing assistance allows for continued assistance, providing in relevant part:  "Recertification of eligibility for continued assistance shall be in accordance with paragraph (k)(3) of this section, taking into consideration the occupant's permanent housing plan. A realistic permanent housing plan shall be established for each occupant requesting additional assistance no later than at the time of the first recertification."  44 C.F.R. § 206.101(k)(2).  Paragraph k(3) sets forth the criteria for continued assistance:  (i) Adequate alternate housing is not available; (ii) The permanent housing plan has not been realized through no fault of the occupant; or (iii) In the case of FEMA-owner leases, the occupant is in compliance with the terms of the lease/rental agreement.  *Id.* § 206.101(k)(3).

A party seeking injunctive relief must demonstrate: (1) there is a likelihood of irreparable harm if the injunction is denied; (2) the harm to the petitioning party, absent such relief, is greater than the harm to the party to be enjoined if such relief is granted; (3) there is a likelihood that the petitioner will succeed on the merits; and, (4) the public interest favors an injunction. *See Blackwelder Furniture Co., Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). Inasmuch as the Court finds FEMA's jurisdictional argument to be well-taken, there is no occasion in this case to weigh the usual preliminary injunction factors.

### III.

The United States is immune from suit, except when it consents to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Such consent must be found in a clear Congressional statement. *See Dep't of Energy v. Ohio*, 112 S. Ct. 1627, 1639 (1992). A proper waiver of sovereign immunity is a prerequisite for jurisdiction. *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996).

Not only is such consent lacking in the present case; there is an express denial of the Government's amenability to suit. The Stafford Act, which created the temporary housing and hazard mitigation grant programs described in the underlying Petition, states:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148. In interpreting the Stafford Act, several courts have found the denial of assistance funds to be a discretionary act, hence unavailable as a basis of liability. *See, e.g., City of San Bruno v. FEMA*, 181 F.Supp.3d 1010, 1014 (N.D. Cal. 2001) ("Distributing limited funds is inherently a discretionary responsibility. Eligibility determinations and then subsequent decisions regarding the funding of eligible projects are steps in this discretionary process").

The key question before the Court is whether FEMA's decision to terminate Petitioners' use of their trailer was a discretionary action. Petitioners advocate the use of the two-part test set forth

in *Berkovitz v. Berkovitz* for determining whether FEMA's action is discretionary.[4]  486 U.S. 531 (1988).  Under *Berkovitz,* a court considers (1) whether the challenged conduct involves an element of judgment or choice and (2) if so, whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Id.* at 536.

Applying these factors in the present case, it is clear that FEMA's decision to deny Petitioners continued assistance in the form of extended use of the trailer was discretionary, involving FEMA's appraisal of how to best allocate resources.  The first inquiry under *Berkovitz* is whether "a federal statute, regulation or policy specifically prescribes a course of action for [the government] employee to follow." *Berkovitz*, 486 U.S. at 536.  If it does, the action is considered mandatory and thus by definition not discretionary.  *Id.*  In contrast to *McWaters v. FEMA* - a case heavily relied upon by Petitioners - this is not a case in which FEMA has ignored a "mandatory directive." 408 F.Supp.2d 221, 235 (E.D. La. 2005).  Here, FEMA's decision to terminate benefits required the consideration of a number of factors and unique circumstances.  Under its regulations, FEMA may terminate direct assistance in a variety of situations, including those in which the period of assistance has expired, the occupants have obtained housing assistance through misrepresentations, or the occupants have failed to document efforts toward a permanent housing plan.  44 C.F.R. § 206.117(b)(ii)(G).[5]  Further, when the 18-month period expires, FEMA, if it

---

[4] *Berkovitz* was a Federal Tort Claims Act case and not a Stafford Act case.

[5] The regulation provides in full:

We may terminate direct assistance for reasons that include, but are not limited to, the following:
(1)  The period of assistance expired under §§ 206.110(e) and has not been extended;
(2)  Adequate alternate housing is available to the occupant(s);
(3)  The occupant(s) obtained housing assistance through either misrepresentation or fraud;
(4)  The occupant(s) failed to comply with any term of the lease/rental agreement or other rules of the site where the unit is located.
(5)  The occupant(s) does not provide evidence documenting that they are working towards a permanent housing plan.

chooses, is entitled to begin charging up to fair market rent for the trailers. *Id.* § 206. 117(F).[6] Accordingly, the Court is satisfied that FEMA acted well within its powers in seeking to charge rent or evict Petitioners once the 18 month period of assistance to them had elapsed. These decisions came not as a result of not mandatory directives, but in consequence of the exercise of agency discretion.

Under the second prong of *Berkovitz*, the court considers whether the governmental actions at issue were "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. Petitioners argue that in their case FEMA made no "policy" decision and that therefore its actions were not discretionary. The Court disagrees. The present case involves precisely the sort of policy-based decisionmaking that the discretionary function exception was designed to preserve. The Court is in no position to second-guess the decisions of FEMA officials that deny funding or revoke eligibility in individual cases, nor is there any basis for it to interfere with the communications between FEMA and state officials nor, on the level specific to this case, is the Court better able to interpret whether Petitioners' permanent housing plan is "good enough" such that their trailer should be transferred to state control. FEMA may entertain any number of reasons for deciding to evict Petitioners, not the least of which may be the extended period of time - now going on 4 years - that Petitioners have been living in their trailer. The Court, however, declines to speculate as to the actual reason involved. The bottom line is that the Court is satisfied that FEMA's decision is based on considerations of public policy, hence it is discretionary.

---

44 C.F.R. § 206.117(b)(ii)(G). Given the language that FEMA may terminate for reasons that "include, but are not limited to," it is clear that FEMA may terminate assistance for reasons in addition to those set forth in the regulation.

[6]

The language of the regulation further connotes FEMA's discretionary authority: "After the end of the 18-month period of assistance, FEMA *may* begin to charge up to the fair market rent rate for each temporary housing unit provided... When establishing the amount of rent, FEMA will take into account the financial ability of the household." *Id.* (emphasis added). The permissive term "may" suggests that FEMA officials are to use their discretion in determining whether to charge rent in the first instance; moreover, once they decide to charge rent, they may use their discretion to set the rent in a reasonable amount.

Petitioners insist, nonetheless, that FEMA's action in threatening to evict them and failing to transfer their trailer to state administration comes in direct retaliation for their having commenced this litigation. In that context, in order to find that it has jurisdiction, the Court would have to conclude that FEMA's retaliatory intent gives rise to a constitutional claim or claims that would take away FEMA's immunity under the Stafford Act. *See McWaters*, 408 F.Supp.2d at 229 (suggesting that FEMA is not immune from judicial review for constitutional violations).

But assuming that Petitioners' claim of retaliation could in some fashion be cast as a constitutional claim - a generous proposition which the Court expressly declines to consider - Petitioners offer no credible evidence in support of this theory. The mere fact that state agencies may not have taken the steps Petitioners would like them to take does not equate with FEMA having obstructed their path. The Petition for Preliminary Injunction abounds with the idea that *state* officials administering state grant programs have been misinterpreting federal regulations so as to deny Petitioners funding, which may or may not be the case. But to the extent that relief against MEMA or other state agencies is requested or desired, they are not parties to this lawsuit and the Court is unable to direct them to take any action. However frustrated Petitioners may feel, possibly on account of the bureaucratic red tape of state agencies, they have offered no proof that FEMA, the only Defendant before the Court, is discriminating against them for having invoked their right to sue.

On the basis of the foregoing, the Court holds that the Stafford Act deprives the Court of jurisdiction to issue the requested Preliminary Injunction.[7]

---

[7] The Court's finding that FEMA's decisionmaking in this case was discretionary also invalidates any argument that the Court may exercise jurisdiction under the Administrative Procedure Act ("APA"). As in the Stafford Act, the APA contains a provision precluding suits arising from discretionary acts by government officials. 5 U.S.C. § 701(a)(1) (authorizing judicial review of agency actions except to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law").

## IV.

Plaintiffs' Petition for Temporary Restraining Order and Preliminary Injunction [Paper No. 108] is **MOOT IN PART AND DENIED IN PART.**  FEMA's Motion to Dismiss the Complaint for Preliminary Injunction [Paper No. 126] is **GRANTED.**  A separate order **SHALL ISSUE.**

**March 28, 2007**

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**