## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THOMAS L. MOFFETT, II,** *et al.* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | **Civil No. PJM 05-1547** |
| | * | |
| **COMPUTER SCIENCES** | * | |
| **CORPORATION,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

## OPINION

This Opinion adds to the chronicles of the unfortunate personal dislocations caused by

Hurricane Isabel. Plaintiffs are Maryland residents and insureds under the National Flood Insurance

Program (NFIP) whose homes were damaged as a result of flooding during the September 2003

hurricane. They originally sued the Federal Emergency Management Agency (FEMA) and

independent insurance carriers on a number of grounds, including breach of contract, based on

Defendants' handling of their insurance claims. Earlier in the proceedings, the Court filed an

opinion setting forth the core facts of the case and reducing Plaintiffs' claims to their essence,

namely breach of contract. *See Moffett, et al. v. Computer Sciences Corp., et al.*, 457 F. Supp. 2d

571 (D. Md. 2006). An issue has now been raised as to the timeliness of the contract claims.

FEMA, on behalf of all Defendants, has filed a Motion for Partial Summary Judgment with

respect to whether FEMA generally waived the proof of loss requirement for filing Hurricane Isabel

claims, arguing that insofar as no such waiver took place, the breach of contract claim of any

1

Plaintiff who did not strictly comply with the proof of loss requirements is subject to dismissal.[1]

Plaintiffs have filed an Opposition to the Motion, contending that a general waiver of the time for

filing claims did occur.

Having considered the parties' briefs and oral arguments, the Court **GRANTS** FEMA's

Motion for Partial Summary Judgment**.**

**I.**

The NFIP is a federally-subsidized program designed to make flood insurance available to

the general public at or below actuarial rates.  NFIP insurance is marketed to the public in one of two

ways:  directly by FEMA or through the "Write-Your-Own Program" ("WYO Program") under

which a private carrier markets the insurance in its own name. *See* 42 U.S.C. § 4081(a), 4071; 44

C.F.R. § 62.23-24.

The terms and conditions of coverage are fixed by FEMA regulation in the form of a

Standard Flood Insurance Policy ("SFIP"); they do not vary whether the policy is marketed by

FEMA or a WYO company.  *See* 44 C.F.R. §§ 61.4(b), 61.13(d)-(e), 62.23 (c)-(d); *Battle v. Seibels*

*Bruce Ins. Co.*, 288 F.3d 596, 599 ("[A]ll flood insurance policies issued by WYO Companies under

the WYO Program must mirror the terms and conditions of the SFIP, which terms and conditions

---

[1]Although not in issue at this point, a word needs to be said about the possibility of individual waivers in this case.  No Plaintiff appears to be claiming that he or she was granted an individual waiver specific to that Plaintiff.  At argument on the present motion, however, FEMA indicated that some individuals other than Plaintiffs may in fact have received individual waivers as to the time for filing claims.  Indeed, FEMA suggested that it may still be possible for Plaintiffs to petition for individual waivers (Mot. Hr'g Tr. 23:25-24:6, April 20, 2007).

Based on the Court's inquiry, FEMA has conceded that its individual waiver policy is not written nor even available to the public, a circumstance which certainly gives rise to the possibility of unfair and arbitrary application of such waivers.  Plaintiffs may wish to pursue this matter as the case proceeds.

cannot be varied or waived other than by the express written consent of the Federal Insurance Administrator" (citations omitted)).

The SFIP is a single-risk policy that limits coverage to "direct physical loss by or from flood." 44 C.F.R. Part 61, App. A(1) Art. II(B)(12).  The SFIP sets forth a number of preconditions to collecting on a claim, the most important of which is the filing of a proper "proof of loss" within 60 days of the flood loss, in which the insured must give detailed written notice identifying the property damaged, how and when the damage occurred, and the property's value. 44 C.F.R. § 61, App. A(1), Art. VII(J)(4).  Insureds are accorded access to the services of adjusters as a "courtesy," *id.* Art. VII(J)(7), (8), but the SFIP makes clear that it is the insured who has the ultimate responsibility for complying with the policy terms to ensure payment on covered losses, *see id.* Art. VII(J)(5), (7), (8).

The SFIP provides that an insured cannot sue the issuer of an SFIP (whether FEMA or a WYO carrier) until he or she has complied with all of the requirements of the policy. *Id*. at Art. VII, ¶ R.  Terms of the SFIP cannot be waived without the express written consent of the Federal Insurance Administrator. *See* 44 C.F.R. § 61.13(d).

Plaintiffs allege that they suffered their flood losses on September 18, 2003.  Accordingly, the SFIP required proofs of loss within 60 days, in this case by November 17, 2003.  On October 28, 2003, however, Anthony Lowe, then-Director of the Mitigation Division and the Federal Insurance Administrator, issued a nationwide written notice stating that the proof of loss deadline for any Hurricane Isabel claims involving damage that occurred between September 17 and 19, 2003, would be extended for an additional sixty days beyond the normal sixty-day deadline set forth in the SFIP.  Specifically, the notice stated: "The widespread extent of the destruction caused by the

flooding in the states of North Carolina, Virginia, Maryland, and Delaware, compels that the sixty-

day period within which a proof of loss must be submitted to the NFIP be extended for an additional

sixty (60) days." FEMA reasoned that "the extension of time for filing proof of loss by an additional

sixty (60) days will give policyholders ample opportunity to present their statement of claim" and

promised that the "extension will be closely monitored by FEMA to determine whether or not a

further extension might be warranted." The extension made the new proof of loss deadline January

17, 2007.

On April 16, 2004, Lowe issued another notice to be sent to every WYO Principal

Coordinator and to the NFIP Servicing Agent, as well as every NFIP claimant who suffered flood

loss. In it, he announced that FEMA had "implemented a claims review process to ensure that NFIP

policyholders who filed claims following Hurricane Isabel received an equitable loss settlement."

The notice included information to policyholders regarding the review process and stated, "if you

have not received compensation equal to your maximum policy coverage, you are being given the

option to request a claim review." The notice further informed policyholders that, if they wanted

to have their claims reviewed, they should complete a request for review form and return it to the

NFIP. The review process was described as follows:

> As the reviews are completed, some flood insurance claims settlements will be found to be
> correctly evaluated. In those cases, policyholders will receive a detailed written explanation.
> If some claim settlements were incorrect, and more dollars should be paid, an adjustment
> will be made and policyholders will receive additional funds along with a detailed written
> response.

Nowhere did the document explicitly mention the proof of loss requirement, nor did it explicitly

state that in any other respect it was intended as a waiver of the SFIP requirements.

**II.**

Defendants argue that partial summary judgment in their favor should be granted on the issue of whether FEMA waived the proof of loss requirement for Hurricane Isabel claimants. FEMA contends that while its October 28, 2003 message extended the time period for filing the proof of loss claim for an expressly limited time, in no sense did it otherwise waive the proof of loss requirements. *See Harris v. State Farm Fire & Cas. Co.,* 2006 U.S. Dist. LEXIS 1585, at \*15 n.20 (E.D. Va. Jan. 11, 2006) (when construing an identical limited waiver, holding that "at no time did FEMA ever waive the requirement to submit the Proof of Loss; it was only the deadline for doing so that was extended"). Thus, say Defendants, Plaintiffs' waiver claim fails because they have not produced nor can they produce a single written document that in any other respect expressly waives the proof of loss requirement for Hurricane Isabel claims.

Plaintiffs, on the other hand, submit that FEMA, by its April 16, 2004 notice waived any proof of loss requirement in the SFIP in relation to their claims. First, they submit, the language of the notice "expressly" waived the proof of loss requirement. By this they presumably mean that the notice did not expressly limit the *de novo* review process to individuals who had filed proof of loss papers on or before January 16, 2004, the extended deadline, and since the notice itself came well after the January 2004 deadline had expired, it clearly applied to all possible claimants, including those who had not filed by the January deadline. Plaintiffs also appear to argue that because individuals who had filed proofs of loss by January 16, 2004 were being told they could receive compensation they had not previously requested, individuals who had not filed claims were also being told they could request compensation they had not previously requested. The purpose of the April notice, according to Plaintiffs, was to open up the review process to every single NFIP

5

claimant who had suffered an Isabel flood loss, regardless of whether they had timely filed a proof

of loss and regardless of whether any timely filed proof of loss failed include all items of loss.

Plaintiffs also call attention to public statements made and positions taken by FEMA.  For example,

because a question-and-answer document released by FEMA on April 2, 2004, told policyholders

to bring "any document" to the review process that may help support their claims, FEMA was

supposedly stating that the proof of loss requirement was being waived.[2]

### III.

A party is entitled to summary judgment if the evidence in the record "show[s] that there

is no genuine issue as to any material fact and the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  While the evidence of the non-movant is to be believed

and all justifiable inferences drawn in her favor, such inferences must "fall within the range of

reasonable probability and not be so tenuous as to amount to speculation or conjecture."

*Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995).

Summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,

327 (1986) (citation omitted).  Trial judges have an "affirmative obligation . . . to prevent

'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-*

*Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). A

---

[2] Plaintiffs, in addition, quote an April 23, 2004 *Baltimore Sun* article which reported that "National Flood Insurance Program claims specialists will gather information and documentation from property owners to compare with case files from private insurance companies . . . . If specialists find that the original settlement was unfair, residents will also receive an adjusted settlement from their insurance company."

court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the plaintiff fails to meet this burden, the defendant should not be required to undergo "the considerable expense of preparing for and participating in a trial." *Hayes v. Hambruch*, 841 F. Supp. 706, 709 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).

In the present case,  both sides agree that the issue of FEMA's waiver *vel non* is an apt one for summary judgment.

**IV.**

The law is altogether clear that the SFIP requires an insured to notify the insurer of the loss and submit a signed and sworn proof of loss setting out the nature, cause and value of the loss, as well as the interest in the property.  *See, e.g.*, *Dawkins v. Witt*, 318 F.3d 606, 608 (4th Cir. 2003).  Federal courts have repeatedly held that the provisions of an SFIP, including the proof of loss requirement, are to be strictly construed.  *See id. at* 611.  An insured's failure to provide a proof of loss "relieves the federal insurer's obligation to pay what otherwise might be a valid claim."  *Gowland v. Actria*, 143 F.3d 951, 954 (5th Cir. 1998).

More precisely on point, courts have consistently rejected claims where insureds failed to submit timely proofs of loss and there has been no express written waiver of the proof of loss requirement by the Federal Insurance Administrator.  *See, e.g., West Augusta Dev. Corp. v. Giuffrida,* 717 F.2d 139, 141 (4th Cir. 1983); *Sanz v. United States Sec. Ins. Co.*, 328 F.3d 1314, 1319 (11th Cir. 2003).  In *Dawkins*, for example, the Fourth Circuit rejected an insured's claim of waiver even though FEMA had accepted and paid one proof of loss after the expiration of the

proof of loss deadline and an agent had informed the insured that FEMA would not enforce the

60-day requirement. *Dawkins*, 318 F.3d at 610-11. Significantly, in that case the Federal

Insurance Administrator had not provided "an express written waiver of the 60 day

requirement." *Id*. at 610.

Waiver claims have also been rejected in situations where the insurer reopened claims

filed after the deadline for submitting a proof of loss had passed, *Gowland,* 143 F.3d at 954, and

where the insurer repeatedly informed the insured that all necessary forms had been filed and

continued to process a claim even though the insured had not submitted a proof of loss. *Sanz,*

328 F.3d at 1318-19. In the context of damages resulting from Hurricane Isabel, Magistrate

Judge Stillman of the U.S. District Court of the Eastern District of Virginia recently concluded

that the Federal Insurance Administrator did not issue an express written waiver of the proof of

loss requirement. *Harris*, 2006 U.S. Dist. LEXIS 1585, at *31.

In the present case, the notices upon which Plaintiffs base their waiver claim are

insufficient, as a matter of law, to constitute waiver under the terms of the SFIPs.[3] The October

28, 2003 notice extended the filing deadline for 60 days. It expressly stated that "all other terms

and conditions of the SFIP remain in effect." The April 16, 2004 notice announcing a special

---

[3] Plaintiffs contend that to the extent that there remain unresolved questions regarding the April 2004 notice, those questions can only be resolved through fact discovery. Defendants respond, rightly, that discovery is not required since the SFIP requires the waiver to be express and in writing, which it is not.
    Plaintiffs also argue that apart from the question of whether the claims review process constitutes a waiver of the proof of loss requirement, if the process is shown to have been implemented in a manner that amounts to bad faith and unfair dealing on the part of Defendants, Defendants' conduct constitutes a continuing breach of the SFIP contract. The Court, however, dismissed all but the straight breach of contract claim in its September 29, 2006 decision, and those dismissed claims may not be repackaged and relitigated here.

process to review the claims files, which did not reference the proof of loss requirement, can

hardly be said to have expressly waived the requirement.  To the contrary, the notice did no more

than inform Plaintiffs that they could re-submit their claims for further review.  The SFIP,

moreover, does not allow for constructive waiver, which precludes any argument that FEMA's

willingness to consider Plaintiffs' claims after the required proof of loss filing deadline

implicitly resulted in a waiver.  *See Suopys v. Omaha Property and Cas.,* 404 F.3d 805, 811 (3d

Cir. 2005).  The Hurricane Isabel Task Force, in short, was created to ensure that policyholders

received an equitable loss settlement, not to waive the proof of loss requirement.  The Court

concludes that there was no requisite express waiver of the proof of loss requirement in the April

2004 notice.

### V.

Plaintiffs make one additional thrust.

They claim that on the basis of the April 2004 notice, Defendants are equitably estopped

from declining to pay for flood-damaged items covered under the SFIPs.  The sum and substance

of Plaintiffs' argument is that FEMA's actions in creating a *de novo* claim review process and

the review's stated purpose "to ensure that NFIP policyholders who filed claims following

Hurricane Isabel receive[] an equitable loss settlement" reflect FEMA's intention that Plaintiffs

rely on FEMA's words.  Defendants reply that Plaintiffs' argument in no way justifies

application of the equitable estoppel doctrine, a position with which the Court is in full

agreement.

The elements of equitable estoppel are that: (1) the defendant must be aware of the facts;

(2) the defendant must intend that plaintiffs act upon the defendant's affirmative conduct; (3) the

plaintiff must not have had knowledge of the facts; (4) the plaintiff must have relied upon the

defendant's conduct to the plaintiff's substantial injury; and (5) the imposition of liability against

the defendant must not unduly damage the public interest. *Gowland v. Aetna*, 143 F.3d 951, 955

n.6 (5th Cir. 1998).

With respect to the sole reasons proffered by Plaintiffs, court decisions uniformly run to

the contrary. Courts have consistently rejected estoppel arguments based on actions or inactions

of either FEMA or WYOs relating to the requirement to submit a timely and completed proof of

loss. *See, e.g., Dawkins,* 318 F.3d at 612; *Harris*, 2006 U.S. Dist. LEXIS 1585, at *31-36.

Additionally, Plaintiffs are hard pressed to demonstrate their reliance on the April 2004 letter,

since the deadline for submitting proofs had expired three months earlier, i.e., in January 2004.

Finally, estoppel in this case would result in the payment of funds out of the United States

Treasury contrary to the Appropriations Clause of the Constitution, which would clearly be

damaging the public interest. *See OPM v. Richmond*, 496 U.S. 414, 428 (1990). Equitable

estoppel has no application in this case.

## VI.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary

Judgment on Count V of Plaintiffs' Second Amended Complaint [Paper No.164].

A separate order will ISSUE.

_____
                    /s/
**PETER J. MESSITTE**

**September 21, 2007**             **UNITED STATES DISTRICT JUDGE**