LAW OFFICES
# FREEMAN & FREEMAN, P.C.
ATTORNEYS AT LAW

| 100 PARK AVENUE | 33 W. FRANKLIN STREET | 1280 UTE AVENUE |
| --- | --- | --- |
| SUITE 250 | SUITE 202 | SUITE 10 |
| ROCKVILLE, MARYLAND 20850 | HAGERSTOWN, MD 21740 | ASPEN, COLORADO 81611 |
| TEL (301) 315-0200 | TEL (301)714-2333 | TEL (970) 925-3400 |
| FAX (301) 315-0210 | FAX (301)714-0855 | FAX (970) 925-3977 |
| e-mail freemanlaw@erols.com | e-mail freemanlaw@erols.com | e-mail freemanlaw@frontier.net |

May 6, 2010

**VIA ELECTRONIC FILING**
Honorable Peter J. Messitte
United State District Courthouse
6500 Cherrywood Lane
Greenbelt, MD   20770

      Re:   *Thomas L. Moffet, et al. vs. Computer Sciences Corporation, et al.*
               Civil Action No. PJM-05-CV-1547

Dear Judge Messitte,

      This letter is Plaintiffs' response to your April 16, 2010 letter to counsel.

      Plaintiffs' urge the Court to appoint the Special Master forthwith, to determine rapidly and expeditiously the amounts due the Plaintiffs for covered losses under their NFIP insurance policies.  Plaintiffs urge that the approach of having the Special Master determine the amounts due is, under the circumstances, (1) a far superior method than burdening the Court and the parties with endless and expensive severance and discovery as well as (2) the legally correct method, based upon the historical record in this case.

      A brief review of the salient portions of the case record will, we believe, make it apparent why this approach is the correct one.

      In Part VI of its opinion of July 6, 2009 (at page 9, Doc. 409), the Court wrote:

> Had FEMA simply denied Plaintiffs' requests for waiver on the grounds that they were filed beyond the officially declared deadlines without making findings on the merits of the claims, judicial review on the merits would have been difficult….[But] FEMA…went beyond responding to the waiver requests and addressed virtually all of Plaintiffs' claims on their merits. **That being so, there appears to be a factual record upon which to review those claims.**

(Emphasis added.)

1

The manner in which FEMA "addressed virtually all of Plaintiffs' claims on their merits", however, was to simply state that it had done so. When in fact it had not. In "response" to the thousands of pages of documentation comprising the proofs of loss filed on February 25, 2008, neither FEMA nor the WYOs have EVER questioned the dollar amount of any item of loss claimed by any Plaintiff, or EVER have called into question whether any such item was excluded from coverage under the policy.[1] They stated only that, on the merits, all POLs timely filed had been paid (begging the question of whether the February 25, 2008 filings were POLs to be considered timely filed. The Court answered that question on July 9, 2009, holding that they were timely filed. Since then, however, and despite repeated requests by Plaintiffs' counsel made to defense counsel to take up the specifics of the February 25 POLs, (the most recent of which was by telephone to liaison counsel for the defense following the setting of the June 30, 2010 status conference), FEMA and the WYOs have made absolutely no effort to address those POLs. In fact, despite Plaintiffs having provided FEMA and the WYOs with 5,880 pages, of which 613 were the applications for waiver of the POL deadline, leaving 5,267 pages of POL supporting documentation on February 25, 2008, FEMA and the WYOs bizarrely continue to assert that such documentation never was provided.[2]

After the Court's October 1, 2009 proposal to counsel to appoint a Special Master to decide the defense's motions for summary judgment, "on the facts and law"[3], Mr. Ruthenberg, counsel for one of the WYOs, asked the Court which of two scenarios the Court had in mind, as follows:

> In general terms, our uncertainty is which of the following two scenarios the Court has in mind:
>
> Scenario A: The Special Master would only be addressing the defenses on which Defendants' summary judgment motions are based and would recommend rulings on those defenses. For example, **most of the motions rely primarily on the defense that the insurer cannot be found to have breached the SFIP because the insurer paid all amounts claimed in timely submitted proofs of loss….**
>
> Scenario B: The Special Master would be addressing not only the defenses raised by Defendants in their pending summary judgment motions but would also be reviewing the proofs of loss submitted by Plaintiffs in 2008 that were the subject of the July 6, 2009 Order….

---

[1] The several claims which Defendants agreed should be partially paid (but which remain unpaid in fact) involve sums unpaid which were on original POLs filed before mid-January, 2006.

[2] See Mr. Nielsen's letter of May 6, 2010, in which he states: "[P]laintiffs have produced little or no relevant documentation showing that their covered repair costs exceeded what they were long ago paid on their flood policies….Right now, as FEMA stated in response to the waiver requests, no such documentation has ever been produced.

[3] See the Court's letter to counsel, October 1, 2009, Document 424.

(Document 425, Ruthenberg letter to the Court, emphasis added)

Except for the several Plaintiffs whose originally filed POLs remained unpaid, the bases for dozens of motions for summary judgment were all the same, i.e., "that the insurer cannot be found to have breached the SFIP because the insurer paid all amounts claimed in timely submitted proofs of loss."

On October 15, 2009, (Document 431), Plaintiffs counsel wrote the Court, summarizing events to that date, as follows:

> Dear Judge Messitte
> …
> Last year, Plaintiffs filed papers with FEMA, with copies to the Court and to counsel for all the WYOs, delineating in detail the dollar amounts of losses they sustained, for which they had not been paid. Accompanying those papers were the documents supporting those losses.
>
> These papers and the supporting documentation were filed as part of the Plaintiffs' applications for waiver of the deadline for filing proofs of loss. In fact, they comprised the proofs of loss for which they wished FEMA to waive the deadline, because FEMA had finally stated the criteria for filing applications for waiver, and one of the criteria was that the applicant for waiver had to demonstrate that they had legitimate covered losses that were not paid.
>
> After FEMA denied the applications, the Court ruled it had the right to review the denials, did so, ruled that the applications should not have been denied, and that "all proofs of loss filed by Plaintiffs in this case must be deemed timely filed."
>
> **The pending motions for summary judgment filed by the various defendants, for the most part, raise the identical issue, i.e., that they paid timely filed proofs of loss, and therefore summary judgment is in order.** However, the Court has now ruled that that "all proofs of loss filed by Plaintiffs in this case must be deemed timely filed." And in both Scenarios A and B discussed in Mr. Ruthenberg's letter of October 8, he recognizes that the papers Plaintiff filed last year, delineating in detail the dollar amounts of losses they sustained, for which they had not been paid, were proofs of loss. As he states: "we realize that the Court's July 6, 2009 Order contemplates review of the proofs of loss submitted by many of the Plaintiffs to FEMA last year".
>
> Thus, it would seem clear that, given the Court's ruling, the WYOs have not yet paid all timely filed proofs of loss. Moreover, for summary judgment to turn on the issue of payment of proofs of loss deemed timely filed in the

>   absence of the Court's ruling, it wouldn't take Mr. Sharpe more than a few minutes to decide all of the motions, rather than a few hours for each motion.
>
>   Under their respective insurance contracts, the WYOs, (and FEMA, as to NFIP Direct policies), the Defendants must pay amounts to compensate Plaintiffs for their covered losses, per their submitted proofs of loss. The Defendants are not entitled to summary judgment if there are timely filed proofs of loss which have not been paid. And, given the Court's ruling that "all proofs of loss filed by Plaintiffs in this case must be deemed timely filed," that is exactly where we are now.
>
>   Accordingly, it seems abundantly clear to Plaintiffs' counsel that Mr. Ruthernberg's Scenario B is the correct one, and that the Special Master should review that the papers and supporting documentation submitted by the Plaintiffs last year, and determine from those papers and documentation the proper additional amounts to be paid to Plaintiffs…

(Emphasis added.)

On October 21 (Document 443), the Court wrote to counsel, stating:

>   First and foremost, let me be clear that I only intended that the Special Master would decide the pending Motions, essentially as Mr. Ruthenberg describes in "Scenario A" of his letter of October 8. I regret any confusion that the Master might go any further than this – **at least at this juncture.** The import of this is that the Master could only recommend that a Motion for Summary Judgment be granted in favor of a Defendant or recommend that it be denied; he would not be authorized to consider or recommend whether a Plaintiff's claim should be paid….**But this much should be understood: I have held that the Court has authority to review FEMA's waiver of time for filing proofs of loss; that the standard of review for denial of the waiver is the arbitrary and capricious standard; and that, limited to the Plaintiffs in this litigation, FEMA's denials were arbitrary and capricious. Accordingly, all the late-filed claims have been deemed timely filed.**

(Emphasis added.)

But the basis for the motions for summary judgment was that FEMA and the WYOs had paid all **timely submitted** POLs, and that basis was asserted **before** the Court ruled that the February 25, 2008 POLs were timely filed.  Now, **at the present juncture**, with the February 25, 2008 POLs having been ruled timely filed, the defense's sole real basis for summary judgment has been mooted by the Court's July 9, 2009 ruling.  Moreover it has been further mooted because, "[h]aving considered the matter, the Court has decided to deny the Motions for Summary Judgment without prejudice (subject to revival if the Fourth Circuit affirms this Court's holdings)…" (January 22, 2010 Order, Document 442, page 2).

4

In its October 21, 2009 letter, the Court correctly stated:

> That is not the same, however, as saying that any particular claim is meritorious. A claim may be timely filed and still be fairly deniable for reasons that have nothing to do with its timeliness, *e.g.* damage to a particular structure may be excluded under the insured's policy. That is the sort of thing I had in mind for the Special Master to decide.

But the defense has not asserted any specific exclusions under the SFIPs in its motions for summary judgment. That, however, "is the sort of thing [the Court] had in mind for the Special Master to decide. That is precisely the "scenario B" described by Mr. Ruthenberg.

Much more importantly, FEMA's backwards criteria for granting an extension of the time for filing POLs, (i.e., whether the claims are otherwise meritorious), coupled with the absolute refusal of FEMA and the WYOs to look at (or even acknowledge the existence of) the February 25, 2008 POLs, leads to the inescapable conclusion that the arbitrariness and capriciousness of the Defendants continues to this day, with every indication that, unless stopped by the Court, it will continue "until the last dog dies".

Again, in Part VI of its opinion of July 6, 2009 (at page 10, Doc. 409), the Court wrote: "Although the inquiry into the facts must be searching and careful, the court is not empowered simply to substitute its judgment for that of the agency." Here, however, the agency continues to make no judgment at all on the merits of Plaintiffs' February 25, 2008 POL claims.

While it is correct to say that the Court, once it reaches the substance of the as-yet non-addressed POLs, may not substitute its judgment for that of FEMA and the WYOs, if FEMA and the WYOs refuse to address that substance (for nearly a year now following the Court's ruling of July 9, 2009), then (1) that refusal is arbitrary and capricious, (2) there is no judgment of FEMA and the WYOs that the Court must avoid substituting for, and (3) the Court (and Special Master) may examine the POLs and direct that they be paid, if the items of loss are covered.

As stated in Plaintiffs' counsel's November 6, 2009 letter to the Court (Document 436):

> ….
> These Plaintiffs are now more than six years out from their flood loss, without compensation for all or a substantial part of their covered flood loss. It has truly been a brutal hardship for them.
>
> In the face of the July 6 opinion and the lengthy period of hardship suffered by the Plaintiffs, every defense argument previously presented to the Court prior to its July 6 opinion, has been dredged up again, first by FEMA, and more recently by lead counsel for the WYO's, who appears to have made a career of defending against flood loss victims' claims.
>
> Plaintiffs' position is as follows:

> ….
> We…accept that our clients' claims must be looked at individually, but take issue with the suggestion by lead counsel for the WYO's that this requires tying up the entire District Court bench with six dozen separate cases, each with their own discovery depositions and trial. We believe that this approach is being urged to discourage our flood loss victim clients, as well as the Court, from proceeding with these legitimate claims.
>
> Following the Court's July 6 opinion, our clients' claims should have been looked at individually by the WYO's or FEMA (for the NFIP Direct cases) **just as any other claims supported by proofs of loss should be looked at: the WYO's, or FEMA, as the case may be, should have paid covered losses set forth by the insureds, just as they do in cases not in litigation.** (Emphasis added.) Here, however, they arbitrarily and capriciously refused to do so as the Court stated in its July 6 opinion, and continue to refuse to do so in the four months since then. There has not been even the slightest hint that they will turn their attention to payment of these legitimate insurance contract claims. It isn't that they contend that the amount of the losses claimed by our clients is inappropriate; they simply refuse to look at it.
>
> Under these circumstances, Mr. Sharp would not be substituting his judgment approving amounts due for that of the WYO's and FEMA, for they have made no judgment on those amounts – they simply refuse to address those amounts, instead warning all concerned that (1) they are going all the way to the Supreme Court, and (2) they are seeking to dump six dozen separate cases unnecessarily onto the District Court's calendar.
>
> Given the above, we urge the Court to exercise its discretion, consistent with its finding that the WYO's and FEMA have acted arbitrarily and capriciously, as follows…direct Mr. Sharpe to review the proofs of loss which the WYO's and FEMA refuse to do, and, after affording the WYO's and FEMA the opportunity to comment on whether specific items on the pending proofs of loss are covered or not, make recommendations to you, separately as to each case, detailing the additional amounts due.
>
> This approach will, for these patient flood loss plaintiffs, and for them only, provide an expeditious resolution of the flood policy contract claims, **without** creating the additional hardship to them of tying up their insurance contract claims for additional years to come, **without** exhausting the resources of the Plaintiffs, **without** tying up the resources of the Court, **without** impacting the NFIP law beyond this case, and **without** further burdening the American taxpayer with funding the scorched-earth defense by the WYO's and FEMA in this case. (Emphasis in original.)

The only change that should be made to that letter is that we are now ten months out, (not four months) from the July, 2009 order.

In his letter filed earlier today, lead counsel for the defense Mr. Nielsen states, at page 2:

> I did say (several years ago) that cases of this type normally settle. However, as I also explained, that occurs when counsel for the plaintiff eschews hardball litigation tactics, and cooperates early in a case to produce documentation that supports the claim for additional federal dollars.

Such a statement would be hilarious were it not reeking with disingenuousness and part and parcel of the defense's continuing capricious efforts to do the Plaintiffs out of their **just recovery due under their SFIP's, for which they duly paid their premiums.** Mr. Nielson's admitted statement was made at oral argument on motions to dismiss the other counts in the case. Once those counts were dismissed out, Plaintiffs have strived mightily and single-mindedly to obtain recovery under their policies. If that's hardball, so be it. Frankly, as an officer of the Court, we think it's a joke for the mighty United States government and the powerful insurance industry, together with counsel who has made a career of opposing such insurance claims, to characterize the efforts of these working-class Plaintiffs to enforce their rights of recovery as "hardball litigation tactics".  Respectfully, the "pot calling the kettle black" metaphor seems apt. With that statement of lead counsel, it now is transparently obvious that the United States government and the insurance industry seek to punish these Plaintiffs for having the audacity to come to Court to assert their rights.

Accordingly, at the hearing on June 30, 2009, Plaintiffs will seek to have the Special Master appointed to recommend to the Court payment of benefits due the Plaintiffs as set forth in their timely-filed POLs.

If you have any questions or concerns, please contact us at our Hagerstown office listed in the letterhead of this letter.  We look forward to further communication from the Court.

Respectfully submitted,

FREEMAN & FREEMAN, P.C.

By:_____
Martin H. Freeman
Attorney for Plaintiffs

cc: All counsel