IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. <br> 8-05-CV-01547 |

MEMORANDUM ON ROLE OF THE SPECIAL MASTER, AND
REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
ON GENERAL ISSUES RAISED BY PLAINTIFFS AND DEFENDANTS

This Memorandum will articulate what the Special Master understands to be the authority for and scope of the review he is conducting, and will serve as background for the review of the individually-filed Motions for Summary Judgment. It will also comment on the issues raised in Plaintiffs' (1) Motion to Strike the Bates-Stamped Documents Accompanying FEMA's September 15, 2010, Motions for Summary Judgment and Supplemental Memoranda of Law; and (2) Generic Opposition to FEMA's September 15, 2010, Motions for Summary Judgment and Supplemental Memoranda of Law ("Plaintiffs' Motion and Generic Opposition") (Document 518) and the Federal Emergency Management Agency's Omnibus Memorandum of Law and Points of Authority in

Support of its Motions for Summary Judgment to Affirm FEMA's Waiver Application Denials Relating to Count V of Plaintiffs Second Amended Complaint ("FEMA's Omnibus Memorandum") (Document 474).

I.     **Authority for and Scope of the Special Master's Review**

In the course of this litigation, the Federal Emergency Management Agency ("FEMA") acknowledged that it had granted waivers for some insureds beyond the January 17, 2004, deadline. FEMA grants such waivers only if the claimant establishes:

> First, are the additional damages sought actually covered by the Standard Flood Insurance Policy ("SFIP")
>
> Second, has the insured submitted detailed line-item documentation supporting the particular additional amounts being sought for those covered damages?
>
> Third, has the insured established that he or she has proceeded in good faith and with reasonable explanation for the delay?

Sue Woods' Declaration of June 21, 2007 (Document 183-13, ¶7). See also General Declaration of Karen Christian (Document 474-1, ¶6).

The Court determined that the availability of such waivers and the criteria for granting such waivers had not been published or otherwise been made available to the Plaintiffs. The Court then, by its Opinions and Orders, see Documents 196 and 197, granted Plaintiffs leave to file for FEMA's consideration of individual requests for waiver of the proof of loss deadline. Based on those rulings, in February 2008, Plaintiffs filed individual waiver requests based upon the newly-

2

announced criteria revealed by FEMA. From July to October 2008, FEMA issued a series of letters denying all but five of the Plaintiffs' waiver requests.

Dissatisfied with the determinations, Plaintiffs then sought review of the denials by the Court. In response, FEMA argued that the Court lacked the authority to conduct any review of its waiver decisions. The Court, in its opinion of July 6, 2009 (Document 409), found that 42 U.S.C. Sec. 4072 authorized judicial review of the waiver decisions. The Court thus held that a request for waiver of a proof of loss deadline is a "claim" under 42 U.S.C. Sec. 4072 and, as such, is reviewable by the U.S. District Court.

As to the scope of that review, the Court concluded that the review would not be *de novo* but would be the more limited review offered by the Federal Administrative Procedure Act, in that the denials by FEMA could not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706 (2) (A) (2006).

The scope of review is further explained in the Court's opinion:

> What then, is the proper standard of review? Lacking a specific statutory standard, the Court again looks to the Administrative Procedure Act, which provides that an agency's factual decisions cannot be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Under this standard, the court must uphold the agency decision if it was based on a fair consideration of the relevant factors and there has been no clear error of judgment. The ultimate standard of review is a narrow one. Although the inquiry into the facts must be searching and careful, the court is not empowered simply to substitute its judgment for that of the agency.

Document 409 at pp.9-10 (citations omitted).

As to the issue of timeliness, the Court found "as a matter of law that all proofs of loss filed by the Plaintiffs in this case must be deemed timely filed." *Id.* at p.9. The Special Master understands this ruling to remove all issues of timeliness as far as the claims filed by the Plaintiffs are concerned.[1]

**II.     Role of the Master**

To implement the review, the Court issued a Memorandum Order dated August 20, 2010, in which it indicated it "intended by its July 6, 2009 ruling that there be an APA-type review of FEMA's denials of Plaintiffs' requests for waivers on other than timeliness grounds." The Special Master is instructed "to review the record as to each waiver request and to make a Report and Recommendation to the Court as to whether FEMA's denial of an individual waiver request for reasons other than untimeliness was arbitrary and capricious." Document 467 at p.1.

The particular procedure for the Special Master is as follows:

> For each individual Plaintiff, FEMA will prepare a declaration from one of its agents, explaining FEMA's reasons for denying the waiver request for reasons other than untimeliness. Such declaration shall be accompanied by appropriate documents of record, provided that:
>
> A.  Those documents shall be limited to documents FEMA actually reviewed in reaching its decision, but may include more than the waiver applications themselves;
>
> B.  The documents may include generic information that was in existence at the time the claim was filed and which was actually relied upon by FEMA in making a decision in the specific case, such as the claimant's insurance claims file, Hurricane Isabel Task Force documents relative to the individual claims, and the waiver application together with

---

[1] Although not expressly stated in the directives, the Special Master understands that the issue of the waiver applicant's "good faith" mentioned in FEMA's third criteria is not before him.

4

whatever supporting documentation was submitted with the waiver application; and,

      C. The declaration may not include claimant-specific information that was not actually relied upon by FEMA at the time the claim was filed.

After the submission by FEMA of the record and the statement of reasons with an appropriate motion for summary judgment, the Plaintiffs were permitted to file an opposition, and FEMA was then allowed to reply. After receiving these filings, the Special Master "shall issue a Report and Recommendation to the Court indicating with brief reasons his findings as to whether FEMA's denial of a given waiver request for reasons other than untimeliness was arbitrary and capricious."[2] Document 467 at 1 f.

The parties may file exceptions to the Master's Report and Recommendations. *Id.* at 1 g. The Court indicates that it will either grant the motion for summary judgment and dismiss the individual Plaintiff from the lawsuit (*Id*. at 1 h) or, if the Court determines "that FEMA's actions were arbitrary and capricious with regard to any individual Plaintiff, FEMA's decision will be remanded to FEMA for appropriate reconsideration." *Id*. at 1 i.

The undersigned was appointed Special Master by Order of the Court dated September 9, 2010 (Document 472).

**III.    The National Flood Insurance Program**

---

[2] While the Court here mentions only the arbitrary-and-capricious part of the APA's scope of review in its directive, the Special Master notes, as the Court articulated in its Opinion, that the grounds for review under the APA also include review for "an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2) (A) (2006). Where Plaintiffs rely on those prongs of the scope of review, the Special Master also makes recommendations to the Court as to whether those grounds have been established.

5

The National Flood Insurance Program ("the Program") is described in detail in the Court's Opinion *Moffett v. Computer Sciences Corporation et al.*, 457 F. Supp. 2d 571, 573-575 (D.Md.2006), and in FEMA's Omnibus Memorandum (Document 474) at pp.3-10. The full description of it does not need to be repeated here.[3] It appears that the Plaintiffs agree that the legal requirements of the Program and the limits and conditions of the Program as described in the sources of law cited in those documents are correct. Their disagreements concern the application of the Program requirements to their individual cases and how FEMA has procedurally handled their claims.

More specifically, it appears that all parties agree that the claims are to be evaluated and paid, if appropriate, under the terms of the Standard Flood Insurance Policy ("SFIP") as it existed in September 2003. This is found at 44 C.F.R. Pt. 61, App. A (1) (2002), and the full text is at Exhibit B to FEMA's Omnibus Memorandum (Document 474).

The only relevant amendment to SFIP since C.F.R. publication which is applicable to these claims is that FEMA enlarged the Increased Cost of Coverage ("ICC") limit from $20,000.00 to $30,000.00. 68 Fed. Reg. 9895, 9896 (March 3, 2003). It is agreed that this higher limit is applicable under all SFIP's in effect at the time of Hurricane Isabel, including those of the Plaintiffs.

---

[3] See also, *Howell v. State Farm Insurance Companies*, 540 F. Supp. 2d 621, 624-626 (D.Md. 2008) and 11 Couch on Insurance, Third Edition ,Section 153.51.

SFIP is an insurance policy that provides coverage for "direct physical loss by or from flood", subject to certain conditions and exclusions. The policy provides four types of coverage:

> Part A describes Building Property Coverage also referred to as "Dwelling Coverage";
>
> Part B describes personal property coverage, also referred to as "Contents Coverage";
>
> Part C describes "Other Coverages", including debris removal, loss avoidance measures, etc.; and,
>
> Part D describes ICC coverage, which provides coverage up to $30,000.00 for the cost of complying with local flood plan requirements and/or ordinances.

SFIP also contains various other provisions, including requirements for submitting a claim. It provides that "[an insured] may not sue [FEMA] to recover money under this policy unless [the insured has] complied with all of the requirements of the policy", 44 C.F.R. pt. 61, App. A(1), Art. VII.R. These requirements include, among other things, that the insured (1) give prompt written notice of loss to the insurer; (2) separate the damaged and undamaged property so that the insurer may examine it; (3) prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss, attaching all bills, receipts, and related documentation; and (4) submit a Proof of Loss ("POL") in compliance with SFIP. *Id*. at Art. VII.J.

The POL is required to contain, among other information, the "specifications of damaged buildings and detailed repair estimates" and an "inventory of damaged personal property." *Id*. SFIP expressly provides that in completing the POL, "[the

7

insured] must use [his/her] own judgment concerning the amount of loss and justify that amount." *Id*.

From a review of the first ten claims, it appears that Part A, the Dwelling Coverage, is the coverage most frequently in play when considering these claims. As stated above, SFIP covers only "direct physical loss by or from flood". SFIP also provides the following explicit exclusion:

"The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris." *Id*. at Section V (A)(6).

Under SFIP, compensation for dwelling claims is limited to the **lesser** of the policy limit, the replacement cost of the damaged part of the dwelling with materials of like kind and quality for like use, or the amount actually spent to repair or replace the damaged part of the dwelling. *Id*. at Section VII (V) (2) (a) (emphasis added). Further, SFIP is not a valued policy, which means there is no set amount of compensation in the event of a total loss. *Id*. at Section II (B) (28) and General Declaration of Karen Christian (Document 474-1) at ¶17. See also, *Monistere v. State Farm Fire and Casualty Company*, 559 F.3d 390, 393-394 (5th Cir. 2009).

The limitations of the policy which compensate for only "direct physical loss by or from a flood" and which concentrate on "the replacement cost of the damaged part of the dwelling with materials of like kind and quality" mean that the adjustment of the policy proceeds room-by- room, foot-by-foot, both horizontally

8

and vertically, examining the direct damage from the flood but allowing for no more than the replacement cost with materials of like kind and quality. The Dwelling coverage makes no allowances for upgrades even where they would be very reasonable and sensible for the home owner to make, and under the exclusion discussed above, the coverage does not allow costs to be factored in for complying with local codes or laws when the repair or rebuilding takes place, even though the insured has no option but to comply with such requirements.

This practical deficiency in the Part A coverage for homeowners is somewhat ameliorated by the coverage provided in Part D, the Increased Cost of Compliance. This coverage was added to the Program in 1994 as part of the National Flood Insurance Reform Act ("NFIRA"). 42 U.S.C. Sec. 4011(b). Under Part D, SFIP allows coverage for compliance with land use and control measures. Eligible ICC activities include, "elevation, floodproofing, relocation or demolition (or any combination of these activities) of your structure". 44 C.F.R. Pt.61 App. A (1), Art. III (D) (2). The coverage is limited to a maximum of $30,000.00, regardless of the actual expense that the insured incurs.

In most of the cases reviewed in the first group of ten, the property owners were eligible for and received full ICC coverage of $30,000, but their actual costs in rebuilding or repairing the dwelling, including elevation, appear to greatly exceed the $30,000.00 limit, and they have looked to the Dwelling coverage of Part A to provide them increased compensation.

**IV.  Summary Judgment Process**

The process ordered by the Court envisions that the parties would test the validity of FEMA's denial of the waivers by use of the summary judgment process of Federal Rule of Civil Procedure 56 (c). In that process, FEMA, as part of its motion, presents the administrative record, which in this case are the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order (Document 467), and the Agency submits that its findings and conclusions on the waiver issues are those in the declarations filed by FEMA's agent pursuant to Part 1a of the Memorandum Order. It was agreed that FEMA would file for each affected plaintiff a motion for summary judgment demonstrating that the waiver review was consistent with the administrative record. Individual Plaintiffs could oppose the grant of the motion by demonstrating that the denial of the waiver in their individual claim was arbitrary, capricious, or both.

**V.    Burden of Proof**

There does appear to be some disagreement between the Plaintiffs and FEMA about which party bears the burden of proof, both as to the waiver applications filed with FEMA and in the judicial review determination being conducted by the Special Master and the Court. The Special Master will set out here his understanding of how the burdens are allocated, since this will apply to all cases reviewed.

A.  Burden on the Waiver Application

The parties do agree about the standard that was to be applied to the individual waiver applications filed by the Plaintiffs in February 2008. As noted above, these are:

> First, are the additional damages sought actually covered by SFIP?
>
> Second, has the insured submitted detailed line-item documentation supporting the particular additional amounts being sought for those covered damages?
>
> Third, has the insured established that he or she has proceeded in good faith and with reasonable explanation for the delay?

While the third part of the criteria is not of concern, since the Special Master is to conduct the review without regard to the timeliness of the waiver applications, the other two criteria do apply. It is also the Special Master's understanding that in conducting the waiver process, FEMA was applying the full requirements of SFIP, including the requirements for a valid Proof of Loss submission. See, *e.g.*, footnote 5 at p.12 of Federal Emergency Management Agency's Reply to Plaintiffs' Generic Opposition to FEMA's September 15, 2010 Motions for Summary Judgment (Document 527).

The Special Master concludes that it was the burden of the Plaintiff in the waiver application process to demonstrate by proof of compliance with SFIP that "additional damages" claimed by the Plaintiff were "actually covered by the SFIP." It was also the Plaintiff's burden to "submit detailed line-item documentation supporting the particular additional amounts being sought for those covered damages."

There is some suggestion in Plaintiffs' filings that they viewed the waiver claim process as more of a total *de novo* review of the claim, where FEMA would review the entire claim as if no earlier determinations had been made, and that FEMA would itself seek to uncover any possible underpayment of the claim, even if not fully proven or shown in the waiver application, including calling in the Plaintiffs for interviews and asking them for more documentation if there was any possibility of additional payments. The Special Master does not read the waiver process as requiring such an effort, and believes the burden allocation as set out above is consistent with the record in this case and the Orders and directives from the Court.

B. <u>Burden in the Judicial Review Process</u>

In the Court's review of the waiver denials, there also seems to be some difference as to who has the burden of showing that the waiver denial was not correct. Plaintiffs suggest that it is the burden of the Defendants to show that a waiver denial was not arbitrary and capricious[4], while Defendants assert that the waiver denial is presumed correct and will not be overturned unless the Plaintiffs demonstrate to the Special Master and the Court that the waiver was arbitrary and capricious. The Special Master believes this debate is settled by the Court's instructions to apply the standards of the Administrative Procedure Act.

---

[4] For example, in their Motion and Generic Memorandum (Document 518), Plaintiffs say at p.17 that "FEMA has presented no probative evidence that it had any reasonable basis for its July-October, 2008 denials..." In the Opposition by each Individual Plaintiff, it is further assert that Defendants failed "to provide any probative evidence that their denial of the application for waiver was anything but arbitrary, capricious and an abuse of discretion...." See, *e.g.*, the Opposition in the Birchette and Dey case (Document 508) at p.11.

In such a review, the Court is required to presume the validity of the Agency's action, which in this case is the waiver denial. See, *Natural Resources Defense Council v. EPA*, 16 F. 3d 1395, 1400 (4th Cir. 1993). The agency decision is only overturned if those contesting the agency action (in this case, the individual Plaintiffs) demonstrate that such action is arbitrary or capricious. While the Court must engage in a "thorough, probing, in-depth review" of a final agency decision, in this case the denial of the waiver, the agency issuing the decision is entitled to a presumption of regularity, and the waiver denial must be upheld as long as there is a rational basis for it. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971); *B&B Partnership v. US*, 1997 US App. Lexis 36086, *11 (4th Cir. 1997). Thus, the waiver denial must be upheld on review unless an individual Plaintiff shows that the denial was arbitrary and capricious.

**VI. Issues of Compliance With Prior Court Orders**

In their responses to the Motions for Summary Judgment, the Plaintiffs have all joined in a "Motion to Strike the Bates-Stamped Documents Accompanying FEMA's September 15, 2010 Motions for Summary Judgment and Supplemental Memoranda of Law" (Document 518). That motion sought to have all administrative records, other than Plaintiffs' waiver claims submitted with the individual claims, stricken, and to have the review proceed without any additional record that could justify FEMA's decision to deny the waivers. If that relief were granted, then Plaintiffs assert that FEMA would fail "to meet its burden of showing it conducted the review [and] leaves its blanket, boilerplate denials

13

clearly as being arbitrary, capricious and an abuse of discretion." *Id*. at p.17. The Court, by its Order of December 28, 2010 (Document 538), has denied that motion without prejudice to the motion being renewed "if, as, and when a Plaintiff files exceptions" to the Special Master's Reports and Recommendations.

In each Opposition filed on behalf of individual Plaintiffs, the same argument is made at the conclusion of the Opposition, and it is urged that, contrary to the Court's earlier Orders, there was no review in compliance with the Court's directive actually conducted in the period between the time the Plaintiffs submitted their Proofs of Loss in February, 2008, and the time the denial letters were issued in the July to October period in 2008.

Given the dismissal of the motion by the Court, the Special Master understands that issues of compliance with the Orders for submission and review of waiver claims in 2008 is beyond the scope of his authority, but may be raised with the Court if further review is sought of the Special Master's Report and Recommendation.

The Special Master will proceed to review the claims, assuming the validity of the administrative records filed by FEMA, and further assuming that the Declarations filed by FEMA's examiners explaining the reasons for the waiver denials are

documents that the Special Master can and must consider in reviewing the denials.[5]

VII. **Form of the Special Master's Reports and Recommendations**

For each of the cases submitted, the Special Master has prepared a Report and Recommendation. Each consists of a section labeled "Background"; largely adapted from the FEMA submissions, this section describes the claims and payment history involving the individual case. In most cases reviewed to this point, the parties appear to be in fundamental agreement about the claims and payment histories. Where there are material differences, they are noted either there or in the sections following.

There then follows a section entitled "Waiver Claim and Denial", which records the dates of these events and the "shortfall" claimed by the Plaintiffs in their waiver applications. Following is a section on FEMA's Reasons for Denial which sets out what the Special Master understands, from the Declaration submitted by FEMA with each case, to be the reasons why the waiver claim was denied.

This is followed by a section entitled "Plaintiff's Assertions", which states what the Plaintiffs now contend are the reasons that the waiver denial in a particular case was arbitrary, capricious or an abuse of discretion.

---

[5] In a letter that accompanied the Defendants' final Reply memoranda, they requested that a non-evidentiary hearing be held by the Special Master to hear oral arguments from the parties. Given that the issues have been extensively briefed by the parties and that considerable delays have already ensued, the Special Master has concluded that postponing the Reports and Recommendations to hold such a hearing is not necessary.

The "Special Master's Analysis" explains the rationale for the Special Master's recommendation and constitutes the "brief reasons", see Document 467 at 1 f, for the Special Master's recommendation. This is followed by the "Recommendation of the Special Master" which, under the directives given to him, is either a recommendation to grant the Defendants' Motion for Summary Judgment or a recommendation to deny the motion and remand the matter to FEMA for further proceedings. *Id*. at 1 i.

    <u>January 13, 2011</u>                      <u>/S/</u>
      Date                                Dennis M. Sweeney
                                           Special Master