# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | |
| v. | ) | 05-CV-1547 |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF CLAUDETTE BIRCHETTE AND JOHN DEY

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Claudette Birchette and John Dey pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to it in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. As to these Plaintiffs, the documents consist of 405 pages labeled FEMA-000001 to 000405.

**I.     Background**

Plaintiffs owned two structures located at 2809 Bay Drive, Millers Island, Maryland. See FEMA-000005. They purchased them in 2000 for $216,500.00 (FEMA-0031). The main structure was insured by Harleysville Mutual Insurance Company ("Harleysville") under Policy Number 99016210722003, with a building coverage limit of $149,000.00 and a $5,000.00 deductible. *Id*. Plaintiffs' seasonal cottage was also insured by Harleysville under Policy Number 99016210712003 with a building coverage limit of $45,000.00 and a $5,000.00 deductible. *Id*. The main structure had 918 square feet of living area (FEMA-0177), and the cottage 540 square feet (FEMA-0091).

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' properties. See FEMA-000005. Plaintiffs immediately notified Harleysville of their loss, and on September 21, 2003, an adjuster inspected the loss. (FEMA-000085). On September 30, 2003, Harleysville advanced Plaintiffs $5,000.00 for the claim on their cottage. See FEMA-000254.

On October 29, 2003, Plaintiffs filed a Proof of Loss ("POL") with Harleysville for the damage to their main structure for $39,556.59. See FEMA-000072. Plaintiffs agree that they were paid this amount (FEMA-000005). Plaintiffs submitted a supplemental request for $2,955.18; see FEMA-000112. On April 26, 2004, Harleysville paid Plaintiffs this amount, which Plaintiffs do not contest (FEMA-000005).

2

On October 29, 2003, Plaintiffs submitted a POL to Harleysville for the damage to their cottage for $14,187.59. See FEMA-000273. On November 12, 2003, Harleysville paid the balance of $9,187.59 on Plaintiffs' claim (FEMA-000250).

Plaintiffs sought review of the damages to the main structure from the Hurricane Isabel Task Force ("Task Force"). On June 14, 2004, Plaintiffs were notified that the Task Force adjusted some prices, resulting in a supplemental payment of $12,440.90. See FEMA-000128. A supplemental claim was filed, and Plaintiffs agree that Harleysville paid them this amount; see FEMA-000005.

Plaintiffs also sought review of the damages to their cottage by the Task Force. On June 14, 2004, Plaintiffs were notified that the Task Force adjusted some prices and added additional items not reflected in the initial adjustment (see FEMA-000041) which resulted in a supplemental payment of $2,509.43 (FEMA-000041). Plaintiffs agree that Harleysville paid them this amount; see FEMA-000005.

In addition to the above-mentioned payments, Plaintiffs submitted a POL for the policy limit of $30,000.00 for Increased Cost of Compliance ("ICC") coverage for the main structure. See FEMA-000273. On April 2, 2004, Harleysville issued a check for $15,000.00 (FEMA-000332). On December 23, 2004, Harleysville issued a second check for $15,000.00 to cover the remaining balance of the claim for ICC compensation. See FEMA-000337.

Plaintiffs were ultimately paid a total of $84,952.67 on the main structure and $16,697.02 for the cottage, after the $5,000.00 deductible was applied to each

policy. See FEMA-000005. Prior to the waiver claim being filed in February 2008, Plaintiffs did not submit any other supplemental POL's for either property, and there is no amount on any remaining certified proof of loss approved by FEMA that has not been paid.

## II. Waiver Claim and Denial

On February 25, 2008, Plaintiffs submitted to FEMA a request for an additional $64,442.33 for the main structure and $24,302.98 for the cottage. Plaintiffs claimed a shortfall for the house of $64,442.33, and $24,302.98 for the cottage, amounting to a total of $88,745.31. FEMA-000005. Plaintiffs' waiver submission with supporting attachments is in the record at FEMA-00001 to 000036. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000037 to 000038.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶11-21 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Claudette Birchette and John Dey (Document 475-2). It states:

> On February 25, 2008, Plaintiffs submitted an application for a waiver. See FEMA-000001 through FEMA-000009 and Exhibit A at ¶19 [General Declaration of Karen Christian, Document 474-1]. The waiver application requested that FEMA compensate Plaintiffs an additional $64,442.33 for the main structure and $24,302.98 for the cottage. See FEMA-000005.
>
> Plaintiffs' waiver application did not include line item documentation or a supplemental proof of loss explaining how their alleged uncompensated damages were the result of direct physical loss by or from flood as required by their SFIP or

4

certifying a supplemental claim.

The documents attached to the waiver application included damages that were clearly not compensable. For example, Plaintiffs submitted an estimate of $6,200.00 to replace waste and water lines. See FEMA-000022. The estimate provided by Plaintiffs' contractor noted the damage to the lines was caused by freezing. *Id*. The policy does not cover damages caused by freezing.

In addition, the estimate of $35,000.00 for the cottage, which was included in the waiver application, includes improvements, upgrades, code work, and items not damaged by the flooding. See FEMA-000028. The estimate includes various upgrades that did not exist prior to the loss, including replacing flooring with hard wood and ceramic tiling, remodeling of the kitchen and bathroom, and upgrading the electrical wiring. *Id*.

For the main structure, Plaintiffs submitted invoices from a variety of contractors including estimates for garage doors and a garage floor. See FEMA-000025. At the time of the loss, Plaintiffs' main structure did not have a garage.

The cottage and main structure were constructed on January 2, 1941. See FEMA-000079 and FEMA-000134. Plaintiffs' properties were over 60 years old at the time of the loss and their estimates were not based on reconstruction with materials of like kind and quality as required by their SFIP. See Exhibit A at ¶17.

Plaintiffs were compensated the policy maximum for ICC coverage. Because Plaintiffs did not provide line item documentation of their alleged uncompensated damages, it is not possible to separate the costs associated with ICC coverage and their alleged additional uncompensated damages to the main structure place.

Plaintiffs failed to identify any specific provision of the SFIP they would like waived. Plaintiffs' waiver application fails to document any specific uncompensated damages caused by the flood for which they now seek payment under the Standard Flood Insurance Policy, and do not show how a waiver would entitle

5

them to additional payments.

       Plaintiffs' claims were reviewed by an independent adjuster at the time of the loss, the Hurricane Isabel Task force when FEMA implemented the Task Force extraordinary claims review process, and a FEMA Claims Examiner when the waiver application was submitted. Plaintiffs were fully compensated for their losses.

       It is Plaintiffs burden to prove their losses and provide sufficient documentation. See 44 C.F.R. Pt. 61, App. A (1), Section VII (J). Plaintiffs were paid in full on every proof of loss they submitted prior to the filing of the lawsuit and there is no information contained within Plaintiffs' waiver application explaining why they are entitled to additional compensation.

       Accordingly, on July 31, 2008, after another comprehensive review of the claim, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs had not shown in their waiver application that they were entitled to further compensation under their policy. See FEMA-000037 and FEMA-000038. From the information provided with the waiver application and the prior adjustments and reviews, it appears Plaintiffs were fully compensated for their loss. *Id.*

## IV.    Plaintiffs' Assertions

Plaintiffs agree with FEMA that they did receive $101,649.69 for the house and cottage, including the I.C.C. coverage. Plaintiffs' Opposition (Document 508) at p.5. Plaintiffs note that the buildings were "substantially damaged" from the storm surge that deposited three feet of water in the interior and that Baltimore County government found that the damage to the main structure exceeded 50% of its assessed value. Plaintiffs contend that the main structure was 94% damaged and that the actual cost they incurred to repair the home was $109,800.00, as reflected in the estimate of East Coast Siding and Home Improvements

6

Contractors (FEMA 0020-0021). *Id.* at p.5. Plaintiffs did not have sufficient funds to replace or repair their seasonal cottage, but they have received an estimate in the amount of $35,000.00 from Riverstone Remodeling to repair the cottage, with an additional estimate from Expert House Movers of $11,000.00 to elevate the structure. *Id.*

Plaintiffs agree that an error was made in their initial shortfall calculations in that a second estimate of $6,200.00 for plumbing work was included that should not have been. Plaintiffs' Opposition (Document 508) at p.5. Thus, giving credit for the $6,200, they reduce their claim for the shortfall on the main structure to $58,244.33. *Id*. [It appears to the Special Master the figure should be $58,242.33 ($64,442,33 minus $6,200.00)]. The claim for the cottage remains at $24,302.98. In the argument set out in Plaintiffs' Opposition (Document 508), the following issues beyond the allegations of an insufficient review by FEMA are raised. Plaintiffs: (a) point to a newspaper article (FEMA-01115) which they assert indicates that the various adjusting companies involved in handling these flood claims were using different software that set different rates for renovation work, rates which Plaintiffs claim were and are unrealistic; (b) contend that FEMA incorrectly evaluated whether monies requested were for upgrades and additions, since Plaintiffs had remodeled and upgraded their home in July 2000 at the cost of $60,000.00 which they contend was not fully recognized in the claims process; (c) assert that FEMA's mitigation argument regarding frozen pipes is not correct because the pipe failure "was not the freezing of the pipes, but the flood which led

to the freezing, Opposition p.7 ; and (d) argue that FEMA's review did not determine item-by-item whether the submissions made in February 25, 2008, were "excluded or not covered or not like-for-like or not payable for any other reason."

V.     **Special Master's Analysis**[1]

When submitting their Proof of Loss in connection with the Waiver Claim, Plaintiffs' contention seemed to be simply that the amounts paid by FEMA were insufficient to fully repair either the house at 2809 Bay Drive or the neighboring cottage, which required extensive repair and elevation.   See FEMA-000005 to 000006.   The supporting documentation submitted certainly shows that the contractors who submitted estimates to the Plaintiffs were in fact charging the prices shown for the work accomplished or to be done, but there was no analysis in the POL of how the contractors' estimates demonstrate that the work done or contemplated met FEMA's requirements as additional work covered by the Standard Flood Insurance Policy ("SFIP") that was not previously compensated for.  This is the FEMA standard for granting a waiver.

As shown above in the Supplemental Declaration of Karen Christian pertaining to this claim, the estimates and detail shown in the waiver filings were inadequate to show coverage under SFIP, particularly in that they do not distinguish upgrades, improvements and Code work that are not covered from what is covered under the

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

very limiting "physical damage" criteria of SFIP.

In the filing with this Court, as noted above, Plaintiffs make some other specific allegations. Plaintiffs do not demonstrate in their Opposition where in the waiver claim filed in February 2008, they make the arguments now made here. It is difficult to fault FEMA for not addressing in the waiver denial the specific issues now raised in the Opposition, when they were not specifically articulated in the POL filing in February 2008.

In any event, it does not appear that the issues raised are ones that showed FEMA's denial of the waiver was improper. First, Plaintiffs argue that a Baltimore Sun newspaper article from 2004 (FEMA-000115-000118) indicates there may be defects in the FEMA adjusting process, but FEMA correctly asserts that there is no support for such bald allegations in the administrative record before this Court. Other than the newspaper article, Plaintiffs do not cite in their Opposition any other part of the administrative record to support this conclusion.

Next, Plaintiffs allege that the remodeling of the home in the year 2000 was not properly recognized by FEMA in its determination of damages, but this alleged failure is not even mentioned in the waiver claim or explained in the supporting documents in any way so that the issue can fairly be said to have been presented to FEMA for consideration. In any event, the very document cited by Plaintiffs, FEMA-000217, is a FEMA final report that indicates the renovation was in fact taken into account.

Plaintiffs contend that the freezing of the pipes should be attributed to the flood,

not to their inaction in mitigating the damage. FEMA's conclusion to the contrary, given the period of time involved between the flood (September) and any possible freezing in this geographic area, does not appear to be either arbitrary or capricious.

Plaintiffs argue that FEMA's declaration does not identify "one specific item in the Plaintiffs' February 25, 2008, proof of loss documents as being excluded or not covered or not like-for-like or not payable for any other reason". As FEMA demonstrates in its Reply at p.5 (Document 527), this is not accurate.

It also the view of the Special Master that on an application for waiver, FEMA does not bear the burden to comb through the submission and re-evaluate every line item of documentation submitted by Plaintiffs to see if there could conceivably be additional coverage based on arguments that were not directly presented to it by the waiver application. The Plaintiffs themselves had the burden to show that additional items beyond those already compensated for should have been allowed or covered.

The Special Master realizes that, given the limited coverage offered by the National Flood Insurance Program, which in the case of residential buildings is restricted to so-called "direct physical damage", it would be difficult, especially without expert opinion and extensive analysis that would be costly to perform, to justify how the repairs already made or the repairs and estimates from 2003 not covered would in fact be covered by SFIP or had not already been accounted for in the prior payments made by FEMA, including those for ICC compensation.

However, the criteria established for waivers require plaintiffs to demonstrate their entitlement to additional coverage to obtain the extraordinary relief of a waiver. Based on the review of the record here, the Special Master cannot conclude that the denial of the waiver for reasons other than timeliness was either arbitrary or capricious.

In the final part of their Opposition at pp.8-11, these Plaintiffs reiterate the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on waiver requests, and question whether FEMA complied with the Court's prior Orders about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants, and the Special Master incorporates that discussion into this individual report.

After review, the Special Master concludes that FEMA's July 31, 2008, denial of the waiver request of Claudette Birchette and John Dey for reasons other than untimeliness was neither arbitrary nor capricious. The Special Master also concludes that there was no abuse of discretion in denial of the waiver.

## VI.     Recommendation of the Special Master

After review and consideration of this matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiffs' waiver application be granted; and it is further recommended that

Plaintiffs' Motion for Summary Judgment be denied.


    January 13, 2011                                                        /S/
         Date                                                   Dennis M. Sweeney
                                                                   Special Master