# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF DONALD BLANN

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Donald Blann pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 415 pages labeled FEMA-000001 to 000415.

I.      Background

Plaintiff[1] owned property located at 214 Perrys Corner Road, Grasonville, Maryland, that was insured under Policy Number 2190RA5788 issued by State Farm Fire and Casualty Insurance Company ("State Farm"), with a policy limit of $153,700.00 on the building subject to a $500.00 deductible. See FEMA-000005. On September 19, 2003, Plaintiff's property suffered damage as a result of Hurricane Isabel. See FEMA-000161. Plaintiff submitted a timely Proof of Loss ("POL") for payment of $20,942.20 after the deductible of $500.00 was applied, and on September 19, 2003, State Farm compensated Plaintiff $20,942.20 on that Proof of Loss. See FEMA-000204 and FEMA-000210. Plaintiff does not dispute he was paid in full on this timely-submitted Proof of Loss. See FEMA-000005 at ¶16.

On November 19, 2003, Plaintiff submitted a Proof of Loss for replacement cost coverage on his property totaling $3,057.47. See FEMA-000210. On February 13, 2004, State Farm subsequently issued a second payment to Plaintiff of $3,057.47 under Coverage A. See FEMA-000203. [Plaintiff stated in his waiver application that this amount is unpaid, but that is not accurate. See FEMA-000005.]

Plaintiff requested assistance from the Hurricane Isabel Task Force ("Task

---

[1] The Motion for Summary Judgment indicated a co-insured, a Deborah Smith, as joined in the claim with Mr. Blann. It seems from the recent filings by both sides (Documents 509 and 529) that they agree that Mr. Blann is the only party at issue.

Force"). See FEMA-000156. On June 15, 2004, the Task Force examiner concluded Plaintiff was entitled to an additional Actual Cash Value payment of $5,234.53. However, it was found that State Farm made an error in compensating Plaintiff for recoverable depreciation in the amount of $3,057.47. *Id*. The property was not occupied by the named insured; therefore, it did not qualify for replacement cost coverage, making the depreciation non-recoverable. *Id*. As a result, the Task Force examiner deducted this overpayment amount from the supplemental estimate, for a net additional payment of $2,177.06. *Id*.

On September 8, 2004, State Farm paid Plaintiff the additional $2,177.06. See FEMA-000005. Plaintiff was paid a total of $26,176.73 ($20,042.20 on September 19,2003; $3,057.47 on February 13, 2004; and $2,177.06 on September 8, 2004) under the building damage coverage of their policy. (Plaintiff states a slightly different total of $26,176.67 in his waiver application but now agrees that the figure is $26,176.73; see Plaintiff's Opposition [Document 509] at p.5. The remaining discrepancy of six cents is not material for the purposes of this review).

There are no outstanding FEMA-approved Proofs of Loss that remain unpaid. As stated above, Plaintiff was not entitled to the $3,057.47 for recoverable depreciation because the policy-holder did not occupy the property.

On June 19, 2004, Plaintiff submitted a POL for the policy limit of $30,000.00 for Increased Cost of Compliance ("ICC") coverage. See FEMA-000027. State Farm approved their request and compensated Plaintiffs $30,000.00 for ICC

coverage, the limit under the Standard Flood Insurance Program ("SFIP").  See FEMA-000005.

## II.     Waiver Claim and Denial

On February 25, 2008, Plaintiff submitted an application for a waiver claim. See FEMA-000001 through FEMA-000009. Plaintiff claimed a shortfall of $127,023.33. FEMA-000005 and 000034. On August 18, 2008, after a review of Plaintiff's claim, FEMA denied the waiver application because it was untimely and because FEMA had concluded that Plaintiff failed to prove he was entitled to any additional compensation. See FEMA-000148 and FEMA-000149.

## III.    Reasons for Waiver Denial

In the Supplemental Declaration of Karen Christian with Respect to the Claim of Donald Blann and Deborah Smith, Document 476-2 at ¶¶9-12, she provided the reasons for the denial of the waiver request beyond the timeliness issue:

> In their waiver application Plaintiffs stated that the "shortfall" due to them was $127,023.33 and that "... Mr. Blann was required to elevate said structure and spent in excess of $110,954.48 for materials for the home, and performed majority of the work himself." See FEMA-000005. Plaintiffs' mathematical computation of $127,023.33 appears to start with their policy limit of $153,700 and then subtract the deductible of $500 and prior Coverage A payments of $26,176.67 (a slightly inaccurate figure, as noted above). The waiver application requested the policy limits for their building coverage without any additional explanation beyond the above-referenced elevation expense. *Id*.
>
> The SFIP provides ICC Coverage with a limit of $30,000.00 for covered mitigation measures such as elevating a home. See 44 CFR 61, App. A(1), Section III(D)(2). The waiver application clearly requested compensation for elevating the structure and Plaintiffs were already compensated the maximum amount permitted under the SFIP, $30,000.000. See FEMA-000005. The policy limits for ICC coverage as set forth by their SFIP is set by Regulation, and to the best of my knowledge, FEMA has never waived this provision of the policy. See Exhibit A at ¶ 8. [ General Declaration of Karen Christian, Document 474-1].

4

On August 18, 2008, after another comprehensive review of Plaintiffs' claim, FEMA denied their waiver application because it was untimely and because Plaintiffs' failed to prove they were entitled to any additional compensation. See FEMA-000148 and FEMA-000149.

**IV.     Plaintiff's Assertions**

For reasons discussed below, Plaintiff has now reduced the shortfall calculation in his Opposition (Document 509) from $127,023.33 to $66,662.33.

Plaintiff Blann claims that he is entitled to "payment under Coverage A of the policy for what it actually cost him to replace like-kind for like-kind items that were actually damaged by direct physical damage caused by the flood, minus a reasonable depreciation, for those eligible items." Blann Opposition (Document #509) at p.6. Plaintiff also asserts that he disagrees with the basic information used to originally adjust the claim. He contends that a $55.64 per square foot construction cost for the year 2003 should have been $80.00 per square foot, or $95.17 per square foot, in 2008, the year the waiver request was filed. He also contends that the depreciation charges ranged from 30 to 60% and was "out of line with the condition of the home", and further, that the estimate did not take into consideration the scope and extent of work needed to restore the home. Blann Opposition at pp.6 to 7.

Plaintiff also asserts that FEMA did not question the actual out-of-pocket expenses incurred by him of $110, 954.48, and did not take an opportunity to review pictures that Plaintiff says would have been available had they been requested. Blann Opposition at p.7.

Plaintiff also complains that FEMA did not take into account that the wood in his house wicked water, which later caused warping and considerable damage to windows, walls, studs, floor, and cabinets. Blann Opposition at p.8.

Plaintiff also claims that his own work should be compensated at least $19,639.00, despite acknowledging that Coverage A does not expressly allow for such owner work compensation. Plaintiff notes that he previously claimed $80,000.00 for such work and that the lower amount would reduce his shortfall claim to $66,662.33. Blann Opposition at pp. 10-11. Plaintiff asserts that:

> It is common sense that a 925 square foot home that is almost totally destroyed, by any measurable standard, would take more than $26,173.00 to renovate. We are not asking for any additions or upgrades, but only what Mr. Blann is entitled to under the policy. FEMA has never asserted what is not covered under Coverage A or what was an upgrade or addition in the material list that was not covered. The Affidavit of Karen Christian, the insurance examiner who has over 20 yrs experience doesn't even purport to know what the construction bills are for or how they relate to the claim. All she had to do was ask Mr. Blann."

*Id.* at p.11.

## V. Special Master's Analysis[2]

There seems in this case to be a failure to communicate. FEMA's reasons for denial of the waiver claim for reasons other than timeliness, as set out above by Karen Christian, are premised on her reading of the waiver application to say that the Plaintiff was claiming $110,954.48 in connection with the elevation of the home. As FEMA correctly notes, the elevation of the home would have been

---

[2] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

6

included in the ICC payment that Plaintiff conceded was paid to its maximum of $30,000.00. No further compensation would thus be allowed, and the claim therefore could not be compensated. This appears to be how Ms. Christian read the waiver application, and it is the basis on which the denial was made for reasons other than timeliness.

That this was the primary, if not exclusive basis, for the denial on substantive grounds is confirmed in FEMA's brief in Reply to the Opposition (Document 528) where, at p.6, counsel for FEMA parses a sentence in the waiver application and concludes, "The structure of the sentence on its face requested a waiver because Plaintiff was required to elevate his home and spent in excess of $110,954.48 to elevate the home."

Plaintiff, in his Opposition, asserts that the reading given by FEMA to his contentions are fundamentally mistaken. Yes, he elevated his home, and that was covered within the ICC payment, but the claim he was making was not for some waiver of the ICC limits, but for Coverage A of SFIP. He argues that FEMA misapprehended his contentions and that the claim he actually made was not therefore fully evaluated.

The Special Master agrees with the Plaintiff on this point. The sentence in the February 2008 POL is capable of the interpretation given to it by FEMA; however, when the sentence is viewed in the totality of the documents submitted with it, it should have been clear that Plaintiff's claim for the $110,000.00 was not limited to the elevation requirement, but was directed at repair or replacement

work that invoked the Coverage A issue. Indeed, even the amount claimed would indicate that more than elevation was at issue. The documents that actually discuss elevation are in the $10,000.00 to $15,000.00 range (see FEMA-000063 and FEMA-000233), and from the Special Master's review of the claims of other Plaintiffs in this group, it seems that elevations for houses can be done for $10,000.00 to $20,000.00.

FEMA argues in its Reply (Document 528) at pp.6-7 that, even if the damage requests are not relating to elevation work, they are still not compensable because they are not specific or detailed enough to meet Plaintiff's burden. This may be the case, but this was not the basis stated when FEMA was provided an opportunity in its Declaration to state all of its reasons for the denial. FEMA's other arguments at pp.8-9 of the Reply are reasons for possible denial of the claim, but those are merely arguments of counsel, not the reasons for the decision of FEMA which are set out in the Declaration filed with the Motion for Summary Judgment.

Plaintiff was entitled to have the waiver claim determined by FEMA on the basis of what was submitted, and the Special Master concludes that FEMA did not do so in this case.

Plaintiff asks that not only should FEMA's Motion for Summary Judgment be denied, but that the Court should enter summary judgment in its favor for the full amount of the amended shortfall. The directive of the Court to the Special Master does not permit the Special Master to recommend such relief. As the Special

Master interprets the Court's directive, in situations where FEMA's motion for summary judgment is denied, the relief allowed is to remand the matter to FEMA for a re-review of the waiver claim in accordance with the Court's direction.

In the final part of his Opposition at pp.12-15, Plaintiff reiterates the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests, and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants, and the Special Master incorporates that discussion into this individual report.

For these reasons, it is the recommendation of the Special Master that FEMA's Motion for Summary Judgment be denied; and it is further recommended that the waiver claim be remanded to FEMA for a further examination to determine if it meets FEMA's waiver criteria for reasons other than timeliness and a new waiver determination should issue after such review takes place. The Special Master would suggest that FEMA be ordered to have the review conducted by an examiner other than the ones who reviewed the waiver claim to this point.

## VI.    Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination on

Plaintiff's waiver application be denied and it is further recommended that Plaintiff's Motion for Summary Judgment be denied; and it is further recommended that the matter be remanded to FEMA for a waiver review consistent with these recommendations.

| January 13, 2011 | /S/ |
|---|---|
| Date | Dennis M. Sweeney |
| | Special Master |