# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 05-CV-1547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF PHILLIP BLYTHE

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Phillip Blythe pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 484 pages labeled FEMA-000001 to 000484.

## I. Background

Plaintiff's property located at 3721 Clarks Point Road, Baltimore, Maryland, was insured by Selective Insurance of the Southeast ("Selective") under Policy Number FLD-1009043 for $242,000.00 on the structure and $50,000.00 for the contents, subject to a $500.00 deductible on each. See FEMA-0000005. On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing flooding which resulted in damage to Plaintiff's home. See FEMA-000090.

On January 26, 2004, Plaintiff submitted to Selective a timely, signed and sworn Proof of Loss ("POL") in the amount of $88,639.37, after application of the $500.00 deductible, for building and contents damages. See FEMA-000131. On the same day, Plaintiff submitted a Statement as to Full Cost of Repair or Replacement in the amount of $8,456.65; FEMA-000132.

Selective's adjuster completed his review and recommended a net payment of $5,597.27. See FEMA-000121. Selective asked FEMA for assistance on the claim, and FEMA sent Ed Kristapsons, a General Adjuster, to re-inspect the property; FEMA-000120. Mr. Kristapsons inspected the property and reviewed the invoices provided by Plaintiff; see FEMA-000120 through FEMA-000122.

Plaintiff's dwelling is a post-FIRM [Flood Insurance Rate Map] structure, and is subject to limited Standard Flood Insurance Program ("SFIP") coverage for finished rooms located below the first elevated floor. *Id*., 44 CFR § 61, App. A(1) at Section III(A)(8), (B)(3), and FEMA-000154. It was FEMA's position that the

2

lowest level of the dwelling was below the first elevated floor, and was thus subject to limited coverage.

In accordance with the terms of Plaintiff's SFIP, FEMA recommended to Selective a payment of $12,586.35 minus the $500.00 deductible -- a net payment of $12,086.35 -- for damage to Plaintiff's building, including electrical outlets, cleaning, stair repairs, and wiring. See FEMA-000165. FEMA also recommended that Selective compensate Plaintiff $2,131.00 minus the $500.00 deductible -- a net payment of $1,631.00 -- under the limited contents coverage of his SFIP for his freezer, food in the freezer, and the washer and dryer. See FEMA-000173.

On March 31, 2004, Selective rejected Plaintiff's POL and followed the guidance provided by FEMA to approve a net payment of $13,717.35 for the damage covered under SFIP to Plaintiff's building and contents. See FEMA-000154.

Plaintiff sought review by the Hurricane Isabel Task Force ("Task Force"). On July 15, 2004, Plaintiff was notified that the Task Force had completed its review and determined Plaintiff was not entitled to any additional compensation. See FEMA-000093.

**II.    Waiver Claim and Denial**

On February 25, 2008, Plaintiff submitted an application for a waiver. See FEMA-000001 through FEMA-000009 and Exhibit A at ¶19. Plaintiff claimed a shortfall of $84,032.65 ($36,163.65 for the structure, and $47,869.00 for the

contents). FEMA-000005. At FEMA-000019, the shortfall is totaled to be $84,532.65. On July 31, 2008, Plaintiff's waiver application was denied; see FEMA-000086 and FEMA-000087.

**III.   Reasons for Waiver Denial**

The reasons for the denial are provided at ¶¶12 to 15 of the Supplemental Declaration of Karen Christian with Respect to the Claim of Phillip Blythe (Document 477-2). They are as follows:

> It is not clear what provision of the SFIP Plaintiff wishes waived since he submitted a timely POL that was denied in accordance with his SFIP. It appears Plaintiff wants the provision providing only limited coverage for property located below the lowest elevated level waived. For a single family home such as Plaintiff's property, FEMA has never waived a coverage provision to give greater coverage to an individual policy holder. See Exhibit A at ¶ 8. [General Declaration of Karen Christian, Document 474-1].

> The SFIP provides very limited coverage for finished rooms and contents located below the first elevated floor of a Post-FIRM property. See 44 CFR § 61, App. A(1) at Section III(A)(8), (B)(3). Plaintiff's claim was reviewed by Selective's independent adjuster, FEMA's General Adjuster on reinspection, the Hurricane Isabel Task Force when FEMA implemented the Task Force extraordinary claims review process and a FEMA claims examiner upon submission of his waiver application. After every exhaustive review, it was concluded that Plaintiff was fully compensated for his loss.

> Plaintiff failed to identify in his waiver application any provision of the SFIP he desired waived. Plaintiff does not require any waiver to continue his lawsuit, but he will ultimately not be entitled to additional compensation because he was fully compensated under the limited coverage provided by the SFIP for the damage to property located below the first elevated floor. To the best of my knowledge, FEMA has never waived the limited

4

coverage provision for property located below the first elevated floor. See Exhibit A at ¶8.

IV. **Plaintiff's Assertions**

It appears that Plaintiff Blythe raises a single issue, but one that, if successful, would entitle him to substantial additional compensation. Plaintiff urges that the Special Master should find that FEMA's decision that the Plaintiff had an elevated structure was arbitrary and capricious. See Plaintiff's Opposition (Document 510) at p.5.

It is Plaintiff's position that the "home was clearly a two story structure built over a concrete slab." *Id.*, p.6. In the claims process, Plaintiff hired American Claims Management Services, a public adjusting company. Mr. Jeffrey Gould of that company submitted two POL's to Selective Insurance on behalf of Mr. Blythe. Mr. Gould was of the opinion that the house was not an elevated structure under the facts of this case, and he argued this position with the insurance company representatives and with FEMA's agents. See, *e.g.*, FEMA-000010, FEMA-000120 to 000122.

Plaintiff asserts that "all of [the home's] floor levels were above ground, but on a slab, not on foundation walls, posts, piers, pilings or columns." Plaintiff contends that his "shortfall", as stated in his Individual Request for Waiver of the Proof of Loss application submitted to FEMA on February 25, 2008, is $84,032.65 ($36,163.65 for Structure and $47,869.00 for Contents).

## V. Special Master's Analysis[1]

Plaintiff's claim is that his home should not be treated as a Post-FIRM elevated structure[2] and that therefore, the full damages to the first level should be compensated for by SFIP. Defendants, however, make a solid case that it was appropriate for them to treat the lower level as below the first elevated level. As Defendants indicate at p.6 of the Reply filed with the Court (Document #529), there are ample reasons why FEMA concluded, after several reviews, that the damage to the lower level could not be compensated for in the same fashion as the level above it:

> There is ample documentation found within the administrative record demonstrating Plaintiff's home was a Post-FIRM elevated structure. The NFIP database indicates coverage originated on January 28, 2002 for Plaintiff's "post-FIRM elevated structure." See FEMA-000153. Plaintiff's coverage verification sheet also indicated the building is a "Post-FIRM elevated structure." See FEMA-000107. The photos taken by the adjuster provide evidence that the structure was elevated. See FEMA-000123 and FEMA-000473. The photos clearly show entry is provided to the home by a stairway to the first elevated floor. *Id*. On January 20, 2004, the independent adjuster issued his report and concluded the structure was a "Post-FIRM dwelling constructed in 1992 and is located in flood zone A10, with FIRM date of 12/11/79." See FEMA-000129. The fact the lower level was finished when

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

[2] A "post-FIRM building" is a building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later. 44 C.F.R. Pt. 61 App, A (1) Part II B 23. An "elevated building" is a building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings or columns. *Id.* at Part II B 14.

> Plaintiff purchased the property is not evidence that the structure was not elevated. On March 30, 2004, the property was re-inspected and it was again confirmed that dwelling had finished rooms below the first elevated floor. See FEMA-000319.

A review of the record indicates that FEMA and its agents did consider whether treating the lower level of this house as the level below the first elevated floor was consistent with SFIP and FEMA policies. There was considerable review and analysis; see, *e.g.*, FEMA-000155 to 000156, FEMA-000090, FEMA-000122, FEMA-000129, FEMA000013, FEMA-000371, FEMA-000341, and FEMA-000319. FEMA and insurance company representatives even conducted a review of the premises in the company of Mr. Gould, and despite having heard his arguments, they again concluded that their position as to what was the first elevated level was correct. FEMA-000120 to 000122. The pictures of the house suggest the top floor would indeed in common understanding be considered the first elevated level. See, *e.g.*, FEMA-000147.

With such a record, it is hard to conclude that FEMA's position is either arbitrary or capricious, even if the adjuster retained by the Plaintiff disagrees, and even if Plaintiff has equitable arguments that, prior to the flood, he did not view or understand that the lower level of the house was below the first elevated level for flood insurance purposes. FEMA's decision, if reasonably based, must be affirmed even if the reviewing Court would have independently reached a different result if the decision were being decided *de novo*. See *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989).

In the final part of his Opposition at pp.8-11, Plaintiff reiterates the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants, and the Special Master incorporates those discussions into this individual report.

The Special Master concludes after this review that FEMA's July 31, 2008, denial of the waiver request of Phillip Blythe for reasons other than untimeliness was neither arbitrary nor capricious. The denial was also not an abuse of discretion.

**VI.  Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
| <u>   January 13, 2011    </u><br>Date | <u>            /S/           </u><br>Dennis M. Sweeney<br>Special Master |