# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF PAMELA FILLING-BONNER

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Pamela Filling-Bonner[1] pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency

---

[1] There has been some confusion in the litigation as to whether a Patrick Bonner should be included as a co-Plaintiff with Ms. Pamela Filling-Bonner since he joined her waiver application. It seems now that the parties agree in their filings with the Special Master that there is only a single Plaintiff at issue now on the review of the waiver claim.

Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 262 pages labeled FEMA-000001 to 000262.

**I.     Background**

Plaintiff's property located at 6920 Gunder Avenue, Baltimore, Maryland, was insured by State Farm Fire and Casualty Insurance Company ("State Farm") under Policy Number 2190RA0313-4 for $198,300.00 in dwelling coverage, subject to a $1,000.00 deductible. See FEMA-0000005. This home was a two-story single-family structure originally constructed in July 1935; see FEMA-000100.

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe flooding. See FEMA-000092. As a result, Plaintiff's covered property was damaged. *Id*.

On October 16, 2003, Plaintiff filed the first Proof of Loss ("POL") for $31,893.31, and State Farm paid her that amount. See FEMA-000005, FEMA-000112 and FEMA-000120. On November 19, 2003, Plaintiff claimed the maximum amount under ICC coverage of $30,000.00. See FEMA-000140. On November 22, 2003, State Farm made an initial payment to Plaintiff of $10,000.00 for the ICC claim; see FEMA-000111.

On December 9, 2003, Plaintiff submitted a second POL increasing the building damages claim to $43,636.55. See FEMA-000119. This was an increase of

$11,743.24 over the amount previously paid. State Farm issued Plaintiff a check for $11,743.24. See FEMA-000108.

On December 9, 2003, Plaintiff submitted a supplemental claim for replacement coverage under her SFIP ("Standard Flood Insurance Program") coverage for $16,012.74. See FEMA-000119. On April 12, 2004, State Farm issued a check for $36,012.74, which was the $16,012.74 plus the balance of $20,000.00 for the ICC claim. See FEMA-000106.

Plaintiff sought review by the Hurricane Isabel Task Force ("Task Force"). On June 4, 2004, Plaintiff was notified that the Task Force found additional eligible damages and that she was entitled to a further payment of $10,916.47. See FEMA-000092 and FEMA-000093. As a result of the Task Force's findings, Plaintiff was provided with a supplemental POL for $10,916.47. See FEMA-000095 and FEMA-000096.

On August 12, 2004, State Farm paid the supplemental amount of $10,916.47. See FEMA-000005. Plaintiff was therefore paid a total of $70,565.76 for building damages plus an additional $30,000.00 under the ICC provision of her policy. See FEMA-0000005. Plaintiff decided not to elevate the current residence, but to demolish it and build a new house. See FEMA-000005 and FEMA-000099.

Plaintiff concedes she was paid in full on the timely-submitted POL's that were approved by FEMA, and did not seek any additional compensation by means of a

POL submission following the Task Force review until she submitted her waiver application in February 2008. See FEMA-000005.

**II.     Waiver Claim and Denial**

On February 25, 2008, Plaintiff submitted an application for a waiver; see FEMA-000001 through FEMA-000009. Plaintif claimed a shortfall of $76,778.15. FEMA-000005 and 000028. On July 31, 2008, Plaintiff's waiver application was denied. See FEMA-000086 and FEMA-000087.

**III.    Reasons for Waiver Denial**

The reasons for the denial are stated as follows at ¶¶11-19 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Pamela Filling-Bonner (Document 478-2):

> Plaintiffs failed to identify any specific provision of the SFIP they desired waived. Here, Plaintiffs calculated the cost to replace their former dwelling as $148,343.91. See FEMA-000005. Plaintiffs calculated the replacement cost of their former dwelling utilizing an unscientific formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. *Id*. This formula is not an industry accepted method of calculating losses due to flooding and fails to take into account any of the coverage and exclusions provisions of the SFIP.
>
> Plaintiffs' waiver application requested that FEMA compensate Plaintiffs an additional $76,778.15. *Id*. Plaintiffs arrived at $76,778.15 by subtracting the previous payments for building damage ($70,565.76) and the deductible ($1,000) from the alleged replacement cost of their old dwelling ($148,343.91). Plaintiffs did not subtract any amount they had received under ICC coverage.
>
> The damage to Plaintiffs' home did not require demolition of the old dwelling. See FEMA-000087. Plaintiffs made the

4

election to demolish the old dwelling. See FEMA-000099. The water line in the interior was only 14 inches. See FEMA-000128.

Plaintiffs provided a letter from Baltimore County dated October 24, 2003. See FEMA-000145. This letter does not entitle Plaintiffs to any additional compensation. See Exhibit A at ¶14 through 18. [General Declaration of Karen Christian, Document 474-1].

State Farm and the Hurricane Isabel Task Force thoroughly reviewed Plaintiffs' claim and properly calculated the amount of compensation they were entitled to. The waiver application review was not limited to the specific request, but to the entire scope of the claim and concluded Plaintiffs was properly compensated. See FEMA-000086 and FEMA-000087.

The SFIP only covers damage caused directly by flood. The unscientific formula Plaintiffs utilized to calculate the replacement of their approximately 70 year old home was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. See Exhibit A at ¶¶16 and 17.

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit a detailed line item documentation of damages caused directly by flooding, but instead utilized an unscientific formula. Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

Accordingly, on July 31, 2008, Plaintiffs' waiver application was denied because it was untimely and because Plaintiffs were fully compensated for their losses to the extent those losses were covered under their SFIP. See FEMA-000086 and FEMA-000087.

### IV. Plaintiff's Assertions

Plaintiff originally requested a shortfall payment of $76,778.15, and now concedes that the shortfall request should be $67,764.12. Plaintiff's Opposition (Document 511) at p.6. It appears that Plaintiff's sole objection is to the method used to calculate the payment made to her. Ms. Bonner had contracted to rebuild her house for a total price of $233,565.00. From this figure, she deducts the $30,000.00 ICC payment she received and then states:

> The new home had 2868 sq. ft. The cost of construction was therefore $70.97 per sq. ft. Ms. Bonner's flood damaged home contained 1963 sq. ft. Multiplying $70.97 x 1963 sq. ft. equals $139,329.88. State Farm paid $70,565.76. There was a $1,000.00 deductible. The shortfall is therefore $67,764.12.

Opposition at p.5-6.

Plaintiff faults FEMA for not using this method to calculate the damages and requests that it be ordered to pay the shortfall amount.

### V. Special Master's Analysis[2]

The core reason for the denial of the waiver claim for reasons other than untimeliness is succinctly stated in the Declaration filed in this case and quoted above:

> Plaintiffs calculated the replacement cost of their former dwelling utilizing an unscientific formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. *Id*. This formula is not an industry

---

[2] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

> accepted method of calculating losses due to flooding and fails to take into account any of the coverage and exclusions provisions of the SFIP.

In her Opposition, Plaintiff does not cite any requirement in the SFIP or elsewhere as to why this formula should be one to which FEMA must adhere. Plaintiff does not point to any expert opinion or evidence in this record that would support the proposition that FEMA would be required to utilize her proposed formula for calculating damages. It makes little logical sense and, at best, would be such a rough guide that its utility would be highly questionable for any purpose. As FEMA notes, there was only 14 inches of water in Plaintiff's residence, and the election to rebuild rather than replace was not one that met SFIP standards. There are many exclusions and limitations on coverage under SFIP of which Plaintiff's formula takes no account. Plaintiff was entitled to proceed as she did, and it certainly was a reasonable course for her to do so, but she is not entitled to impose her formula for the damage calculation on FEMA's adjustment of her loss, particularly where rebuilding was not required under terms of SFIP.

In the final part of her Opposition at pp.6-10, Plaintiff reiterates the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on

Generic Issues Raised by Plaintiffs and Defendants and the Special Master incorporates that discussion into this individual report.

Based on the review of the record here, the Special Master cannot conclude that the decision not to grant the waiver claim of Pamela Filling-Bonner for reasons other than timeliness was either arbitrary or capricious. The denial of the waiver was also not an abuse of discretion.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
| __January 13, 2011__ | _____/S/_____ |
| Date | Dennis M. Sweeney |
|  | Special Master |