IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. <br> 5-CV-1547 |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF JEAN BOWLING

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Jean Bowling pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 353 pages labeled FEMA-000001 to 000353.

## I. Background

Plaintiff's property located at 3739 Thomas Point Road, Annapolis, Maryland, was insured directly by FEMA under Policy Number FL03-0000-5322-5 with a coverage limit of $185,000.00 for the building and $15,000.00 for the contents, with each subject to a $1,000.00 deductible. See FEMA-000005. On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing flooding which resulted in damage to Plaintiff's home. See FEMA-000074.

On September 22, 2003, Plaintiff notified FEMA that her home had been damaged by Hurricane Isabel, and FEMA assigned the adjusting firm of Bellmon Adjusters, Incorporated, to review the claim. See FEMA-000352. Dan Ray was assigned as the independent adjuster by Bellmon Adjusters, and completed inspection of the property on September 24, 2003. See FEMA-000259. On November 18, 2003, Mr. Ray completed his report and recommended a payment of $110,424.71 for the damages to the building, and $15,000.00 (policy limits) for Plaintiff's contents. See FEMA-000261. In addition, there was a replacement-cost holdback of $10,548.16. *Id*.

On December 2, 2003, in accordance with the adjusted values for the loss, Plaintiff was paid $110,424.71 for the structure and $15,000.00 for her contents. See FEMA-000005. On June 30, 2004, Plaintiff was paid the additional $10,548.16 for the replacement-cost holdback. *Id*. and FEMA-000259.

Plaintiff decided to demolish her residence and build a new home. FEMA questioned the decision since only two feet of water had entered the structure. See FEMA-000108. Plaintiff sought review by the Hurricane Isabel Task Force ("Task Force"). On August 4, 2004, Plaintiff was notified that the Task Force adjusted some prices and permitted an additional $2,507.95, which Plaintiff was paid. See FEMA-000005 and FEMA-000080.

Plaintiff was still dissatisfied with the result of her claim and sought another review by the Task Force. See FEMA-000074. On September 21, 2004, the Task Force, having completed its review, did not find any additional eligible damage and concluded Plaintiff had been fully compensated for the loss. *Id*.

In addition to the above-mentioned payments, Plaintiff submitted a claim for and was paid the policy limit of $30,000.00 under the Increased Cost of Compliance ("ICC") coverage of her Standard Flood Insurance Program ("SFIP") coverage. See FEMA-000005.

**II.    Waiver Claim and Denial**

On February 25, 2008, Plaintiff submitted an application for a waiver; see FEMA- 000001 to FEMA-000009. Plaintiff claimed a shortfall of $60,519.18. FEMA-000005 and 000025. On October 28, 2008, Plaintiff's waiver application was denied because it was untimely, and because Plaintiff had not shown in her application that she was entitled to further compensation under the policy. FEMA-000068 to FEMA-000069.

### III. Reasons for Waiver Denial

According to the Supplemental Declaration of Karen Christian With Respect to the Claim of Jean Bowling (Document 479-2) at ¶¶11-22, the reasons for the denial are as follows:

> The waiver application failed to identify any provision of her SFIP she desired waived. See FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA compensate Plaintiff an additional $60,519.18, which is the difference between the policy limit of $185,000.00 minus the $1,000.00 deductible and what she has been paid to date. See FEMA-000005.
>
> Plaintiff's waiver application fails to identify any specific damages directly caused by the flood for which she has not received full compensation. Plaintiff just states she "demolished her old residence, elevated and is rebuilding" a residence the Plaintiff states cost in excess of $390,781.00 for the first floor alone. *Id.*
>
> Plaintiff's claim was reviewed by an independent adjuster, twice by the Hurricane Isabel Task force, and by a FEMA Claims Examiner when the waiver was submitted. In other words, Plaintiff's claim was reviewed in detail by different reviewers on multiple occasions. There is no evidence of uncompensated damages caused by the flood. Plaintiff was compensated a total of $168,480.82 for her structure, contents and ICC coverage, which represents full payment on all timely submitted proofs of loss. See FEMA-000005 and FEMA-000015 through FEMA-000019.
>
> Plaintiff included a proof of loss with her waiver application that is not signed or notarized claiming an unpaid amount of $79,257.55. See FEMA-000005 and FEMA-000022. FEMA was not provided a copy of this proof of loss until the waiver application was submitted. It appears this document may have been a draft provided by the independent adjuster, Mr. Ray, and was not intended for submission. In addition to the fact that FEMA did not receive this proof of loss within the required deadline, it does not meet any of the requirements set forth in Plaintiff's Standard Flood Insurance Policy (SFIP). See 44 CFR § 61, App. A(1) at Section VII( J)(4).

Plaintiff also submitted a "Building Replacement Cost Proof of Loss" with her waiver application that is not signed or notarized claiming an unpaid amount of $8,410.13. See FEMA-000005 and FEMA-000023. FEMA was not provided a copy of this proof of loss until the waiver application was submitted. This document also appears to be a draft provided by the independent adjuster, Mr. Ray, and was not intended for submission. In addition to the fact that FEMA did not receive this proof of loss within the required deadline, it does not meet any of the requirements set forth in Plaintiff's SFIP. See 44 CFR § 61, App. A(1) at Section VII( J)(4).

As stated above, Plaintiff made the election to demolish her original dwelling and to build an upgraded structure. See FEMA-000074. The six foot surge and two feet of interior water did not necessitate the demolition of the home. *Id*. There is no documented damage to Plaintiff's former home caused by the flood for which Plaintiff was not fully compensated and Plaintiff fails to identify any uncompensated damage caused by flood. As the Hurricane Isabel Task Force concluded, the adjuster's estimate was in line with industry standards and the scope appears to be extremely thorough. *Id*.

Plaintiff submitted numerous invoices with her waiver application without detail or explanation for the purpose of the invoices. Plaintiff states in her waiver application she spent in excess of $390,781.00 on the first flood (sic) alone. See FEMA-000005. At the time of the Hurricane, Plaintiff's residence was a one and one-half story, 33 year old structure with a total finished area of 1943 square feet. See FEMA-000087. Plaintiff's estimate of $390,781.00 for the first floor significantly exceeds industry standards and can only be attributed to upgrades on a 33 year old home.

The NFIP adjuster's estimate and subsequent Task Force review were based on covered direct physical damages by or from flood in accordance with the SFIP. See 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. *Id*. at Section VII(K)(3)(a).

The independent adjuster and the Hurricane Isabel Task Force thoroughly reviewed Plaintiff's claim and fully compensated her for her loss. Plaintiff's claim was again reviewed by a FEMA Insurance Examiner after she submitted a waiver application

despite the fact Plaintiff failed to provide detailed line-item documentation of the amount she seeks and how it is attributable to the flooding caused by the Hurricane. The FEMA insurance examiner was unable to find any basis for additional compensation. See FEMA-000068 through FEMA-000069.

Plaintiff's waiver application does not meet the criteria for approval. First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation supporting the particular additional amounts being sought was for covered damages, but instead submitted a collection of unexplained invoices.

Accordingly, on October 28, 2008, after a comprehensive review of the claim, Plaintiff's waiver application was denied because it was untimely, and because Plaintiff had not shown in her waiver application that she was entitled to further compensation on the policy. *Id*. From the information provided with the waiver application and the prior adjustments and reviews, it appears Plaintiff was fully compensated for her loss. *Id*.

**IV.     Plaintiff's Assertions**

Plaintiff's argument as to FEMA's position (Document 512) concerns FEMA's determination that the house did not have to be demolished, and instead was amenable to repair. *Id.* at p.6. As Plaintiff says in her argument:

> At what point does it make economic sense for one to fix a building that is many years old? ... The salient point is that no one familiar with the site recommended repair rather than rebuilding; not the community and not the local government. The cost to reconstruct the home far surpassed the policy limits; hence, the claim for the limits less the amount paid.

Plaintiff also contends in her filing with this Court that many items were omitted from the adjuster's original estimate, which are listed on p.7 of Plaintiff's opposition. They include: (1) no allowance for some of the contractor's overhead and profit; (2) a missing replacement door at the entryway location; (3) no labor

6

included for the garbage disposal; (4) repairs on the foundation blocks and a 52-foot section of wall; (5) sealing of all framing wood in contact with the flood water; (6) replacement of vinyl siding; and (7) labor and material for temporary bracing on an exterior wall.  See pp.7-8 of the Opposition. To support these specific claims, Plaintiff relies on an affidavit of Brian E. Smith dated November 19, 2010, and filed with the Plaintiff's Opposition.  Plaintiff also complains about the variations in pricing and scope among the homes that were damaged or destroyed by Hurricane Isabel. *Id*. at p.8.

V.     **Special Master's Analysis**[1]

Plaintiff's main point and the one relied on to compute the shortfall presented with the February 2008 Proof of Loss was that Plaintiff was not compensated fully based on her decision to replace the house rather than repair it. Her method of reaching her shortfall in the February 2008 POL is to rely solely on the amounts spent on building the new home, and then off setting the amounts already received from FEMA and the deductible.  No specific error is alleged in the POL (FEMA-000005) or the attached shortfall calculation (FEMA-000025) other than the failure to pay up to the limits when the owner has demonstrated that [s]he has reasonably replaced the structure and incurred expenses in doing so. The decision to replace is certainly a sensible one and one that, as Plaintiff contends, may have made economic sense from her point of view.  However,

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

7

Plaintiff is dealing with the specifics of SFIP, and FEMA's position is succinctly stated in the Declaration of Karen Christian:

> The NFIP adjuster's estimate and subsequent Task Force review were based on covered direct physical damages by or from flood in accordance with the SFIP. See 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. *Id*. at Section VII(K)(3)(a).

In filing her Opposition, Plaintiff has made a belated attempt to put into the evidence of this case an affidavit from an individual questioning some of the adjustments made in FEMA's earlier calculations. That affiant's views were not presented with the Proof of Loss in February 2008, and were not available to FEMA when the decision on the waiver was made, nor is it part of the administrative record for this review. Thus, the Special Master does not believe it should be accepted as part of the evidentiary record for review or given weight.

In any event, the items referred to in the Opposition as being in error and not compensated for were not mentioned or cited in the Proof of Loss filed in February 2008. As a result, the Special Master does not believe it was incumbent in the waiver review for FEMA to explore these items on its own since they were not flagged by the Plaintiff.

Defendants claim that Plaintiff's claim amounts to an argument for what is known as the "constructive total loss doctrine" that has developed as an equitable doctrine in insurance litigation to recognize the practical and economic issues that Plaintiff raises here. It is established that this doctrine does not apply to litigation where the flood loss under SFIP is implicated.

Compensation for direct physical loss by or from flood is limited to the lesser of the policy limit, the replacement cost of the damaged part of the dwelling with materials of like kind and quality, or the amount actually spent to repair or replace the damaged part of the dwelling. See 44 C.F.R. Sec.61, App. A (1) at Art. V, Sec. 2 (a). As FEMA states in its Reply (Document 531) at p.7:

> Just because a structure is significantly damaged does not result in compensation for replacement of the structure. And just because an insured decides replacement is a better alternative than repair does not confer coverage under the SFIP for additional costs related to that replacement.

FEMA's Reply brief (*Id*. at pp. 4-8) presents a persuasive case that, under SFIP, FEMA did not have to accept Plaintiff's decision to rebuild, and that Plaintiff's arguments do not take into account the exclusions and limitations of SFIP, nor how the I.C.C. coverage and the Building Coverage under Part A inter-relate. These positions seem to be well grounded in SFIP, which is the law applicable to this case.

In individual cases, the policies embodied in SFIP without doubt produce results that may seem to the insured and others to be unfair and not meeting the insured's subjective expectations. There is, however, no evidence in this record that FEMA's refusal to grant a waiver is either arbitrary or capricious. The reasons given in the Declaration for a denial of the claim which are quoted above are detailed and persuasive considering the limits of SFIP, and the Special Master finds them to adequately explain why the denial of the waiver was reasonable.

In the final part of the Plaintiff's Opposition at pp.8-13, Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants and the Special Master incorporates that discussion into this individual report.

The Special Master concludes after this review that FEMA's October 28, 2008, denial of the waiver request of Jean Bowling for reasons other than untimeliness was neither arbitrary nor capricious. There is also no abuse of discretion in the denial of the waiver.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
|    January 13, 2011    |       /S/      |
| Date | Dennis M. Sweeney |
|  | Special Master |