## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 05-CV- 1547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, | ) | |
| ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF RICHARD CONROY AND BERNICE MYER

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Richard Conroy and Bernice Myer pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 1,179 pages labeled FEMA-000001 to 001179.

## I. Background

In this particular case, Plaintiffs' property located at 8922 Hinton Avenue, Lot 1323 Swan Point, Baltimore, Maryland, was insured by Standard Fire under Policy Number 6-0023-4396-7 for dwelling coverage in the amount of $183,900.00 and personal property of $16,600.00, each subject to a $1,000.00 deductible. See FEMA-000149. The original home had been constructed in 1945. *Id*.

On September 19, 2003, Hurricane Isabel made landfall in Maryland, and Plaintiffs' home was damaged by flooding. See FEMA-000262. On October 6, 2003, Plaintiffs filed their first Proof of Loss ("POL") with Standard for $73,211.47 for building and contents losses. FEMA-000287. On October 21, 2003, a check was issued to Plaintiffs in the amount of $56,613.97 for building coverage. FEMA-000153. On October 21, 2003, Plaintiffs were issued a check in the amount of $16,597.50 for their contents coverage, paying the above-referenced Proof of Loss in full. FEMA-000152.

On January 7, 2004, Plaintiffs filed an Increased Cost of Compliance ("ICC") Proof of Loss in the amount of $3,500.00. See FEMA-000487. On January 22, 2004, a partial payment of $1,750.00 was issued on Plaintiffs' ICC POL. See FEMA-000155. On February 12, 2004, Plaintiffs were issued a check for the remaining $1,750.00 payment on this ICC Proof of Loss. *Id*.

On February 4, 2004, Plaintiffs filed a further ICC Proof of Loss in the amount of $13,250.00. FEMA-000164. On February 18, 2004, Plaintiffs were issued a

check for $13,250.00 as full payment for this second ICC claim. FEMA-000154. Plaintiffs then filed a third ICC POL for an additional $13,250.00. FEMA-000180. On May 11, 2004, a check for $13,250.00 was issued to Plaintiffs, which brought Plaintiffs' total compensation on their ICC coverage to $30,000.00, the maximum amount allowed under ICC coverage. FEMA-000176. On May 6, 2004, Plaintiffs were informed that, under their policy, they qualified for replacement cost coverage in the amount of $10,531.55. On May 6, 2004, a check was issued to Plaintiffs for $10,531.55 for the replacement cost coverage. FEMA-000779 and FEMA-000807. Plaintiffs were asked to furnish additional documentation to support a supplemental payment of $7,211.65. On May 25, 2004, Standard Fire issued a check to Plaintiffs for $7,211.65; FEMA-000807. Plaintiffs then requested a review by FEMA's Hurricane Isabel Task Force ("Task Force").

The claim was reviewed by the Task Force three times: July, August, and October 2004. FEMA-000752 through FEMA-000753, FEMA-000798, FEMA-000813 and FEMA-000814. As a result of the Task Force reviews, Plaintiffs' claim was supplemented with a new proof of loss totaling $90,125.78 for the full cost to repair or replace their home. See FEMA-000857. On July 30, 2004, Standard Fire received Plaintiffs' signed and sworn POL dated July 26, 2004. This was an increase of $13,941.45 over the first Proof of Loss. See FEMA-000857.

On August 30, 2004, Plaintiffs received a final loss payment from Standard Fire in the amount of $13,941.45, representing the full balance on the unpaid portion

of the foregoing Proof of Loss.  See FEMA-000811 and Doc. No. 364.2 (copy of executed check).

On October 5, 2004, after the third review by the Task Force, Plaintiffs were notified that they were not entitled to any further payments under their flood policy.  FEMA- 000749.

Ultimately, Plaintiffs had received payments totaling $134,895.62, including dwelling coverage, contents coverage, and ICC for their 2003 flood claim. FEMA-000807 and FEMA-000811.  Plaintiffs did not repair their home, but decided to demolish their home and build a new, larger home.  FEMA-000187 and FEMA-000188.

## II.　　Waiver Claim and Denial

On February 25, 2008, Plaintiffs submitted a waiver application.  See FEMA-000001 through FEMA-0000009.  Plaintiffs claimed a shortfall of $60,997.71.  FEMA-000005 and 000025.  On July 31, 2008, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs failed to show that the additional compensation they sought was for items covered under their SFIP.  See FEMA-000145 and FEMA-000146.

## III.　　Reasons for Waiver Denial

The reasons for the denial are stated as follows at ¶¶21-30 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Richard Conroy and Bernice Myer (Document 480-2):

> Plaintiffs claim they are entitled to an additional $60,997.71 on their flood claim.  See FEMA-000005.  Plaintiffs' mathematical

computation of $60,997.71 appears to start with their policy building limit of $183,900 and then subtracts the deductible of $1000 and some but not all of the prior Coverage A payments. Plaintiffs calculated the replacement cost of their former dwelling utilizing a formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. *Id.* This formula fails to account for the coverage and exclusions found within their SFIP.

Plaintiffs' waiver application requested a flood payment which would give Plaintiffs their policy limits. See FEMA-000005.

I have reviewed a letter that Plaintiffs provided from Baltimore County stating their home was inspected on October 7, 2003, and found to be more than 50% damaged by flooding. See FEMA-000233.

The terms of Plaintiffs' flood policy required them to obtain the 50% damage letter from their local government to establish they were entitled to the $30,000.00 of ICC coverage, which they received from Standard Fire. See 44 C.F.R .61, App. A(1), Art. III (D)(3)(a)(2).

The letter from Baltimore County does not state that Plaintiffs' home required demolition or how much of the damage was caused directly by or from flood. See FEMA-000198.

Standard Fire, the Hurricane Isabel Task Force on multiple occasions and a FEMA Insurance Examiner thoroughly reviewed Plaintiffs' claim and properly calculated the amount of compensation they were entitled to under their flood policy.
The waiver application review was not limited to the specific request, but to the entire scope of the claim and concluded Plaintiffs was properly compensated. See FEMA-000145 and FEMA-000146.

The SFIP covers damage caused directly by flood. 44 C.F.R .61, App. Sec. II¶ B(2) and Sec. V. The formula Plaintiffs used to calculate the replacement of their approximately 60 year old home was based on the square footage cost of an upgraded dwelling, which included code upgrades. The SFIP does not provide compensation for upgrades and material that are not of like

kind and quality to those that were in the home before the flood and such expenses are not compensable under the policy. See 44 C.F.R. Pt. 61, App. Sec. V, ¶ 2(a).

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit a detailed line-item documentation of damages caused directly by flooding, but instead utilized a formula that failed to account for the terms of their SFIP including exclusions. Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

On July 31, 2008, Plaintiffs' waiver application was denied because it was untimely and because Plaintiffs failed to show that the additional compensation they sought was for items covered under their SFIP. See FEMA-000145 and FEMA-000146.

## IV.    Plaintiff's Assertions

Plaintiffs' original claim for shortfall was $60,997.71; see FEMA-000005. In their Opposition (Document 513), Plaintiffs now recalculate the shortfall to be $47,036.76, and that is what they request the Court to order FEMA to pay.

Plaintiffs raise concerns about the scope of damage found by FEMA and how the damages are priced. Opposition at pp.4-5. Plaintiffs also question FEMA's determination that the house should be rebuilt rather than replaced, and based on the reconstruction cost actually incurred, Plaintiffs calculate the revised shortfall to be $47,036.76. *Id*. at p.6. Plaintiffs also assert that they have demonstrated their unreimbursed loss with particularity, and have submitted sufficient documentation that should satisfy FEMA. *Id*.

## V.    Special Master's Analysis[1]

This is another case where Plaintiffs disagree with FEMA's policies on how damages to buildings should be adjusted.  In the shortfall calculation made by the Plaintiffs at FEMA-000105, they argue that the total cost for them to build a new house is $258,302.00. After recognizing the $30,000.00 ICC coverage paid in full, they come to an amount of $228,302.00. Using the square footage of the new home at 2,800 square feet, they compute the cost to rebuild as $81.54 per square foot.  Then, applying the square footage of the flooded dwelling of 1,672 square feet to that cost, they come to a "total cost to rebuild old dwelling minus the ICC costs" of $136,334.88.    Applying the compensation already received of $74,357.17 and the $1,000.00 deductible, they compute the shortfall to be $60,997.71.   In their Opposition (Document 513) at p.6, Plaintiffs acknowledge that they in fact received $88, 298.12 rather than the $74, 357.17 they originally used in their calculations. This reduces the alleged shortfall to $47,036.76.

Plaintiffs continue to assert that the cost per square foot of the new construction in this case is $81.54, and that that should be the figure used for calculating their damages.

  While Plaintiffs' formula for adjusting is simple to understand and to apply, they do not demonstrate why FEMA should be compelled to follow their methodology.

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

This calculus is not accepted by FEMA, and the method suggested has never been employed by them in adjusting claims.

Plaintiffs have failed to demonstrate that the waiver denial was arbitrary or capricious. Instead it appears that FEMA has conducted this review using the methods they have used in other cases. The explanation given in the Declaration for the denial is detailed and persuasive, given the limits of the coverage at issue.

In the final part of its Opposition at pp.7-10, Plaintiffs reiterate the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants and the Special Master incorporates that discussion into this individual report.

The Special Master concludes after this review that FEMA's July 31, 2008, denial of the waiver request of Richard Conroy and Bernice Myer for reasons other than untimeliness was neither arbitrary nor capricious. The denial was also not an abuse of discretion

## VI.    Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's

determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

_____January 13, 2011_____          _____/S/_
Date                                                     Dennis M. Sweeney
                                                          Special Master