# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 05-CV-1547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION CONCERNING
## THE WAIVER CLAIM OF ALVIN COOK

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Alvin Cook pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 152 pages labeled FEMA-000001 to 000152.

I.  **Background**

Plaintiff's property located at 9008 Hinton Avenue, Baltimore, Maryland, was insured by Allstate Insurance Company ("Allstate") under Policy Number 0807536800 with $116,000.00 in building coverage subject to a $5,000.00 deductible.  See FEMA-000005, FEMA-0000038 and FEMA-000078.  On September 19, 2003, Hurricane Isabel struck the Middle Atlantic states, including Maryland, causing damage to Plaintiff's covered property. *Id*.

 On September 26, 2003, Plaintiff notified Allstate of his loss.  See FEMA-000152.  On October 1, 2003, an independent adjuster inspected the loss; FEMA-000143.  On October 6, 2003, Allstate issued an advance loss payment of $5,000.00.  See FEMA-000145 and FEMA-000146.  On October 16, 2003, Allstate issued a second advance loss payment of $5,000.00; see FEMA-000148 and FEMA-000149.

On October 23, 2003, Plaintiff submitted a Proof of Loss ("POL") to Allstate for a net claim of $38,927.77, after application of the $5,000.00 deductible, for damage to this building.  See FEMA-000063.  On October 31, 2003, Allstate paid this amount in full with a check for $28,927.77 for the claim minus the two advance payments of $5,000.00 referenced above.  See FEMA-000076.

Plaintiff submitted a third undated supplemental claim for an additional $10,735.92 for recoverable depreciation.  See FEMA-000066.  On April 19, 2004, Allstate issued a check for $10,735.92.  See FEMA-000105.  Plaintiff agrees this payment was made; see FEMA-000005.

Plaintiff sought review by the Hurricane Isabel Task Force ("Task Force"). There was a question of whether the "detached garage" was actually an apartment, which would not qualify for compensation. See FEMA-000038. On July 1, 2004, the Task Force determined Plaintiff could be compensated $11,600.00 for the "detached garage." *Id*.

On July 13, 2004, a supplemental POL was approved in accordance with the Task Force recommendation in the amount of $11,600.00. See FEMA-000038 and FEMA-000091. As a result, on July 26, 2004, Allstate issued a check for $11,600.00; s FEMA-000088.

Plaintiff submitted a final supplemental POL for Increased Cost of Compliance ("ICC") coverage as provided by his Standard Flood Insurance Policy ("SFIP") coverage in the amount of $29,781.00, and was paid this amount in full. See FEMA-000005.

Plaintiff was paid a total of $61,263.69 under his building coverage after application of the $5,000.00 deductible plus $29,781.00 under his ICC coverage; see totals from above. Plaintiff's calculation for his total building payment of $56,263.69 (see FEMA-000005) is off by $5,000.00 because Plaintiff did not include the payment of $5,000.00 issued by Allstate on October 6, 2003. See FEMA-000145.

## II. Waiver Claim and Denial

On February 25, 2008, Plaintiff submitted a waiver application. See FEMA-000001 through FEMA-000009. Plaintiff claimed a shortfall of

$52,054.55. FEMA-000005 and 000021. On August 18, 2008, Plaintiff's waiver application was denied because the waiver application was untimely and there was no direct physical loss caused by or from flood for which Plaintiff had not received full compensation. See FEMA-000035 and FEMA-000036.

**III.    Reasons for Waiver Denial**

In the Supplemental Declaration of Karen Christian with Respect to the Claim of Alvin Cook (Document 481-2), at ¶¶12-21, Ms. Christian explains the reasons for the denial:

> Plaintiff failed to identify any specific provision of the SFIP he desired waived.
>
> Plaintiff notified FEMA he had removed his old home and built a new one. See FEMA-000005. Plaintiff calculated the replacement cost of his former dwelling as $113,318.24 after application of the ICC payment. Id. Plaintiffs calculated the replacement cost of their former dwelling utilizing an unscientific formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. Id. Plaintiffs' method of calculating their damages by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account the SFIP's coverage limits and exclusions.
>
> Plaintiffs' [sic] waiver application requested that FEMA compensate Plaintiffs an additional $52,054.55. Id. Plaintiffs arrived at their calculation by applying their policy limit against the alleged replacement cost of their old dwelling and further deducting all previous payments for building damage.
>
> Plaintiff made the decision to demolish his residence and rebuild. Id. Plaintiff provided a damage inspection report and a letter from the Baltimore County Buildings Engineer's Emergency Response Team. See FEMA-000014 and FEMA-00034. The County's report and letter do not itemize any additional damages caused by or from flood that would warrant compensation under

4

Plaintiff's SFIP. The SFIP only compensates for direct physical loss by or from flood. See Exhibit A at ¶ 16. [General Declaration of Karen Christian, Document 474-1]. The letter was required in order for Plaintiff to receive his ICC payment. *Id.* at ¶ 15. Further, the box labeled "Habitable, Repairs Necessary" on the report is checked. See FEMA-000034.

The letter from the County tells Plaintiff that if he does rebuild, he must comply with certain regulations. See FEMA-000014. The SFIP excludes the cost of complying with any local ordinance requiring the demolition of the structure, land movement or sinking of the property. See 44 CFR § 61, App. A(1) at Section V.

Plaintiff's original structure was built on June 1, 1950. See FEMA-000050. The SFIP only covers damage caused directly by flood. The unscientific formula Plaintiffs utilized to calculate the replacement of their original structure was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. See Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for ICC expenses and Plaintiffs' formula makes it impossible to separate out these expenses.

Allstate and the Hurricane Isabel Task Force thoroughly reviewed Plaintiffs' claim and properly calculated the amount of compensation they were entitled to. The waiver application review was not limited to the specific request, but was a comprehensive review of the entire claim and FEMA concluded Plaintiffs were properly compensated for their loss. See FEMA-000035 and FEMA-000036.

Plaintiff was paid in full on all timely submitted POLs when the missing payment of $5,000.00 is applied. See FEMA-000005 and FEMA-000145.

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit a detailed line-item documentation of damages caused directly by flooding to their original structure, but instead utilized an unscientific formula.

5

> Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

> Accordingly, on August 18, 2008, after a complete review of their claim, Plaintiffs' waiver application was denied because their waiver application was untimely and there was no direct physical loss caused by or from flood that Plaintiffs had not received full compensation for. See FEMA-000035 and FEMA-000036.

## IV. Plaintiff's Assertions

Plaintiff originally requested a shortfall award of $52,054.55; FEMA-000001 to FEMA-000009. In his Opposition (Document 514), Plaintiff now revises his request to $27,688.33, concluding that he had included in his original estimates items that he would not be eligible to have received compensation for in the waiver claim. *Id*. at pp.9-10. In his revision, Plaintiff continues to use the $72.95 per square foot calculation based on the new construction costs actually incurred.

Plaintiff asserts that his decision to replace rather than repair his home should be accepted by FEMA, and that the square footage costs in building his new home should be utilized by FEMA in deciding what should be paid to Plaintiff. Plaintiff takes exception with FEMA's contention that he developed an "unscientific formula to calculate replacement costs of his demolished home. Opposition at p. 8.

Plaintiff agrees with FEMA that he included upgrades that should not have been included in the shortfall calculation, and as noted above, he revised his shortfall claim accordingly to $27,688.36. Opposition at p.9.

Plaintiff in summary states :

> Mr. Cook is not asking for any additions or upgrades; only to what he is entitled. FEMA has never asserted what they believe is not covered under Coverage A, or what was considered an upgrade or addition in the material list that should not be covered. The Affidavit of Karen Christian, who allegedly has over 20 yrs experience doesn't even purport to know to what the bills relate. All she had to do was ask Mr. Cook.

Opposition at P.11.

V.   **Special Master's Analysis**[1]

This is another case where a Plaintiff disagrees with FEMA's policies on how damages to buildings should be adjusted. In the shortfall calculation made by Plaintiff at FEMA-000021, he argues that the total cost to build a new house is $205,466.62. After recognizing that the $29,781.00 ICC coverage he claimed had been paid, he arrives at an amount of $175,685.62. Using the square footage of the new home of 1,890 square feet, he computes the cost per square foot to rebuild at $92.96. Then, applying the square footage of the flooded dwelling of 1,219 square feet to that cost, Plaintiff comes to a "total cost to rebuild old dwelling minus the ICC costs" of $113,318.24, after applying the compensation already received of $56, 263.69 and the deductible of $5,000.00. Plaintiff computes the shortfall as $52,054.55.

In the recalculation done in his Opposition (Document #514), Plaintiff removes $37,286.00 which he now concedes are either credits or upgrades and recalculates

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

the cost per square foot to be $72.95. This leads to his new "Revised Shortfall" of $27,688.36. See Plaintiff's Opposition at p.9.

This calculus is not accepted by FEMA, and the methods used by the Plaintiff have never been employed by FEMA in adjusting claims. While Plaintiff's formula for adjusting is simple to understand and to apply, he does not demonstrate by expert evidence or otherwise why FEMA should be compelled to follow his methodology.

Plaintiff's suggestion that, when reviewing the waiver claim, FEMA's representatives were obligated to call in Mr. Cook for explanations of what the documents he submitted proved, imposes a burden on FEMA that the Special Master does not believe the Agency had. It was incumbent on Plaintiff to submit detailed documentation that showed clear entitlement to additional payments under SFIP. Absent that showing, FEMA was under no obligation to further investigate the claim by obtaining additional documentation on its own or by interviewing Mr. Cook.

Plaintiff has failed to demonstrate that the waiver denial was arbitrary or capricious. Instead, it appears that FEMA has conducted this review using the methods they have employed in other cases, and has reached a result consistent with how they apply SFIP.

In the final part of his Opposition at pp.11-15, Plaintiff reiterates the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about

the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants and the Special Master incorporates that discussion into this individual report.

The Special Master concludes, after this review, that FEMA's August 18, 2008, denial of the waiver request of Alvin Cook for reasons other than untimeliness was neither arbitrary nor capricious. There was also no abuse of discretion in the denial of the waiver.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
|    January 13, 2011    |              /S/          |
| Date | Dennis M. Sweeney |
|  | Special Master |