# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 05-CV-1547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## REPORT AND RECOMMENDATION CONCERNING THE WAIVER CLAIM OF MICHAEL D. AND CLARA E. CROCETTI

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Michael D. and Clara E. Crocetti pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 71 pages labeled FEMA-000001 to 000071.

I.  **Background**

Plaintiffs' property located at 2026 Kurtz Avenue, Pasadena, Maryland, was insured by Allstate under Policy Number 18034672587, with $157,700.00 in building coverage subject to a $5,000.00 deductible.  FEMA-000069.  On September 18, 2003, Hurricane Isabel struck Maryland, and Plaintiffs' home was damaged by flooding.  See FEMA-000001 through FEMA-000009.

On September 19, 2003, Plaintiffs notified Allstate of their loss.  See FEMA-000055.  On September 20, 2003, Allstate had an independent adjuster inspect Plaintiffs' home.  *Id*.  Plaintiffs filed a Proof of Loss ("POL") with Allstate in accordance with the independent adjuster's findings, claiming $6,961.84 in damages from flooding.  See FEMA-000059.  On December 30, 2008, Allstate issued a check to Plaintiffs for $6,961.84 per their POL.  See FEMA-000038.

Plaintiffs provided two statements as to the full cost of repair or replacement with their waiver application for $2,903.37 and $2,895.35 that are unsigned by the insured.  See FEMA-000013 and FEMA-000014.  FEMA asserts there is no record of receipt of the statement for $2,903.37 and claims it is not consistent with Plaintiffs' POL at Line 5.  See FEMA-000059.

Plaintiffs' supplemental claim for full cost to repair or replace in the amount of $2,895.35 (consistent with their POL at Line 5; see FEMA-000059) was authorized for payment, and on April 19, 2004, Allstate paid that amount. See FEMA-000042 and FEMA-000040.

Plaintiffs requested review by the Hurricane Isabel Task Force ("Task Force"), and the claim was subsequently reviewed. See FEMA-000028. The Task Force determined that Plaintiffs were not entitled to any additional compensation under their flood policy. *Id*. Plaintiffs did not submit any other supplemental claims or proofs of loss under their Standard Flood Insurance Policy ("SFIP") coverage prior to the filing of the waiver claim.

**II.     Waiver Claim and Denial**

On February 25, 2008, Plaintiffs submitted an application for a waiver requesting an additional $12,541.22 in compensation. See FEMA-000005. On August 18, 2008, FEMA notified the Plaintiffs that their waiver claim was denied.

**III.    Reasons for Waiver Denial**

In the Supplemental Declaration of Karen Christian with Respect to the Claim of Michael and Clara Crocetti (Document 482-2) at ¶¶14-18, the reasons for the denial of the waiver request are explained:

>  Plaintiffs failed to identify any specific provision of the SFIP they wanted waived.

>  Plaintiffs' waiver application did not include line item documentation or a supplemental proof of loss explaining how their alleged uncompensated damages were the result of direct physical loss by or from flood as required by their SFIP or certifying a supplemental claim.

>  It is Plaintiffs burden to prove their losses and provide sufficient documentation. See 44 C.F.R. Pt. 61, App. A (1), Section VII (J). Plaintiffs were paid in full on every proof of loss they submitted prior to the filing of the lawsuit and there is no information contained within Plaintiffs' waiver application explaining why they are entitled to additional compensation.

3

Despite the inadequacies in Plaintiffs' waiver application, a FEMA Insurance Examiner completed another comprehensive review of Plaintiffs claim. See FEMA-000028. The Insurance Examiner concluded Plaintiffs were fully compensated under their SFIP for any loss resulting from the flood. *Id*.

On August 18, 2008, FEMA notified Plaintiffs that their waiver application had been denied. *Id*. The letter informed Plaintiffs their waiver application was being denied because: (i) Plaintiffs' supplemental claim was untimely; (ii) Plaintiffs' claimed damages that had already been paid in their original Poof of Loss claim; (iii) Plaintiffs' Invoice for $10,000 in "labor" costs was not compensable because Plaintiffs failed to explain who performed the work or what damage was repaired; (iv) the invoice from Key Kleaning Service reflected work for non-covered items and other services that were included in the adjuster's original estimate; and (v) other receipts fail to explain or document the amount claimed. *Id*.

## IV. Plaintiff's Assertions

Plaintiffs acknowledge that their original shortfall itemization (FEMA 0015) contained items that had been considered in Allstate's estimate and payments to Plaintiffs, and they have amended their claim to $5,701.19. Opposition (Document 515) at p.8. This is reduced from the original claim of $12,541.22. Plaintiffs state that what FEMA failed to consider was:

> consideration for clean up and repair of damages to Plaintiffs' garage, contamination of their oil tank which required flushing and cleaning as well as the approximate 150 gallons of oil contained in that tank; and that Plaintiffs' well was condemned and had to be replaced along with the well pump.

*Id*. at p.8-9. Plaintiffs assert that FEMA did not discuss these issues, and that FEMA could have cleared up any doubts or questions by contacting them, which they did not do in the waiver review process. *Id*. at p.10.

4

## V. Special Master's Analysis[1]

As noted in Plaintiffs' Opposition and the Defendants' Reply, the Plaintiffs have substantially and materially altered the original shortfall claim to exclude many of the items originally claimed, reducing the claim from $12,541.22 to $5,701.19. From the review of the Special Master, FEMA correctly sums up the situation in its Reply (Document 534) at p.8:

> They [the Plaintiffs] eliminated line items from their original shortfall itemization submitted with their waiver application and added the following seven line items that were not submitted with their waiver application and as to which no supporting documentation has ever been submitted:
>
> | $4,300.00 | Woolsford Well (replace contaminated well) |
> |---|---|
> | $ 219.00 | Well pump |
> | $ 232.00 | Oil in Contaminated Oil Tank (150 gallons @$1.55 per gal) |
> | $ 125.00 | Flush and Clean Oil Tank |
> | $1,686.40 | Insulation (Crawl space) |
> | $ 99.91 | Drywall – Basement |
> | $ 471.24 | Dumpster |
>
> *Id*.
>
> These new items cannot be used to challenge FEMA's determination because they were not submitted with Plaintiffs' waiver application, and Plaintiffs failed to meet their obligation

---

[1] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

under the SFIP to provide documentation supporting these costs. See 44 C.F.R. Pt. 61 App. A(1) at Art. VII (J).

As noted by the Defendants, Plaintiffs needed to challenge these shortfalls in their waiver application. This Court's review of FEMA's determination on Plaintiffs' waiver application is based on the evidence considered by FEMA. These new claims were not part of the record when FEMA made its determination and should not now be allowed, even if Plaintiffs could show substantive merit.

Plaintiffs' argument that it was incumbent on FEMA to contact and discuss the waiver claim by a personal interview with them is not supported by any citation to a requirement for this procedure. Instead, it appears that it was Plaintiffs' burden to clearly prove the need for a waiver in their written waiver application. In the Special Master's view, FEMA had no obligation to uncover latent claims that might have been buried in the documentation submitted when such claims were not made on the face of the waiver application.

In the final part of their Opposition at pp.10-15, Plaintiffs reiterate the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants, and the Special Master incorporates that discussion into this individual report.

The Special Master is not convinced by the Plaintiffs' arguments that there was an arbitrary or capricious determination made when FEMA denied the claim, and concludes after this review that FEMA's August 18, 2008, denial of the waiver request of Michael D. and Clara E. Crocetti for reasons other than untimeliness was neither arbitrary nor capricious. The Special Master also concludes that there was no abuse of discretion in the denial of the waiver.

**VI.    Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
|     January 13, 2011     |               /S/       |
| Date | Dennis M. Sweeney |
|  | Special Master |