## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 5CV-1547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, | ) | |
| ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION CONCERNING THE  WAIVER CLAIM OF MICHAEL J. AND ALICE L. DARAS

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Michael J. and Alice L. Daras pursuant to Part 1.f of the Memorandum Order of the Court (Document 467).  In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order.  As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case.  The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order.  In this case, the documents consist of 731 pages labeled FEMA-000001 to 000731.

## I.    Background

Plaintiffs' property located at 15092 Chesapeake Bay Drive, Scotland, Maryland, was insured by Travelers Standard Fire Insurance Company ("Travelers") under Policy Number 6002667654, with $194,000.00 in building coverage subject to a $500.00 deductible.   See FEMA-000005.   On September 18, 2003, Plaintiffs' covered property suffered damage as a result of Hurricane Isabel.  See Doc. No. 303-2 at ¶5.[1]   On September 22, 2003, Plaintiffs notified Travelers of their loss. See FEMA-000215.

On September 26, 2003, at the request of Plaintiffs, Travelers issued an advance payment of $5,000.00.   See Doc. No. 303-2 at ¶7.   On November 19, 2003, Plaintiffs filed a Proof of Loss ("POL") for $132,963.69; *id*. at ¶8.  On December 9, 2003, Travelers issued a check for $30,300.00 in partial payment of the November 19, 2003 POL. *Id*. at ¶9.   On December 16, 2003, Travelers issued a further check in the amount of $97,663.69, which covered the balance of the November 19, 2003, POL.  *Id*. at ¶10.

On December 10, 2003, Plaintiffs filed an Increased Cost of Compliance ("ICC") POL in the amount of $23,200.00, *id*. at ¶11, followed by Travelers issuing a check for $23,200.00 on January 8, 2004. *Id*. at ¶12.

On May 12, 2004, Travelers sent a letter to Plaintiffs informing them that they were eligible for replacement cost coverage in the amount of $12,036.44.  *Id*. at

---

[1] Document No. 303-2 is the Declaration of Scott Holmes, a claims manager, filed earlier in this action to support a Motion for Summary Judgment.  Mr. Homes refers in his Declaration to the insurance company as "Standard".  There is no dispute that this is the same company referred to by others as Travelers.

¶13. As a result, Plaintiffs filed two statements as to the full cost to repair or replace their damaged property, one for $11,283.25 and a subsequent one for $12,036.44. *Id.* On May 13, 2004, Travelers issued a check for $12,036.44; *id.* at ¶14.

In April 2004, Plaintiffs requested a review of their claim by the Hurricane Isabel Task Force ("Task Force"). *Id.* at ¶16. On June 21, 2004, the Task Force determined Plaintiffs were entitled to an additional $24,332.50. *Id.* at ¶17. On July 20, 2004, Plaintiffs submitted a supplemental POL for $24,332.50 based upon the approved amount from the Task Force. *Id.* at ¶ 18. On July 23, 2004, Travelers issued payment in full on the supplemental POL. *Id.* at ¶ 9.

On June 28, 2004, Plaintiff filed a Supplemental ICC POL for $30,000.00. *Id.* at ¶20. Travelers issued a check for $6,800.00, which represented the policy limit of $30,000.00 for ICC coverage after application of the previous ICC payment of $23,200.00 referenced above. *Id.* at ¶ 21.

Plaintiffs sought a second review by the Hurricane Isabel Task Force. On December 29, 2004, the Task Force completed its review and determined Plaintiffs were entitled to an additional net payment of $8,825.41. See FEMA-000146. On January 13, 2005, Plaintiff filed a Second Supplemental POL for $8,825.41. See Doc. No. 303-2 at ¶22. On January 20, 2005, Plaintiffs were paid that amount in full. *Id.* at ¶23.

The total amount paid to Plaintiffs is $208,158.04. *Id.* at ¶24. This total breaks down to $142,858.04 for damage to their structure after application of the $500.00

3

deductible; $35,300.00 (policy limit) for loss of contents after application of the

$500.00 deductible; and $30,000.00 (policy limit) for ICC.

**II.      Waiver Claim and Denial**

On February 22, 2008, Plaintiffs submitted a waiver application. See

FEMA-0000001 through FEMA-000009. Plaintiffs claimed a shortfall of

$53,467.37. FEMA-000005 and 000024. On August 18, 2008, FEMA denied the

claim. See FEMA-000130 to FEMA-000131.

**III.     Reasons for Waiver Denial**

In the Supplemental Declaration of Karen Christian with Respect to the Claim of

Michael and Alice Daras (Document 483-2) at ¶¶19 to 30, the reasons for the

denial are explained:

> On February 22, 2008, Plaintiffs submitted a waiver
> application that failed to identify the specific provisions of the
> SFIP Plaintiffs wished to be waived. See FEMA-0000001 through
> FEMA-000009.  The waiver application requested that FEMA
> compensate Plaintiff[s] an additional $53,467.37 without any
> explanation of how the uncompensated loss was eligible for
> payment under their SFIP. *Id*.
>
> Further, Plaintiffs stated they were not paid the
> $132,963.69 on November 19, 2003 POL.  See FEMA-000005.
> This is not a true statement.  As documented above, Plaintiffs were
> paid in full on every POL they submitted.
>
> Plaintiffs also attached an illegible document that they
> claim is an unpaid POL in the amount of $11,283.25.   *Id*. and
> FEMA-000015.  This POL is not signed and does not meet the
> requirements of the SFIP.  Plaintiffs filed two statements as to the
> full cost to repair or replace their structure, one for $11,283.25 and
> a subsequent one for $12,036.44.  See Doc. No.  303-2 at  ¶13.
> The second POL supplanted the first and on May 13, 2004,
> Travelers issued a check for $12,036.44. *Id*. at ¶14.

4

In their waiver request Plaintiffs calculated the replacement cost of their former dwelling by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling resulting in a replacement cost for the old structure of $280,992.80. See FEMA-000005. Plaintiffs arrived at $53,467.37 by taking their policy limit on building coverage minus their deductible and previous payments.

Plaintiffs provided to FEMA a letter from the St. Mary's County Government Department of Land Use and growth Management stating that their property has been "CONDEMMED." [sic] See FEMA-000013.

The County's letter does not itemize any additional damages caused by or from flood and does not support any additional compensation. See Exhibit A at ¶¶14 through 18. Further, the SFIP excludes the cost of complying with any local ordinance requiring the demolition of the structure, land movement or sinking of the property. See 44 CFR § 61, App. A(1) at Section V.

Plaintiffs' method of calculating their damages by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account the SFIPs coverage limits and exclusions.

The original structure was constructed on July 1, 1975. See FEMA-000731. The SFIP only covers damage caused directly by flood. The unscientific formula Plaintiffs utilized to calculate the replacement of their original structure was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. See Exhibit A at ¶ ¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for ICC expenses and Plaintiffs' formula makes it impossible to separate out these expenses.

Travelers and the Hurricane Isabel Task Force thoroughly reviewed Plaintiffs' claim and properly calculated the amount of compensation they were entitled to. The waiver application review was not limited to the specific request, but was a comprehensive review of the entire claim and FEMA concluded Plaintiffs were

properly compensated for their loss. See FEMA-000130 and FEMA-000131.

Despite Plaintiffs contention, they have been paid in full on all timely submitted POLs. See Doc. No. 303-2.

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit a detailed line-item documentation of damages caused directly by flooding to their original structure, but instead utilized an unscientific formula. Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

Accordingly, on August 18, 2008, after another comprehensive review of the claim, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs had not shown in their waiver application that they were entitled to further compensation under their policy. See FEMA-000130 and FEMA-000131. From the information provided with the waiver application and the prior adjustments and reviews, it appears Plaintiffs were fully compensated for their loss. *Id*.

## IV.     Plaintiff's Assertions

Plaintiffs' arguments focus on what they believe is an inadequate review of the February 2008 Proof of Loss by FEMA, as well as what they believe are the failures of FEMA's review which they see as a continuation of the "stonewalling" by FEMA. Plaintiffs Opposition (Document #517) at pp.10-14.

Plaintiffs believe that their home's damage left them with no option but to demolish the building and replace it with new construction. They elevated the property and placed a new smaller modular home which they assert had "material of like or lesser quality than the totaled home in place of their former home..." *Id*. at page 15.

Plaintiffs note that their original shortfall calculation of $53,467.37 should be amended to $51,441.96, using a cost to rebuild the home at $189.86 per square foot. See Opposition at p.15. Plaintiff asserts that they have provided "FEMA with line item documentation and overview of their claim for shortfall along with expansive documentation supporting the payments Mr. & Mrs. Daras made to rebuild their home." *Id.* at p.10.

It appears that much of what Plaintiffs complain about in this case concerns the alleged failure of FEMA to conduct a comprehensive review of the claim, and the failure of FEMA to calculate the Plaintiffs' damages under Part A of SFIP by using the actual cost per square foot of the new construction.

## V.     Special Master's Analysis[2]

As with other cases reviewed in this group, Plaintiffs have used a square foot new construction formula to calculate what they assert their shortfall should be. This is clear when Plaintiffs restate in their Opposition (Document 517) at p.15 their claim:

> [T]he Daras' February 25,2008 Shortfall Itemization summary (FEMA 000022 -000024) may be modified as follows: Total cost of new 1341 sq.ft. home, less $30,000 ICC: $254,597.38. Price per sq. ft: $189.86. Cost to rebuild home at original 1489 sq. ft.: $280,992.80. Select smaller actually built for cost of $254,597.38. Policy limits: $194,800.00. Select FEMA's calculation of insurance payments for dwelling loss plus deductible: $143,358.04. Shortfall: $51,441.96.

---

[2] This analysis should be read in conjunction with the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants filed contemporaneously with this Report and Recommendation.

This is the same argument made in the February 2008 Proof of Loss in which the Plaintiffs asked FEMA to apply the square foot costs of their new construction to the losses they sustained. See FEMA-000005 to FEMA-000006 and FEMA 000022 to FEMA-000023.

FEMA argues that this formula based on the square footage of new construction is not a method they have ever utilized and is not one that is accepted in the industry for adjusting claims. Plaintiffs do not point to any requirement that their simplistic formula should be accepted; nor do they cite in their POL or in their Opposition filed in this court any expert opinion evidence or industry standard that supports their assertion that their formula is one that must be employed in adjusting claims under the procedures and requirements of the law FEMA operates under. FEMA was free to reject the new construction square footage formula and apply their customary standards in adjusting the claim and deciding whether a waiver should be granted.

In their Opposition at pp.4-10, Plaintiffs do reasonably explain why it made sense for them to not attempt to repair the home, but instead to demolish it and replace it with new construction. However, this decision, no matter how justified it may have been, does not alter the limited coverage of SFIP or require FEMA to employ the methods of adjusting Plaintiffs seek rather than the methods FEMA used in 2003 and 2004. This is a decision committed to FEMA's discretion.

FEMA's reasons for denial of this waiver claim, as stated above in Part III, are detailed and demonstrate consideration of the relevant factors applicable to a

waiver evaluation under the criteria for such claims. In this case, the original denial letter also explains the reasons for the denial. See FEMA-000130 to 000131. The conclusions appear to the Special Master to be reasonable.

In the final part of their Opposition at pp.15-19, Plaintiffs reiterate the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants and the Special Master incorporates that discussion into this individual report.

The Special Master concludes after this review that FEMA's August 18, 2008, denial of the waiver request of Michael J. and Alice L. Daras for reasons other than untimeliness was neither arbitrary nor capricious. The Special Master also concludes that there was no abuse of discretion in the denial of the waiver.


VI.     **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further

recommended that Plaintiff's Motion for Summary Judgment be denied.


     January 13, 2011                                    /S/

Date                                        Dennis M. Sweeney

                                         Special Master