## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| **THOMAS L. MOFFETT, II, ET AL.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.** |
| | ) | **5 CV 1547** |
| **v.** | ) | |
| | ) | |
| **COMPUTER SCIENCES CORPORATION,** | ) | |
| **ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION CONCERNING
## THE <u>WAIVER CLAIM OF LEO AND DAWN DARR</u>

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Leo and Dawn Darr pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 220 pages labeled FEMA-000001 to 000220.

## I.        Background

Plaintiffs' property located at 3836 Holly Drive, Edgewater, Maryland, was insured by State Farm Fire and Casualty Company ("State Farm") under Policy Number 90-RF-0225-9 with $129,300.00 in building coverage, subject to a $1,000.00 deductible.  See FEMA-000005.

  On September 18, 2003, Plaintiffs' covered property suffered damage as a result of Hurricane Isabel.   See FEMA-000102.   On September 20, 2003, Plaintiffs contacted State Farm to notify the company of their loss.  See FEMA-000115.

On October 13, 2003, Plaintiffs submitted a Proof of Loss ("POL") claiming $28,142.53 in damages, which State Farm paid in full.  See Doc. No. 294-2[1] at ¶¶13-14.

On December 5, 2003, Plaintiffs submitted a POL increasing their total loss to $39,367.33,  *id*. at ¶15, an increase of $11,224.80 over the original POL.  *Id*. at ¶15.  State Farm paid this amount in full; *id*. at ¶16.

Plaintiffs sought review by the Hurricane Isabel Task Force ("Task Force").  On June 8, 2004, the Task Force completed its review and determined Plaintiffs were entitled to an additional net payment of $9,009.28.  See FEMA-000083.  On July 22, 2004, Plaintiffs submitted a supplemental POL for $9,009.28, which State Farm paid in full.  See Doc. No. 294-2 at ¶¶17-18.  Plaintiffs did not acknowledge this payment in their subsequent waiver application; see FEMA-000005.

---

[1]  This is a Declaration of Patricia DeWitt, State Farm's Mid-Atlantic Zone Catastrophe Coordinator, filed in this action in support of an earlier Motion for Summary Judgment.  It is relied on by Karen Christian in her Supplemental Declaration, but incorrectly referred to as Document 294-3.

On December 5, 2003, and July 22, 2004, Plaintiffs submitted two Increased Cost of Compliance ("ICC") coverage POL's for the policy limit of $30,000.00. See Doc. No. 294-2 at ¶ 9. State Farm made an initial payment of $12,855.00 on December 5, 2003, and paid the balance of $17,145.00 on July 26, 2004. *Id*. Plaintiffs were paid a total of $48,376.61 on their structure after application of the $1,000.00 deductible and the policy limit of $30,000.00 for ICC coverage. Plaintiffs were paid in full on every POL that had been approved by FEMA. *Id*. at ¶21.

Plaintiffs do not appear to contest the fact they were paid in full on all timely submitted POL's; see FEMA-000005. However, Plaintiffs decided to demolish their original structure and rebuild a larger one. See FEMA-000005.

## II.     Waiver Claim and Denial

On February 25, 2008, Plaintiffs submitted a waiver application; see FEMA-000001 through FEMA-000009. Plaintiffs claimed a shortfall of $75,195.82. FEMA-000005 and 000021. On August 18, 2008, Plaintiffs' waiver application was denied. See FEMA-000075 through FEMA-000076.

## III.    Reasons for Waiver Denial

In her Supplemental Declaration with Respect to the Claim of Leo and Dawn Darr (Document 484-2) at ¶¶13-22, Karen Christian states the reasons for the denial as follows:

> On February 25, 2008, Plaintiffs submitted a waiver application for an unidentified provision of their SFIP. See FEMA-0000001 through FEMA-000009.

Plaintiffs' waiver application sought an additional $75,195.82 without any explanation of how the uncompensated loss was eligible for payment under their SFIP. *Id.*

In their waiver request Plaintiffs provide two calculation for replacement of their former structure. See FEMA-000005. In the final paragraph at FEMA-00005, Plaintiffs calculated the replacement cost of their former structure by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. See FEMA-000005. In one place, they said this formula resulted in a replacement cost of $117,368.06; in other place they said it resulted in a replacement cost of $104,848.96. *Id.* Plaintiffs arrived at $75,195.82 by taking their higher alleged replacement cost of $117,368.06 and subtracting from it the deductible ($1,000) and the amount of $41,172.24, which is what they incorrectly state to be the prior Coverage A dwelling damage payments they received. *Id.* (As noted above, they actually received $48,376.61.)

Plaintiffs provided to FEMA a letter from Anne Arundel County, Department of Inspections and Permits that notified Plaintiffs their home was substantially damaged. See FEMA-000010 and FEMA-000011.

The County's letter does not itemize any additional damages caused by or from flood and does not support any additional compensation. See Exhibit A at ¶¶ 14 through 18. [General Declaration of Karen Christian, Document 474-1] Further, the SFIP excludes the cost of complying with any local ordinance requiring the demolition of the structure, land movement or sinking of the property. See 44 CFR § 61, App. A(1) at Section V.

Plaintiffs' method of calculating their damages by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account the SFIPs coverage limits and exclusions.

The original structure was constructed on July 1, 1965. See FEMA-000084. The SFIP only covers damage caused directly by flood. The unscientific formula Plaintiffs utilized to calculate the replacement of their original structure was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and

the use of material that is not of like kind and quality.  See Exhibit A at ¶¶ 16 and 17.   Further, the SFIP has a policy limit of $30,000.00 for ICC expenses and Plaintiffs' formula makes it impossible to separate out these expenses.

State Farm and the Hurricane Isabel Task Force thoroughly reviewed Plaintiffs' claim and properly calculated the amount of compensation they were entitled to.  The waiver application review was not limited to the specific request, but was a comprehensive review of the entire claim and FEMA concluded Plaintiffs were properly compensated for their loss.   See FEMA-000075 and FEMA-000076.

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver.  First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP.  Second, they did not submit a detailed line-item documentation of damages caused directly by flooding to their original structure, but instead utilized an unscientific formula.  Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

Accordingly, on August 18, 2008, after a complete review of their claim, Plaintiffs' waiver application was denied because their waiver application was untimely and there was no direct physical loss caused by or from flood that Plaintiffs had not received full compensation for.   See FEMA-000075 and FEMA-000076.

## V.      Plaintiffs' Assertions

Plaintiffs' argument filed in their Opposition (Document 516) complains that FEMA has not correctly reviewed their claim and, in their view, continues to mischaracterize it. They assert that they submitted ample documentation with the February 25, 2008, POL that should allow FEMA to pay the claimed shortfall using the pricing formulas they urge, which are based on the square footage costs actually incurred in new construction. *Id*. at pp.6-7.

Plaintiffs argue that their home sustained "catastrophic damages", noting that the adjuster's estimate of the cost to repair was 74.47% of the adjuster's evaluation of the cost to replace the home. Plaintiffs made the decision to replace the home with a modular constructed home; to them, this was the most "cost effective" choice. *Id*. at p.7.

In their Opposition at pp.11-12, Plaintiffs do revise the Shortfall Itemization summary (FEMA 000020 and 000021) as follows:

> Total cost of new 2445 sq. ft. home, less $30,000.00 ICC: $235,345.39. Price per sq. ft.: $96.26. Cost to rebuild home at original 1198 sq. ft.: $115,314.43. Insurance payments for dwelling loss plus deductible: $49, 376.61. Shortfall: $65,937.82.

Opposition p.11-12.

Plaintiffs assert that it is the scope of the damages and the pricing by the adjusters to cover those damages that are at issue. They assert the pricing is too low; see Opposition at p.10, and that FEMA should have accepted the reconstruction per square foot estimate provided by Mr. Bryant of Anne Arundel County or the one used in their shortfall calculation. Opposition at p.11.

6

## V.    Special Master's Analysis[2]

As with other cases in Group One, Plaintiffs press for the new construction square

footage formula to be used to calculate the damages they should have received.

When they filed their POL in February 2008, this seemed to be the only argument

being made.   FEMA 000005; see also the Shortfall Itemization at FEMA 20-21.

The square foot formula for new construction produced a figure there of $97.97.

In Plaintiffs' Opposition (Document 516) filed recently, it is now at $96.26.

As is indicated in the discussion on the other cases in this group where that issue

was raised, the formula is simple and easy to apply, but there is no demonstration

by Plaintiffs as to why the law or industry standards require FEMA to use this

approach.

FEMA argues that this formula based on the square footage of new construction is

not a method the Agency have ever used to calculate damages for replacement of

existing water damage under the Standard Flood Insurance Program ("SFIP"), and

is not accepted in the industry for adjusting claims.  Plaintiffs do not point to any

requirement that their simplistic formula must be used by FEMA; nor did they

show by any expert evidence or industry standard that their formula would be the

one that must be employed in adjusting claims under FEMA's procedures.   In

looking at the POL filed in February, there is ample documentation of what the

new construction cost is, see FEMA-000020 to 000074, but there is no discussion

---

[2] This analysis should be read in conjunction with the Memorandum of Special Master on Role of
the Special Master and Report and Recommendation of the Special Master on Generic Issues
Raised by Plaintiffs and Defendants filed contemporaneously with this Report and
Recommendation.

or demonstration why FEMA's pricing mechanisms used in 2003 and 2004 were not suitable to the task they were performing under the law and the SFIP requirements they were implementing. SFIP allows only for damage claims in Part A coverage for damage directly caused by a flood, and includes numerous limitations and exclusions that are detailed in the Special Master's memoranda on generic issues. Plaintiffs do not articulate why these do not apply to their claim.

Based on what was presented by Plaintiffs, FEMA was free to reject the new construction square footage formula and apply their usual and customary standards in adjusting claims, including the one of Mr. and Mrs. Darr. It was certainly permissible for FEMA to decide on the basis of the POL submitted with the waiver claim that there was no reason why a waiver should be granted in this case. The decision of FEMA not to accept Plaintiffs formulation is neither arbitrary nor capricious.

Defendants persuasively argue at pp.7-8 of their Reply (Document 536) that Plaintiffs are attempting to obtain the benefit of the so-called "constructive total loss doctrine", which is employed as an equitable doctrine in other insurance contexts where the insurance is private and the public policy standards set by State appellate courts and legislatures. This is not the case with FEMA claims under SFIP at issue here. FEMA has applied a strict construction to the terms of SFIP, and has convinced federal courts not to interfere with their administration by imposing equitable glosses on SFIP or requiring FEMA to adjust claims in the ways that private insurers must do under other regulatory regimens. See, *e.g.*, *Monistere v. State Farm Fire & Cas. Co.*, 559 F.2d 390 (5th Cir. 2009).

FEMA's choices, while perceived by many, including these Plaintiffs, as being too pinched and lacking in creativity are the choices the Agency is entitled to make as the delegated agency responsible for the National Flood Insurance Program, especially since claims paid are charges against the U.S. Treasury. There is no evidence that FEMA has been either arbitrary or capricious in the application of their standards to the claims of the Plaintiffs.

In the final part of their Opposition at pp.12-15, Plaintiffs reiterate the points raised by all of the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the Court's directives about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the Memorandum of Special Master on Role of the Special Master and Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants, and the Special Master incorporates that discussion into this individual report.

After this review, the Special Master concludes that FEMA's August 18, 2008, denial of the waiver request of Leo and Dawn Darr for reasons other than untimeliness was neither arbitrary nor capricious. The denial of the waiver claim was also not an abuse of discretion by FEMA.

**VI.    Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further

recommended that Plaintiff's Motion for Summary Judgment be denied.


     January 13, 2011                             /S/

        Date                                   Dennis M. Sweeney

                                         Special Master