# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. PJM 05-1547 |
| | * | |
| COMPUTER SCIENCES | * | |
| CORPORATION, et al. | * | |
| | * | |
| Defendants | * | |

## **MEMORANDUM OPINION**

[*OPINION WITH RESPECT TO PLAINTIFFS' GENERIC OBJECTIONS TO THE REPORTS AND RECOMMENDATIONS OF THE SPECIAL MASTER.*]

Because the Group 1 Plaintiffs have raised several generic objections to the Reports and Recommendations of the Special Master, and because similar objections are likely to be raised by subsequent groups of Plaintiffs, the Court takes the occasion to deal with those objections at this time.

I.

A number of Plaintiffs' objections go to alleged factual inaccuracies in the Master's Reports that have no bearing whatsoever on the validity of his conclusions in the several cases. These pertain to whether some or most claims were denied in five of Plaintiffs' waiver requests; whether Plaintiffs have preserved their right to appeal earlier Court rulings; and whether the summary judgment process was ordered by the Court, as opposed to being

-1-

agreed to by the parties. Assuming Plaintiffs are correct as to these points, it will serve no purpose for the Court to address them here.

II.

Other generic objections go to procedural conclusions of the Master that Plaintiffs' claim are legally incorrect.

First and foremost relates to the burden of proof. Plaintiffs say the Master has required them to affirmatively show that the waiver denials by FEMA were arbitrary and capricious whereas, according to Plaintiffs, FEMA must first put on evidence that it had a rational basis for the denials before the burden shifts to Plaintiffs. Fair enough. But that still does not mean that FEMA must ultimately prove that its denials were not arbitrary or capricious, only that it must put forth <u>some</u> evidence – not necessarily to Plaintiffs' liking – that lends substance to the conclusions FEMA in fact reached. FEMA is entitled to wide latitude in reaching its conclusions. A presumption of regularity attaches to FEMA's decisions and it is Plaintiffs who bear the ultimate burden of persuasion that the denials were arbitrary and capricious.

Plaintiffs also take issue with the fact that FEMA required them to sign and swear to Proofs of Loss (POLs) that they submitted along with the waiver requests, suggesting that "the Court, in ruling [the POLs] were timely filed, has accepted them as POLs." The Court, of course, did nothing of the kind. All it addressed was the timeliness of the filings; it said and still says not a word about whether the claims were made in proper form nor whether they are in fact compensable. Even if the Plaintiffs are correct on this point – and the Court

need not decide the issue – as will be seen, the point has no effect on the Court's decision herein.

Plaintiffs also challenge the declaration of FEMA's Karen Christian that she conducted her review of the waiver requests <u>after</u> the Court's August 20, 2010 Order. "It is as if," they say, "she is allowed to create the reasons for denial <u>after</u> the fact ..." (emphasis in original) ... "blatantly disobeying the Court's admonition that 'FEMA may not scour those portions of its files not of record, searching for new reasons for denying the applications for waiver.'" This argument needs parsing. The key words here are "files not of record." It is entirely appropriate for FEMA to consider those of its files that were "of record" – including those files as expanded by the Court's contemporaneous ruling – to establish its reasons for denying or granting the waiver. The reasons for denial FEMA mentioned in the July-October 2008 denial letters are not exhaustive, so long as FEMA's reasons are demonstrably based on evidence that was in the mix at the time, including the expanded record now admitted.

III.

The final category of generic objections pertains to the Master's and FEMA's interpretation of the SFIP.

One of these objections would have answered itself if Plaintiffs had read further in the Master's Memorandum on his Role as Special Master. Plaintiffs suggest that the Master incorrectly read the SFIP to provide no coverage for the cost of complying with codes or laws when the repair or rebuilding takes place. "The ICC [Increased Cost Coverage provisions of the SFIP]," say Plaintiffs, "specifically includes increased costs of

compliance." But that is precisely what the Master goes on to say when he discusses the ICC provisions. The "practical deficiency of coverage under the part of the policy dealing with dwelling place coverage "is somewhat ameliorated" by the ICC which "allows for coverage for compliance with land use and control measures," including "elevation, flood proofing, relocation or demolition (or any combination of these activities)" of a structure. Little more need be said as to this objection.

Other of Plaintiffs' objections, which pertain to interpretations that FEMA has given provisions of the SFIP, are fairly met if there is <u>any</u> reasonable basis to support them. Again, it is not a matter of how Plaintiffs might prefer the terms to be understood nor of what some other entity or individual, including the Court, might find desirable. Considerable deference is due FEMA's reading of the SFIP, not only in light of the language of the policy, but also guided by the pervasive recognition that public funds are at stake.

Thus, despite Plaintiffs' opposition, FEMA could fairly conclude that "the adjustment of the policy proceeds room-to-room, foot-by-foot, both horizontally and vertically"; that if some (Plaintiffs use the word "any") portion of a house is left undamaged, then the house is not totalled; [1] that covered damage includes only damage directly caused by flood and not damage not touched by flood waters; that the use of new materials for rebuilding does not necessarily equate with the use of like materials that were in the homes before the damage

---

[1] Plaintiffs' example of a single brick leaving a house undamaged and thus not totalled is a fine example of *reductio ad absurdum*, which, however, bears not the slightest relation to any facts in these cases.

- 4 -

occurred. However ungenerous these readings may seem to Plaintiffs, they nonetheless represent a fair reading of what the SFIP says they say. FEMA offers policies not otherwise available in the free and open market, and deals with public funds. If it chooses to pay out those funds in less than generous fashion, then so be it. It has not *ipso facto* acted arbitrarily or capriciously.

IV.

The last cluster of objections common to the first group of ten households can only be evaluated in the context of each individual household's claim, *viz.* that FEMA is wrong in saying that no line item documentation of loss was submitted when in fact it was; that rejection of Plaintiffs' calculations of a square footage formula for the cost of construction of replacement housing on the grounds that the method was "unscientific" lacks "any rational basis"; that FEMA is wrong in saying that Plaintiffs did not specify what portions of their claims were covered by SFIP, because Plaintiffs have said all along that all their claims are covered and it is FEMA that has failed to spell out what claims are not covered; that FEMA is wrong in saying that Plaintiffs have failed to specify which of their claims was caused by flooding when that is all Plaintiffs have ever claimed; that FEMA is wrong to say that Plaintiffs are seeking upgrades of materials when in fact they are not; that FEMA is wrong in saying that Plaintiffs have failed to account for all previous compensation when in fact they have done so; and that FEMA is wrong in saying that Plaintiffs are trying to recover under Dwelling Damage costs in excess of $30,000, when according to Plaintiffs they are not.

The Court will deal with the individualized claims of the first group of ten householders in a separate Opinion.

/s/<br>
**PETER J. MESSITTE**<br>
**UNITED STATES DISTRICT JUDGE**

**SO ORDERED THIS 17th day of February, 2011.**

/s/<br>
**PETER J. MESSITTE**<br>
**UNITED STATES DISTRICT JUDGE**