# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. PJM 05-1547 |
| | * | |
| COMPUTER SCIENCES | * | |
| CORPORATION, et al. | * | |
| | * | |
| Defendants | * | |

## **MEMORANDUM OPINION**

[*OPINION ON SUMMARY JUDGMENT AS TO CLAIMS OF GROUP 1 HOUSEHOLDERS.*]

Against the background of the Court's rulings with respect to Plaintiffs' Generic Objections to Reports and Recommendations of the Special Master, the Court considers the individualized claims of the ten householders in Group 1 of Plaintiffs.

1)   Birchette [1]

The Master has submitted a 12-page Report and Recommendation finding that FEMA's denial of this Plaintiff's claims was not arbitrary and capricious. In addition to the

---

[1] The Court notes that among the Group 1 Plaintiffs, two different names appear on a single claim. To make things simple, the Court will refer only to the name of the first householder on a given claim and will refer to that householder as Plaintiff (singular) or him or her, as the case may be.

generic objections common to all Plaintiffs,[2] this Plaintiff objects to the Master's dismissal of a newspaper article dealing with inaccuracies in the adjustment process; to his view that he must state the reasons why and how requested items are covered by SFIP; and to the fact that FEMA only paid $20,000 to cover $60,000 in improvements made three years before the advent of Isabel.

The Master's view of a generalized newspaper article, of course, has no bearing on either the Master's or the Court's analysis of the individualized claims, which is necessarily Plaintiff-specific. His view that the POL was obliged to show "how the contractors' estimates or work done or contemplated met FEMA's requirements as additional work covered by the ... SFIP that was not previously compensated" was sound. This, as the Master notes is, "the FEMA standard for granting a waiver." The burden is upon the insured to demonstrate that additional work should be compensated consistent with SFIP requirements. FEMA is not obliged to search the policy in an effort to discover the basis for further payments of a claim.

As for the one-third payment for improvements made three years before Isabel, the Master points out that Plaintiff did not in any way make this claim in his February 2008 waiver claim, such that it cannot fairly be said to have been presented to FEMA for

---

[2] The Court understands that each and every Plaintiff is asserting the generic objections that the Court has addressed in its separate Opinion and will therefore not repeat this fact in discussing each and every Plaintiff. But the generic objections relevant to an individual case are discussed in the context of each case. Other generic objections either do not pertain to the individual or would not affect the decision as to the case.

consideration. The Court agrees. FEMA had and has no obligation to suppose that claims may exist that an insured has failed to submit.

Plaintiff was ultimately paid $84,953 for damage to his main structure and $16,697 for damage to his cottage after a $5,000 deductible was applied to each. FEMA was neither arbitrary nor capricious in handling this claim.[3]

2) <u>Blythe</u>

The Master's Report runs to eight pages and rejects what appears to be Plaintiff's single claim, *viz.*, that FEMA erred in concluding that the lowest level of his dwelling was below the first elevated floor and therefore subject to limited coverage.

Plaintiff seeks in excess of $84,000 for his dwelling and some $47,900 for contents (all of which were presumably located below what FEMA submits considered the first elevated floor).

Plaintiff asserts that all levels of his home were in fact above ground, but were built on a slab, not on foundation walls, piers, pilings or columns. He also maintains that the lower level was finished when he purchased the dwelling, and occupied by him. None of this, of course, demonstrates that the lower level was not below the first elevated floor, subject to limited coverage.

---

[3] Dollar amounts have been rounded off to the nearest dollar throughout.

FEMA took pictures of the dwelling, sent representatives to personally view it and entertained Plaintiff's arguments. Its conclusion contrary to Plaintiff's hopes and wishes was not arbitrary and capricious.

3) <u>Bonner</u>

Here, too, the Master has filed an eight-page report finding no arbitrary or capricious conduct by FEMA in denying Plaintiff's claim.

Plaintiff takes special exception to FEMA's statement that 14 inches of water in her dwelling did not meet SFIP standards for replacement of the dwelling because no such standard exists. By implication, Plaintiff says FEMA's position is arbitrary and capricious.

Plaintiff's main complaint harks back to the general complaint of the Group of 10 that FEMA's position calling a square footage cost for replacement construction "unscientific" lacks "any rational basis."

But that charge does not do justice to what FEMA in fact has said. Apart from deciding to demolish and rebuild rather than repair her dwelling – a decision FEMA declined to underwrite – Plaintiff contracted to rebuild her home for $233,565 (less $30,000 credit for the ICC payment) and submitted her cost figure to FEMA as $70.97 per square foot which resulted, after deductions, in a claim of $67,764. FEMA called this method "unscientific" because it was not an accepted method in the industry for calculating losses due to flooding and because it failed to take into account any of the coverage and exclusions provisions of the SFIP. The Master not only noted this, but observed that Plaintiff had offered no expert opinion or evidence for her part that would support use of the formula she proposed. As for

the 14 inches of water in Plaintiff's residence being less than would justify replacement, whether or not there was a written standard, Plaintiff has not shown that FEMA's call was unreasonable, which is to say arbitrary or capricious.

4) <u>Bowling</u>

In his ten-page Report, the Master finds no arbitrary or capricious conduct by FEMA in denying Plaintiff's claim.

Plaintiff seeks an additional $60,519. This is apparently the difference between the policy limit of $185,000 minus the deductible and what Plaintiff was paid previously.

Plaintiff chose to demolish her 33-year old house at a cost, for the first floor alone, in excess of $390,000. Apart from submitting a number of unverified invoices, the principal infirmity in Plaintiff's submission is that she failed to demonstrate why a six foot surge and two feet of interior water necessitated demolition of her home. In reaching its conclusion to deny Plaintiff's claim, FEMA passed it by an independent insurance adjuster, the Hurricane Isabel Task Force, and a FEMA claims examiner, and they found no evidence of uncompensated direct physical damages <u>caused by the flood</u>.

Plaintiff received a total of $164,481 in full payment of her other claims.

Plaintiff may well, as the Master noted, have chosen wisely in demolishing her dwelling and replacing its entirety. But that in no sense automatically translates to an obligation on FEMA's part to underwrite the decision based on its interpretation of the SFIP.

For argument's sake, the Court will accept that there may be no fixed standard which sets the point at which there ought to be actual replacement of a dwelling after a flood. But

neither is it evident that FEMA's judgment – based on expert review that replacement was not necessary – unreasonable, arbitrary or capricious.

    5)    <u>Crocetti</u>

This seven-page Report by the Master finding no arbitrary or capricious conduct in FEMA's denial of Plaintiff's claim is understandably short.

With his waiver claim, Plaintiff submitted a series of items that he felt constituted a shortfall, then eliminated a number of them and added some seven new line items that had not been submitted with his waiver application. These included the costs of clean up and repair of a garage, contamination of an oil tank which required repair, and loss of a well, requiring replacement.

FEMA's reasons for denial were entirely reasonable. The requested items were not submitted with the waiver request and, Plaintiff's arguments to the contrary notwithstanding, FEMA had no obligation to search out latent claims or to contact Plaintiffs and personally interview him as to the existence of such possibilities. It is incumbent upon an insured to bring his claim to FEMA's attention and to point out how the SFIP covers those claims.

Plaintiff did not do so here. FEMA's decision to deny his late-submitted claims was not arbitrary and capricious.

6) <u>Daras</u>

In ten pages, the Master reviewed this case and found no arbitrary or capricious action on the part of FEMA in denying it.

Here, as did other Plaintiffs, Plaintiff relied on a square foot new construction formula to calculate his shortfall.

The Court has already discussed the infirmity of this argument in connection with the <u>Bonner</u> claim and incorporates those reasons here.

FEMA did not act arbitrarily or capriciously in rejecting this claim.

7) <u>Blann</u>

In his ten page Report, the Master recommends that this claim be remanded to FEMA for further consideration.

FEMA apparently read Plaintiff's original shortfall claim of $127,023 as being made in connection with the elevation of Plaintiff's home.[4] It concluded that the claim would not be compensable because elevation expenses are payable under the ICC and Plaintiff had already received the $30,000 maximum due under the ICC provision of the policy.

But while FEMA's interpretation of the intent of the claim may have been understandable, overall review of the documents Plaintiff submitted also suggests that Plaintiff's claim was not limited to the cost of elevation, but extended to repair and

---

[4] The shortfall was eventually reduced to $66,662.

replacement work to the dwelling, which would be covered by the Dwelling Coverage portion of the policy, not subject to the ICC cap.

The Court agrees with the Master that, while Plaintiff's claims may not be compensable in any event because, as counsel now says, they were insufficiently specific or detailed, that was not the stated basis for FEMA's denial of the claim. Therefore FEMA – not its counsel – must articulate its reasons for rejection of the claim, properly understood, if indeed its decision will be to reject the claim.

The Blann claim will be remanded to FEMA for reconsideration and review not inconsistent with the Court's decision.

8) Cook

Nine pages were issued by the Master in this case, at the end of which he found no arbitrary or capricious action by FEMA.

Plaintiff claims a shortfall of $27,688.

This is another instance of a Plaintiff using a square footage formula to calculate the cost of building a replacement dwelling, essentially asking for the limits of the policy after deducting previous payments.

As with the Bonner and other Plaintiffs, this method of calculation, *inter alia*, lacks specificity as to what direct physical damages were caused by or from the flood, *i.e.* were covered by the SFIP.

The Court incorporates its rationale from the Bonner and the other square footage cases in concluding that FEMA did not act arbitrary or capriciously.

9) Conroy

The Master devoted just over eight pages in finding that FEMA's denial of Plaintiff's claim was neither arbitrary or capricious.

This, too, is a square footage claim, where Plaintiff chose to rebuild rather than replace his dwelling. He seeks some $47,000. The Court's rationale from the earlier cases applies here. As stated in connection with other square footage claims, FEMA could fairly reject the claim.

FEMA did not act arbitrarily or capriciously.

10) Darr

The Report of the Master, just over nine pages, finds no arbitrary or capricious conduct on the part of FEMA and the Court agrees.

This, too, is a square footage claim based on the cost of constructing a replacement dwelling. As with the other cases where square footage of construction was the basis of the claim, this claim fails to specify how the SFIP was contravened, *i.e.* it does not indicate what direct physical damage was caused by flooding. As with the other such cases, FEMA could fairly reject that method (even if it were deemed "scientific") without engaging in arbitrary and capricious conduct.

Again, it is not amiss to remind that the SFIP is not a private insurance policy subject to, as the Master writes, "equitable glosses." *See Monistere v. State Farm Fire & Cas. Co.,* 559 F.2d 390 (5th Cir. 2009).

A separate Order will be entered implementing these decisions.[5]

                                                    /s/
                                  **PETER J. MESSITTE**
**February 17, 2011**                **UNITED STATES DISTRICT JUDGE**

---

[5] Defendant's Motions for Partial Summary Judgment pertain only to Count V of the First Amended Complaint, which in fact is the only count remaining in the case. It thus appears that, with the grant of Defendant's Partial Motions that, as to the first Group of Plaintiffs (with one exception), the case should be closed out as to all Defendants. The Court, however, will leave it to the parties to clarify whether closure at this point is in fact appropriate.