IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Southern Division

THOMAS L. MOFFETT, II, ET AL.

    Plaintiffs,   Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

    Defendants.

_____


Report and Recommendation Concerning
 The Waiver Claim of Joyce Deaver

This constitutes the Report and Recommendation to the Court concerning the claim of Joyce Deaver pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") a computer disc of the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 370 pages labeled FEMA-000001 to 000370.

## 1. Background

Plaintiff's property located at 905 Cold Spring Road, Baltimore, Maryland was insured by State Farm, a participating Write Your Own Company under the National Flood Insurance Program, under policy number 90-RA-8738-4 with a coverage limit of $67,300.00 for her building and $14,800.00 for her contents with each subject to a $1,000 deductible. See FEMA-0000005 and Supplemental Declaration of Karen Christian for the Claim of Joyce Deaver (Document 498-2) at ¶ 4

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. Id at ¶ 7.

On September 25, 2003, after Plaintiff notified State Farm that her home was damaged by Hurricane Isabel, State Farm inspected Plaintiff's home. See FEMA-000022.

On October 17, 2003, Plaintiff submitted her first Proof of Loss for building damages in the amount of $19,904.96 and contents damages in the amount of $5,634.96. See FEMA-000145. State Farm paid Plaintiff the full amount on a single check in the amount of $25,539.72. See FEMA-000139.

On October 28, 2003, Plaintiff filed a second Proof of Loss for an additional $5,456.65 in building damages. See FEMA-000144. State Farm paid this amount in full. See FEMA-000139.

On April 13, 2004, Plaintiff submitted a third Proof of Loss increasing her total building damage to $39,808.87, which included $503.22 in applicable depreciation. See Doc. No. 294-5, Exh. X. After deducting the depreciation and previous payment for the building damage, the net amount claimed was $13,944.04. Plaintiff also increased her contents damages by an additional $4,248.75 to $9,883.71. Id.

The April 13, 2004 Proof of Loss was untimely, but State Farm obtained a waiver from FEMA that permitted payment of the additional supplemental payment of $18,192.79 ($13,944.04 for building damage and $4,248.75 for contents damage). See Doc. No. 294-5, Exh. Y. State Farm then issued a check for full payment on the third Proof of Loss minus the depreciation amount. See FEMA-000018.

On June 16, 2004, State Farm paid Plaintiff the $503.22 in applicable building depreciation included in her April 13, 2004 Proof of Loss. See FEMA-000011.

On August 9, 2004, Plaintiff requested a review by the Task Force. See FEMA-000062.

On September 27, 2004, the Task Force completed its review of Plaintiff's claim and concluded Plaintiff was eligible for a supplemental contents payment of $4,916.29, which brought Plaintiff to her policy limit under the contents portion of her policy. Id. As far as the building damage was concerned, the Task Force concluded Plaintiff was not entitled to any additional compensation. Id. The Task Force found Plaintiff's contractor's estimate included uncovered items such as a chain link fence, seeding of the lawn, removal of trees, electrical work in the garage, deck removal, precautionary termite treatment, ceiling and roof repairs. See FEMA-000076. Further, it was determined that Plaintiff completed work on the property such as replacing the siding on the structure and garage, and additional work to the walls in the front room without requesting a re-inspection or communicating with State Farm. Id.

On October 21, 2004, in accordance with the findings of the Task Force cited above, Plaintiff submitted a fourth Proof of Loss increasing her contents damages by $4,916.29. See Doc. No. 294-5, Exh. BB. On October 26, 2004, State Farm paid this amount in full. See FEMA-000005.

Plaintiff submitted a total of four Proofs of Loss and was compensated a total of $54,608.87 for her building and contents claims after application of the $1,000.00 deductible to each, which represents full payment on all timely submitted and approved Proofs of Loss. Id.

II. **Waiver Claim and Denial**

On February 25, 2008, Plaintiff submitted an application for a waiver. See FEMA-000001 through FEMA-000009. The waiver application requested that FEMA compensate Plaintiff an additional $26,491.13, which is the difference after considering the $1,000 deductible between the policy limit of $67,300.00 and the payments made to Plaintiff totaling $39,808.87 on her building. See FEMA-000005. On July 31,2008, Plaintiff's claim for a waiver was denied. See FEMA-000046 to 000047.

III. **Reasons for Denial**

The reasons for the denial are provided in paragraphs 17 to 25 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Joyce Deaver (Document 498-2). They are:

*On February 25, 2008, Plaintiff submitted an application for a waiver. The waiver application failed to identify any provision of her SFIP she desired waived. See*

*FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA compensate Plaintiff an additional $26,491.13, which is the difference between the policy limit of $67,300.00 and the payments made to Plaintiff totaling $39,808.87 on her building. See FEMA-000005. As noted above, Plaintiff was previously paid policy limits under the contents provision of her SFIP. Id.*

*Plaintiff's waiver application included the same documents she previously submitted in support of her claim. See FEMA-000057. On July 31, 2008, FEMA denied Plaintiff's waiver request and provided her with the following explanation:*

*. . . you claim the covered flood repair damages exceed the amount allowed by your Write Your Own Company, State Farm Insurance. To support the amount claimed, you provided a list of itemized expenses for work performed. Your claim was originally reviewed by an independent adjuster, the Hurricane Isabel Task Force, and subsequently by a National Flood Insurance Program's General Adjuster in which recommendations resulted in supplemental payments for the building and personal property claims. All additional reviews of your claim concluded that no further payment was due. You failed to provide additional information that would support a change to the supplemental review. The documents you provided were previously reviewed by the Hurricane Isabel Task Force. The contractor's estimate revealed several items that are not covered by the SFIP as well as duplicate charges for overhead and profit. The amount charged for overhead and profit was well above the insurance industry standards. Moreover, several miscellaneous charges submitted could not be identified. Id.*

*Further, FEMA informed Plaintiff that her claim received an additional comprehensive review as a result of her waiver application by a FEMA Insurance Examiner and no uncompensated damages resulting from the flood were found. Id.*

*In other words, Plaintiff's claim was reviewed in detail by different reviewers on multiple occasions. There was no evidence of uncompensated physical loss by or from flooding. In her waiver application, Plaintiff failed to provide any line item documentation identifying any uncompensated physical losses caused by or from flood. See FEMA-000062.*

*Enclosed with her waiver application Plaintiff submitted a contract issued by Wheatley Associates, Inc., which was not dated or signed by Plaintiff, but at the bottom it was signed by the contractor on October 24, 2003. See FEMA-000032. Plaintiff did provide an April 20, 2004 Addendum to the contract that she signed. See FEMA-000046 and FEMA-000047. The documents provided with the waiver application are the same documents that can be found throughout the claims file and were reviewed on multiple occasions. There is no explanation of how the documents relate to flood damage. State Farm's adjustment, the Task Force review, and the review of the waiver application were based on the criteria set forth in the SFIP for covered direct physical losses by or from flood. See 44 CFR § 61, App. A(1) at Section II( B)(12). In addition, the SFIP only allows for replacement of materials with like kind and quality of existing materials. Id. at Section VII(K)(3)(a). There is no evidence of any uncompensated damage that meets the criteria set forth in the SFIP.*

*Plaintiff's waiver application does not meet the criteria for approval. First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP.*

*Second, she did not submit any new documentation explaining how the additional uncompensated items were covered under her SFIP.*

*Accordingly, on July 31, 2008, after another comprehensive review of the claim, Plaintiff's waiver application was denied because it was untimely, and because Plaintiff had not shown in her waiver application that she was entitled to further compensation under her policy. Id.*

## IV. Plaintiff's Assertions

In Plaintiff's Opposition (Document 554), Plaintiff states that she spent $85,622.35 to repair her property consisting of the work done by a local builder, Gary Wheatley, which amounted to $83,630.85 and was supported in the record by a 24 page contract with estimates and addenda from October, 2003 and April 2004. (FEMA 000025 to 000049). Plaintiff added to that amount a bill for blinds of $600.20 (FEMA 000053), a Stanley Steamer bill of $168.30 (FEMA 000052) and a termite treatment bill for $1,223 (FEMA 000050 to 51). This brought the total cost to her of $85,622.35. Opposition at page 4. While acknowledging that some of the work performed was excluded under the SFIP, Plaintiff asserts that she is owed $26,491.13 which is the difference between the amount FEMA has paid ( $39,808.87 ) and the maximum coverage she had on Building Coverage under the policy ( $67,300.00 ). See Opposition at page 5.

Plaintiff asserts that the adjusters' estimates were not adequate and based on out of date computer programs. More specifically, Plaintiff faults State Farm's unwillingness to fully pay for all the siding work that Plaintiff had done and to completely pay for all the plaster work on the home. See Opposition at page 5. Plaintiff feels that the Hurricane Isabel Task Force did not give sufficient weight to the contractor's further explanation of the need for the siding and plaster work. It was his view that the siding could not be repaired because he could not match the old siding with any available new siding. Thus, the whole house had to be resided. Opposition at page 6. Plaintiff also felt that the explanation given for the need to plaster above the water damage level was reasonable and should have been accepted by the Task Force. Opposition at page 6. Plaintiff also disagrees with the FEMA's questioning of the overhead and profit submissions of the contractor. Opposition at page 7.

Plaintiff also takes issue with a response sent to Senator Mikulski by a FEMA representative as not adequately justifying FEMA position of refusing to pay the full amount of coverage. Plaintiff believes that her waiver application submitted in February , 2008 was specific and documented and sufficiently itemized her unreimbursed damages. (FEMA 000024 to 55). Opposition at page 8.

Plaintiff asserts at page 9 of the Opposition that FEMA and the WYO companies did not have the personnel or training to adequately assess the damages sustained. Plaintiff claims that they wanted to quickly review the claims and close the file and were unwilling to be moved from their original positions once established.

**V. Special Master's Analysis**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by the Plaintiffs including this Plaintiff. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different from those already ruled on by the District Court.

As to Plaintiff Deaver's claim, FEMA notes in its Reply (Document 584 ) that Plaintiff in its application for waiver in this case (FEMA 000001 to 09) does not articulate what was not covered under SFIP, what was already compensated for by the payments made and what specifically was claimed for as being compensable under the SFIP. While documentation was submitted including the contract and detail and addenda provided in 2003 and 2004, there was no effort made by Plaintiff to point to specific items that were not covered that should have been covered under SFIP's provision. The Shortfall

Itemization (FEMA 000024) does not mention the claim for siding and the claim for plastering as being items that Plaintiff was making specific claims of coverage. It was only in the Opposition filed by the Plaintiff where for the first time these issues are discussed and analyzed by the Plaintiff.

The Special Master agrees with FEMA that it was incumbent upon the Plaintiff in the waiver application to demonstrate the errors with specificity and to document how any item not compensated for met the terms of the SFIP. It is too late for Plaintiff to begin to make this showing for the first time on judicial review after the agency action and determination is completed.

In any event, it appears to the Special Master that FEMA carefully looked at this claim evaluated it with the WYO insurer and took extra care because of the interest expressed by Senator Mikulski in this claim.

In the waiver application, Plaintiff did not submit any new evidence or expert opinion. The materials submitted largely consisted of the contracts and invoices prepared in 2003 and 2004 and which were discussed and reviewed numerous times with apparent care by FEMA and its Hurricane Isabel Task Force. In fact, these reviews lead to increased payments being made to Plaintiff.

As FEMA states in its Reply at page 7:

In her request Plaintiff made no effort to separate the damage that State Farm (in its initial adjustment) and FEMA (in the general adjuster review and Isabel Task Force review) had identified as compensable and for which Plaintiff has been paid. See id. at ¶¶ 18 through 20. Plaintiff lumps it all together, and leaves it for FEMA to figure out. That is not FEMA's burden when addressing a waiver request, however, and FEMA's decision not to grant such a request is not arbitrary or capricious.

The Special Master agrees with FEMA on this point and this is consistent with the

the rulings of the court on the burden of the waiver claimant to articulate the specific

reasons why a waiver should be granted that are consistent with the SFIP.

FEMA in its Reply at pages 9 to 11 also explains why its determinations on the siding

and plaster issues were reasonable and not arbitrary or capricious:

First, Plaintiff identifies $16,400.00 to replace siding. The independent adjuster sent out by State Farm who viewed the insured property and performed the initial evaluation of the claim found some damage to the siding and allowed for repairs. See, e.g., FEMA-000112 through FEMA–000132; 000165. Plaintiff did not present information to State Farm showing that there was additional undiscovered damage that she claimed resulted from flooding and that necessitated total replacement. Indeed, the exterior of the property suffered flood damage up to two feet, four inches. See FEMA-000141. Because the SFIP only covers damage directly caused by flood, there is no basis to replace all of the structure's siding. Plaintiff also seeks compensation for siding on the detached garage. The insurer examined the garage as part of the adjustment, and determined that only minimal repair was required as a result of flood. See FEMA-000118 and FEMA-000062. FEMA was not arbitrary and capricious when it denied the waiver request because, assuming the damage had been properly identified in the waiver application (which it was not), Plaintiff did not timely bring the issue to the attention of the insurer; the insurer reviewed the siding and determined that it only needed to be repaired, not replaced; the SFIP only pays for actual damage; and there is no basis to conclude that any more than two feet, four inches of siding were actually damaged by the flood.
Plaintiff also identifies in her Opposition plaster as an additional compensable damage. She did not specifically identify additional plaster in her waiver application. The State Farm adjuster who examined the property found some damage to the plaster and an amount for plaster repairs was included in the adjuster's estimate. See, e.g., FEMA-000161 through FEMA-000162. Similar to the siding, Plaintiff completed repairs without requesting a re-inspection by State Farm to determine whether there was additional flood damage to the plaster. See Supp. Christian Dec., Doc. No. 498-2 at ¶14. However, there was only six inches of water on the interior – there was no basis under the SFIP to pay Plaintiff to re-plaster every interior wall, as Plaintiff now argues. The SFIP limits coverage to "direct physical loss by or from flood." See 44 C.F.R. App. (A)(1), art. 1. Plaintiff provides no reason why plaster above the six inch waterline would just fall off the wall and ceiling. Plaintiff provided no demonstrable evidence that this was due to the flood or why the damaged plaster could not be sealed and repaired

below the waterline once all the water was extracted and dried. Further, Again, FEMA was not arbitrary when denying a waiver for additional compensation for Plaintiff to re-plaster the entire interior of her home.
When the independent adjuster investigated and examined the property, he allowed for repair and cleaning for the siding and wrapping. See, e.g., FEMA-000165. He did not find that all of the siding needed to be repaired and, indeed, with approximately two feet, four inches of exterior flooding, there would be no coverage for most of the siding, which was not directly damaged by flood.

Many of the points FEMA makes about the reasons it decided these issues the way it did can be argued with, but the task of the Special Master is to determine whether the decision not to grant the waiver claim was arbitrary or capricious or an abuse of discretion. Given the restricted nature of the SFIP coverage as discussed in the Report and Recommendation of the Special Master on Generic Issues Raised by Plaintiffs and Defendants and the review and actions taken by FEMA to evaluate the claim there is simply no grounds for concluding that Plaintiff has met her burden on judicial review. FEMA's explanations for denial of the waiver are reasonable and appear to comply with the SFIP which is the document governing the coverage.

In the final part of its opposition at pages 9 to 13 , Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the District Court's memoranda rulings and the Special Master believes that those rulings would also apply to the arguments made by Plaintiff in this case.

**VI. Recommendation of Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiff's waiver application be granted and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

Date: March 11, 2011                                  _____/s/_____
                                                                    Dennis M. Sweeney
                                                                    Special Master