IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

THOMAS L. MOFFETT, II, ET AL.

       Plaintiffs,                              Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

       Defendants.

_____


Report and Recommendation Concerning
<u>The Waiver Claim of Wanda Dickey</u>


This constitutes the Report and Recommendation to the Court concerning the claim of Wanda Dickey pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 448 pages labeled FEMA-000001 to 000448.

## I. Background

Plaintiff's property located at 2810 3rd Street, Sparrows Point, Maryland was insured by Harleysville, a participating Write Your Own Company under the National Flood Insurance Program, under policy number 99016005102003 with a coverage limit of $135,000.00 for her building subject to a $1,000 deductible. Supplemental Declaration of Karen Christian For the Claim of Wanda Dickey (Document 499-2) at ¶ 4.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. See FEMA-000158 through FEMA-000161.

On September 22, 2003, Plaintiff notified Harleysville that her home was damaged by Hurricane Isabel, Harleysville inspected Plaintiff's home. See FEMA-000159.

Plaintiff requested an advance payment on her loss and on September 30, 2003, Harleysville issued a check for $10,000.00. See FEMA-000033 and FEMA-000145.

On October 27, 2003, Plaintiff submitted a Proof of Loss for $32,680.94. See FEMA-000024. On November 23, 2003, Harleysville issued a check for $22,680.94, which represented payment in full on the Proof of Loss after applying the $10,000.00 advance. See FEMA-000024 and FEMA-000037.

Plaintiff submitted an undated Statement as to Full Cost of Repair or Replacement claiming her recoverable depreciation totaled $10,060.26. See FEMA-000157. On April 27, 2004, Harleysville issued a check for the recoverable depreciation totaling $9,672.73. See FEMA-000333. Harleysville explained that the amount was slightly reduced because the original adjustment included appliances, which were not eligible for recoverable depreciation under Article VII(4)(f) of the Standard Flood Insurance

Policy ("SFIP"). See FEMA-000334. FEMA asserts that Plaintiff's contention that the $10,060.26 is "UNPAID" is not accurate. FEMA states it was paid in part namely in the amount of $9,672.73. Supplemental Declaration of Karen Christian ¶ 8.

Plaintiff requested review by the Hurricane Isabel Task Force ("Task Force"). On June 14, 2004, the Task Force completed its review of Plaintiff's claim and made adjustments based upon the evidence Plaintiff submitted, which resulted in eligibility for a supplemental payment of $11,363.90. See FEMA-000098.

On June 27, 2004, in accordance with the approved amount from the Task Force, Plaintiff submitted a supplemental Proof of Loss for $11,363.90. See FEMA-000025.

On July 21, 2004, Harleysville issued a check to Plaintiff for $10,710.90. See FEMA-000030. $653.00 was deducted to account for a premium shortage. See FEMA-000418. The $10,710.90 and the $653.00 payments total $11,363.90, which is payment in full of the amount authorized by the Task Force.

In addition to amounts paid above, Plaintiff was compensated her policy limit under the Increased Cost of Compliance coverage ($30,000.00) of her SFIP, which is not contested. See FEMA-000005.

Plaintiff did not file any subsequent Proof of Loss for compensation under the building coverage provision of her SFIP until she submitted her waiver application which is the subject of this review. See FEMA-000005.

## II. Waiver Claim and Denial

On February 25, 2008, Plaintiff submitted an application for a waiver. See FEMA-000001 through FEMA-000009. Plaintiff's claimed shortfall was $21,132.81. On July 31, 2008, after review of her claim, Plaintiff's waiver application was denied because her waiver application was untimely and there was no direct physical loss caused by or from the flood that FEMA concluded Plaintiff had not received full compensation for. See FEMA-000095 and FEMA-000096.

## III. Reasons for Waiver Denial

The reasons for the denial are provided in paragraphs 13 to 21 of the Supplemental Declaration of Karen Christian with Respect to the Claim of Wanda Dickey (Document 499-2). They are:

*On February 25, 2008, Plaintiff submitted an application for a waiver. The waiver application failed to identify any provision of her SFIP she desired waived. See FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA compensate Plaintiff an additional $21,132.81. See FEMA-000005. Plaintiff calculated the replacement cost of her former building utilizing an unscientific formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling. Id. Plaintiff calculated the replacement cost of her former dwelling as $86,561.28. Id. Plaintiffs arrived at $21,132.81 by applying*

4

*her policy limit against the alleged replacement cost of her old dwelling and further deducting all previous payments for building damage. Id.*

*Plaintiff's method of calculating her damages by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded building does not take into account the SFIPs coverage limits and exclusions.*

*Plaintiff was actually paid a total of $53,717.57 after application of the $1,000.00 deductible on her building ($10,000.00, $22,680.94, $9,672.73, $10,710.90 and a deduction of $653.00 due to a premium shortage) and $30,000.00 under the Increased Cost of Compliance provisions of her policy. See FEMA-000339. As noted above, Plaintiff improperly calculated her total compensation as $64,428.47. See FEMA-000005. Harleysville never issued the July, 2004 payment of $11,363.90 that Plaintiff lists in her waiver application. Id.*

*Plaintiff made the decision to demolish her residence and rebuild. Id. Plaintiff provided a substantial damage letter from the Baltimore County Buildings Engineer's Emergency Response Team. See FEMA-000014 and FEMA-00034. The County's report and letter do not itemize any additional damages caused by or from flood that would warrant additional compensation to Plaintiff under her SFIP. The SFIP only compensates for direct physical loss by or from flood. See Exhibit A at ¶ 16. The letter was required in order for Plaintiff to receive compensation under the Increased Cost of Compliance provision of her SFIP. Id. at ¶ 15.*

*The letter from the County tells Plaintiff that if she rebuilds her damaged home, she must comply with certain regulations. See FEMA-000020. The SFIP excludes the cost*

*of complying with any local ordinance requiring the demolition of the structure, land movement or sinking of the property. See 44 CFR § 61, App. A(1) at Section V. Plaintiff's original structure was built on January 1, 1929. See FEMA-000097. The unscientific formula Plaintiff utilized to calculate the replacement of her original building was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. See Exhibit A at ¶ ¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for ICC expenses and Plaintiff's formula makes it impossible to separate out these expenses.*

*Harleysville and the Task Force thoroughly reviewed Plaintiff's claim and properly calculated the amount of compensation she was entitled to. The waiver application review was not limited to the specific request, but was a comprehensive review of the entire claim and FEMA concluded Plaintiff was properly compensated for her loss. See FEMA-000035 and FEMA-000036. Plaintiff was notified that her waiver was denied for the following reasons:*

*. . . you claim your damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided estimates for the replacement of your home. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force which recommended a supplemental adjustment in the amount of $11,363.90 that was paid by your Write Your Own Company, Harleysville Insurance Company. You also filed an Increased Cost of Compliance claim and received $30,000 payment, the maximum amount of coverage.*

*All reviews of your claim concluded the carrier's final evaluation was accurate and no further payment is owed.*

*Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.See FEMA-000096.*

*Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver. First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit a detailed line-item documentation of damages caused directly by flooding to her original building, but instead utilized an unscientific formula to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.*
*Accordingly, on July 31, 2008, after another complete review of her claim, Plaintiff's waiver application was denied because her waiver application was untimely and there was no direct physical loss caused by or from flood that Plaintiff had not received full compensation for. See FEMA-000095 and FEMA-000096.*

## IV. Plaintiff's Assertions

Plaintiff contends that her house at 2810 3rd Street in Sparrows Point was substantially damaged by the flooding which did not reside for several days. At one point, there was a 5 foot water line on the exterior of the home and an interior water line of 28 inches. Opposition (Document 555) pages 3 to 4. There was extensive damage on the first floor of the home which Plaintiff asserts is well documented throughout the file and even in the report prepared by FEMA's adjustor. Id at pages 4 to 5. Plaintiff asserts that she was not able to obtain estimates for repair that matched the adjustor's figures. In one case an estimate was 24% higher and in another there was a 27 % difference. The home had to be elevated per the requirements of Baltimore County which greatly increased the cost of repair. Id at page 6.

Plaintiff says that she had "no choice but to conclude that a new structure would be the only safe and economical alternative to repairing and elevating a 74 yr old home that had been flooded for several days." Id at page 7.

In Plaintiff's view, the only course of action available to her was for her to demolish the dwelling and rebuild on the original footprint. The cost for the new dwelling was $168,855.00. Id at page 7.

In the argument section of her Opposition, Plaintiff alleges that FEMA was wrong to reject her formula for calculating damages which Plaintiff has recalculated in her Opposition because of square foot adjustments that she was not aware of when filling her waiver claim. The claim is now set out at page 10 of the Opposition to be:

8

|   | $174,527.20 | - | Total cost of new home |
|---|---|---|---|
|   | -$30,000.00 | - | ICC $$ received |
| = | $144,527.20 | - | Total cost of new home less ICC $$ |
| ÷ | 1816 | - | Square footage of new home |
| = | $79.56 | - | Cost per square foot |
|   | x   1797 | - | Square footage of original home |
| = | $142,969.32 | - | Cost to restore original home to pre-flood condition. |

Since the figure above exceeds the policy limits, Plaintiff then proceeds from the policy limits in her calculations:

|   | $135,000.00 | - | Policy limits |
|---|---|---|---|
|   | -$1,000.00 | - | Deductible |
|   | -$53,717.57 | - | Harleysville payments to flood claim (see footnote 2 above) |
| = | $80,282.43 | - | Revised Shortfall |

As Plaintiff recognizes at pages 9 to 10 of her Opposition, the $80,282.43 claimed shortfall now projected is a dramatic four fold increase from the $21,132.81 claim made in the waiver application which was the subject of FEMA's review. This change is due

according to the Plaintiff because she originally calculated the square footage of the original home at 1,088 square feet when its actual square footage was 1,797.

Plaintiff recognizes that FEMA has repeatedly rejected the formulation that she proposes for calculating damages under the SFIP that applied to her home. However she argues at page 9 of the Opposition:

"First, there is nothing unscientific about limiting your claim to a like-for-like house rather than claiming the cost of a larger house. You can bet your last dollar that, had Ms. Dickey claimed recovery for the cost of a larger house, FEMA would have objected. Second, there is nothing unscientific in claiming a construction cost per square foot at which a contractor will build your house rather than (as FEMA did) choosing a low-ball per square foot cost that no contractor would touch."

It is the Plaintiff's contention that the computerized programs FEMA uses do not take into account all the damages, are low in their unit pricing, and make it impossible to replace like kind with like kind for a structure that is 75 years old, particularly one that had water sitting in it for several days."

**V. Special Master's Analysis.**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the

Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by the Plaintiffs including this Plaintiff. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

The issues raised by Plaintiff Dickey have already been covered in the District Court's memorandum opinions. Identical arguments to the ones made here were made by many of the Plaintiffs in Group 1 and those claims were rejected by the court.

It is asserted that FEMA not only should but must accept the formula for calculating damages that Plaintiff has devised of using the square foot cost of building a new home and them applying it to the square footage of the pre-existing home. As the Special Master has noted earlier, there is nothing in the law or the SFIP that requires FEMA to adopt this calculus and it is contrary to the SFIP.
Karen Christian in her affidavit adequately explains why FEMA does not accept the formulation. Simply put it is for the agency to make the determination about the methods and formulas it will use to apply the law as long as they are reasonable.
This is especially the case where FEMA is applying a very specialized insurance policy where the inter-relationship between Building Coverage and the ICC coverage create

unique problems of parsing out how the damages should be adjusted.  Plaintiff here received the full amount of ICC coverage at $30,000 which was all that is allowed even if more was expended by the Plaintiff in such activities.  Teasing out that component from the total amount actually expended by Plaintiff and concentrating only on the "direct physical loss by or from flood" that the SFIP covers is a challenging exercise that is particularly difficult given the passage of time and the lack of any expert opinion evidence presented by Plaintiff.

However, in the waiver process it was Plaintiff's burden to show once FEMA presented the record before this court that FEMA should have allowed a waiver claim under the law and the SFIP at issue.  Plaintiff has not done so and FEMA was not obligated to accept the formulation put forth by the Plaintiff.

After a review, the Special Master has concluded that the reasons given by FEMA for the denial of the waiver claim for reasons other than untimeliness are not arbitrary or capricious and that FEMA did not abuse its discretion in denying the claim.

In the final part of its opposition at pages 11 to 16 , Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been resolved in FEMA's favor by the court's memorandum opinions and nothing unique is raised by Plaintiff Dickey's situation that merits further consideration of those issues.

**VI. Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiffs' waiver application be granted and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

Date:  March 11, 2011   _____/s/_____
Dennis M. Sweeney
Special Master