IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

THOMAS L. MOFFETT, II, ET AL.

Plaintiffs, Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

Defendants.

---

Report and Recommendation Concerning
The Waiver Claim of Jennifer Dieux and Eric Mackay

This constitutes the Report and Recommendation to the Court concerning the claim of Jennifer Dieux and Eric Mackay pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 522 pages labeled FEMA-000001 to 000522.

## I. Background

Plaintiffs' property located at 1202 Bayview Avenue, Shady Side, Maryland was insured by Fidelity under policy number 99018609282003 with a coverage limit of $76,300.00 for their building subject to a $1,000 deductible. See FEMA-000177 through FEMA-000179.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home. See FEMA-000152 through FEMA-000153.

On September 20, 2003, after Plaintiffs notified Fidelity[1] that their home was damaged by Hurricane Isabel, Fidelity sent an independent adjuster from Simsol Insurance Services to inspect Plaintiffs' home. See FEMA-000231 through FEMA-000323.

The independent adjuster found Plaintiffs' home was damaged, but that only eight inches of standing water entered Plaintiffs' home with a 32 inch surge on the exterior. Id.

On October 6, 2003, Fidelity issued a check for $10,000.00 as an advance on their claim. See FEMA-000259. Plaintiffs lost this check and it was reissued on October 11, 2004. See FEMA-000284.

On January 15, 2004, Plaintiffs submitted a Proof of Loss for $44,277.83. See FEMA-000221. On January 21, 2004, Fidelity issued a check for $34,277.83 as full

[1] Fidelity purchased the book of business of Omaha Property and Casualty Insurance Company. While both Fidelity and Omaha are referred to in this Report and Recommendation there is only one policy at issue and Fidelity/Omaha is the W.Y.O. insurance company.

payment after applying the advance of $10,000.00 referenced above. See FEMA-000287.

On May 7, 2004, Fidelity issued a payment of $5,265.48, which was payment for recoverable deprecation. See FEMA-000183.

Plaintiffs requested review of their claim by the Hurricane Isabel Task Force ("Task Force"). On September 16, 2004, the Task Force concluded its review of the claim and after adjustments to the claim determined Plaintiffs were entitled to a supplemental payment of $19,078.10. See FEMA-000177. The Task Force noted this amount was about $500.00 more than the estimate to repair their property calculated by the Anne Arundel County Building Inspector for their substantial damage report. Id.

On October 1, 2004, in accordance with the findings of the Task Force, Fidelity issued a check for $19,078.10. See FEMA-000285.

Plaintiffs were paid a total of $68,621.41 for the damage to their building. See FEMA-000177. In addition, on May 26, 2005, Plaintiffs were issued an advance of $15,000.00 under their Increased Cost of Compliance Coverage. See FEMA-000279 and FEMA-000280.

**II. Waiver Claim and Denial**

On February 28, 2008, Plaintiffs submitted a waiver application. FEMA-000001 to FEMA-000009. Plaintiffs sought an additional $44,456.69. On August 18, 2008, after a review of the claim, Plaintiffs' waiver application was denied because it was untimely,

and because Plaintiffs failed to show they were entitled to further compensation under their policy. FEMA-000152 to FEMA- 000153. .

**III. Reasons for Waiver Denial**

The reasons for the denial of the waiver claim are set out in the Supplemental Declaration of Karen Christian for the Claim of Jennifer Dieux and Eric Mackay (Document 500-2). The reasons given are:

*On February 25, 2008, Plaintiff submitted an application for a waiver. The waiver application failed to identify any provision of her SFIP they desired waived. See FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA authorize Fidelity to compensate Plaintiffs an additional $44,456.69. See FEMA-000005. Plaintiffs based this amount upon "estimated" payments applied against the wrong policy limit. At most Plaintiffs are entitled to $7,678.59 (The policy limit of $76,300.00 minus the total payments of $68,621.59 (The $1,000.00 deductible has already been applied)).*

*Plaintiffs' waiver application included the same documents they previously submitted in support of their claim that had been reviewed on multiple occasions. See FEMA-000153. On August 18, 2008, FEMA denied Plaintiff's waiver request and provided them with the following explanation:*

*You claim your covered flood repair damages exceed the payment received as a result of the flooding. To support the amount claimed, you provided documentation and*

*estimates for the demolition and reconstruction of your home. You have received payment for the maximum amount of coverage under the Increased Cost of Compliance for demolition of your structure from your Write Your Own Company, Omaha Property & Casualty. The information you have submitted appears to have duplications and lacks adequate documentation to substantiate additional claim payment. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. All reviews of your claim concluded that your carrier's estimate for repair was accurate.*

*Id.*

*Further, FEMA informed Plaintiffs that their claim received an additional comprehensive review as a result of their waiver submission by a FEMA Insurance Examiner and no uncompensated damages resulting from the flood were found. Id.*

*In other words, Plaintiffs' claim was reviewed in detail by different reviewers on multiple occasions. There was no evidence of uncompensated damages caused by the flood. Plaintiffs' waiver application fails to identify any specific damages directly caused by the flood for which they did not receive full compensation for. Instead, Plaintiffs assert they received an estimate to repair their home of $164,000.00, an estimate of $185,000.00 to build a new home and have spent in excess of $400,000.00 on the actual construction of their new substantially improved residence. See FEMA-000005.*

*Plaintiffs made the election to demolish their original building and to build an upgraded structure. See FEMA-000005. The 32 inch flood surge on the exterior and only eight inches of interior water did not necessitate the demolition of the original building. See*

*FEMA-000231. The SFIP only provides compensation for direct physical losses by or from flood. There is no documented damage to Plaintiffs' former home caused by the flood for which Plaintiffs were not fully compensated and Plaintiffs failed to identify any uncompensated damage caused by flood.*

*At the time of the Hurricane, Plaintiffs' residence was a two story structure built on January 1, 1944. See FEMA-000013. Plaintiffs' construction claim in excess of $400,000.00 significantly exceeds industry standards and can only be attributed to upgrades on an almost 60 year old home. Plaintiffs failed to provide detailed line-item documentation of the amount they seek and how it is attributable to the flooding caused by the Hurricane.*

*Fidelity's independent adjuster's estimate and subsequent Task Force review were based on covered direct physical damages by or from flood in accordance with the SFIP. See 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. Id. at Section VII(K)(3)(a). As stated above, Plaintiffs provided a substantial damage report from the Anne Arundel County Building Inspector, which calculated the cost to repair Plaintiffs' home as $68,156.97, which is approximately $500.00 less than Plaintiffs were compensated by Fidelity. See FEMA-000011.*

*Plaintiffs' claim was subjected to an extraordinary level of review. There is no evidence of uncompensated damages.*

*Plaintiffs' waiver application does not meet the criteria for approval. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP.*

*Second, they did not submit any new documentation explaining how the additional uncompensated items were covered under their SFIP.*

*Accordingly, on August 18, 2008, after a comprehensive review of the claim, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs failed to show they were entitled to further compensation under their policy. Id.*

**IV. Plaintiffs' Assertions**

Plaintiffs assert that their home sustained substantial damage on September 18, 2003 when flood water rose to approximately 32 inches on the outside of the house and at least 8 inches of standing water which remained in the home for at least 24 hours. Opposition (Document 556) at page 4. Plaintiffs acknowledge that their original shortfall itemizations as set out in their waiver claim were incorrect and based on the total cost to repair their home which they calculated as $465,521.18. (FEMA--000033). Using a Structure Policy limit of $107,000.00[2] and deducting the compensation paid of $61,543.31 as well as the deductible of $1,000.00 they calculated the structure shortfall of $44,456.69. (FEMA 000033). They indicate at page 11 of the Opposition that that their Shortfall Itemization contained items that were considered in Simsol's estimate and Omaha's payments to Plaintiffs. They indicate that it was meant to be an "overview of expenses Plaintiffs incurred following the flood from Isabel." Opposition page 11.

---

[2] Defendants assert that Plaintiffs coverage was reduced to $76,300 due to their failure to submit the proper premium amount. See,Karen Christian Declaration (Document 500-2) at ¶ 4.

In their Opposition, Plaintiffs now seek to substantially change their Shortfall Itemization. They no longer rely on the actual reconstruction costs but rely on the estimation from the C.H. Jackson Colonial Remodeling company. The revision appears now in Plaintiffs' Opposition at page 9 as follows:

"The shortfall for Ms. Dieux and Mr. MacKay's claim, as filed on February 25, 2008, was incorrectly identified as $44,456.69; after making the above changes, the actual shortfall should be reflected as $37,378.59 for the structure and $15,000.00 for ICC. Therefore Plaintiffs' total shortfall has been adjusted to $52,378.59. The revised Shortfall Itemization summary is, therefore:

$ 113,800.00 C. H. Jackson Colonial Remodeling (repair original home to pre-flood condition)

Exceeds policy limits

$107,000.00 Policy Limits

-

-$ 1,000.00 Deductible

-

-$ 68,621.41 Omaha Property and Casualty compensation

=

$37,378.59 Shortfall for Structure

$ 32,500.00 Framing Unlimited, Inc. (demolish damaged home and build elevated foundation)

-

$ 30,000.00 Policy Limits for ICC Claim

-

-$15,000.00 Omaha Property and Casualty compensation

=

$15,000.00 ICC Shortfall

$37,378.59 Shortfall for Structure

+

$15,000.00 Shortfall for ICC

=

$52,378.59 Total Shortfall”

Plaintiffs criticize the review done by FEMA of the claim for what they view as relying on a defective computerize adjusting program that produce “low ball repair estimates.” Opposition at page 11. Plaintiffs claim that the “lackluster nature of the handling of this claim” and the deficiencies in the review are evidence of an arbitrary and capricious nature of the decision made here.

Plaintiffs' Opposition seems to be grounded on a critique of the review of the claim that occurred between February and July 2008 in the waiver application process. They feel that the response they received was "boilerplate" and they complain that there is no documentation of the review that did take place in the file before the court other than the declaration of the reviewers. See Opposition at page 12. Plaintiffs even question whether any review did take place of the claim. Opposition at page 13.

**V. Special Master's Analysis**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by the Plaintiffs. The Special Master does not believe that issues resolved by the District Court's memorandum opinions

need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

Plaintiffs have substantially changed their shortfall claim here both as to the basis for it and the amounts claimed. This is done in their Opposition to Defendant's Motion for Summary Judgment. In the Special Master's view this revision is more than merely adjusting numbers or accounting for errors in computation, but changes the claim and the grounds for it.

Defendants have reasonably explained in the Declaration of Ms. Christian why they did not find a basis for granting the waiver application on grounds other than untimeliness. She relied on the declaration of Deborah Price that was already on file in this case in Document 316-2 which the Special Master has also reviewed.

The Special Master agrees with these declarations that the original waiver application did not identify with specificity the additional damages that Plaintiffs claimed were not paid but were clearly due under the SFIP. Plaintiffs did not make the showing in the original waiver application and in any event they now admit that application was not sufficient and ask the Special Master and the Court to accept a new shortfall itemization that was not reviewed in the administrative process. Plaintiffs' claim was one that had already been subjected to the summary judgment process in this court and there is no reason why the Plaintiffs should not have been prepared to submit a fully articulated claim to FEMA in the waiver application process.

As Defendants note at pages 7-8 of their Reply, the Plaintiffs still do not provide even with their new shortfall itemization any level of specificity and do not show how the claim made is covered under the SFIP. For example, Plaintiffs do not establish that the second ICC payment of $15,000 can still be paid when they make no showing that the work was completed within the two year period required by the SFIP. 44 C.F.R. Part 61, App. (A) (1), art. III, Coverage D, 5 (e).

FEMA's reasons for denial of the waiver request that are set out above are in the Special Master's view in compliance with the law and the SFIP. Plaintiffs have not shown that the denial of the waiver was arbitrary or capricious or an abuse of discretion.

In the final part of its opposition at pages 14 to 21, Plaintiffs reiterate the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been dealt with the U.S. District Court's Memorandum Opinions cited above and there is nothing unique about Plaintiffs' claims here that require any further discussion.

**VI. Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for

Partial Summary Judgment affirming FEMA's determination on Plaintiffs' waiver application be granted and it is further recommended that Plaintiffs' Motion for Summary Judgment be denied.

Date: March 11, 2011

______________________________
Dennis M. Sweeney
Special Master