IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

THOMAS L. MOFFETT, II, ET AL.

    Plaintiffs,                                Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

    Defendants.

_____

Report and Recommendation Concerning
<u>The Waiver Claim of Joanne Dolgow</u>

This constitutes the Report and Recommendation to the Court concerning the claim of Joanne Dolgow pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 1,023 pages labeled FEMA-000001 to 001023.

**I. Background**

Plaintiff's property located at 2025 Sue Avenue, Essex, Maryland was insured by Omaha, a participating Write Your Own Company under the National Flood Insurance Program, under policy number 350909649 with a coverage limit of $125,000.00 for her building and $30,000.00 for her contents with each subject to a $500.00 deductible. See FEMA-000005.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. Id. Water entered Plaintiff's property and the home. See FEMA-001000.

On September 28, 2003, after Plaintiff notified Omaha that her home was damaged by Hurricane Isabel, an independent adjuster assigned by Omaha inspected Plaintiff's home. See FEMA-000589 through FEMA-000593.

FEMA asserts that Plaintiff failed to present her contents damage to the adjuster and other than compensation for her washer/dryer, no compensation was recommended by the independent adjuster for contents damages. Id.

Based upon the recommendation of the independent adjuster, an independent inspection by an engineer and a re-inspection by a FEMA General Adjuster, Omaha compensated Plaintiff a total of $21,051.18 in building damages and $0 for contents damages. (On November 24, 2003, Plaintiff was provided an advance payment of $5,000.00. See FEMA-000752. On December 2, 2003, Plaintiff was provided with another advance payment of $10,000.00. See FEMA-000751. On May 28, 2004, Plaintiff was paid $6,051.18). See Doc. No. 316-2 at 52.

On January 8, 2004, Plaintiff submitted a signed and sworn Proof of Loss that had handwritten amounts without any supporting documentation for $172,496.92 for her building and contents losses to Omaha. See FEMA-000645.

On January 23, 2004, Omaha rejected Plaintiff's Proof of Loss due to the total lack of documentation and concluded Plaintiff was fully compensated to the maximum amount based upon the inspections of her property. See FEMA-000641 through 000643.

On March 22, 2004, Plaintiff submitted a Proof of Loss for Increased Cost of Coverage compensation in the amount of $30,000.00. See FEMA-000042. On April 1, 2004, Plaintiff was provided with an advance payment of $15,000.00 for the Increased Cost of Compliance claim ($1,734.00 was deducted due to an underpayment of premiums). See FEMA-000005 and FEMA-0000747.

**II. Waiver Claim and Denial**

On February 25, 2008, Plaintiff submitted an application for a waiver. See FEMA-000001 through FEMA-000009. Plaintiff sought an additional $133,920.82. On July 31,2008 Plaintiff's waiver application was denied in a letter from FEMA. See FEMA- 000119 to FEMA- 000120. .

**III. Reasons for Waiver Denial**

The reasons for the denial are provided at paragraphs 12 to 21 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Joanne Dolgow (Document 501-2). They are:

*On February 25, 2008, Plaintiff submitted an application for a waiver. The waiver application failed to identify any provision of her SFIP she desired waived. See FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA compensate Plaintiff $133,920.82, which is her policy limit minus the payments made by Omaha. See FEMA-000005.*

*Plaintiff lists Proofs of Loss in the amounts of $22,649.30, $14,565.06, $72,496.42, $6,685.16 and $6,051.18. Id. Plaintiff included with her waiver application an unsigned and undated Proof of Loss for $22,649.30 (See FEMA-000038), an unsigned and undated Proof of Loss for $14,565.06 (See FEMA-000039), an altered illegible Proof of Loss for $172,496.12 (See FEMA-000040. A signed legible version can be found at FEMA-000645), an unsigned and undated building replacement Proof of Loss for $6,685.16 (See FEMA-000041), and an Increased Cost of Compliance Proof of Loss for $30,000.00 (See FEMA-000042).*

*None of these Proofs of Loss met the requirement of Plaintiff's SFIP Article VII(J)(4) because they lacked supporting documentation. Further, the SFIP requires all Proofs of Loss to be signed and sworn.*

*On July 31, 2008, FEMA denied Plaintiff's waiver request and provided her with the following explanation:*

*. . . you claim the actual building and personal property damage exceeded the amount paid by your Write Your Own Company, Omaha Property and Casualty. They also issued a partial payment to you for demolition benefits under the Increased Cost of Compliance coverage. To support the supplemental claim, you provided an estimate for mold and foundation damage, and an inventory list of damage to personal property.*

*Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. The Hurricane Isabel Task Force obtained an engineer's inspection and evaluation of the structural damage to your home.*

*All reviews of your claim concluded the carrier's estimate of flood related damages was accurate. Foundation damage was found to have pre-existed. Your claim for damage caused by mold was denied due to your failure to mitigate your damages after flood waters receded from the property. The personal property claim was denied as the items were discarded prior to the adjuster's inspection. Also, documentation was never submitted to substantiate the personal property.*

*Further, your waiver resulted in a comprehensive review of your claim by a FE[M]A Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.*

*See FEMA-000119 and FEMA-000120.*

*In other words, Plaintiff's claim was reviewed in detail by different reviewers on multiple occasions and after numerous thorough evaluations, it was concluded that Plaintiff was not entitled to any additional compensation.*

*Omaha adjustment and subsequent Task Force review were based on covered direct physical damages by or from flood in accordance with the SFIP. See 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. Id. at Section VII(K)(3)(a).*

*Omaha and the Hurricane Isabel Task Force thoroughly reviewed Plaintiff's claim. After the waiver application was submitted, a FEMA claims examiner completed an additional comprehensive review of the claim and found no basis for additional compensation. See FEMA-000056 through FEMA-000057.*

*Plaintiff's claim was subjected to an extraordinary level of review. In the waiver application Plaintiff failed to establish she was entitled to any additional compensation. Further, there was no basis to grant a waiver for Plaintiff because she submitted a timely Proof of Loss that was rejected by Omaha. Plaintiff failed to provide any explanation of what provision of her SFIP she wanted waived. Since Plaintiff submitted a timely Proof of Loss that was rejected by her insurer, there was no need for a waiver of the deadline to submit a Proof of Loss.*

*On July 31, 2008, after a comprehensive review of the claim, Plaintiff's waiver application was denied because it was untimely, and because Plaintiff had not shown in her waiver application that she was entitled to further compensation on the policy. Id.*

6

*Finally, since Plaintiff submitted a timely Proof of Loss, there did was no basis for EMA to grant a waiver.*

**IV. Plaintiff's Assertions.**

Plaintiff claims in a revised shortfall calculation at pages 9 and 10 of her Opposition (Document 557) that she is due $103,448.82 under Coverage A for building damage and $28,703.29 for Coverage B of her SFIP for a total amount of $132,152.21. In this case, the claims relate back to the claims made in January 8, 2004 when Ms. Dolgow submitted a POL for $172, 496.92 which she states was rejected on January 23, 2004. Plaintiff's Opposition at page 3. An ICC claim was also made for $30,000.00 and on April 1, 2004, Ms. Dolgow was paid $13,266.00 as the first payment on that claim. Plaintiff's Opposition at page 4.

Plaintiff states her claim on page 5 of the Opposition as follows:

Joanne Dolgow's claim is relatively simple and straight forward. She submitted timely filed POLs which were denied. She submitted documentation supporting her loss with which FEMA and Omaha, and their adjusters and reviewers, simply disagreed and/or dismissed out-of-hand. The damage to her home and material possessions, directly from Tropical Storm Isabel and the subsequent mold contamination exacerbated by Defendant's delayed inspection and failure to pay what was due, was significantly more than the policy limits under Coverage A and close to the policy limits under Coverage B of the SFIP. Ms. Dolgow should be paid the shortfall as detailed and documented in her February 28, 2008 waiver application package.

Plaintiff points to portions of various engineering reports at pages 5 to 8 of the Opposition and claims that these reports were either ignored or misinterpreted by the Defendants. Plaintiff states that these reports show greater structural damage than

FEMA has allowed and that the flood waters were higher and more damaging than FEMA has recognized to this point.

Plaintiff also asserts that the engineering reports and the determination from Baltimore County government all support her decision to rebuild rather than repair her home. Opposition at page 8.

Plaintiff also disputes FEMA's failure to pay her personal property losses under Coverage B of her SFIP which she itemized in her waiver application to be $30,250.00. This was the same amount that was submitted in September 9, 2004 which was denied at that time. Plaintiff in her Opposition revises the claim to exclude the claim of $1,501.00 for lawn and garden equipment and now claims $28,703.29. Opposition at pages 9 to 10.

Plaintiff contends that FEMA was in error in concluding that damage caused by mold and mildew in and around the foundation, floors and walls of the home should not be covered due to the allegation that Ms. Dolgow failed to remediate the condition. Plaintiff asserts that the engineering reports support her position that remediation did occur and it was unreasonable for FEMA to conclude otherwise given the circumstances she found herself in. Opposition at pages 10 to 11.

Plaintiff contends that she was justified in concluding that she had to demolish the home. As she states at page 12 of her Opposition:

The calculations used for the shortfall were submitted with the entirely justifiable belief that the home was damaged to such an extent that it should be demolished. Ms. Dolgow was not compensated in an amount that she could safely and effectively repair her home. She decided, for the sake of health, safety and the financial risks in repairing as compared with rebuilding, that the demolition of the structure was a necessity. She did so notwithstanding FEMA's persistence that the house be repaired rather than rebuild. Never having received the right and full amount of her claim, Ms. Dolgow never had the funds to rebuild her home.

8

V. **Special Master's Analysis.**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by the Plaintiffs including this Plaintiff. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

FEMA denied this claim for several reasons. They are stated in the July 30, 2008 letter of denial as follows:

Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. The Hurricane Isabel Task Force obtained an engineer's inspection and evaluation of the structural damage to your home.

All reviews of your claim concluded the carrier's estimate of flood related damages was accurate. Foundation damage was found to have pre-existed. Your claim for damage caused by mold was denied due to your failure to mitigate your damages after flood waters receded from the property. The personal property claim was denied as the items were discarded prior to the adjuster's inspection. Also, documentation was never submitted to substantiate the personal property.

There are to be certain portions of the engineering reports that support Plaintiff's claim as noted by the Plaintiff's Opposition. There were disagreements about the level of water in the home and whether structural and foundation damage was caused by the flood or were in fact pre-existing and the result of poor construction practices unrelated to the floor waters or wave action. To examine these issues, FEMA conducted a re-inspection of Plaintiff's property by Rodney Cross, an NFIP General Adjuster, on December 17, 2003. Mr. Cross conducted the re-inspection with Plaintiff and her structural engineer, Geoffrey A. Tizard, II. Mr. Cross considered Mr. Tizard views as well as the views of two other engineers hired by interested insurance companies. Mr. Cross issued a detailed report FEMA-000091 to 0000093 as to his findings. He sought additional information from the Plaintiff, but it appears that what he sought from Plaintiff was never submitted prior to determination of the claim in 2004.

Still another review of the property location was conducted by Owen Ivey on March 6, 2004. Mr. Ivey was accompanied on the review by the Plaintiff, her public adjuster, the public adjuster's engineer and estimator. See FEMA-000130 through FEMA -000132. Mr. Ivey's report considered the issues brought to his attention but concluded that the

foundation issues were not caused by the flood waters or wave action. His report appears to be a careful and measured analysis of the issues brought to his attention.

The claim was also reviewed by the Hurricane Isabel Task Force and it conducted another review that resulted in some adjustments although the basic conclusions regarding the foundation and structural issues remained the same. See FEMA -000981 to FEMA-000988. The letter sent to the Plaintiff explaining the findings shows that the issues were considered by FEMA and that there was consultation with the public adjustor hired by the Plaintiff. See FEMA-000976 to FEMA-000977. As noted by the Defendants in their Reply FEMA's conclusions are also consistent with the December, 2003 detailed report of David Schmidt, a professional engineer, who conducted a survey of the building. See FEMA-000925 to FEMA-000928.

There were certainly differing points of view about the extent of the flooding and whether or not the flooding had caused structural or foundation damage to the dwelling. FEMA considered these issues and reached its determinations in a careful manner that included Plaintiff and those she hired to advise her. To say that FEMA ignored Plaintiff or her experts is simply not accurate given the record presented here. FEMA did not accept the views of Plaintiff's experts, but FEMA clearly made a reasonable decision not to do so. FEMA, the agency charged with the administration of the SFIP was entitled to make these determinations and Plaintiff has not shown that the determinations made were either arbitrary, capricious or an abuse of discretion.

The Special Master is of the same opinion about FEMA's determination that Plaintiff had failed to mitigate her damages relating to mold. FEMA conclusion on this point are reasonable based on their investigation and analysis done in 2003 and 2004.

FEMA denied the claim under the contents provision of the SFIP because the Plaintiff failed to preserve the contents so that they could be inspected under the terms of the policy. See 44 C.F.R. Pt.61 App. A (1), Art. VII (J) (2). Plaintiff removed all of her personal property prior to the arrival of the adjustor. See FEMA-000589 to FEMA-000593. She was provided an opportunity to prove her contents claim with alternate methods of proof, but never submitted satisfactory documentation. See FEMA-000615 to FEMA-000616.

It seems clear that if Plaintiff had taken steps in 2004 to satisfy FEMA criteria for proof of contents that at least some of her claim under this section would have been granted. In the waiver claim, Plaintiff's attempts to now state the claim by listing the items with Plaintiff's estimation of costs (FEMA 000077 to FEMA 000078) but these are still considered by FEMA to be deficient under the terms of the SFIP. FEMA notes in its letter of denial that the personal property claim was "denied as the items were discarded prior to the adjuster's inspection. Also, documentation was never submitted to substantiate the personal property." See FEMA-000119 and FEMA-000120. FEMA's action to deny the waiver claim for insufficiency does not appear to the Special Master to be either arbitrary or capricious or an abuse of its discretion.

In the final part of its opposition at pages 13 to 17 , Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the U.S. District Court's Memorandum Opinions and there is nothing unique about Plaintiff's assertions that require further discussion of the subject.

VI. **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiff's waiver application be granted and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

Date: March 11, 2011 _____/s/_____
    Dennis M. Sweeney
    Special Master