IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Southern Division

THOMAS L. MOFFETT, II, ET AL.

    Plaintiffs,                                         Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

    Defendants.

_____

Report and Recommendation Concerning
The Waiver Claim of Reginald McNeely, Administrator
of the Estate of Bernard Ferguson

This constitutes the Report and Recommendation to the Court concerning the claim of Reginald McNeely, administrator of the estate of Bernard Ferguson[1] pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 334 pages labeled FEMA-000001 to 000334.

---

[1] The Special Master has not reviewed whether the administrator of the estate has been properly substituted into this litigation in accordance with the Federal Rules of Civil Procedure, but will proceed with the review of the claim under the directions of the District Court. Depending on the circumstances, references in this document to "Plaintiff" refer either to Mr. Ferguson or to the administrator of his estate.

1

**I. Background**

Plaintiff's property located at 7625 Bay Street, Pasadena, Baltimore, Maryland was insured by Allstate, a participating Write Your Own Company under the National Flood Insurance Program, under policy number 1803406030 with a coverage limit of $150,000.00 for his building and $10,000.000 for his contents with each subject to a $1,000 deductible. See FEMA-000005.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. See FEMA-000186. On September 24, 2003, Plaintiff notified Allstate of his loss and on October 1, 2003, Allstate sent an adjuster to inspect Plaintiff's property. Id.

On October 2, 2003, Allstate issued an advance loss check for $2,500.00 to Plaintiff. See FEMA-000220.

On October 30, 2003, Plaintiff submitted a timely, signed and sworn Proof of Loss in the amount of $32,714.95 after application of the $1,000.00 deductible for building and contents damages to Allstate. See FEMA-000019.

On November 3, 2003, Allstate issued a check to Plaintiff for $20,214.95. See FEMA-000164. Also, on November 3, 2003, Allstate issued a separate check for $10,000.00, which was Plaintiff's policy limit under the contents coverage of his SFIP. See FEMA-000166. Finally, on May 11, 2004, Allstate issued a check for $2,191.29 for the recoverable deprecation portion of Plaintiff's claim. See FEMA-000176. These payments represent payment in full on Plaintiff's timely submitted Proof of Loss ($32,714.95 plus the recoverable deprecation of $2,191.29).

Plaintiff sought review by the Hurricane Isabel Task Force.

On January 10, 2005, Plaintiff was notified that the Task Force completed its review and determined Plaintiff was not entitled to any additional compensation. See FEMA-000138.

The Task Force notified Plaintiff that he was seeking compensation for damage to his finished basement, which is not compensable. See FEMA-000141. See also 44 CFR § 61, App. A(1) at Section III(A)(8), (B)(3).

**II. Waiver Claim and Denial**

On February 25, 2008, Plaintiffs submitted an application for a waiver. See FEMA-000001 through FEMA-000009. The waiver application stated Plaintiff expended $121,200.04 to repair his home. See FEMA-000005. Plaintiff applied the previous payments and deductible to claim a shortfall of $96,343.80. Id. On July 31, 2008, Plaintiff was notified by FEMA that his waiver application was denied.See FEMA-000133 to 000134.

**III. Reasons for Waiver Denial.**

The reasons for the denial are provided in paragraphs 11 to 15 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Bernard Ferguson (Document 503-2). They are:

*On February 25, 2008, Plaintiffs submitted an application for a waiver. See FEMA-000001 through FEMA-000009. The waiver application stated Plaintiff expended $121,200.04 to repair his home. See FEMA-000005. Plaintiff applied the previous payments and deductible to claim a shortfall of $96,343.80. Id.*

*It is not clear what provision of the SFIP Plaintiff wishes waived. It appears Plaintiff wants the provision providing only limited coverage for basements waived. To the best of my knowledge, for a single family home such as Plaintiff's property, FEMA has never waived a coverage provision to give greater coverage to an individual policy holder. See Exhibit A at ¶ 8.*

*The SFIP provides very limited coverage for finished rooms and contents located in a basement. See 44 CFR § 61, App. A(1) at Section III(A)(8), (B)(3). Plaintiff's claim was reviewed by Allstate's independent adjuster, the Hurricane Isabel Task Force (FEMA implemented the Task Force, which was an extraordinary claims review process developed to ensure claims was properly adjusted) and a FEMA claims insurance upon submission of his waiver application. After every exhaustive review, it was concluded that Plaintiff was fully compensated for his loss.*

*On July 31, 2008, Plaintiff was notified by FEMA that his waiver application was denied for the following reasons:*

4

*You claim that the repairs to your home and garage exceeded the amount allowed by your Write Your Own Company, Allstate Insurance Company. To support the amount claimed, you provided information that repair costs exceeded your expenditures. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. You submitted a vendor bill for water removal, cleaning, and demolition costs for the sub-grade finished basement to the Hurricane Isabel Task Force. The Task Force Examiner explained to you that the work performed was in an area of the structure where there is limited coverage by the SFIP. Moreover, the Task Force advised you the vendor's charges were excessive.*

*The invoices now presented are for re-building of the basement walls and repair of a bulkhead. There is no indication that the basement walls were damaged by the flood and the bulkhead is not covered by the SFIP.*

*Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found o bass to set aside the original findings.*
*See FEMA-000134.*

*On July 31, 2008, Plaintiff's waiver application was denied because it was untimely, and because Plaintiff had not shown in his waiver application that he was entitled to further compensation under his policy. See FEMA-000133 and FEMA-000134.*

**IV. Plaintiff's Assertions**

In his Opposition, Plaintiff changes his claim understanding that certain items should not have been included in his waiver claim filed on February 25, 2008. The revised calculations are stated at page 8 of the Opposition (Document 558):

      Thus, the shortfall for Mr. Ferguson's claim, as filed on February 25, 2008, was incorrectly identified as $96,343.80; after making the above changes, the actual shortfall should be reflected as $45,622.15. Plaintiff's shortfall has accordingly been reduced to $45,622.15. The revised Shortfall Itemization summary is, therefore:

| | | |
|---|---|---|
| $     530.00 | | Around the Clock Plumbing |
| | + | |
| $   6,677.00 | | A-1 Septic, SERVEPRO, Lowry's Trash (waste services) |
| | + | |
| $   9,410.00 | | BGE, Culligan (furnace, hot water heater, water softener system) |
| | + | |
| $ 15,440.00 | | Pasadena Bldg Concepts (brick basement walls, stone for hallway and garage repairs) |
| | + | |
| $   3,500.00 | | Ayers Improvements (patio doors and windows) |
| | + | |
| $   2,815.00 | | Blankenship Electric |
| | + | |
| $   1,240.00 | | Pasadena Floors (replace stairs) |
| | + | |
| $     295.00 | | Pasadena Glass & Mirror |
| | + | |
| $ 24,341.04 | | Low's, 84 Lumber, Home Depot, Ace Hardware, people's Supply, etc. (rebuilding materials) |
| | + | |
| $   7,575.00 | | Wayne Cook, Stephen Coffey, Kelly Lewis, etc. (labor costs) |
| | + | |
| **$ 71,528.39** | = | **Total cost to repair original home** |
| | - | |

| | |
|---|---|
| $ 24,906.24 | Allstate Flood Insurance (incorrectly identified as Windsor Mt. Joy Flood Insurance compensation) |
| - $ 1,000.00 | Deductible |

**$ 45,622.15 = Shortfall**

Plaintiff argues that Allstate did not consider damages sustained to the foundation of his home, repair and or replacement of the stairs and landing leading into the basement, any clean-up and repair of damages to the crawlspace of the home, and the damages to the foundation of Plaintiff's garage. Opposition page 10. Plaintiff claims that FEMA and Allstate neglected to deal with these claims.

Plaintiff's Opposition is highly critical of the reviews that took place by FEMA and discusses the reasons why he finds these reviews to not be in accord with what he believes should have been done and were "lackluster" at best. Opposition at page 11. The criticism continues as to the review undertaken as part of the waiver process.

**V. Special Master's Analysis.**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and

Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by the Plaintiffs including this Plaintiff. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

The Special Master's task is to review the claims based on the record submitted by FEMA pursuant to the Court's order and determine from that record whether it was arbitrary and capricious or an abuse of discretion for FEMA to have denied the waiver claim under the criteria it had for waiver of claims.

In this case, FEMA articulated its reasons for denial of the claim in its letter of July 31, 2008. It stated:

You claim that the repairs to your home and garage exceeded the amount allowed by your Write Your Own Company, Allstate Insurance Company. To support the amount claimed, you provided information that repair costs exceeded your expenditures. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. You submitted a vendor bill for water removal, cleaning, and demolition costs for the sub-grade finished basement to the Hurricane Isabel Task Force. The Task Force Examiner explained to you that the work performed was in an area of the structure where there is limited coverage by the SFIP. Moreover, the Task Force advised you the vendor's charges were excessive.

The invoices now presented are for re-building of the basement walls and repair of a bulkhead. There is no indication that the basement walls were damaged by the flood and the bulkhead is not covered by the SFIP.

In the original shortfall itemization filed with the waiver and in the application filed with it

Plaintiff does not articulate with any specificity how the many receipts and invoices submitted show that items not already paid for by the insurance proceeds provided were actually covered under Part A of the SFIP. Given the lack of specificity there was no basis for FEMA to determine from the written submission that coverage was mandated.

In his Opposition, Plaintiff has now pared down his claim and has for the first time attempted to be more specific citing damages he now alleges were sustained to the foundation of his home, repair and or replacement of the stairs and landing leading into the basement, any clean-up and repair of damages to the crawlspace of the home, and the damages to the foundation of Plaintiff's garage. Opposition at page 10.
Plaintiff states that his waiver application submission was merely "an overview of expenses Plaintiff incurred" and was prepared without having the full benefit of the administrative record that has now been filed with the court. Id.

Not surprisingly, Defendants are protesting vigorously to this attempt to revamp the claim and allege what they consider to be new grounds for coverage that were not articulated in 2008. At pages 9 to 10 , FEMA states its position on Plaintiff's recasting the claim at this stage of the proceeding:

Plaintiff's original claim and his request for further review by the Task Force never mentions any foundation or structural damage. Plaintiff never requested an inspection of his foundation by an engineer.
Plaintiff claims Anne Arundel County inspected his home and concluded it was substantially damaged. See Plaintiff's Opposition, Doc. No. 558 at 6. The inspection was conducted on October 18, 2003 and a letter was issued to Plaintiff on November 20, 2003. See FMEA-000010 and FEMA-000012. Plaintiff's Opposition filed on January 12, 2011, over seven years after Plaintiff was provided with the letter from the

County, is the first time that Plaintiff attempts to claim the County's letter establishes structural damage to his building. See Plaintiff's Opposition, Doc. No. 558 at 6. Plaintiff claims the inspection noted the foundation/basement was 80% damaged. Id. Plaintiff does not cite to the record or identify where this document can be found, but the report can be located at FEMA-000010 through FEMA-000017. The purpose of the Anne Arundel County inspection was for Plaintiff to apply for Increased Cost of Compliance Compensation under his SFIP, which Plaintiff never applied for. Further, the County's calculation is not based upon physical loss by or from flood and does not exclude uncovered damages. This report falls woefully short of establishing the damages Plaintiff now claims he is owed, it does not document structural damage, and it does not itemize any damages that can be reviewed by an adjuster. The County report is insufficient to establish that FEMA's determination on Plaintiff's waiver application was arbitrary, capricious or contrary to law.

Plaintiff needed to challenge these alleged shortfalls in his waiver application by itemizing the damage with specific breakdown of costs and documentation. If Plaintiff was alleging structural damage to his home, he needed to provide evidence from an engineer documenting this damage. At a minimum, he needed to notify his insurer or FEMA of this alleged structural damage. This Court's review of FEMA's determination on Plaintiff's waiver application is based on the evidence considered by FEMA. Identifying items that Allstate and FEMA allegedly failed to consider this late in the process cannot be a basis of a finding that FEMA's determination was arbitrary, capricious or contrary to law.

After a review of this matter and particularly looking at the original application for waiver and the attachments submitted with it, the Special Master agrees with FEMA that Plaintiff by substantially recasting the claim at this late stage is taking himself out of the waiver claim process established by the Court. While the Special Master recognizes that there will be occasions where the Shortfall Itemizations can and should be revised in this process, that does not appear to be what is happening in this case.

Plaintiff is adding in new claims and theories that were not articulated in the application for waiver. As has been noted it is the Special Master position that Plaintiff in the waiver process had the burden to show his entitlement to coverage and had to submit proof that demonstrated his entitlement. Given what was presented to FEMA in 2008 by

Plaintiffs, FEMA did not act arbitrarily or capriciously in denying the waiver application nor was its denial an abuse of discretion.

In the final part of its opposition at pages 13 to 18, Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the U.S. District Court's Memorandum Opinions and there is nothing unique about Plaintiff's allegations in this regard that requires further discussion.

**VI. Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiff's waiver application be granted and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

Date: March 11, 2011  _____/s/_____
    Dennis M. Sweeney
    Special Master