IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

THOMAS L. MOFFETT, II, ET AL.

    Plaintiffs,                                          Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

    Defendants.

_____


Report and Recommendation Concerning
<u>The Waiver Claim of Alan and Laima Fiterman</u>


This constitutes the Report and Recommendation to the Court concerning the claim of Alan and Laima Fiterman pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 794 pages labeled FEMA-000001 to 000794.

**I. Background**

Plaintiffs' property located at 5570 Carvel Street, Churchton, Maryland was insured by Omaha under policy number 30 0769 1096 2003 with a coverage limit of $221,000.00 for their building and $29,000.00 for contents with each subject to a $1,000 deductible. See FEMA-000005.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home. See FEMA-000086. On September 19, 2003, Plaintiffs reported their loss to Omaha and on September 22, 2003 Omaha sent an adjuster out to inspect their property. Id. Plaintiffs submitted four signed and sworn Proofs of Loss in the amount of $194,101.35 (See FEMA-000062), $192,913.20 (See FEMA-000064), $25,254.24 (See FEMA-000047) and $127,134.52 (See FEMA-000046) for the damage to their building and contents.

Omaha determined Plaintiffs were entitled to $110,763.10 for the damage to their building and $16,371.42 for the damage to their contents, which is reflected in the Proof of Loss located at FEMA-000046. On March 15, 2004, Omaha issued a check for $127,134.52 in compensation for Plaintiff's losses. See FEMA-000051 through FEMA-000053.

On December 5, 2003, Omaha denied Plaintiffs' Proofs of Loss in part due to lack of documentation to support the unit cost of the covered flood damaged items, the inclusion of non-covered/non-flood damaged items and/or non-acceptable methods of repair. See FEMA-000164 through FEMA-000165.

On February 9, 2004, Omaha again denied Plaintiffs' Proof of Loss in part due to the amount reflecting what Omaha considered to be inflated costs and prices, and the inclusion of items not covered under the SFIP. See FEMA-000272.

Plaintiffs requested review of their claim by the Hurricane Isabel Task Force ("Task Force"). On June 8, 2004, the Task Force concluded its review of Plaintiffs' claim and concluded there were no additional items eligible for payment under the policy and that no further reimbursement was due. See FEMA-000039. Further, the Task Force concluded the prices used to determine the unit prices appeared to be slightly high, but within the NFIP guidelines. See FEMA-000721.

Plaintiffs requested a subsequent review by the Task Force. On October 7, 2004, the Task Force notified Plaintiffs that they were fully compensated under the terms of their policy and denied them any additional compensation. See FEMA-000041.

On November 22, 2004, Plaintiffs requested another review based on errors they allege Omaha made. See FEMA-000045. On December 27, 2004, FEMA made some adjustments and permitted Omaha to pay Plaintiffs an additional $25,254.25. See FEMA-000047 and See FEMA-000048.

Plaintiffs were paid a total of $146,541.78 for their building, $16,371.42 for their contents and an additional $15,000.00 under the Increased Cost of Compliance provision of their policy. See FEMA-000005. This amounts to a total compensation amount of $177,913.20.

## II. Waiver Claim and Denial

On February 25, 2008, Plaintiffs submitted an application for waiver. See FEMA-000001 through FEMA-000009. Plaintiffs sought an additional $85,086.80. On July 31, 2008, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs failed to show they were entitled to further compensation under their policy. See FEMA-000083 through FEMA-000084.

## III. Reasons for Waiver Denial

The reasons for the denial are provided in paragraphs 14 to 24 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Alan and Laima Fiterman (Document 504-2). They are:

*On February 25, 2008, Plaintiffs submitted an application for a waiver. The waiver application failed to identify any provision of their SFIP they desired waived. See FEMA-000001 through FEMA-000009. The waiver application simply requested that FEMA authorize Omaha to compensate Plaintiffs an additional $85,086.80. See FEMA-000005. Plaintiffs based this amount upon the "value of the home in 1999," which was $259,000.00 and their claim that their contents loss exceeded policy limits. Id.*

*It must be noted that Plaintiffs were paid a total of $146,541.78 on their building. See FEMA-000005. Plaintiffs submitted a Residential Substantial Damage Estimator from Anne Arundel County that computed the replacement cost of their home as $140,243.07 (Actual Cash Value as $123,413.90) and the computation of damages to their home as $75,955.64. See FEMA-000015.*

*Plaintiffs' waiver application included much of the same documents they previously submitted in support of their claim that had been reviewed on multiple occasions. On July 31, 2008, FEMA denied Plaintiffs' waiver request and provided them with the following explanation:*

*. . . you claim oil contamination as a result of the flooding necessitated the demolition of your dwelling. To support the amount claimed, you provided an estimate for the replacement of your home plus the removal of the oil contamination. Your claim was originally reviewed by an independent adjuster, and subsequently reviewed by the Hurricane Isabel Task Force. All reviews of your claim concluded your estimate did not support covered supplemental damages. You have received payments from your Write Your Own Company, Omaha Property and Casualty Insurance for all covered flood damages and payment under the Increased Cost of Compliance provision of the SFIP for the demolition of the insured structure.*

*Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.*

*See FEMA-000084.*

*In other words, Plaintiffs' claim was reviewed in detail by different reviewers on multiple occasions. There was no evidence of uncompensated damages caused by the flood. Plaintiffs' waiver application fails to identify any specific damages directly caused by the flood for which they did not receive full compensation for. Instead, Plaintiffs base their claim on the value of their home in 1999 and assert their loss of contents exceeded the policy limits. See FEMA-000005.*

*Omaha adjustment and subsequent Task Force review were based on covered direct physical losses caused by or from flood in accordance with the SFIP. See 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. Id. at Section VII(K)(3)(a).*

*As stated above, Plaintiffs provided a substantial damage report from the Anne Arundel County Building Inspector, which calculated the cost to repair Plaintiffs' home as $75,955.64. Plaintiffs were compensated by Omaha a total of $146,541.78 for the damage to their building plus another $15,000.00 under the Increased Cost of Compliance Provision of their SFIP. See FEMA-000005.*

*Plaintiffs' claim was subjected to an extraordinary level of review. There is no evidence of uncompensated damages.*

*Plaintiffs' waiver application does not meet the criteria for approval. First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit any new documentation explaining how the additional uncompensated items were covered under their SFIP.*

*Further, there was no basis to grant a waiver for Plaintiffs because they submitted two timely Proofs of Loss that were rejected by Omaha. Plaintiffs failed to provide any explanation of what provision of their SFIP they wanted waived. Since Plaintiffs submitted a timely Proof of Loss that was rejected by their insurer, there was no need for a waiver of the deadline to submit a Proof of Loss.*

*Accordingly, on July 31, 2008, after a comprehensive review of the claim, Plaintiffs' waiver application was denied because it was untimely, and because Plaintiffs failed to show they were entitled to further compensation under their policy. See FEMA-000083 through FEMA-000084.*

### IV. Plaintiffs' Assertions

Plaintiffs assert that the damage to their home directly from the storm and the subsequent damage done by the breaking free of a 300 gallon oil tank which spilled oil and also caused structural damage was not completely recognized either by Omaha or FEMA. They believe they should be paid the shortfall as detailed and documented in the waiver application as a result. Opposition (Doc.559) at page 7. The Fitermans point to a November 5, 2003 report from Anne Arundel County and the Anne Arundel Assessment Office to show that the house "was totaled".

They also assert that neither Omaha nor FEMA correctly dealt with the oil contamination claim that is entitled to coverage under the SFIP. Id at 8. They contend that FEMA did not recognize fully the dangers that oil contamination can cause citing

several experts they contacted. Id at 9.  They believe it would have been "ludicrous for the Fitermans to repair or replace their home without adequately providing for complete remediation of the oil spill." Id.

Several estimates were obtained, but the Fitermans believe that the estimate of RMCAT that they obtained should have been allowed with certain deductions they do concede. They disagree with FEMA's "on-the-cheap" solutions that were approved. Plaintiffs submitted with their waiver applications estimates to rebuild a new home for $400,636.80. Earlier POLs they submitted showed lesser amounts that they would be entitled to but in any event Plaintiffs claim that whatever "the value to replace the home is used, that replacement cost, plus the oil remediation costs, exceeds the policy limits." Id at 11. They have adjusted their shortfall to $73,458.22 and ask that they be paid up to the policy limits. Id at 12.

V. **Special Master's Analysis.**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the

Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document 597). These rulings resolve various issues raised by these Plaintiffs. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

Plaintiffs were paid a total of $146,541.78 under Coverage A for their building. See FEMA-000005. FEMA argues that this is sufficient given that only eight inches of water entered the house. FEMA asserts that they recognized the oil contamination issue and adjusted it in compliance with the SFIP with the Task Force adding compensation for the remediation efforts. See FEMA's Reply at page 7.

It appears from the record that the disagreements between FEMA and the Plaintiffs have been over two issues: whether the house had to be totaled or whether it could be remediated and repaired ,and whether the oil contamination and other damage caused by the oil tank being adrift was such that remediation efforts were going to be ineffectual.

Omaha and FEMA considered the issues and conducted numerous levels of review. As FEMA notes in its reply brief at page 7:

Plaintiffs provided an estimate from Gateway Construction, Inc. to repair the damage from the storm totaling $109,288.00. See FEMA-000308 through FEMA-000310. This

estimate included replacing the floor joists, which Plaintiffs claim could not be effectively cleaned. In addition, Plaintiffs obtained an estimate from Clean Harbors of Laurel, Maryland to remove and remediate the contamination for a total of $14,911.00. See FEMA-000316. This estimate included cleaning the floor joists, but if the joists were replaced in accordance with the repair estimate, that expense would be unnecessary. Plaintiffs also obtained an estimate from Clean Venture which has an office in Baltimore, Maryland. See FEMA-000312 through FEMA-000314. Clean Venture's estimate was for $18,040.00 to remediate the contamination. Taking the estimate to repair and either estimate to remediate the contamination and Plaintiffs were still fully compensated for their loss.

Plaintiffs' argument were not ignored by FEMA. The record shows that careful consideration was given to the amount of damages actually incurred by the water incursion and by the oil contamination. These were evaluated in the context of the SFIP and adjustments were made throughout the review process.

Plaintiffs made the decision to demolish the home and relocate. That may have been a very reasonable choice, but that choice did not require FEMA to change its methods for evaluating claims.

There was clearly oil contamination and this was dealt with by FEMA in its evaluation of the claim. Plaintiffs obtained views and opinions from persons knowledgable in the area of oil contamination, but FEMA was not required to accept these as long as it dealt adequately with the oil contamination issue which it appears to have done.

From this record, the court cannot conclude that FEMA was either arbitrary or capricious in its determinations or that it abused its discretion.

In the final part of its opposition at pages 13 to 17, Plaintiffs reiterate the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been

dealt with in the U.S. District Court's Memorandum Opinions and there is nothing unique about Plaintiffs' assertions on these points that require additional discussion.

**VI. Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for Partial Summary Judgment affirming FEMA's determination on Plaintiffs' waiver application be granted and it is further recommended that Plaintiffs' Motion for Summary Judgment be denied.

Date: March 11, 2011                                  _____/s/_____
                                                        Dennis M. Sweeney
                                                        Special Master