IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

THOMAS L. MOFFETT, II, ET AL.

      Plaintiffs,                                      Civil Action No. 8:05-CV-01547

v.

COMPUTER SCIENCES CORPORATION,
ET AL.

      Defendants.

_____

Report and Recommendation Concerning
The Waiver Claim of Thomas Gielner

This constitutes the Report and Recommendation to the Court concerning the claim of Thomas Gielner pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing the report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided to the Special Master in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the court filings in this case. The Special Master was also provided by computer disc the "appropriate documents of record" as specified in Part 1.a of the Memorandum Order. In this case, the documents consists of 394 pages labeled FEMA-000001 to 000394.

1

## I. Background

Plaintiff's property located at 8927 Cuckold Point Road, Baltimore, Maryland was insured by Nationwide, a participating Write Your Own Company under the National Flood Insurance Program, under policy number 5050173029 with a coverage limit of $84,000.00 for his building subject to a $5,000.00 deductible and a coverage limit of $30,000.00 for contents subject to a $5,000.00 deductible. Supplemental Declaration of Karen Christian for the Claim of Thomas Gielner (Document 507-2) ¶ 4.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. See FEMA-000017 through FEMA-000022.

On or about September 19, 2003, Plaintiff notified Nationwide that his home was damaged by Hurricane Isabel. On September 23, 2003, Nationwide inspected Plaintiff's home. See FEMA-000180.

On December 7, 2003, Plaintiff submitted a Proof of Loss for $62,357.97 for his building and contents coverage. See FEMA-000017. Plaintiff also submitted a Statement as to Full Cost of Repair or Replacement claiming $2,735.41 for the recoverable depreciation portion of his loss. See FEMA-000019. On February 3, 2005, Plaintiff submitted a third proof of loss for $30,000.00 under the Increased Cost of Compliance ("ICC") provision of his SFIP. See FEMA-000022.

On December 17, 2003, Nationwide issued a check for $37,619.91 for building coverage. See FEMA-000219. Also on December 17, 2003, Nationwide issued a check for $24,665.16 for contents coverage. See FEMA-000220. On April 1, 2004, Nationwide issued a check for $15,000.00 as an advance on Plaintiff's ICC payment.

See FEMA-000221. On May 18, 2004, Nationwide issued a check for $2,735.41 for the recoverable depreciation portion of Plaintiff's claim. See FEMA-000224. On February 14, 2005, Nationwide issued a check for $15,000.00, which constituted the remainder of Plaintiff's ICC payment. See FEMA-000227.

Plaintiff requested review by the Hurricane Isabel Task Force ("Task Force"). On June 16, 2004, the Task Force completed its review of Plaintiff's claim and made adjustments based upon the evidence Plaintiff submitted, which resulted in eligibility for a supplemental payment of $2,820.68. See FEMA-000086.

On October 6, 2004, in accordance with the approved amount from the Task Force, Plaintiff submitted a supplemental Proof of Loss for $2,820.68. See FEMA-000020. On November 23, 2004, Nationwide issued a check to Plaintiff for $2,974.82, which included an additional $154.14 in recoverable depreciation. See FEMA-000223. Nationwide's payments totaled $67,995.20. The difference between the amounts sought in the timely submitted proofs of loss and the payments issued to Plaintiff is $73.00. Nationwide withheld this amount to cover a Premium shortage that Plaintiff owed. See FEMA-000306. Plaintiff was paid in full on all timely submitted and approved Proofs of Loss.

In addition to amounts paid above, Plaintiff was compensated the policy limit of $30,000.00 under the ICC provision of his SFIP, which is not contested. See FEMA-000221 and FEMA-000227.

Plaintiff did not file any subsequent Proof of Loss for compensation under the building coverage provision of his SFIP. Plaintiff never requested additional compensation for

any damages to his building until he submitted his waiver application.  See FEMA-000001 through FEMA-000009.

**II. Waiver Claim and Denial.**

On February 25, 2008, Plaintiff filed an application for waiver with FEMA. FEMA-000001 to FEMA -000009.   Plaintiff sought an additional sum of $35,824.10. On August 18, 2008, after review of his claim, Plaintiff's waiver application was denied because his waiver application was untimely and there was no direct physical loss caused by or from flood that Plaintiff had not received full compensation for.  See FEMA-000082 and FEMA-000083.

**III. Reasons for Waiver Denial**

The reasons for the denial are provided at paragraphs 14  to 22  in the Supplemental Declaration of Karen Christian with Respect to the Claim of Thomas Gielner (Document 507-2). They are:

*On February 25, 2008, Plaintiff submitted an application for a waiver.  The waiver application failed to identify any provision of his SFIP he desired waived.  Id. The waiver application simply requested that FEMA compensate Plaintiff an additional $35,824.10, or his policy limit.  See FEMA-000005.  Plaintiff calculated the replacement cost of his former building utilizing an unscientific formula that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling.  Id.  Plaintiff calculated the replacement cost of his former dwelling as*

4

$126,979.08. Id. Plaintiff arrived at $35,824.10 by applying his policy limit against the calculated replacement cost of his old dwelling and further deducting all previous payments for building damage. Id.

Plaintiff's method of calculating his damages by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded building does not take into account the SFIPs coverage limits and exclusions.

Plaintiff states in his waiver application that he was compensated $43,175.90 for building coverage, and $24,665.16 for contents coverage after application of the $5,000.00 deductible on each plus $30,000.00 under the Increased Cost of Compliance provision of his SFIP. See FEMA-000005. Plaintiff alleges that $154.14 remains unpaid by Nationwide, but this amount was included in Nationwide's check for $2974.82, which was paid on November 23, 2004. See FEMA-000223.

Plaintiff made the decision to demolish his residence and rebuild. Id. Plaintiff provided a substantial damage letter from the Baltimore County Buildings Engineer's Emergency Response Team. See FEMA-000010 and FEMA-000011. The County's report and letter do not itemize any additional damages caused by or from flood that would warrant additional compensation to Plaintiff under his SFIP. The SFIP only compensates for direct physical loss by or from flood. See Exhibit A at ¶ 16. The letter was required in order for Plaintiff to receive compensation under the ICC provision of his SFIP. Id. at ¶ 15.

The letter from the County tells Plaintiff that if he does rebuild, he must comply with certain regulations. See FEMA-000010. The SFIP excludes the cost of complying with

*any local ordinance requiring the demolition of the structure, land movement or sinking of the property. See 44 CFR § 61, App. A(1) at Section V.*

*The SFIP only covers damage caused directly by flood. The unscientific formula Plaintiff utilized to calculate the replacement of his original building was based on the square footage cost of an upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. See Exhibit A at ¶ ¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.*

*Nationwide and the Task Force thoroughly reviewed Plaintiff's claim and properly calculated the amount of compensation he was entitled to. The waiver application review was not limited to the specific request, but was a comprehensive review of the entire claim and FEMA concluded Plaintiff was properly compensated for his loss. See FEMA-000082 and FEMA-000083. Plaintiff was notified that his waiver was denied for the following reasons:*

*. . . you claim your actual damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided an estimate for the replacement of your home. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. The recommendations supported a $2,820.68 supplemental payment for building damages which was paid to you by your Write Your Own Company, Nationwide Insurance. You also received the maximum payment for the Increased Cost of Compliance coverage for*

*the demolition of your property. No further supplemental claim was submitted to the Hurricane Isabel Task Force.See FEMA-000083.*

*Plaintiff failed to demonstrate he met any of the criteria used to determine whether to grant a waiver. First, he failed to demonstrate any additional damages he sought were actually covered by his SFIP. Second, he did not submit a detailed line-item documentation of uncompensated damages caused directly by flooding to his original building, but instead utilized an unscientific formula to calculate his loss. Third, he failed to establish that he proceeded in good faith and with reasonable explanation for the delay.*

*Accordingly, on August 18, 2008, after another complete review of his claim, Plaintiff's waiver application was denied because his waiver application was untimely and there was no direct physical loss caused by or from flood that Plaintiff had not received full compensation for. See FEMA-000082 and FEMA-000083.*

**IV. Plaintiff's Assertions**

Plaintiff states his claim under the SFIP at page 5 of his Opposition (Document #561):

[Mr.Gielner's] application for waiver package contained correspondence and contracts from Eastern Homes, Inc., A.R.G. General Contracting, (which was hired to finish the work started by Eastern Homes), Central Drafting & Design, Inc., and GMB Survey & Drafting Consultants, LLC (FEMA-000028). The total cost of Mr. Gielner's new home was $166,955.00, $136,955.000 after subtracting out the $30,000.00 for ICC Compliance, which Nationwide paid. The new home has 1,620 square feet. The per square foot cost of construction, exclusive of the ICC funds, was therefore $84.54. The original home had 1,502 square feet. The cost of replicating a same-size (like-for-like)

home would therefore be $126,979.08 (at $84.54 per square foot), well beyond policy limits. Nationwide paid the Gielner's $43,175.90. With an $84,000.00 policy limit and a $5,000.00 deductible, there is therefore a shortfall of $35,824.10 which Plaintiff is entitled to recover.

Plaintiff contends that the adjuster did not do an adequate job. See Opposition at page 6. Plaintiff concluded that the only option open to him was to demolish his house and rebuild on the original footprint. Id at page 7. Plaintiff does not believe that his formula for calculating damages is an "unscientific formula" but one built on "common sense". Id.

Plaintiff also complains about FEMA's failure to solicit more information from Mr.Gielner once the waiver application was submitted and its failure to recognize that the claim at issue here is only for building coverage or Coverage A of the SFIP. Id at page 8.

V. **Special Master's Analysis**

The Special Master is aided in making his recommendations by the rulings made by the U.S. District Court in Memorandum Opinions after the submissions of the Special Master's Reports and Recommendations on Group 1. These are the Memorandum Opinion with Respect to Plaintiffs' Motion to Strike Additional Record and to Find FEMA's Review Arbitrary and Capricious as a Matter of Law (Document 594), the Memorandum Opinion with Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master (Document 596) and the Memorandum Opinion on Summary Judgment as to Claims of Group 1 Householders (Document

597). These rulings resolve various issues raised by the Plaintiffs including this Plaintiff. The Special Master does not believe that issues resolved by the District Court's memorandum opinions need to be discussed in any detail unless they present issues that are different than those already ruled on by the District Court.

As with other cases that have already been reviewed in the first two groups, this is a case where Plaintiff makes his claim for additional compensation based on the square footage cost of the new construction which after application of the ICC coverage payments is then applied to the square footage of the demolished building to reach a requested amount of compensation. FEMA has consistently rejected this approach and it does not make sense when applying the SFIP since it does not account for upgrades or for construction required in order to comply with current Code requirements. Instead, coverage is only provided for direct physical loss from the flood event and replacement of items with like material. Using new construction costs to tell what the compensation should be for the SFIP coverage is not an "apples for apples" approach.

Plaintiff certainly has the right to demolish the building and erect a new one. It may have been the most logical course for Plaintiff to take, but given the restrictions of the SFIP there is no reason why FEMA must accept Plaintiff's decision or fund it.

Plaintiff claims that several people including FEMA representatives told him that if elevation was going to be done that the house should be replaced , but as Defendants

note this allegation is not supported by competent evidence in this case and is being presented for the first time in the Plaintiff's Opposition to the motion for summary judgment and such evidence, if it exists, was not presented when it should have been with the waiver application.

As to any other allegation, the Special Master believes the reasons given in the Supplemental Declaration of Karen Christian for the denial of the claim and which are cited above are sufficient to show that FEMA made a decision on this waiver application that was neither arbitrary or capricious. Also FEMA did not abuse its discretion when it denied the waiver claim.

In the final part of its opposition at pages 10 to 14 , Plaintiff reiterates the points raised by all the Plaintiffs about the quality of the review performed by FEMA on the waiver requests and whether FEMA complied with the court's directions about the preparation of the record and the submissions to be made for this process. These issues have been dealt with in the U.S. District Court's Memorandum Opinions and no further discussion of these issues in the Special Master's Report and Recommendation is necessary.

**VI. Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendant's Motion for

Partial Summary Judgment affirming FEMA's determination on Plaintiff's waiver application be granted and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

Date: March 11, 2011 _____/s/_____
                                                      Dennis M. Sweeney
                                                     Special Master