**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. )<br> )<br>　　　　Plaintiffs, )<br> )<br>v. )<br> )<br>COMPUTER SCIENCES CORPORATION, )<br>ET AL. )<br> )<br>　　　　Defendants. )<br>_____) | Civil Action No.<br>8:05-CV-01547 |

**REPORT AND RECOMMENDATION CONCERNING
<u>WAIVER CLAIM OF ALLEN AND SHARON GODLEWSKI</u>**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Allen and Sharon Godlewski pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 903 pages labeled FEMA-000001 to 000903.

**I. Background**

Plaintiffs owned a residence located at 9100 Hinton Avenue, Baltimore, Maryland. The property was insured against flood damage by a policy from Selective Insurance Company of the Southeast ("Selective"), a participating Write Your Own ("WYO") insurance carrier in the National Flood Insurance Program ("NFIP"), under Policy Number 72495 with a coverage limit of $217,800.00 for their building subject to a $1,000.00 deductible. *See* Supplemental Declaration of Karen Christian for the Claim of Allan and Sharon Godlewski (Document 544-3) at ¶4.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe flooding along the coast, including to Plaintiffs' property. Id. at ¶5.

On or about September 22, 2003, Plaintiffs notified Selective that their home was damaged by the hurricane, and Selective sent an independent adjuster to inspect the loss. Id. at ¶¶6-7. The adjuster identified $31,043.79 in covered flood damage. Id. at ¶8. Plaintiffs did not accept this amount. Id. at ¶9.

Joseph Buzzelli, NFIP Claims Manager, conducted a re-inspection, made recommendations, and reviewed the engineer's report from National Forensic Consultants, Inc. Id. at ¶¶10-12. Mr. Buzzelli made several revisions to the claim. Id. Plaintiffs' loss was increased from $28,940.72 to $48,033.95. Id. at ¶12. Again, Plaintiffs did not accept this amount and requested policy limits. Id. at ¶13. Plaintiffs never submitted a Proof of Loss for any additional payments. *Id.*

Plaintiffs requested a review by the Hurricane Isabel Task Force ("Task Force"). On February 25, 2004, Plaintiffs provided a contractor's estimate of $154,804.00 to repair the structure. Id. at ¶14. The Task Force found the estimate was "highly inflated" as to unit cost and actual scope, and removed non-covered items and items not damaged by flooding, which reduced the estimate to $51,854.59 for replacement cost repairs. *Id.*

On July 13, 2004, the Task Force finalized its review, concluding the replacement cost estimate of $63,705.15 prior to application of the $1,000.00 deductible and $404.66 of non-recoverable depreciation maximized the compensation Plaintiffs were entitled to receive. Id. at ¶16. A Proof of Loss for a net actual cash value claim of $55,460.90 plus $6,839.59 for the recoverable deprecation portion of their claim was provided to Plaintiffs, but they did not execute it. *Id.* Again, Plaintiffs failed to provide a Proof of Loss for any additional amount they sought. *Id.*

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007.

## II. Waiver Claim and Denial

On or about February 25, 2008, Plaintiffs submitted to FEMA their Individual Application for Waiver of Proof of Loss Requirements. Id. at ¶17. On July 31, 2008, FEMA denied Plaintiffs' waiver application, but said they could receive the unpaid adjusted amount determined by the Task Force. *See* FEMA-000173 and

FEMA-000174. It appears that Plaintiffs never contacted Selective to file the needed forms or receive their payment.

**III.  Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶18-28 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Allan and Sharon Godlewski (Document 474-1). It states:

> In their Application, Plaintiffs claimed a shortfall of $205,462.56. *Id.* at ¶18. Plaintiffs claimed they spent in excess of $402,483.76 in materials, labor and man hours building their new structure. *Id.* Plaintiffs calculated their shortfall by taking the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling, resulting in their claimed shortfall of $206,462.56 minus their $1,000.00 deductible. *Id.* Plaintiffs' shortfall itemization was therefore based on the cost of their new upgraded home, including some unexplained costs. Plaintiffs also included in their itemization $42,250.00 for "demo costs" not included in the contract, which is only covered under Increased Cost of Compliance ("ICC") coverage and limited to $30,000.00. *Id.*
>
> Plaintiffs presented no evidence that their home needed to be demolished due to the flood and never challenged the repair estimates provided by the Task Force. *Id.* at ¶21. Plaintiffs' sole focus was on receiving their policy limits. *Id.* Plaintiffs' shortfall itemization of $206,462.56 was well in excess of the repair estimate of $154,804.00 that they initially provided. *Id.*
>
> In Plaintiffs' waiver application, they listed eight Proofs of Loss which they claim as "Paid Nothing." *Id.* at ¶22. The Proofs of Loss listed were merely drafts which Plaintiffs never signed or submitted to FEMA. *Id.* Further, the amounts listed are duplicative because they are based on the numerous reviews Plaintiffs requested and received as part of the claims process. *Id.*

4

The SFIP only covers damage caused directly by flood. Plaintiffs' calculations of their shortfall for the replacement of their 64-year-old building (*See* FEMA-000253) were based on the square footage cost of a larger upgraded dwelling, which included Code and material upgrades. Id. at ¶24. The SFIP excludes coverage for upgrades and the use of material that is not of like kind and quality. *Id.* Further, the SFIP has a policy limit of $30,000.00 for I.C.C. expenses, and the formula utilized by Plaintiffs makes it impossible to separate out these expenses. *Id.*

In the letter providing FEMA's determination on Plaintiffs' waiver application, the Administrator stated:

> ... you claim your damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided documentation associated with the replacement of your new home. Your claim was originally reviewed by an independent adjuster, National Flood Insurance Program's General Adjuster, and subsequently reviewed by the Hurricane Isabel Task Force. No claim payments have been issued by your Write Your Own carrier, Selective Insurance Company (Selective) because they never received a signed Proof of Loss from you. The Hurricane Isabel Task Force examiner re-wrote the estimate, including all covered damage and using the updated price guide. A POL in the amount of $63,705.15 was presented to you for signature but never returned to the Task Force.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

See FEMA-000174.

As part of their waiver application, Plaintiffs did sign the Proof of Loss found at FEMA-000041 and FEMA-000042 with a full cost to repair of $63,705.15. After application of the deductible and the non-recoverable depreciation the Proof of Loss resulted in $55,460.90 for the Actual Cash Value of the loss and $6,839.59 in recoverable for a net claim of

5

$62,300.49. *Id.* In response, FEMA informed Plaintiffs to contact Selective and FEMA would waive the time requirement to pay Plaintiffs the requested amount. *See* FEMA-000174. Plaintiffs never contacted Selective.

Plaintiffs failed to demonstrate that they met any of the criteria used to determine whether to grant a waiver. Id. at ¶27. Plaintiffs also failed to demonstrate that any additional damages they sought were actually covered by their SFIP. *Id.* Plaintiffs did not submit a detailed line-item documentation of uncompensated damages caused directly by flooding to their original building, but instead took an approach to calculate their alleged loss that was based upon the square footage of their new and substantially improved home. *Id.* Accordingly, after another comprehensive review of the claim, FEMA determined Plaintiffs were entitled to the amount previously approved by the Task Force, but no further compensation was warranted. Id. at ¶28.

Plaintiffs' waiver application was denied for a multitude of reasons, but primarily because they failed to document any physical loss by or from flood covered under their SFIP for which they did not receive full compensation for. *Id.*

IV. **Plaintiffs' Assertions and FEMA's Reply**

Plaintiffs in the their response to Defendants' Motion for Summary Judgment (Document 629) now accept the $63,705.15 payment that FEMA in its letter of July 31, 2008 said would be paid to them upon submission of the signed POL to Selective Insurance. FEMA stated that a waiver of the filing provision "will be granted and payment will be issued to you." Although the offer was made in 2008, the Plaintiffs have not submitted the necessary request, but they state that they will accept

this amount as full payment as "the full extent of [their] covered flood loss damage" In the Reply filed by FEMA (Document 634) to the Plaintiffs' response, FEMA says it would "be willing to grant the Proof of Loss waiver request after receiving a proper signed and sworn Proof of Loss along with the submission of a signed settlement agreement by Plaintiffs that terminates the litigation as to these Plaintiffs (which will necessarily include Selective's involvement and concurrence as it is the proper party defendant in this matter)."

V.  **Special Master's Analysis**[1]

It appears from the filings of both sides that upon payment of the $63,705.15 that the litigation between these individual Plaintiffs, Alan and Sharon Godlewski, and the Defendants will be concluded.  It is not clear why the parties given their basic agreement have not concluded and settled this matter without the need to further involve the Special Master and the Court.  The Special Master recommends to the Court that it issue an order for the parties to implement their apparent agreement and terminate this litigation as to the Plaintiffs within a set period of time or to inform the Court before that time expires of the need for further involvement of the Special Master or the Court to consider the Defendants' Motion for Partial Summary Judgment and/or the Plaintiffs' Motion for Summary Judgment.

VI.  **Recommendation of the Special Master**

After a review and a consideration of the matter and the statements presented by the parties, it is the recommendation of the Special Master that the

---

1. Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application and Plaintiffs' Motion for Summary Judgment be held in abeyance for a period of 30 days while the parties conclude their agreement to terminate the litigation as to these parties and file an appropriate dismissal or if the litigation is not terminated within that 30 days that the parties jointly inform the Court and Special Master in writing of the need for the Special Master or the Court to rule on the pending motions.

| | |
|---|---|
|   June 2, 2011   |     /s/     |
| Date | Dennis M. Sweeney |
| | Special Master |