IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF ADRIAN GOODMAN

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Adrian Goodman pursuant to Part 1.f of the Memorandum Order of the Court (Document 467).[1] In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents

---

[1] John Goodman is a named Plaintiff in this case and has an interest in the insured property, but was not included as a party on the waiver application. *See* FEMA-000005 and FEMA-000222. This report and recommendation will cover both Adrian and John Goodman's remaining claims in this litigation that the Special Master has authority to review. The Special Master will however refer only to Adrian Goodman since she primarily handled the matter and will refer to her as the Plaintiff in this report and recommendation.

of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 300 pages labeled FEMA-000001 to 000300.

I.  **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 1804426409, from Allstate to insure her residence located at 9015 Hinton Avenue, Baltimore, Maryland[2] ("insured structure") from damage caused by flooding. *See* FEMA-000202. Plaintiff's structure was insured up to $80,000.00 with a deductible of $1,000.00. Id.

On September 18, 2003, Hurricane Isabel struck the Mid-Atlantic States, including Maryland, causing severe damage along the coast, including to the insured structure owned by Plaintiff. *See* FEMA-000215. Plaintiff's policy was effective August 7, 2003 through August 7, 2004 and was covered at the time of the loss. *See* FEMA-000247.

On September 20, 2003, Plaintiff contacted her insurer and notified Allstate of her loss alleging her insured structure was damaged by flooding caused by Hurricane Isabel on September 19, 2003. *See* FEMA-000215.

On or about September 23, 2003, Plaintiff was contacted by an adjuster, Jackie Norton, who was assigned by Allstate to investigate Plaintiff's loss. *See* FEMA-000226 through FEMA-000228.

The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *See* FEMA-000226 through FEMA-000242. The adjuster identified $29,405.60 in

---

[2] Plaintiff's waiver application states she resides at 2802 7th Street, Baltimore, MD 21219. *See* FEMA-000005. All of the supporting documentation, the policy number and the claims file consistently identify 9015 Hinton Avenue as the insured structure. The property located at 9015 Hinton Avenue was the basis of FEMA's determination on the submitted waiver application. It appears that Plaintiff agrees that 9015 Hinton is the correct designation. See, e.g., Plaintiffs' Oppositions (Document 630) at 36.

3

Replacement Cost covered flood damages after applying the $1,000.00 deductible. *See* FEMA-000237. Plaintiff was owed a net of $23,405.60 after deducting the $6,000.00 advance payment (*See* FEMA-000221 and FEMA-000225). *Id.*

On November 7, 2003, Plaintiff submitted a signed and notarized Proof of Loss for the $29,405.60. *See* FEMA-000231.

On November 14, 2003, Allstate issued a check for the remaining balance on the Proof of Loss of $23,405.60. *See* FEMA-000220.

On June 1, 2004, Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000201. Plaintiff request stated: "There was more than 50% damage, therefore we tore it down. This was determined by a county inspector." *Id.*

On June 22, 2004, the Task Force concluded its review. *See* FEMA-000202. The Task Force concluded there was no coverage for the shed structure in the backyard and provided $3,190.22 in additional funds for drying, muck-out, removal and resetting of items overlooked in the original estimate. *Id.* An actual breakdown of the supplemental authorized amount can be found at FEMA-000211 through FEMA-000212.

On July 31, 2004, Allstate issued a check for a total of $4,422.96, which included the amount authorized by the Task Force ($3,190.22) plus recoverable depreciation. ($1,232.74). *See* FEMA-000258.

Plaintiff was paid a total of $33,828.56[3] plus an additional $30,000.00 under the Increased Cost of Compliance provision of their SFIP. *See* FEMA-000005. Plaintiff was paid in full on every Proof of Loss she submitted to Allstate prior to her waiver request.

II. **Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiff to submit an application for waiver to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF ADRIAN GOODMAN'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000195. FEMA denied the request in a letter dated July 31, 2008. *See* FEMA 000196-000197.

III. **Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶ 16-24 in the Supplemental Declaration of Karen Christian with Respect to the claim of Adrian Goodman (Document 545-3). It states:

> Plaintiff claimed a shortfall of $45,371.44. *See* FEMA-000005. Plaintiff claims she had to remove and replace the old home and build new. *Id.* The cost of the new home exceeded $285,000.00. *Id.* Plaintiff took a formulaic approach to calculate

---

[3] Plaintiff identifies payments of $29,405.60 and $4,422.96, which were verified. The payment totals $33,828.56 vice the $33,628.56 Plaintiff identifies as the total payment paid on her structure. *See* FEMA-000005.

her alleged shortfall that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling resulting in a replacement valuation of policy limits ($80,000.00) minus the prior Allstate payments ($33,628.56 as noted $33,828.56) for a claimed shortfall of $45,371.44. *Id.*

Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of her new upgraded home. *See* FEMA-000023. Plaintiff's "itemization" did not actually include any itemization of physical loss caused by or from flood. *Id.*

Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.

> Plaintiff never challenged the repair estimates provided by Allstate and the Task Force. Plaintiff's sole focus was on receiving her policy limits.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000196 and FEMA-000197. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. The Plaintiff's formulaic shortfall calculation to replace her 55 year old building (*See* FEMA-000200) was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has

6

a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided an estimate for the replacement of your home. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force that recommend the supplemental payment made for cleaning/debris removal in the amount of $3,190.22. You received this payment from your Write Your Own company, Allstate Insurance Company along with the maximum payment under the Increased Cost of Compliance coverage, $30,000. The additional costs you incurred with the demolition and construction of a new dwelling is related to your ICC claim which has been paid in full.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted.

> *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

IV. **Plaintiff's Assertions**

Plaintiff in her portion of the Plaintiffs' Opposition (Document 630) at pages 9 to 10 notes that her property had 43" of water showing on the exterior and 41" of water inside the home for 14.5 hours. Plaintiff acknowledges that she was paid $29,405.60, Id at page 9, but takes exception with a statement by Ms. Christian that characterized a statement made by the Plaintiff regarding whether there was more than 50% damage shown to the property . Plaintiff felt that due to the damage she "didn't feel the home could be safely inhabited." Id. Plaintiff determined that it " would not be economically feasible to spend approximately $30,000.00 attempting to repair a home so damaged and opted to rebuild anew." Id at page 10.

Plaintiff also argues that given that an adjuster had found that the Replacement Cost Value ("RCV") was $49,335.00 that at a minimum that she should be paid $19,929.40 ( $49,335.00 -$29,405.60), but "given the extensive damage as shown in the building worksheet and estimate previously cited, full payment of the shortfall is warranted." Id.

Plaintiff disagrees with FEMA that she did not provide sufficient itemization of physical loss caused by or from the flood and cites 163 pages of the administrative record (FEMA 000023 through 000185) to support her contention that she has provided sufficient documentation. Plaintiff seeks to have the court enter summary judgment in her favor in the amount of $45,371.44. Id at page 36.

V. **Special Master's Analysis**[4]

FEMA notes in its reply to the Plaintiffs' Opposition, Document 633, at pages 4 to 6 that Plaintiff Goodman's waiver application was based on the cost per square foot formula based on the new construction. This method has been rejected by the District Court in earlier cases which are cited at page 4 of the Reply. It does appear that this theory was the basis for the claim in the waiver application filed by the Plaintiff. See, e.g. FEMA-000023. As noted by FEMA, this theory of compensation has been determined by the court not to be correct or in accord with the SFIP. In this case as FEMA noted in its supplemental memorandum in support of FEMA motion for summary judgment (Document 545-2) the claim was based on the square footage cost of a new upgraded dwelling that was three times as large which included code and material upgrades and did not take into account the ICC coverage limits that govern FEMA.

Plaintiff is also asking the court to consider the overall damage to the home, the determinations made as part of the ICC process, and Plaintiff's

---

4.Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

own personal view and feelings that the home should not be rebuilt and that it was reasonable for her to build anew rather than repair.

FEMA notes in its Reply that under the SFIP at issue here the policy was not a "valued policy" and that Plaintiff was limited to actual physical loss which had to be proven by the Plaintiff and that her decision to replace rather than rebuild does not control how FEMA interprets the policy or adjusts the claim. FEMA Reply at page 5 -6. While Plaintiff points to the considerable number of documents submitted with the waiver application which number 195 pages, they do not include an analysis or demonstration based on the SFIP how the adjustment made originally on the claim was in error and not in accord with the law. Indeed a review of the Plaintiff's submission shows that virtually all the documents are invoices, receipts and cancelled checks from the new construction. A fair reading of the waiver application is that Plaintiff was relying largely if not exclusively on the square foot cost of new construction to support its waiver claim.

Plaintiff was entirely within her rights to erect a new structure and reject the FEMA analysis, but that is not the question presented in this litigation. For Plaintiff to prevail she has to show that FEMA's actions were arbitrary, capricious or an abuse of discretion. FEMA had an extensive adjustment of this claim done by Jackie Norton of Allstate which is directed at the specific issues found in the SFIP. It accepted this adjustment from a qualified person and paid the claim on that basis. It is noteworthy that when the Hurricane Isabel Task Force reviewed the claim and paid the

1

Plaintiff an additional sum she was reported at that time, June of 2004, to be in agreement with the claim resolution. FEMA-000202.

Plaintiff received the maximum amount under the claim for ICC coverage and received additional compensation upon review by the Hurricane Isabel Task Force. The reasons given by FEMA for the denial of the waiver considering the arguments made in the waiver application for additional payment are reasonable and in accord with the SFIP in effect at the time. They also appear to the Special Master to be consistent with how FEMA and its agents adjusted other claims of a similar nature.

The Special Master after a review of the arguments does not find FEMA's conclusions on the waiver application as set out in the Supplemental Declaration of Karen Christian and recited in Part III above to be either arbitrary or capricious or not in accord with the evidence presented to it.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

June 2 , 2011                             /S/
         Date                      Dennis M. Sweeney
                                     Special Master