IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, | ) | |
| ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION CONCERNING
WAIVER CLAIM OF PHILEMON GREENHAWK**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Philemon Greenhawk pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 152 pages labeled FEMA-000001 to 000152.

I. **Background**

Plaintiff purchased Standard Flood Insurance Policy ("SFIP" or "Policy")

Number FLD1042650 from Selective Insurance Company to insure his house located at 713 South Morris Street, Oxford, Maryland (the "insured structure"). Plaintiff's structure was insured under the SFIP for up to $202,700.00 with a deductible of $500.00, and no contents coverage. *See* FEMA-000102. Selective is a Write Your Own ("WYO") Program participating insurance company, authorized to issue the Standard Flood Insurance Policies ("SFIP") promulgated by FEMA.

On or about September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe damage along the coast, including flooding of the insured structure owned by Plaintiff. *See* FEMA 000016-000017. Plaintiff's SFIP was in full force and effect at the time of the loss and provided coverage for the flood-related damages. *Id.*

Plaintiff contacted his insurer and notified them of the loss, alleging his insured structure was damaged by flooding caused by Hurricane Isabel on September 19, 2003. An independent adjuster, Leonard Bell, was assigned to investigate the loss on September 20, 2003. *See* FEMA-000106. Selective assigned the independent adjuster to assist Plaintiff with his claim "as a courtesy only" in accordance with SFIP Article VII(J)(5), (7) and (8).

The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *See* FEMA-000105 through 000149. The adjuster identified $54,795.99 in replacement-cost covered flood damages after applying the $500.00 deductible. Plaintiff signed Proofs of Loss for this amount. *See* Doc. 318-2, at 57 through 58.

Plaintiff was paid the full amount for his loss by Selective, and was issued three checks by his insurer for the flood-related damage to the building.[1] The following checks were issued to Plaintiff by Selective: Check Number 0000048886 in the amount of $15,000.00; Check Number 0000052500 in the amount of $35,066.88; and Check Number 0000177476 in the amount of $4,729.11. The total payment of $54,795.99 included the recoverable depreciation. *See* Doc. 318-2 at 60 through 62.

No other Proofs of Loss for any amounts over and above the amount determined to be payable by Mr. Bell were submitted by Plaintiff, and no Increased Cost of Compliance ("ICC") Proof of Loss was submitted by Plaintiff, as required by the SFIP. Plaintiff did not request review of his claim by the Hurricane Isabel Task Force ("Task Force").

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF PHILEMON GREENHAWK'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000195. FEMA denied the request in a letter dated August 18, 2008. *See* FEMA-000088 through 000089.

---

[1] Per the requirements of the SFIP, the holder of the mortgage on the property, Talbot Bank, was included as a payee on the checks for building damages.

3

### III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶12-20 in the Supplemental Declaration of Karen Christian with Respect to the claim of Philemon Greenhawk (Document 546-3). It states:

> Plaintiff claimed a shortfall of $59,419.47. *See* FEMA-000020. However, Plaintiff's "Shortfall Itemization" includes a claim for the policy limit of $30,000.00 under the Increased Cost of Compliance Provision of the SFIP plus $35,730.00 (foundation work and elevation) for the same work. *See* FEMA-000020. Plaintiff cannot "double dip" and claim amounts for the same work under two different sections of the SFIP. The $35,730.00 is only eligible under the Increased Cost of Compliance provision and must be subtracted from the "total cost to repair the original home" of $84,715.46, which reduces the cost to repair original home to $48,985.56. This amount is **less** than what Selective paid Plaintiff. There is no basis for any additional or "shortfall" payments to the Plaintiff.
>
> Plaintiff's "Shortfall Itemization" did not actually include any itemization of physical loss caused by or from flood. Generic statements, with no supporting documentation, were made for appliances ($4,713.20), plumbing ($2,500.00), bathroom fixtures ($7,641.30), doors and cabinets ($3,706.22), flooring, wallpaper and trim ($7,506.13). *Id.* As there is nothing submitted that would allow FEMA to evaluate the basis for these claims, no amounts can be paid. Furthermore, the "Shortfall Itemization" also claims the amount of $10,500.00 for removal and replacement of a leaking atrium with windows, which was broken as a result of elevating the house per Plaintiff's submission. *See* FEMA-000034. These damages are not a "direct physical loss by or from flood" but are consequential damages excluded by Article V(A)(7) of the SFIP. Additionally, there is $4,455.52 claimed for work by Trend Avon Electric Company to bring the electrical wiring up to current building code standards. This work is excluded by SFIP Article V ("Exclusions"), Section A, subparts 6 and 7, as well as Article III, Coverage D, Section 5, subsection (f). These additional amounts should also be subtracted from the remaining "Shortfall Itemization" of $48,985.56 leaving a difference of $34,030.04 as being the

4

maximum potential total eligible costs to repair the house based upon Plaintiff's documentation. If anything, Plaintiff has been overpaid by a minimum of $20,765.95 per his own documentation under Coverage A.

Furthermore, even if Plaintiff applied for Increased Cost of Compliance compensation, he would not qualify. To qualify for an Increased Cost of Compliance compensation, the cost to repair the building must exceed 50% of its replacement cost value. Using Plaintiff's own Residential Appraisal of the building of $174,120.00, and subtracting the "double dipped" costs associated for the elevation of the building from Plaintiff's own estimate of damages of $48,985.56, the cost to repair does not exceed 50% of the replacement cost value of the home. The full amount paid by Selective is also less than 50% of the value of the home.

It is worth noting that Plaintiff submitted two separate residential appraisals – one dated September 18, 2003 (*See* FEMA-000058 through FEMA-000072 – the "first appraisal") and one dated September 19, 2003 (*See* FEMA-000073 through FEMA-000087 – the "second appraisal"). In the first appraisal, the appraiser listed the replacement cost value of the property as $174,120 and depreciated the property by ten percent, listing the depreciated value of the property with improvements as $158,708.00. *See* FEMA-000060. In the second appraisal, the appraiser also listed the replacement cost value of the property as $174,120. The important issue is that the building be damaged more than 50% of its replacement cost value of $174,120.00 in order to trigger Increased Cost of Compliance eligibility. As shown above, Plaintiff's property damages did not exceed 50% of either value.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000088 through FEMA-000089. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

5

> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

In the August 18, 2008 letter from FEMA denying Plaintiff's waiver application, the Federal Insurance Administrator (David Maurstad) stated:

> Based upon our review of your waiver request, it has been determined that there are no additional items eligible for payment under your policy and that no further payment is due. First, it has been over four years since the deadline to submit a POL expired and you have not provided a reasonable explanation for the delay in submitting a timely POL. Second, you have not demonstrated additional covered damage for which you have not already received compensation under your SFIP.
>
> You claim the damages necessitated additional costs for repairs and the elevation of your dwelling as a result of the flooding. To support the amount claimed, you provided an estimate that included the repairs and elevation of the insured structure. Your claim was originally reviewed by an independent adjuster. However, you did not submit a request to the Hurricane Isabel Task Force for an additional review of your claim. The repair costs listed on your estimate do not exceed what you have been paid for your flood damages by your Write Your Own Company, Selective Insurance. Therefore, no additional payment is warranted. Regarding the elevation of your structure, you must contact your insurance agent to file an Increased Cost of Compliance claim through Selective Insurance as a thorough investigation must be conducted to determine if you are eligible for this coverage.
>
> Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

>       Accordingly, your request for a waiver of the time
>       period within which to file a POL is denied.

*Id*.

**Plaintiff failed to demonstrate he met any of the criteria used to determine whether to grant a waiver.** First, he failed to demonstrate any additional damages he sought were actually covered by the SFIP. In fact, Plaintiff appears to have been overpaid. Second, he did not submit detailed line-item documentation of uncompensated damages caused directly by flooding which exceeded the amount previously paid by Selective to Plaintiff for his loss. Third, he failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after a comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to demonstrate that any of the criteria for the granting of a waiver were met, failed to document any physical loss by or from flood covered under the SFIP for which he did not previously receive full compensation from Selective, and because he failed to demonstrate that his building qualified at all for an ICC claim.

IV. **Plaintiff's Assertions**

Plaintiff in her opposition at page 14 now agrees that all monies due under Coverage A of their SFIP have been paid in full. They now seek to revise their shortfall to a claim for $30,000 in ICC monies due them under Coverage D of the SFIP and ask the court to award this amount to them by their motion for summary judgment. Document 630 at 36.

Plaintiffs at this time through counsel ask the Special Master to "instruct them on how to proceed in the filing of and collection of their ICC claim..." This is the only amount that they now seek.

## V. Special Master's Analysis[2]

FEMA in its Supplemental Motion for Summary Judgment (Document 546-2) at pages 5 to 10 makes a convincing case that Plaintiff has been fully compensated under Coverage A and if anything has been overpaid on this coverage by an amount of at least $20,765.95. As the Special Master reads Plaintiff's Opposition she now concedes that there is no Coverage A claim that is being sought at this time. Plaintiff instead asserts that she should have an opportunity to apply for Coverage D (Increased Cost of Compliance Coverage).

FEMA appears correct in their Reply at page 7 that the original waiver denial of the waiver application did not purport to the resolve the ICC coverage because at the time there was no Increased Cost of Compliance claim that had either been presented to FEMA or denied.

FEMA asserts that Plaintiff's building has not been shown to meet the ICC requirements by anything the Plaintiffs have filed. Id at page 7. FEMA contends that Plaintiffs were referred back to Selective and that no ICC claim has yet been submitted. Id. This is consistent with the waiver denial letter of August 18, 2008 where Plaintiffs were instructed , if they wished

---

2. Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

to pursue an ICC claim, that it should be done through Selective Insurance.

Plaintiffs seem to agree that no claim was filed since they now seek that the "Special Master instruct them on how to proceed in the filing of and collection of the ICC claim..."  The Special Master does not have the authority to advise the Plaintiffs or their counsel on how they should proceed to actually file an ICC claim.  The Special Master task is to decide whether the waiver application that was filed was denied in an arbitrary or capricious manner. It appears for the reasons stated above in the Supplemental Declaration of Karen Christian that it was not.

In light of the fact that the claim for ICC coverage is not before the court for consideration since one was never filed, the Special Master makes no determination on whether such a claim now has any validity should one be filed with Selective in accord with FEMA's earlier suggestion to the Plaintiffs.

VI.  **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's

determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
| June 2, 2011 | /S/ |
| Date | Dennis M. Sweeney |
| | Special Master |