# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF MARIE HALLANAN

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Marie Hallanan pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 425 pages labeled FEMA-000001 to 000425.

I.  **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 1802814366, from Allstate to insure her residence

located at 4946 Bonniewood Drive, Shady Side, Maryland ("insured structure") from damage caused by flooding. *See* FEMA-000180. Plaintiff's structure was insured up to $119,000.00 with a deductible of $1,000.00. *Id.*

On or about September 19, 2003, Hurricane Isabel struck the Mid-Atlantic states, including Maryland, causing severe damage along the coast, including the insured structure owned by Plaintiff. *See* FEMA-000172. Plaintiff's policy was effective April 5, 2003 through April 5, 2004 and was therefore covered at the time of the loss. *See* FEMA-000172.

On September 19, 2003, Plaintiff contacted her insurer, Allstate, and them of her loss, alleging her insured structure was damaged by flooding caused by Hurricane Isabel on September 19, 2003. *See* FEMA-000172.

On or about September 23, 2003, Plaintiff was contacted by an adjuster, Randy C. Perce, Jr., who was assigned by Allstate to investigate Plaintiff's loss. *See* FEMA-000173 through FEMA-000191. The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *Id*. The adjuster identified $41,399.67 in replacement cost covered flood damages after applying the $1,000.00 deductible. *See* FEMA-000179. Plaintiff was owed a net of $26,399.67 after deducting the $15,000.00 advance payment that Allstate paid on October 2, 2003 (*See* FEMA-000168). *Id.*

On November 18, 2003, Plaintiff submitted a signed and witnessed Proof of Loss for the $41,399.67. *See* FEMA-000180.

On November 24, 2003, Allstate issued a check for the remaining balance

on the Proof of Loss of $26,399.67. *See* FEMA-000166.

On or about April 9, 2004, Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force"), *see* FEMA-000086 and FEMA-000110, because of concerns regarding the recoverable depreciation. *See* FEMA-000127. Plaintiff submitted a Statement as to Full Cost of Repair or Replacement. *See* Doc. No. 397-4 at 2.

On May 26, 2004, the Task Force confirmed the recoverable depreciation amount of $6,082.30 was released (the check was issued on April 19, 2004 by Allstate. *See* Doc. No. 397-4 at 2) and closed the claim. *Id.*

On or about July 27, 2004, Plaintiff re-contacted the Task Force and was concerned about "unit pricing of the paint, trim, and drywall" as well as issues with the stud walls and window damage. *See* FEMA-000054 and FEMA-000055.

On August 3, 2004, the Task Force concluded its second review. *Id*. The Task Force concluded that a supplemental payment in the amount of $24,638.73 was in order to reimburse for the damaged studs and windows and "price increases for painting, exterior siding, and drywall." *Id.* The Task Force also provided for "additional drywall in order to compensate for the removal of the stud walls." *Id.* The Task Force reviewed the supplemental determination with Plaintiff who agreed with the supplemental amount and was pleased with the Task Force. *Id.*

On August 12, 2004, Plaintiff executed a Proof of Loss for $24,638.73. *Id.; see also* Doc. No. 397-4 at 2. On August 16, 2004, Allstate issued a check for a total of $24,638.73, which was the amount authorized by the Task Force. *Id.*

Plaintiff did not cash this check.  *See* FEMA-000039.  Also on August 12, 2004, Allstate issued Plaintiff a check for $15,000.00 as an advance under the Increased Cost of Compliance ("ICC") provision of her SFIP.  *Id*.

On January 24, 2005, Plaintiff submitted a Proof of Loss for ICC compensation in the amount of $30,000.00.  *Id.*  On March 7, 2005, Allstate issued Plaintiff another check for $15,000.00 for the balance of Plaintiff's claim.  *See* Doc. No. 397-4 at 2.  Plaintiff also did not cash this check.  *See* FEMA-000039.

Allstate issued checks to Plaintiff totaling $30,000.00 for ICC for the demolition of the old structure and elevation of the new one, but, as stated above, Plaintiff did not cash the check for $15,000.00.

Plaintiff was paid in full on every Proof of Loss she submitted to Allstate.  As noted, Allstate issued checks totaling $102,120.70 ($15,000.00, $26,399.67, $24,638.73, $6,082.30 and $15,000.00), but Plaintiff did not cash the check issued for $15,000.00 under the ICC coverage or the Task Force approved amount of $24,638.73.

**II.    Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA.  *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007.  On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF MARIE HALLANAN'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS."  *See*

4

FEMA-000001 through FEMA-00009. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000038 to 000039.

### III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶19-28 in the Supplemental Declaration of Karen Christian with Respect to the claim of Marie Hallanan (Document 547-3). It states:

> Plaintiff claimed a shortfall of $85,518.03. *See* FEMA-000005. Plaintiff claims she had to remove and replace the old home and build new. *Id.* The cost of the new home exceeded $372,000.00. *Id.* The new home was more than double the size of her original structure (2,916 square feet versus 1,386 square feet). *See* FEMA-000023. Plaintiff took a formulaic approach to calculate her shortfall that took the square footage of the original structure and multiplying it by the cost per square foot of the new upgraded dwelling resulting in a replacement valuation of policy limits ($119,000.00) minus the prior Allstate payments ($47,481.97 for the insured structure and $15,000.00 under ICC coverage) for a claimed shortfall of $85,518.03.[1] *Id.*
>
> Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of her new upgraded home. *See* FEMA-000023. Plaintiff's "itemization" did not actually include any itemization of direct physical loss by or from flood to the insured property. *Id.*
>
> Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.
>
> Plaintiff presented no evidence challenging the repair estimates provided by Allstate and the Task Force. Plaintiff's sole focus was on receiving her policy limits.
>
> When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the

---

[1] Plaintiff's calculations fail to take into account checks for $24,638.73 for supplemental building payments as determined by the Task Force review and $15,000.00 for the remaining ICC claim which Plaintiff did not cash. *See* FEMA-000039.

request. *See* FEMA-000038 and FEMA-000039. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. The Plaintiff's formulaic shortfall calculation to replace her 45 year old building (*See* FEMA-000112) was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for ICC expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your damages necessitated the demolition of your dwelling as a result of the flood. To support the amount claimed, you provided a cost for the replacement of your home. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force that recommend a building supplemental payment of $24,638.73. Information provided for review indicates you did not receive the recommended supplemental payment. However, the file review indicates you did receive the supplemental payment but did not cash it as you did not agree with the amount.
>
> Regarding the Increased Cost of Compliance (ICC) claim, two payments in the amount of $15,000 each

6

were issued to you resulting in the maximum amount of coverage paid for demolition benefits. You acknowledge only receiving the initial $15,000 payment.

*****

Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*See* FEMA-000039.

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

### IV. Plaintiff's Assertions

Plaintiff's assertions that specifically apply to her claim are set out in Plaintiffs' Oppositions (Document 630) at pages 14 to 15.

Plaintiff requested that FEMA reissue supplemental checks in the amount of $24,638.73 (supplemental payment) and $15,000 (Increased Cost of Compliance) that she failed to deposit.

If that request was complied with the "shortfall amount" would be $45,879.30 under Coverage A of the SFIP. As to that dispute, Plaintiff claims that contrary to FEMA's assertions, she met the criteria for a waiver and that she did show that additional damages sought were actually covered by her SFIP and that the documentation submitted should have been considered to be sufficient for payment of the Coverage A claim. Plaintiff says that she did include a nine page shortfall itemization and faults FEMA for not advising her that "additional information" was needed. Plaintiff asserts that contrary to FEMA's characterization of her claim her only motivation is to obtain what is due to her under the SFIP that applied to her claim.

V. **Special Master's Analysis**[2]

FEMA's reply (Document 633) at page 8, indicates that without the need for further court action, it will instruct Allstate to reissue the two checks totaling $39,638.73 which will moot the first issue raised by Plaintiff.

As to the balance of the claim, FEMA argues that Plaintiff's waiver application was based on "the formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss." Id at page 9. This does appear to be the case and is the only rationale provided in the waiver application for additional monies under Part A. FEMA also disputes that the nine pages of supporting documents allows FEMA to properly evaluate the claim since it relates to the new construction not proof of the loss sustained to the then existing structure.

After a review, the Special Master agrees with FEMA as to the remaining claim for Coverage A of the SFIP. Plaintiff's waiver claim was clearly based on the square footage formula based on new construction. This seems to be the only basis for the waiver application. See FEMA-000005 and FEMA-000023. This method has been rejected several times by the

---

2. Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

court in this litigation and nothing raised in this claim suggest that the argument should be revisited.

Plaintiff attempts to recast the claim to assert that the claim should have been adjudicated by FEMA without regard to square footage argument based on new construction. The Special Master agrees with FEMA that the waiver claim process did not demand that FEMA do more than it did. The Supplemental Declaration of Karen Christian cited above states in detail the reasons for the denial of the waiver claim that was actually made by Plaintiff in February, 2008. There is no requirement in considering a waiver claim for FEMA to have done more or to return to the Plaintiff to ask her to submit more documentation or for FEMA to search for errors or theories of recovery that were not specifically mentioned in the waiver application. FEMA's waiver denial in this case was not arbitrary or capricious. It was based rationally on the arguments and evidence presented to it in February, 2008.

**VI.  Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further

recommended that Plaintiff's Motion for Summary Judgment be denied. This recommendation is conditioned on FEMA's assertion that it will promptly resolve in Plaintiff's favor the issue about the checks that need to be reissued by Allstate.


 June 2 , 2011                                          /S/         
    Date                                    Dennis M. Sweeney
                                               Special Master