IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

REPORT AND RECOMMENDATION CONCERNING
WAIVER CLAIM OF LORI HEALAN

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Lori Healan pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 436 pages labeled FEMA-000001 to 000436.

I. **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 0809966260, from Allstate to insure her residence

located at 1306 Burke Road, Baltimore[1], Maryland ("insured structure") from damage caused by flooding. *See* FEMA-000005. Plaintiff's structure was insured up to $185,900.00 with a deductible of $1,000.00. Amended Declaration of Jason Raske (Document No. 397-4) and Supplemental Declaration of Karen Christian (Document 548-3).

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe damage along the coast, including to the insured structure owned by Plaintiff. *See* FEMA-000119. Plaintiff's policy was effective October 1, 2002, through October 1, 2003, and therefore the residence was covered at the time of the loss. *Id.*

On or about September 22, 2003, Plaintiff contacted her insurer to notify them of her loss, alleging her insured structure was damaged by flooding caused by Hurricane Isabel on September 18, 2003. *Id.*

On or about September 26, 2003, Plaintiff was contacted by an adjuster, Sean Westerlund, who was assigned by Allstate to investigate Plaintiff's loss. *See* FEMA-000143 through FEMA-000145. The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior and adjusted the loss. *See* FEMA-000143 through FEMA-000158. The adjuster identified $26,100.52 in actual cash value covered flood damages after applying the $1,000.00 deductible. *See* FEMA-000144. The adjuster noted an additional $8,711.44 under the replacement cost coverage provision if Plaintiff was eligible. *Id.*

---

[1] The waiver application (*See* FEMA-00005) states Middle River, Maryland, but the file indicates Baltimore. *See* FEMA-00011 and FEMA-0000013.

2

Plaintiff provided a report dated October 9, 2003, from Plumb Construction Co., Inc. that provided "the cost to repair damage caused by hurricane flooding" was $64,400.00. *See* FEMA-000078 and FEMA-000079.

On October 31, 2003, Plaintiff submitted a signed and notarized Proof of Loss for the $26,100.52 identified by the adjuster. *See* FEMA-000013.

On November 10, 2003, Allstate issued payment in full on the October 31, 2003, Proof of Loss totaling $26,100.52. *See* FEMA-000014.

On November 10, 2003, an engineer from National Forensic Consultants, Inc., provided a report after re-inspecting the exterior of the structure, the foundation and the interior, and taking photographs of Plaintiff's property to assess any structural damages. *See* FEMA-000238 through FEMA-000250.

On December 12, 2003, Preston Kuhn, an Allstate adjuster, completed a supplemental adjustment. *See* FEMA-000177 through FEMA-000178. Mr. Kuhn found that some additional compensation was warranted, but that the previous adjuster overcompensated for drywall because less than two feet of water flooded some areas. *Id.* The supplemental adjustment provided for a total replacement cost for the flood damage repairs of $45,284.56 with an additional actual cash value payment of $7,698.60 and an additional $2,774.00 for replacement cost coverage if Plaintiff was eligible. *Id.*

On December 12, 2003, Plaintiff submitted a supplemental Proof of Loss for the additional $7,698.60 the adjusted identified for actual cash value of her loss. *See* FEMA-000015. On January 2, 2004, Allstate issued a check for the balance of the December 12, 2003 Proof of Loss of $7,698.60. *See*

3

FEMA-000016.

Plaintiff submitted a statement as to full cost of repair or replacement to receive the recoverable depreciation under the replacement cost coverage of the policy, which was $11,485.44 as identified by the adjuster in his supplemental report. *See* FEMA-000017. On June 8, 2004, Allstate issued a check to cover the replacement cost value in the amount of $11,485.44 (recoverable depreciation from the initial estimate in the amount of $8,711.44 and the supplemental recoverable depreciation in the amount of $2,774.00). *See* FEMA-000018.

On September 24, 2004, Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000109. Plaintiff request stated: "Due to unstable soil conditions, we demolished the part of the house which was not above BFE and built new. On the adjuster summary for coverage A – amounts for labor items low, was not paid for upper cabinets to match new lower cabinets." *Id.*

The Task Force reviewed the October 9, 2003 repair estimate (*See* FEMA-000078 and FEMA-000079) of $64,400.00 that Plaintiff provided, but was unable to compare it to the final adjustment because it was not itemized. *See* FEMA-000108. The Task Force asked Plaintiff to provide an itemization for comparison purposes. *See* FEMA-000112 and FEMA-000113. On November 29, 2004, Plaintiff told the Task Force to close the file. *Id.* An itemization of the repair estimate was never provided. *Id.* On November 29, 2004, the Task Force concluded its review without any recommendation for supplemental payments. *See* FEMA-000108.

In addition to the above payments, Plaintiff was paid $28,795.00 under the Increased Cost of Compliance coverage provided by her SFIP. *See* FEMA-000005. Plaintiff was paid in full on every timely submitted Proof of Loss and did not make any supplemental payment requests prior to the filing of her lawsuit.

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF LORI HEALAN'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000097. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000098 to 000099.

III.     **Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶22-30 in the Supplemental Declaration of Karen Christian with Respect to the claim of Lori Healan (Document 548-3). It states:

> Plaintiff claimed the "cost to restore original home to pre-flood condition" was an astonishing $441,168.00. *See* FEMA-000005. Plaintiff claims ". . . she demolished her old home and built a new residence which was substantially smaller than the prior residence." *Id.* Plaintiff took a formulaic approach to calculate her shortfall that took the square footage of the original 1954 structure (*See* FEMA-000076) and multiplied it by the cost per square foot of the new upgraded dwelling resulting in a replacement valuation exceeding her policy limits ($185,900.00). *Id.* Plaintiff deducted the prior payments from Allstate totaling $45,284.56 from the policy limit to arrive at the claimed shortfall of $139,615.44. *Id.*
>
> Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of the new upgraded home. *See* FEMA-000037. Plaintiff's "itemization" did not actually include any itemization of physical loss caused by or from flood. *Id.*
>
> Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.
>
> Plaintiff did not provide any evidence challenging the repair estimates provided by Allstate or the Task Force. On or about October 9, 2003, Plaintiff presented a repair estimate for the flood damages totaling $64,400.00 (*See* FEMA-000078 and FEMA-000079). The Task Force asked her to itemize the repair estimate to support additional payments. Plaintiff elected to not provide the itemization and requested that her file be closed. Almost four years later, Plaintiff filed her waiver application claiming the cost to restore her home to pre-flood condition ballooned to $441,168.00 (*See* FEMA-000037), an increase of almost $380,000.00 from her October 9, 2003 repair estimate.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000098 and FEMA-000099. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. The Plaintiff's formulaic shortfall calculation to replace her 49 year old home (*See* FEMA-000076) was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your damages necessitated the partial demolition of your dwelling. A new home was subsequently constructed. To support your supplemental claim, you provided an estimate from a contractor. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. The estimate from your contractor in the amount of $64,000 does not provide unit cost prices for items nor does it provide enough detail to compare with the adjuster's estimate. The Hurricane Isabel Task Force requested that you provide a detailed estimate but none was submitted. Accordingly, the Hurricane

7

> Isabel Task Force determined that no additional monies were owed.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation, as requested previously by the Task Force, of uncompensated damages caused directly by flooding to her original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation.

IV. **Plaintiff's Assertions**

Plaintiffs' Oppositions (Document 630) at pages 16 to 25 sets out Plaintiff's concerns about FEMA's denial of the waiver application. Plaintiff concedes that her waiver application was substantially flawed in that it claimed that Plaintiff had demolished her entire home and rebuilt a much smaller home. This was not factually correct since Plaintiff rebuilt

8

the demolished portion of her home and remodeled the remaining section of the home. Id at 18. Plaintiff acknowledges that the construction company she chose, Plumb Construction Company, never did, despite her numerous requests, provide the detailed documentation that FEMA requested to support the claim of Plaintiff . Plaintiff was unable to provide such documentation either because Plumb Construction Company was unwilling or unable to provide the detailed information needed to show that monies were due under the SFIP. Plaintiff initiated a review of her claim by the Hurricane Isabel Task Force but withdrew the claim because of her inability to get detailed information from her contractor. This remains the status to this date and there is no indication that Plaintiff has any plans to provide what is needed.

Plaintiff also now critiques the way that overhead and profit were handled by Allstate. Plaintiff also believes she filed a sufficient application for waiver and that she did not receive the comprehensive review of her claim that she believed would occur in the waiver process.

In her motion for summary judgment, she asks that the court award her $139,615.44. Document 630 at 36.

V. **Special Master's Analysis**[2]

Plaintiff acknowledges that the waiver application filed by her was based on a faulty premise--that her house was totally demolished and a much smaller home was built on the site. This was not correct. Her house was only partially demolished and it was rebuilt but not in its entirety. FEMA notes that the only basis given in the waiver application for the "shortfall calculation" was the cost per square foot formula an analysis that has now been consistently rejected in this litigation. The Special Master agrees with FEMA on this point and notes that the fundamental error in the waiver application which is solely due to Plaintiff's mistake makes it very difficult for her to prevail on her claim since the premise for the waiver request is without adequate support in the record.

It is also the case that Plaintiff had the obligation to submit information that would support her waiver application but did not do so. Plaintiff basically acknowledges this failure, but attempts to explain it by pointing to the fact that she made numerous requests of Plumb Construction Company for detailed information but she never received responses that were satisfactory. This is unfortunate, but it is was her burden to obtain

---

2.Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

the information needed from the contractor she had chosen or to employ others who could provide the necessary analysis.

Plaintiff was on notice of the problem as early as 2004 when she withdrew her request before the Hurricane Isabel Task Force because she couldn't supply the needed detail. FEMA-000168. This lack cannot now be laid at FEMA's doorstep since the Plaintiff had the burden to collect and present the information as part of the claim and waiver process.

Plaintiff discusses the "structural cracks" in the building but it is unclear to the Special Master how this leads to a conclusion that FEMA abused its discretion or acted in an arbitrary or capricious manner. It appears that the vast majority of the cracks were pre-existing before the flood and Plaintiff does not present an argument why the requirements of the SFIP were met given the state of the reports on the cracks. It is also noteworthy that the "structural cracks" matter was not given as a basis for a waiver in the narrative of the waiver request made by Plaintiff.

Plaintiff's waiver application was based solely on the square footage formula that this court has rejected. See FEMA-000005 and 000037. FEMA's articulation of the basis for the denial was clear in the letter of July 31, 2008 and is even further explained in the Supplemental Declaration of Karen Christian which is set out above. Plaintiff did not present any other basis in the waiver application that leads to a conclusion that FEMA acted in a manner that was arbitrary or capricious or that

FEMA abused its discretion in denying the claim that had actually been presented. This same argument would apply to the matter now raised for the first time in the opposition to the overhead and profit calculations. Plaintiff has presented a lengthy discussion in the Opposition about the claim and the reasons why certain requirements were not made. Plaintiff has also raised issues such as profit and overhead calculations that were never explicitly raised in the waiver application. FEMA's denial of the waiver application was in accord with its procedures and statutory and regulatory requirements and there is no basis to overturn it.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|   |   |
|---|---|
|   June 2 , 2011 | /S/ |
| Date | Dennis M. Sweeney |
|  | Special Master |