# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF ANNE JACKSON[1]

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Anne Jackson pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the

---

[1] Ann Jackson, Michael McCormick, John and Julia Koczela are identified as Plaintiffs filing the waiver application. The declaration page for the policy in question lists Thomas McCormick, Ann Jackson, John and Julia Koze. *See* FEMA-000137. Mr. and Mrs. Koczela, and Mr. and Mrs. Koze are the same individuals, but the last name did not fit in the space provided on the declaration page and was abbreviated. Further, Thomas and Michael McCormick are the same person. Accordingly, this declaration is applicable to all four named Plaintiffs as identified on the waiver application.

documents consist of 952 pages labeled FEMA-000001 to 000952.

I.  **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number HA 7200025572, from The Hartford Insurance Company ("Hartford") to insure her residence located at 124 Bay Park Way, Severna Park, Maryland ("insured structure") from damage caused by flooding. *See* FEMA-000137. Plaintiff's structure was insured up to $185,000.00, and her contents were insured up to $60,000.00 with a deductible of $500.00. *Id.*

On September 19, 2003, Hurricane Isabel struck the Mid-Atlantic States, including Maryland, causing severe damage along the coast, including the insured structure owned by Plaintiff. *See* FEMA-000809. Plaintiff's policy was effective March 26, 2003 through March 26, 2004 and was therefore covered at the time of the loss. *See* FEMA-000137.

On or about September 19, 2003, Plaintiff contacted her insurer and notified it of her loss. *See* FEMA-000686.

On or about September 20, 2003, Plaintiff was contacted by an independent adjuster from Bellmon Adjusters, Inc., who was assigned by Hartford to investigate Plaintiff's loss. *See* FEMA-000808. The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, and adjusted the loss. *See* FEMA-000808 through FEMA-000838. The adjuster noted the interior waterline was 22 to 25 inches. *See* FEMA-000809. On December 2, 2003, he issued his final report. *See* FEMA-000808 through

FEMA-000838. The actual cash value of the cost to repair the damaged structure was found to be $82,359.33 after application of the $500.00 deductible with $13,114.58 in recoverable depreciation if Plaintiff was eligible. *See* FEMA-000831.

Plaintiff's actual cash value of her contents loss was found to be $12,599.00 after application of the $500.00 deductible and application of $9,716.00 in depreciation. *See* FEMA-000838.

The adjuster noted Plaintiff requested the services of a Public Adjusting firm. *See* FEMA-000810. The firm found the pricing acceptable. *Id.*

Per the final report, Plaintiff submitted a Proof of Loss for $94,958.33 ($82,359.33 for the actual cash value structure loss and $12,599.00 for the actual cash value contents loss). *See* FEMA-000025. Plaintiff noted on the Proof of Loss that she was not accepting the estimate as the full cost to repair or replace the structure. *Id.*

On December 17, 2003, Plaintiff was paid $12,599.00 for her contents loss and $82,359.33 for her structure loss. *See* FEMA-000726.

On February 13, 2004, Plaintiff submitted a revised Proof of Loss for $120,688.14, s*ee* FEMA-000027, an increase of $25,729.81. This supplemental claim was untimely, but a "Request to Waive Proof Policy Provision for Time" was submitted with the supplemental claim, explaining the differences in scoping and pricing along with the reason for the delay. *See* FEMA-000482. On March 1, 2004, the waiver application was approved. *See* FEMA-000481.

On March 1, 2004, Plaintiff was paid the supplemental claim amount of $25,729.81. *See* FEMA-000726.

On or about July 23, 2004, Plaintiff contacted the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000090. Plaintiff questioned the amounts paid on her loss and the depreciation applied to her personal property. *Id.* The Task Force adjusted the depreciation applied to the contents and requested release of the recoverable deprecation. *Id.* The depreciation adjustment on contents resulted in an additional payment of $5,609.30 and the release of $15,530.62 in recoverable deprecation. *Id.*

On August 10, 2004, Hartford paid Plaintiff $5,609.30. *See* FEMA-000726. On August 26, 2004, Hartford issued two payments for the recoverable depreciation totaling $15,530.62 ($9,921.32 and $5,609.30). *Id.* Plaintiff was paid in full on all Proofs of Loss.

Plaintiff requested a second review by the Task Force. On December 6, 2004, the Task Force concluded the release of the recoverable depreciation was improper because the building valuation was incorrect. *See* FEMA-000095. The proper valuation resulted in the amount of insurance applied to the structure being less than 80% as required to receive the replacement loss settlement. *See Id.* and 44 C.F.R. §61, App. A(1) Art. V(1)(a)(2). The Task Force Examiner concluded any additional payment would be offset by the overpayment for recoverable deprecation. *Id.* at FEMA-000095.

Plaintiff was paid a total of $123,619.76 on her structure, $18,208.30 for her contents loss and $30,000.00 under the Increased Cost of Compliance provision of her SFIP. *See* FEMA-000005.

**II.     Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFFS, ANN JACKSON, MICHAEL McCORMICK, AND JOHN & JULIA KOCZELA'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000087. FEMA denied the request in a letter dated August 18, 2008. *See* FEMA-000088 to 000089.

III.    **Reasons for Waiver Denial**

The Defendants' reasons for the denial of the waiver claim are contained in the Supplemental Declaration of Karen Christian for the Claim of Anne Jackson at ¶¶ 20 to 32. These are:

> Plaintiff notes in her appeal that she was paid in full on her Proof of Loss in the amount of $94,958.33. *See* FEMA-000005. Plaintiff then lists a Proof of Loss in the amount of $120,688.14 as "UNPAID." *Id.* This is a very misleading claim. The $120,688.14 Proof of Loss supplemented the $94,958.33 Proof of Loss. Further, contrary to Plaintiff's claim, she was paid the $120,688.14. On December 17, 2003, Plaintiff was paid $94,958.33. *Id.* After submission of the February 13, 2004 Proof of Loss, Plaintiff was

5

paid the supplemental amount of $25,729.81, which was payment in full ($94,958.33 + $25,729.81 = $120,688.14).

Plaintiff claims she "had to remove and replace the old home and build new." *Id.* Plaintiff's claims the cost of her new home was a staggering $720,088.22. *See* FEMA-000042.

Plaintiff claimed a shortfall of $60,879.64. *See* FEMA-000005. Plaintiff calculated her shortfall utilizing an unscientific formula that took the square footage of the original structure (897 sq. ft.) and multiplied it by the cost per square foot of the new upgraded dwelling minus the $30,000.00 Increased Cost of Compliance compensation ($262.59 per sq. ft.) resulting in a replacement valuation of $235,543.23. *See* FEMA-000042. Plaintiff reduced the claim to her policy limits of $185,000.00 deducted the $123,620.36 payment total from Hartford and the $500.00 deductible to arrive at his claimed shortfall of $60,879.64. *Id.*

Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of her new upgraded home. *Id.* Plaintiff's "itemization" did not actually include any itemization of physical loss caused by or from the twenty two to twenty five inches of flood water that entered her home.

Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.

Plaintiff presented no evidence challenging the repair estimates provided by Hartford and the Task Force.

Of note, Plaintiff provided the Residential Substantial Damage Estimator document from Anne Arundel County, which computed the total damages as $79,389.17, which is far less than the compensation Plaintiff received from Hartford. *See* FEMA-000619.

Further, the Public Adjuster Plaintiff consulted with agreed the amount of compensation Plaintiff received was fair. *See* FEMA-000810.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000088 and FEMA-000089. Specific to this case, the Administrator considered the following whether:

    1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

    2. Policy holder submitted appropriate documenttation supporting the additional compensation being requested; and

    3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's formulaic shortfall calculation to replace her structure was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided an estimate for the replacement of your home. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force on two occasions. You received a supplemental payment for personal property and during the second review, it was determined that the estimated replacement cost of the dwelling had been miscalculated earlier and the structure did not qualify for replacement cost. Since this earlier error had resulted in an overpayment of the building claim, no additional payment was recommended for the structure as the

7

over payment would off-set any underpayment owed.

You did receive the maximum payment for the Increased Cost of Compliance coverage from your Write Your Own company, Hartford Insurance.

As a result of your waiver request, a comprehensive review of your claim was conducted by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

See FEMA-000088 and FEMA-000089

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by the flood waters, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

IV. **Plaintiffs' Assertions**

Plaintiffs' contention in the Reply memorandum (Document 630) at page 33 acknowledges that $120,688.14 was paid as stated by FEMA. Plaintiff merely states at this point that the request of a shortfall is "completely independent" from the amount paid, but does not explain in that document why the shortfall is required to be paid as a requirement of the SFIP. In

8

their request for summary judgment, Plaintiff asks that judgment be entered in the amount of $60,879.64.

V. **Special Master's Analysis**[2]

As FEMA correctly notes the application for a waiver was based on the cost per square foot formula for new construction which this court has rejected as a basis for a claim under the SFIP at issue in this case. Plaintiff does not propose any other basis specific to this plaintiff why the claim for the additional amount of money should be granted. As a result, FEMA's determination to deny the waiver was not arbitrary and capricious or an abuse of discretion.

VI. **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments

---

[2] Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.


| _June 2 , 2011_____ | _____/S/_ |
| Date | Dennis M. Sweeney |
|  | Special Master |