# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF PATRICIA JASINSKI

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Patricia Jasinski pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 345 pages labeled FEMA-000001 to 000345.

I.      **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy No. 6500442352, from Standard Fire to insure her residence located at 4029 Bay Drive, Baltimore, MD 21220-4036 ("insured structure") from damage caused by flooding. *See* FEMA-000086. Plaintiff did not purchase flood insurance for the contents of her residence, but insured the structure for $135,000.00 with a deductible of 2,000.00. *Id.*

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe damage along the coast, including the insured structure owned by Plaintiff, causing a flood loss to the residence on September 19, 2003. *See* FEMA-000344. Plaintiff's Policy was in effect from April 21, 2003 to April 21, 2004, and therefore in full force and effect at the time of the loss; FEMA-000086.

Plaintiff hired a public adjuster to represent her in submitting her flood loss to Standard Fire. *See* FEMA-000024. In turn, Standard Fire hired American Frontline Inc., an independent adjusting company, to adjust Plaintiff's loss. *See* FEMA-000220.

On October 23, 2003, Plaintiff signed and submitted to Standard Fire a Proof of Loss seeking $70,213.74 in building coverage ($72,213.74 less her $2,000.00 deductible). *See* FEMA-000221. This Proof of Loss was prepared with the assistance of Plaintiff's Public Adjuster and Standard Fire's independent adjuster. *Id.* The Proof of Loss was signed, dated and notarized. *Id.*

On November 18, 2003, Standard Fire's Independent adjuster prepared a

new National Flood Insurance Program Final Report concluding the loss was actually $68,392.08 for the damage to Plaintiff's structure ($70,392.08 less the $2,000.00 deductible) and $4,179.14 in recoverable depreciation. *See* FEMA-000231.

On November 21, 2003, Standard Fire's Independent Adjuster sent a letter to Standard Fire withdrawing the Proof of Loss for $70,213.74 because "the adjuster omitted depreciation on a few items in error and added fans and dehumidifier rentals without an invoice from the insured. The public adjuster has been informed of the changes and a new Proof of Loss was signed." *See* FEMA-000219.

In accordance with the new estimate, the Insured's public adjuster submitted to Standard Fire another Proof of Loss seeking $68,392.08 in building coverage ($70,392.08 less the $2,000.00 deductible). *See* FEMA-000025. The Proof of Loss was signed, dated and notarized. *Id.*

Standard Fire paid Plaintiff $68,392.08, the full amount identified in her Proof of Loss. *See* FEMA-00091; FEMA-000141 and FEMA-000142. In addition, Standard Fire paid Plaintiff $4,179.14, the full amount identified in her statement seeking replacement costs. *See* FEMA-000012; FEMA-000028.

Plaintiff's Policy also provides coverage up to $30,000.00 for Increased Cost of Compliance ("ICC") coverage provided in the event an insured is required to meet certain building requirements in her community to reduce future flood damage before she repairs or rebuilds her insured structure. *See* 44 C.F.R. Pt. 61, App. A(1), Art. III, ¶ D (2003).

Plaintiff submitted to Standard Fire a Proof of Loss in the amount of $30,000.00 for ICC coverage, and Standard Fire paid Plaintiff $30,000.00 for ICC coverage. *See* FEMA-000344.

In Spring 2004, Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000130. Plaintiff's request to the Task Force stated she "did not believe she got enough $ [sic]; [and was] concerned about the adjuster's software." *Id.* The Task Force requested a new inspection to determine if the scope of Standard Fire's estimate was proper. *Id.*

As part of the Task Force's review, a FEMA General Adjuster re-inspected the insured structure on April 30, 2004. *See* FEMA-000133. The General Adjuster noted the flood repairs to the insured structure were "95% complete." *Id.* The General Adjuster found Standard Fire's estimate of damage "to be in perspective with the loss and damage." *Id.*

After receiving the General Adjuster's finding, the Task Force reviewed Standard Fire's adjuster's estimate to repair or replace the damaged property and determined the estimates were "low for plywood sheathing, crawl space insulation and interior painting." *See* FEMA-000093. As such, FEMA recommended additional compensation in the amount of $1,843.40 in actual cash value[1] for the low estimated damage, and $460.88 in recoverable depreciation. *See* FEMA-000094.

Standard Fire paid Plaintiff $1,843.40 for actual case value for the damage, but did not pay $460.88 for replacement costs. *See* FEMA-000344. The

---

[1] Actual case value is the "cost to replace an insured item of property at the time of the loss, less the value of its physical depreciation." 44 C.F.R. Pt. 61, Appen. A(1)(II)(B)(2) (2003).

4

company recommended that Plaintiff contact her insurer and request the additional payment of $460.88 for replacement cost compensation.

Standard Fire paid Plaintiff a total of $74,414.62 for building coverage (This does not include the policy limit of $30,000.00 she received for ICC compensation). *Id.*

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 22, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF PATRICIA JASINSKI'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000086. Plaintiff requested that FEMA waive the Proof of Loss requirements and pay her an additional $25,524.88 under her Building coverage. *See* FEMA-000005. Plaintiff is not requesting additional payment under her ICC coverage, as she received policy limits for ICC. FEMA-000006. FEMA denied the waiver request in a letter dated July 31, 2008. *See* FEMA-000087 to 000088.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶25-34 in the Supplemental Declaration of Karen Christian with Respect to the Claim of Patricia Jasinski (Document 553-3). It states:

> Plaintiff alleges the cost to repair her insured structure (not including ICC) totaled $100,032.08. *See* FEMA-000005. Plaintiff alleges Standard Fire paid her $72,507.20. *Id.* This amount is

5

actually $1,8430.40 less than the amount paid by Standard Fire. It appears Plaintiff inadvertently failed to include the amount recommended by the Task Force and paid by Standard Fire.

Plaintiff's waiver application included some of the same documents she previously submitted to Standard Fire in support of her building and ICC claim, the WYO Adjuster's building estimate, which supports the fully paid Proof of Loss, and other typed or handwritten estimates. *See* FEMA-000001 through FEMA-000086. Other than a canceled check for ICC elevation, Plaintiff did not submit cancelled checks or actual invoices. *Id.* Plaintiff does not state whether Standard Fire failed to pay her for items actually covered under the Policy or whether she simply disagrees with the amount of coverage. *Id.*

Plaintiff's waiver application states she is "continuing to gather documentation supporting the costs to restore her home and intends to submit them in timely fashion." *See* FEMA-000005; *see also* FEMA-000006 ("Applicant continues to gather POL documentation and will submit in timely fashion . . . Applicant continues to gather documentation supporting costs and will submit in timely fashion.").

To date, Plaintiff has not submitted to FEMA additional documentation to support her request for a waiver.

In reviewing Plaintiff's waiver application, it is not possible to identify whether she is alleging Standard Fire failed to pay her for items damaged by flood and covered by the Policy or if she disagrees with the amount Standard Fire actually paid her for her damages.

Plaintiff's waiver application does not provide any explanation for the delay in submitting a her supporting documentation.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances related to the request. *See* FEMA-000087 through FEMA-000088. Specific to this case, the Administrator looked at whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

> 2. policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. policy holder provided a reasonable explanation for the delay in submitting the POL.

Id.

The Administrator notified Plaintiff her waiver application was denied because she:

> . . .provided estimates and receipts which includes items that were not damaged by the flood and items associated with the Increased Cost of Compliance (ICC) claim for which you received payment in the amount of $30,000.00, the maximum amount of coverage. Additionally, the information provided does not separate the cost of the flood repairs from the cost of the elevation work. As a result it could not be determine if there were any additional flood repair costs owed. *See* FEMA-00088.
>
> **Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by the flood waters, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.
>
> Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

## IV. Plaintiffs' Assertions

Plaintiff in the Opposition memorandum (Document 630) at page 34 asserts that : (1) she wasn't certain that a check in the amount of $1, 843.40 had been received and cashed by her; (2) she is not certain about how to obtain $460.88 for recoverable depreciation; and (3) that FEMA is wrong to say at this point that further documentation should have been provided with the waiver application to support the shortfall request since it amounts to "an after the fact basis for rejecting her claim, contrary to the Court's admonition." Id at page 35. Plaintiff asks the court to enter summary judgment for her in the amount of $25,524.88.

V. **Special Master's Analysis**[2]

FEMA in its Reply demonstrates that it did in fact pay the $1,843.40 by supplying a copy of the endorsed check. Document 633 page 15 at footnote 5. This issue appears settled.

As to the check for $460.88. The Supplemental Declaration of Karen Christian at paragraph 21 instructed Plaintiff to "contact their insurer and request the additional payment of $460.88 for replacement cost compensation." There is no indication that if Plaintiff follows that direction that that portion of the claim would not be paid by FEMA.

Plaintiff's assertion that FEMA was unfair in now suggesting that documentation should have been provided earlier to support the claim is the final argument of Plaintiff. This is not a basis that the Special Master finds has merit. Plaintiff was on notice by the terms of the SFIP that it was her obligation to submit full documentation that supported the claim and there was nothing in the waiver request process set out by the court that claims would be granted without sufficient documentation reasonably satisfactory to FEMA. FEMA's denial of the waiver claim based on what was submitted was not arbitrary, capricious or an abuse of discretion.

---

[2]Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

## VI. Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
| June 2 , 2011 | /S/ |
| Date | Dennis M. Sweeney |
| | Special Master |