IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

**REPORT AND RECOMMENDATION CONCERNING
WAIVER CLAIM OF JOHN AND LYDIA HELMER**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of John and Lydia Helmer pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 421 pages labeled FEMA-000001 to 000421.

I. **Background**

Plaintiffs purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 1005736424, directly from FEMA to insure their

residence located at 4025 Bay Drive, Baltimore, Maryland ("insured structure") from damage caused by flooding. *See* FEMA-000302. Plaintiffs' structure was insured up to $220,200.00 subject to a $2,000.00 deductible and their contents were covered up to $61,700.00 with a $1,000.00 deductible. See the Declaration of Suzanne Woods (Document 183-13) and Supplemental Declaration of Karen Christian (Document 549-3).

On September 18, 2003, Hurricane Isabel struck the Mid-Atlantic states, including Maryland, causing severe damage along the coast, including the insured structure owned by Plaintiffs. *Id.* Plaintiffs' policy was effective November 12, 2002 through November 12, 2003 and therefore, their residence was covered at the time of the loss. *Id.*

On September 22, 2003, Plaintiffs contacted FEMA and notified it of an alleged loss to their insured structure. *Id.* at FEMA-000263. On or about September 25, 2003, Plaintiffs were contacted by an independent adjuster, Bob Hughes of Bellmon Adjusting, who was assigned by FEMA to investigate Plaintiffs' loss. *Id.* The independent adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior and adjusted the loss. *See* FEMA-000276 through FEMA-000293. The adjuster identified $93,996.24 in actual cash value covered flood damages to the structure after applying the $2,000.00 deductible. *See* FEMA-000291.

The adjuster noted an additional $14,332.61 under the replacement cost coverage provision if Plaintiffs were eligible. *Id.* Plaintiffs were not eligible for replacement cost because a part of their home was a rental unit. *See*

2

FEMA-000187 and FEMA-000189 (*See* Response to Question 13).

On October 21, 2003, at the request of Plaintiffs (*See* FEMA-000166), FEMA issued an advance of $5,000.00. *See* FEMA-000163.

On October 28, 2003, Plaintiffs submitted a signed and notarized Proof of Loss for the $51,905.93 for their contents loss. *See* FEMA-000169. On October 30, 2003, FEMA rejected their Proof of Loss due to lack of documentation. *See* FEMA-000167.

On December 12, 2003, Plaintiffs submitted a proposal from Dorsey Builders to do "All work as per insurance agreement" for a total of $103,502.74 plus an additional $1,650.00 for replacement of a floor joist due to mold, which is not covered by Plaintiffs' SFIP. *See* FEMA-000143.

On December 26, 2003, Plaintiffs submitted a Proof of Loss for $182,931.47 for their structure and contents after application of the $3,000.00 deductible ($2,000 on building and $1,000 on contents). *See* FEMA-000015.

On February 3, 2004, Plaintiffs were notified that their Proof of Loss was rejected, that they would be compensated in accordance with the adjustment completed by Bellmon Adjusters, and that they had one year to file suit in US District Court to challenge the denial. *See* FEMA-000179. FEMA issued a total payment of $93,996.24 ($88,996.24 plus the October 21, 2003 $5,000.00 advance) for Plaintiffs' building loss and $34,760.92 for Plaintiffs' contents loss. *See* FEMA-000018 and FEMA-000019. There is no dispute over these amounts. *See* FEMA-000005. Further, Plaintiffs do not seek any additional compensation under their contents coverage. *Id.*

On May 13, 2004, Plaintiffs requested review of their claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000111. Plaintiffs requested compensation of the recoverable depreciation. *Id.*

On June 24, 2004, the Task Force concluded that Plaintiffs were not entitled to the recoverable depreciation since the front portion of the house was used as an apartment. *See* FEMA-000109. Of note, Plaintiffs did not make any other request for supplemental payment to the Task Force.

On June 8, 2005, Plaintiffs filed their lawsuit. *See* Complaint, Doc. No. 1.

**II.     Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiffs submitted to FEMA a document entitled "PLAINTIFFS JOHN AND LYDIA HELMER'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000101. FEMA denied the request in an undated letter; *see* FEMA-000102 to 000103.

**III.    Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶18-28 in the Supplemental Declaration of Karen Christian with Respect to the claim of John and Lydia Helmer (Document 549-3). It states:

> Plaintiffs claimed the "cost to restore original home" was $188,754.70. *See* FEMA-000020 and FEMA-000021. They claim the current cost to repair was $154,254.70 plus an additional $34,500.00 to restore the kitchen to its pre-flood condition. *See* FEMA-000005. Plaintiffs deducted FEMA's payment of

4

$93,996.24 plus their $2,000.00 deductible for a claimed shortfall of $92,758.46. *See* FEMA-000020 and FEMA-000021.

Plaintiffs shortfall itemization includes the $105,152.74 estimate from Dorsey Builders to do "All work as per insurance agreement" without a breakdown of that total, $9,656.00 from BGE Home Products & Services, Inc., $4,000.00 from Phil DeBello Roofing, Inc., $11,016.25 from Rolyn Construction Corporation, $34,500.00 from Kenwood Kitchens, Inc., and many additional items. *Id.*

Plaintiffs' "itemization" did not actually include any itemization of physical loss caused by or from flood. Plaintiffs did not provide any evidence to prove the damage caused by the flood necessitated any of the repairs.

A review [of] the receipts, invoices and estimates submitted with Plaintiffs' waiver application show Plaintiffs are seeking compensation for such things as roofing, light fixtures, gutter repair, general demolition, repair to dock and boat lift, electric motors, and fuel oil. *See* FEMA-000062, FEMA-000063, FEMA-000070 and FEMA-000076. All items not covered by their SFIP or did not suffer physical loss by or from flood.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000102 and FEMA-000103. Specific to this case, the Administrator considered the following whether:

    1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

    2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and

    3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiffs' copious invoices, receipts and estimates do not identify how the damage relates to flooding or identify

5

errors in the adjustment completed by Mr. Hughes. Further, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Plaintiffs' documentation makes it impossible to complete a comparison of the FEMA adjustment to the claim. For example, the Dorsey Builders proposal and contract simply provides an estimate of $103,502.74 to complete all work as per insurance agreement without identifying the work. *See* FEMA-000143.

In addition, Plaintiffs claim for compensation to repair their roof when the water only reached a height of 29 inches on the exterior and a range of 14 inches to 28 inches in the interior is clearly not compensable under their policy. *See* FEMA-000187.

Finally, Plaintiffs requested $34,500.00 to return their kitchen to pre-flood condition. It is not clear why the Dorsey Builders proposal did not cover their expense or why the amount provided to repair both kitchens in Mr. Hughes' adjustment were insufficient. The estimate from Kenwood Kitchens included upgrades and items well above the highest waterline of 28 inches.

In the letter providing FEMA's determination on Plaintiffs' waiver application, the Administrator stated:

> ... you claim your actual damages exceeded the amount allowed by the National Flood Insurance Program Servicing Agent (NFIPSA). To support the amount claimed, you provided a list of expenditures for replacement of a roof that was not damaged by the flood event, upgrades to the structure which are not covered by the SFIP and items paid for in the original claim adjustment. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. The Task Force denied the request for additional payment citing that all covered flood damages had been paid for by NFIPSA.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*See* FEMA-000102 and FEMA-000103.

**Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver.** First, they failed to demonstrate any additional damages they sought were actually covered by their SFIP. Second, they did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to their original structure, but instead provided proposals, estimates, receipts and invoices that failed to identify their relationship to their actual losses by or from flood. Third, they failed to establish that they proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiffs' waiver application was denied for a multitude of reasons, but primarily because they failed to document any physical loss by or from flood covered under their SFIP for which they did not receive full compensation for.

**IV.    Plaintiffs' Assertions**

Plaintiffs assert that there was interior water damage to their home with varying levels of 28, 24 and 14 inches on the interior which stayed in the house for approximately 15 hours. Plaintiffs' Oppositions (Document 630) at page 25.

Plaintiffs presented their proof of loss for both structure and contents damage in the amount of $182,931.47 which was rejected and FEMA on a revised POL paid $93,996.24 for structure damage and $34,760.92 for contents. Id. at 25-26. Plaintiffs do not dispute the contents claim at this point, but assert that additional damages are due for the structure. Id,

7

Plaintiffs also note that they did not receive recoverable depreciation because they rented out a portion of their home and thus in FEMA's view did not qualify for recovery of the type of damages. Id.

Plaintiffs believe that their home was in "very good condition and well maintained" and feel that there was "no consistency or uniformity in the way" property was adjusted and compensated. Id at 27. They particularly note the custom kitchen they had and how that part of the claim was adjusted which did not compensate for upper level cabinets that were untouched by the water, but which Plaintiffs believe needed to be replaced. Plaintiffs were also concerned about other issues such as the way that the countertops were adjusted which they felt did not account for "the probability of breakage because of the length of the counter top."

Plaintiffs feel that the estimate provided by Kenwood Kitchens, Inc. was not properly considered by FEMA although they do acknowledge that Ms. Christian does mention it in her declaration. Id at 27-28. They contend that the matter should be remanded back to FEMA for reconsideration of whether more money should be provided for the damage to the kitchen.

Plaintiffs assert that they spent $154,000 in making repairs to the home. They do acknowledge that they did include in the waiver request a request for payment of roof repairs that they now agree is not compensable. They thus back out $4,000 from their claim to leave a "revised shortfall" of $88,758.46. Id at 28. This is the amount of judgment that they seek the court to enter for them. Document 630 at page 36.

V.  **Special Master's Analysis**[1]

FEMA in their Reply (Document 633) contend that the Kenwood Kitchens proposal does not control how the SFIP should be applied. Id at10. FEMA asserted that the Dorsey Builders proposal purported to cover Plaintiffs' repair expenses and FEMA felt that the amount of money provided did cover the repair expenses for both kitchens. It was within FEMA discretion to rely on the Dorsey Builders proposal rather than the proposal from Kenwood Kitchens.  This is the type of choice that FEMA is entitled to make and it is not for courts to substitute its judgment for the discretion exercised by FEMA absent some showing of how the determination did not meet the requirements of the SFIP.

 As noted above in the Supplemental Declaration of Karen Christian both the Dorsey Builders' and the Kenwood Kitchens proposals were not detailed enough to show that FEMA had an obligation to pay under the SFIP. FEMA found more persuasive the analysis of the independent adjuster, Bob Hughes of Bellmon Adjusting.  FEMA did not find that the documentation submitted by the Plaintiffs was more convincing for the reasons stated by FEMA in its Memorandum for Summary Judgment

---

1.Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

(Document 549-2 ). This determination was a decision that FEMA was entitled to make in its analysis of the claim. It does not appear that the documentation submitted by the Plaintiffs from Dorsey or Kenwood Kitchens shows that the Hughes' estimates were in clear error.

FEMA also notes that items beyond the roof damage were included in the claim that are not compensable under the SFIP including light fixtures, gutter repair, general demolition, repair to dock and boat lift, electric motors and fuel oil. Id at 11. The Special Master agrees with FEMA that Plaintiffs' claim included items that were simply not compensable under the SFIP based on the evidence Plaintiffs submitted to support their waiver request.

FEMA asserts that Plaintiffs were not entitled to recoverable depreciation compensation and assert that it is unclear whether Plaintiffs are still contending otherwise. The Special Master agrees with FEMA that such depreciation is not recoverable in this case even if this claim is being made.

FEMA's adjudication of the waiver claim of the Plaintiffs appears to be consistent with the way other claims were handled. Plaintiffs' revised claim for an additional $88,000 is simply not supported by the record in this case.

The Special Master does not believe as suggested by the Plaintiffs that a remand is appropriate in this case. FEMA considered the arguments made in the waiver claim and they rejected them. FEMA's rejection of

Plaintiffs' arguments is neither arbitrary or capricious nor an abuse of discretion.

VI. **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
| _June 2 , 2011_ | _____/S/_ |
| Date | Dennis M. Sweeney |
| | Special Master |