IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF ARLEY HORNE

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Arley Horne pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 435 pages labeled FEMA-000001 to 000435.

I.  **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 3000030417, directly from the NFIP to insure his

residence located at 11226 Bird River Grove Road, White Marsh, Maryland ("insured structure") for damage caused by flooding. *See* FEMA-000005. Plaintiff's structure was insured up to $81,000.00 with a deductible of $1,000.00. *See* Declaration of Suzanne Woods (Document 183-13) and Supplemental Declaration of Karen Christian (Document 551-3).

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, causing severe damage along the coast, including the insured structure owned by Plaintiff. *See* FEMA-000274. Plaintiff's policy was effective September 17, 2003 through April 21, 2004 and was therefore covered at the time of the loss. *Id.*

On or about September 23, 2003, Plaintiff contacted his insurer, the NFIP, and notified it of his loss. *Id.* On or about September 26, 2003, Plaintiff was contacted by an independent adjuster from Bellmon Adjusters, Inc. who was assigned by FEMA to investigate Plaintiff's loss. *See* FEMA-000332.

The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *See* FEMA-000236 through FEMA-000270. The adjuster noted that the excessive rainfall resulted in a waterline of seven to 14 inches on the exterior and only one to two inches inside the structure. *See* FEMA-000237.

The adjuster identified $23,171.33 in actual cash value of covered flood damages after applying the $1,000.00 deductible. *See* FEMA-000253. If eligible, the adjuster noted an additional $4,569.49 under the replacement cost provision of the policy. *Id.*

2

On December 22, 2003, Plaintiff submitted a signed and notarized Proof of Loss for the $23,171.33 and a Building Replacement Cost Proof of Loss for the $4,569.49 as noted by the adjuster. *See* FEMA-000241 and FEMA-000242.

On January 21, 2004, FEMA issued a check for the entire balance for the Actual Cash Value of the loss noted on the Proof of Loss ($23,171.33). *See* FEMA-000212. On or about April 8, 2004, Plaintiff submitted a supplemental Proof of Loss seeking an additional $6,426.65. *See* FEMA-000220. On April 14, 2004, Plaintiff was paid $6,426.65. *See* FEMA-000208 and FEMA-000288. Plaintiff's two payments up to this date totaled $29,597.98. *See* FEMA-000108.

On or about June 3, 2004, Plaintiff contacted the Hurricane Isabel Task Force ("Task Force"). *Id.* On June 3, 2004, Allied Adjuster Services on behalf of Plaintiff sent a letter to the Task Force stating:

> We hereby acknowledge having filed a supplemental claim and Proof of Loss on behalf of the insured in the amount of $6,426.65 on or about 3-31-04. This letter shall serve as a release between Allied Adjuster Services and Arley Frances Horne. Our file is closed at this time.

*See* FEMA-000158.

On June 10, 2004, a check for $5,181.48 was issued to Plaintiff for the recoverable deprecation portion of his claim ($4,569.49 noted above, plus an additional $611.98 in recoverable deprecation for the supplemental claim). *See* FEMA-000174 and FEMA-000288. The NFIP database indicates Plaintiff never cashed this check. FEMA indicates that Plaintiff is still entitled to this amount.

3

On June 11, 2004, the Task Force completed its review of Plaintiff's claim and increased some of the costs for materials and labor resulted in a recommended payment of $1,437.86, which Plaintiff was paid. *See* FEMA-000145 and FEMA-000005.

In July, Plaintiff again contacted the Task Force requesting policy limits. Plaintiff's Public Adjuster was contacted and refused to get involved. *See* FEMA-000109.

On September 23, 2003, Plaintiff was notified that the Task Force concluded he was not entitled to any additional compensation. *See* FEMA-000113.

Plaintiff was entitled to payments totaling $36,217.31.[1] As noted above FEMA issued a check for $5,181.47 that Plaintiff never cashed. This accounts for the difference of $5,181.47 between Plaintiff's claimed payment amount of $31,035.84 and the system payment issued of $36,217.31.

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF ARLEY HORNE'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000104. FEMA denied the request in an undated letter; *see* FEMA-000105 to 000106.

---

[1] Plaintiff notes he was paid a total of $31,035.84 based upon payments of $23,171.33, $6,426.65, $4,569.49 and $1,437.86 with all payment dates unknown. *See* FEMA-000005.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶21-31 in the Supplemental Declaration of Karen Christian with Respect to the claim of Arley Horne (Document 551-3). It states:

> Plaintiff claimed a shortfall of $48,964.16. *See* FEMA-000005. Plaintiff claims he had to remove and replace the old home and build new. *See* FEMA-000020. Plaintiff took a formulaic approach to calculate his loss based on the square footage of the original structure (757 sq. ft.) multiplied by the cost per square foot ($158,983.09 divided by 1,160 sq. ft. = $111.19 per sq. ft.) of the new upgraded dwelling minus the $30,000.00 Increased Cost of Compliance compensation resulting in a replacement valuation of $84,170.83. *Id.* Plaintiff reduced the claim to his policy limits of $81,000 deducted the $31,035.84 payments from FEMA and the $1,000.00 deductible to arrive at his claimed shortfall of $48,964.16. *Id.*
>
> Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of his new upgraded home. *See* FEMA-000020 and FEMA-000021. Plaintiff's "itemization" did not actually include any itemization of physical loss caused by or from the one to two inches of flood water that entered his home. *Id.*
>
> Plaintiff's method of calculating his damages by taking the square footage of his original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.
>
> Plaintiff presented no evidence challenging the repair estimates provided by FEMA and the Task Force.
>
> Plaintiff's waiver application actually contradicts his claim. Plaintiff provides a letter where he states ". . .the NFIP has only provided enough money to rebuild damaged interior structure and refinish where needed. . ." *See* FEMA-000010. Apparently, Plaintiff concedes he was compensated per the terms of his SFIP.

Further, Plaintiff's Public Adjuster agreed the amount of compensation Plaintiff received was sufficient. *See* FEMA-000109 and FEMA-000158.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000105 and FEMA-000106. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's formulaic shortfall calculation to replace his structure constructed in 1949 (*See* FEMA-000157) was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... [Y]ou claim your actual damages exceeded the amount allowed by the National Flood Insurance Program Servicing Agent (NFIPSA). Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. A supplemental payment in the amount of $1,437.86 was

6

> recommended by the Task Force. The NFIPSA has paid you $36,217.31 for the building damages and the maximum amount of coverage for your Increased Cost of Compliance claim, $30,000. The supplemental funds you are seeking relate to the increased square footage of your dwelling from 704 square feet to 1,160 square feet, upgrades to the dwelling that are not covered by the SFIP and additional costs associated with your ICC claim for which you received the maximum amount of payment.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff failed to demonstrate he met any of the criteria used to determine whether to grant a waiver.** First, he failed to demonstrate any additional damages he sought were actually covered by his SFIP. Second, he did not submit detailed line-item documentation of uncompensated damages caused directly by the one to two inches of flooding to the interior of his original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate his loss. Third, he failed to establish that he proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

7

IV.  **Plaintiffs' Assertions**

Plaintiff asserts that the adjuster selected by FEMA put a replacement cost value to Mr. Horne's home at $57,120.00 with an actual cash value at $43,982.00.  Plaintiff notes that prior to Tropical Storm Isabel as part of a refinancing of a mortgage an appraiser had assessed the value of the home at $82,172.81 and had found the square footage of the house's living area to be 704 square feet while the bank's appraiser's found there to be 757 square feet of living area.   Plaintiff asserts that the appraisal and calculations of the appraiser should have been accepted over that of the adjustor selected by FEMA.

Plaintiff also asserts that a check issued by FEMA in the amount of $5,181.4 concerning the recoverable depreciation was never presented or cashed and notes that Ms. Christian states that $5,181.48 is still available.

Plaintiff also contends that there monies determined to be due from the Hurricane Isabel Task Force in the amount of $1, 432.86  were never paid and that  FEMA has taken contradictory positions on whether these funds were or were not paid. Plaintiff also asserts that it was very reasonable for him to replace his home which he had demolished and to put a "bare bones prefabricated structure" in its place.

Because of what Plaintiff contends are differences in the values for the home given by the adjuster and the appraiser, Plaintiff believes that the

appraiser's conclusion should have been accepted with a shortfall of either $50,397.02 or $27, 517.02 even accepting the adjuster's figures.

Plaintiff also asserts that failure to mention in the original denial letter the amounts now conceded to be due to Plaintiff by FEMA (the $5,181.48 amount and the $1, 437.86 amount) demonstrates that "no true review" of the claim ever took place which demonstrates that FEMA's actions are arbitrary and capricious.

V.  **Special Master's Analysis**[2]

FEMA argues that the claims now being presented based on the differences between the adjuster's calculations and the appraiser's calculations are new arguments that were not presented in the waiver application filed by the Plaintiff which was solely based on the square foot formula for new construction that has now been rejected by the court. The Special Master agrees with FEMA that a fair reading of the waiver application does not indicate that the argument about the appraisal

---

[2]Group Three Plaintiffs in their Oppositions (Document No. 630) at pages 3 to 9 have raised what they term to be twenty four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address in this report and recommendation these issues but will incorporate and rely on the court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

valuation was presented or put FEMA on notice that it was being made. The Special Master concludes that FEMA was only obligated to review those arguments that were fairly presented in the FEMA application but did not have to search to find other potential errors or arguments not presented and not raised until a response to the Motion for Summary Judgment was filed. The administrative record indicates that a careful review was done of this claim at all stages by FEMA. The letter to Senator Mikulski in 2004 explaining in detail the reasons why the claim was adjusted the way it was is representative of the approach taken in evaluating the Plaintiff's claim. FEMA-000108 to 000109.

There is however one issue that remains unresolved and which indicates confusion about what payments were made. This concerns two payments that Plaintiff is said to be entitled to receive. It appeared from the Supplemental Declaration of Karen Christian at paragraph 15 that the $5,181.48 will be paid upon request. It appeared that there remains a dispute about whether the $1,437.86 was ever paid to Plaintiff.

To clarify the status of these payments, the Special Master asked counsel to clarify their positions on these payments and to respond to the Special Master by e-mail prior to the preparation of this report and recommendation.

It appears that FEMA's position is now that both the $5,181.48 and the $1,437.86 amounts were paid in a check issued on November 15, 2005 in the amount of $6,619.33. FEMA's position is stated in the e-mail sent to

the Special Master from Ramoncito J. deBorja, Deputy Associate Chief

Counsel. The e-mail states:

**Pursuant to your 5/31/11 email regarding Group 3 plaintiff Arley Horne and whether FEMA will reissue a check for amounts due, FEMA conducted further investigation and located check #0000299813 issued to Mr. Horne on 11/17/2005 in the amount of $6,619.33. See attached. This amount includes $5,181.47 referenced by you as well as $1,437.86 recommended by the Hurricane Isabel Task Force. FEMA's records show that the check cleared and the back of the check shows Mr. Horne's endorsement.**

**I contacted plaintiffs' counsel today and provided a copy of the cleared check for $6,619.33. I asked whether they would dispute Mr. Horne's receipt of the check.**

**As evidenced in plaintiffs' letter to you today, plaintiffs dispute that FEMA paid this amount to Mr. Horne because it did not provide or refer to this check in its supporting documents, declaration, or Motion for Summary Judgment. Plaintiffs' counsel also states that Mr. Horne does not recall receiving or negotiating this check.**

**Despite plaintiffs' assertions, the check is clear evidence that FEMA did in fact pay the amounts that FEMA previously indicated were still owed...and more importantly, that Mr. Horne endorsed the check. Accordingly, it is FEMA's position that additional monies are not due to Mr. Horne.**

A scanned copy of the check, front and back was included with the e-mail.

Counsel for Plaintiff Horne sent to the Special Master a copy of the letter sent to FEMA's counsel by e-mail. Plaintiff's counsel's response is as follows:

**We have received from you a copy of the cancelled check referenced in and attached to your email of today, as to which Mr. Horne's name appears on what you have represented is the back of the copy of the check. Upon receipt of it, we contacted Mr. Horne. He does not recall receiving or negotiating the check.**
**We have re-reviewed the supporting documents submitted with FEMA's Motion for Summary Judgment on January 12, 2011, supposedly all of the documents used by FEMA to review Mr. Horne's claim. We found no copy of the check in question. In fact, FEMA has**

1

given sworn testimony that the $5,181.47 and the $1,437.86 were not paid and remain due, as detailed in Document 630, pages 31 & 32:

On February 7, 2004, Mr. Horne contracted with Jeff Wolf of Allied Adjuster Services to assist him with filing supplemental claims. On March 31, 2004, with Mr. Wolf's assistance, Mr. Horne filed a Supplemental POL for additional $6,426.65 (see FEMA 000126-000134). According to the email correspondence between Karen Christian and Tere Martin, Department of Homeland Security, Emergency Preparedness & Response, Division of Mitigation, there was a Proof Waiver and Losses Reported over 60-days. Based on the response by Ms. Martin, both documents were approved (see FEMA 000214). A check in the amount of $5,181.48, which represents the original recoverable depreciation and the recoverable depreciation reflected in the March 12, 2004 POL. FEMA's records indicate, a check was issued to Mr. Horne, however, this check was never presented or cashed. Ms. Christian states $5,181.48 is still available to Mr. Horne (see Doc 551-3, page 5, para. 15).

Mr. Horne requested assistance and review from the Hurricane Isabel Task Force. It was determined additional monies were owed him in the amount of $1,432.86. Susan Woods indicates, in her Declaration of April 1, 2008, that Mr. Horne did not sign the Proof of Loss associated with this supplement and a check was not issued (see Declaration of Susan Woods, Doc 298-3, page 4, para. 25 & 26).

Also, as detailed in Document 630, page 32:

FEMA states, in its undated denial letter, Mr. Horne was paid a total of $36,217.31 (see FEMA 000106). This amount does not reflect either the $5,181.48 or the $1,432.86 detailed above. This is yet further proof that Mr. Horne did not receive a true review of his claim between the date he filed his application for waiver and the day FEMA denied it.

If such a pivotal document as proof of payment of part of Plaintiff's claim was not part of the documentation submitted to Plaintiff's counsel either in support of FEMA's review of said claim or in support its subsequent motion, where was this document? Was it relied upon or even seen by Ms. Susan Woods or Ms. Karen Christian? If in the file, it should have been produced. If not, the production of such at this late date results in an after-the-fact review. This prompts the question; how many other documents are in Mr. Horne's file, pertinent to the litigation and "allegedly" part of FEMA's review, have not been made available to counsel for Plaintiff Horne? This prompts an additional question. How many documents pertaining to the claims of the other Plaintiff households have also been "overlooked" and not made available to their counsel?

It is Mr. Horne's position that,

(1) because FEMA's denial letter claimed only that amounts were paid which did not include the $5,181.48 or the $1,432.86,

> **(2) becauses FEMA's representatives (Ms. Woods and Ms. Christian) have given testimony under oath in support of FEMA's motion for summary judgment that these amounts remain due, and**
> **(3) because FEMA did not claim these amounts were paid even in their reply memorandum,**
> **FEMA is now foreclosed from making that claim after the fact.**
> **In addition, and contrary to your email of today, Mr. Horne disagrees that no further payment is due him as detailed above, in his waiver application of February 28, 2005, and his Opposition to FEMA's Motion for Summary Judgment filed April 25, 2011.**
> **We have cc'd Honorable Judge Sweeney on this communication, so that he will be fully apprised of Mr. Horne's response to the questions he raised in his recent email.**
> **If you have any questions, please contact us at your convenience.**

It was the Special Master's hope that the matter of this payment could be resolved without the need for further proceedings. Unfortunately, it appears that this is not the case. The representations in the Declaration filed with the court from FEMA did not reflect what FEMA now states the facts to be, i.e. that both the $5,181.48[3] and the $1,432.86 were paid in the check that they have presented. Counsel for Mr. Horne disputes that the check was received and cashed at least according to Mr. Horne's current recollection.

This dispute creates a factual issue which the Special Master believes can not be resolved by summary judgment proceedings.

As to this limited issue, the Special Master recommends that either: (1) the matter of the receipt of the $5,181.48 and the $1,432.86 be remanded to FEMA for a review and determination after receiving all evidence relating to the issue including a sworn affadavit from Plaintiff as to non-receipt; or (2) that the U.S. District Court empower the Special Master to conduct an

---

[3] At various points the parties refer to the amount as $5,181.48 and other places as $5,181.47. The penny difference is not material and is not argued to be so by the parties.

evidentiary hearing on this limited issue and make proposed findings to be submitted to the court.  Except for this limited issue, the Special Master concludes that Defendant's Motion for Partial Summary Judgment be granted and that Plaintiff's Motion for Summary Judgment be denied.

VI.     **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted except that the issue of the payments to Plaintiff of the two amounts in dispute be resolved in a manner directed by the U. S. District Court; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| _June 5, 2011_ | _____/S/_____ |
|---|---|
| Date | Dennis M. Sweeney |
| | Special Master |