# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br>         Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br>         Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

### REPORT AND RECOMMENDATION CONCERNING
### WAIVER CLAIM OF EDWARD JONES

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Edward Jones pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 353 pages labeled FEMA-000001 to 000353.

I. **Background**

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number FLD1051962, from Selective Insurance Company of

the Southeast ("Selective") to insure his residence located at 8813 Hinton Avenue, Millers Island, Maryland ("the insured structure") from damage caused by flooding. *See* FEMA-000005. Plaintiff's structure was insured up to $121,000.00, and his contents were insured up to $27,600.00 each with a deductible of $500.00. *Id.*

On September 19, 2003, Hurricane Isabel struck the Mid-Atlantic States, including the eastern coast of Maryland, causing damage along the coast including the insured structure owned by Plaintiff. *See* FEMA-000249. Plaintiff's policy was effective June 30, 2003 through June 30, 2004 and was covered at the time of the loss. *See* FEMA-000091.

On or about September 19, 2003, Plaintiff contacted his insurer and notified it of his loss. *See* FEMA-000351. Plaintiff included in his waiver application a Proof of Loss dated November 3, 2003 for $96,357.95 ($68,757.95 for the structure loss and $27,600.00 for the contents) with an annotation: *Does not include emergency svcs. *See* FEMA-000032. It is FEMA position that this proof of loss is not valid for reasons stated by Karen Christian in her Supplemental Declaration (Document 613-2) at ¶ 7.

On December 26, 2003, Plaintiff submitted a contents Proof of Loss for $27,600.00, his policy limits for contents. *See* FEMA-000205. The Proof of Loss sought a net amount of $13,800.00 because Plaintiff was issued an advance payment of $13,800.00 on October 24, 2003. *See* Doc. No. 318-2 at 95. In addition, Plaintiff submitted a Proof of Loss for $86,717.64 ($59,117.64 for the building loss and $27,600.00 for the contents loss). *See* FEMA-000340.

On or about January 27, 2004, a General Adjuster, Frank Ward, for the NFIP Bureau and Statistical Agent provided a report because Selective and Plaintiff were unable to come to an agreement on the claim. *See* FEMA-000183. Plaintiff's Public Adjuster and the General Adjuster reviewed the damage. *See* FEMA-000249. The house was a post-FIRM structure and certain restrictions applied to their potential compensation.

On February 20, 2004, Moses Robles, an independent adjuster, completed a building estimate based on the input he received from Mr. Ward. *See* FEMA-000128. Mr. Robles found Plaintiff's actual cash value loss was $40,744.84 with an additional $4,407.90 in recoverable depreciation (a total of $44,652.74). *Id.*

On March 19, 2004, Plaintiff submitted a Proof of Loss for a total net claim of $67,844.84 ($40,244.84 for the building loss and $27,600.00 for the contents loss). *See* FEMA-000111.

On May 3, 2004, Selective paid Plaintiff $40,244.84 for the actual cash value of his loss. *See* Doc. No. 318-2 at 96. In addition, a separate check was issued on that date for the recoverable depreciation in the amount of $4,407.90. These payments were in accordance with Mr. Robles' adjustment (FEMA-000128). Finally, on that same date, Selective issued a payment for the balance of Plaintiff's contents claim totaling $13,800.00. *See* Doc. No. 318-2 at 96. In addition Plaintiff was paid $30,000.00 under the Increased Cost of Compliance provision of his SFIP. *See* FEMA-000005. Plaintiff does not disagree with the payment amounts listed above. *Id.*

3

On August 4, 2004, the Hurricane Isabel Task Force completed its review of the claim. *See* FEMA-000225. The Task Force could not reach Plaintiff's Public Adjuster and closed the file. *Id.* The Task Force did not recommend any changes to the previous assessment of $44,652.74 for Plaintiff's structure damage and $27,600.00 for Plaintiff's contents.

On September 22, 2004, and October 5, 2004, FEMA sent letters to Plaintiff notifying him that the Task Force concurred with Selective and that no additional payments were warranted. *See* FEMA-000087 and FEMA-000090.

**II. Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF EDWARD JONES' INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000079. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000080 to 000081.

**III. Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶20-28 of the Supplemental Declaration of Karen Christian for the Claim of Edward Jones (Document 613-2). It states:

> Plaintiff stated in his waiver application that he spent a total of $70,911.38 repairing his home, not including elevation, which resulted in a shortfall of $25,758.64. *See* FEMA-000005.

4

Plaintiff's "shortfall itemization" is based upon receipts, invoices and estimates, which include inflated costs, items not damaged by flood and uncompensable items such as $6,469.21 for Goodman-Gable-Gould Co. (private adjusters)(S*ee* FEMA-000048). Further, Plaintiff's itemization is not sufficiently detailed to separate Increased Cost of Compliance expenses from building expenses. Plaintiff simply takes the total of all his expenses and deducts $30,000.00.

The bulk of the shortfall is based upon the $88,378.17 "Z" Contracting contract, which includes significant upgrades. *See* FEMA-000048. The contract includes line items for the construction of an expanded second floor over the garage that did not exist prior to the flood and a new deck. *See* FEMA-000147. The contract includes other line items not physically damaged by the **nine inches** of water that entered Plaintiff's home including removal of the existing garage roof, framing of the second floor, roofing, wall cabinets, countertops, removing all wiring to meet local electrical codes, and the installation of a 16 feet by 20 feet deck with steps. *See* FEMA-000049.

Plaintiff was compensated for damages caused by direct physical loss by or from flood with application of the SFIP coverage limits and exclusions. Plaintiff's "shortfall itemization" is based upon a significantly upgraded structure with no explanation of how the claimed items are related to the nine inches of water that entered Plaintiff's home.

Plaintiff presented no evidence challenging the repair estimates provided by Selective or the Task Force.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000080 and FEMA-000081. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

5

> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's method of calculating his shortfall based on his total expenses makes it impossible to separate out the actual Increased Cost of Compliance expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your flood damages exceeded the payment received from your Write Your Own Company, Selective Insurance Company. To support the amount claimed, you provided an itemization of the additional building items. The main estimate appears to be a bid for constructing a living area over the attached garage. This is related to your Increased Cost of Compliance (ICC) claim for which you received payment in the amount of $30,000, the maximum amount of coverage available. The construction cost exceeded the ICC monies paid and cannot be included in the original claim.
>
> Your claim was originally reviewed by an independent adjuster and subsequently, the National Flood Insurance Program's General Adjuster who made the recommendations to your Write Your Own carrier, Selective Insurance Company to adjust the estimate. The file review reflects that the adjustment was included in the final settlement.
>
> You requested a review of your claim by the Hurricane Isabel Task Force. They advised you of the limited coverage due to SFIP provisions for a post-FIRM elevated structure in a Special Flood Hazard Area. All reviews of your claim concluded the carrier's final evaluation was accurate.

> Further, your waiver request resulted in a re-inspection of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

See FEMA-000080 and FEMA-000081

**Plaintiff failed to demonstrate he met the criteria used to determine whether to grant a waiver.** First, he failed to demonstrate any additional damages he sought were actually covered by his SFIP. Second, his shortfall itemization included non-compensable items, such as the public adjuster's fee and significant upgrades to his home without consideration of the fact that only nine inches of water entered his home.

Accordingly, after another comprehensive review of the claim by the Task Force, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

## IV.   Plaintiffs' Assertions and FEMA's Position

Plaintiff seeks summary judgment in the amount of $14,464.90. Document 646 at page 39. While Plaintiff argued many alleged deficiencies with the way the claim was handled and adjusted (Id at pages 9 to 12), he appears to limit his claim at this juncture to the amounts still claimed to be due on a timely submitted Proof of Loss that was not subject to the waiver request.. As Plaintiff states:

FEMA admits that Mr. Jones submitted a Proof of Loss on which he was not paid in full. It admits, 'Plaintiff has an outstanding timely submitted Proof of Loss that should proceed on its own merits, and that Plaintiff did trigger the limited waiver of Sovereign Immunity for the amount claimed and not paid on his timely submitted Proof of Loss'. That said, the Proof of Loss in the amount of $86,717.64 should be reconsidered and the shortfall amended to reflect the difference after removing payments for

contents coverage and previous payments for structure damage, for a revised shortfall of $14,464.90. As set forth in FEMA's motion, pargraph (sic) 2: 'Plaintiff did not require a waiver to challenge the unpaid portion of his timely submitted POL' (Document 646 pages 12 to13).

FEMA's final position is set out in its Reply (Document 647 at pages 4 to 5) where it states:

'As provided in FEMA's Partial Motion for Summary Judgment and cited in Plaintiff's Opposition: Plaintiff did not require a waiver to challenge the unpaid portion of his timely submitted POL. Id. Plaintiff amends his shortfall from $25,758.64 (See FEMA-000005) to $14,464.90, which reflects the difference between the amounts he was paid and the amount he claimed on his timely submitted Proof of Loss. Id. Based on Plaintiff's concession, the revised shortfall amount does not require a waiver since that amount was submitted as part of a timely Proof of Loss.

FEMA asserts that "without waiving any defenses or agreeing that Plaintiff is entitled to any additional compensation, the partially disallowed portion of Plaintiff's timely filed Proof of Loss should be allowed to proceed against Selective Insurance Company of the Southeast, Plaintiff's Write Your Own insurance carrier, limited to the amended shortfall amount of $14,464.90."

V. **Special Master's Analysis**[1]

---

[1] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

It appears that the parties are in accord on the following: (1) that the shortfall claim is now limited to $14,464.90; (2) that the claim did not require a waiver to pursue since it was timely made prior to the waiver process being used. With this agreement, the Special Master believes that the matter before the Special Master can and should be resolved in the following fashion. As explained in earlier cases, the Special Master does not have the authority to recommend that Summary Judgment for the $14,464.90 or for any amount be granted to the Plaintiff; thus it will be recommended that the Plaintiff's request for that relief should be denied.

As FEMA notes and as Plaintiff apparently agrees, the assertion of the claim for the $14,464,90 is independent of the waiver claim process and can be pursued by Plaintiff without the grant of any waiver by FEMA. The Special Master's authority is limited to review of the waiver claim denials and given the status of this matter, the Special Master can not determine that the denial of the waiver claim was arbitrary, capricious or an abuse of discretion since it was not the mechanism for Plaintiff to pursue the claim now being asserted. The Special Master will therefore recommend that the Defendants' Motion for Partial Summary Judgment be granted as to the denial of the waiver claim with the condition as FEMA states in its Reply (Document 647 at page 5) that the claim will be "allowed to proceed against Selective Insurance Company of the Southeast, Plaintiff's Write Your Own insurance carrier, limited to the amended shortfall amount of $14,464.90".

**VI.  Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted with the condition that the claim will be allowed to proceed against Selective Insurance Company of the Southeast, Plaintiff's Write Your Own insurance carrier, limited to the amended shortfall amount of $14,464.90; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.


 June 26 , 2011                                                       /S/
   Date                                             Dennis M. Sweeney
                                                    Special Master