# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF LINDA KALB[1]

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Linda Kalb pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 312 pages labeled FEMA-000001 to 000312.

---

[1] John and Matthew Kalb are also named Plaintiffs, but did not participate in the waiver application process. This Report and Recommendation covers all waiver claims of the Kalbs and may use the singular or plural of Plaintiff at various points.

I.   Background

Plaintiff's property located at 2807 4th Street, Baltimore, Maryland, was insured by American Bankers Insurance Company ("American Bankers") under Policy Number 3021353300 with a coverage limit of $70,000.00 for her building with a $500.00 deductible. *See* FEMA-000067. Plaintiff did not maintain any contents coverage. *Id.*

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. *Id*. On September 22, 2003, Plaintiff reported her loss to American Bankers, and on October 1, 2003, American Bankers retained Sam Miller an independent adjuster from Sweet Claim Service, Inc. to inspect her property. *See* FEMA-000147 and FEMA-000148.

Mr. Miller investigated the loss, assessed the damage, created a stick-by-stick report of the damages to Plaintiff's property, and concluded the actual cash value of Plaintiff's loss was $37,948.19, after application of the $500 deductible. *See* FEMA-000147 and FEMA-000173. Plaintiff was provided a copy of the report and supporting documents. *See* FEMA-000155.

Plaintiff was not entitled to the replacement cost value of her loss because she was under-insured as to the full value. The full replacement value of her entire home was $136,176.18 and Plaintiff maintained only $70,000.00 in coverage. Per the SFIP, a policy holder is entitled to replacement cost when the amount of insurance is 80% or more of the full replacement cost of the structure. *See* 44 CFR § 61, App. A(1) at Art. V(1)(a)(2). Plaintiff's structure was only insured up

to approximately 52%.

Plaintiff was provided with a Proof of Loss for the adjusted amount. *See* FEMA-000149. Plaintiff signed and submitted this Proof of Loss in the total amount of $37,948.19. *See* FEMA-00001. On October 2, 2003, American Bankers issued an advance payment to Plaintiff totaling $7,500.00, but this check was voided and reissued on November 19, 2003. *See* FEMA-000134 and FEMA-000137. On November 4, 2003, American Bankers issued a check for $30,448.19, which was the balance of the amount requested on Plaintiff's Proof of Loss. *See* FEMA-000141.

Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force"). Plaintiff stated: "We could not afford to pay a contractor so we are doing all of the repair work ourselves. We have not included labor costs in our estimates." *See* FEMA-000189.

On July 27, 2004, the Task Force concluded its review of Plaintiff's claim and allowed for the following:

> Insured had 33" interior water in risk and states water wicked to over 4', making replacement of sheetrock and wall insulation to 8' necessary. Allowed these items to 8', adjusted price for subflooring and sheetrock, allowed for replacement of cable TV jack omitted from adjuster's estimate in living room, and allowed to replace the kitchen countertop.
>
> Recommended supplemental claim of $3,691.30 RCV, less $162.29 non-recoverable deprecation for a new claim and payment of $3,529.10.

*See* FEMA-000194.

On August 27, 2004, Plaintiff submitted a signed Supplemental Proof of Loss for $3,529.10, the amount authorized by the Task Force. *See* FEMA-000079. On August 30, 2004, American Bankers issued a check for $3,529.10, payment in full on Plaintiff's Supplemental Proof of Loss. *See* FEMA-000077. Plaintiff was paid a total actual cash value amount of $41,477.29.

## II. Waiver Claim and Denial

On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF LINDA KALB'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." FEMA denied the request in a letter dated July 31, 2008. See FEMA-00065 to 00066.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶12-18 of the Supplemental Declaration of Karen Christian for the Claim of Linda Kalb (Document 614-2). It states:

> Plaintiff's "Shortfall Itemization" includes a line item labeled "L.M.S. Carpentry, Inc. contract" (L.M.S.), which is an estimate of $43,794.00 to repair Plaintiff's home. *See* FEMA-000018. There is no evidence that the undated, unsigned document from L.M.S. is a contract. *See* FEMA-000019 and FEMA-000020. In addition, Plaintiff stated in her Task Force review request that "we are doing all of the repair work ourselves." *See* FEMA-000189. Finally, it does not include any unit breakdowns, which makes determining pricing differences, actual cash value versus replacement cost calculations, determining measurement differences, and excluding non-covered items impossible.
>
> Plaintiff's waiver application fell woefully short of the documentation necessary to determine whether Plaintiff was

4

entitled to any additional compensation. On July 31, 2008, FEMA denied Plaintiff's waiver request and provided her with the following explanation:

> . . . you claim your flood damages necessitated repairs exceeding the amount paid by your Write Your Own carrier, American Bankers Insurance Company. To support the amount claimed, you provided an estimate for the required repairs. However, your estimate does not provide a unit cost breakdown. Without specific details it could not be determined if there are pricing and/or measurement differences of if non-covered items are included in the estimate. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force that recommended a supplemental payment of $3,529.10.
>
> Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*See* FEMA-000066.

In other words, Plaintiff's claim was reviewed in detail by different reviewers on multiple occasions. There was no evidence of uncompensated damages resulting from the flood.

Plaintiff's waiver application failed to identify any specific damages directly caused by the flood for which she did not receive full compensation. Every item Plaintiff lists on her shortfall was considered and properly adjusted. Plaintiff's shortfall is based on a "contract" that is not sufficiently detailed in order to conduct any meaningful analysis and a list of items that were already included in the original estimate provided by the adjuster. *See* FEMA-000005 and FEMA-0000018 through FEMA-000020. For example, the following items listed on Plaintiff's "shortfall" are itemized with appropriate compensation provided on the adjuster's report: "furnace, heater, A/C" at FEMA-000156 and FEMA-000166, "pellet stove" at FEMA-000162, "kitchen

5

cabinets, countertop" at FEMA-000163 through FEMA-000164, and "refrigerator, oven and dishwasher" at FEMA-000164.

American Bankers' adjustment and the subsequent Task Force review were based on covered direct physical losses caused by or from the flood in accordance with the SFIP. *See* 44 CFR § 61, App. A(1) at Section II( B)(12). The SFIP only allows for replacement of materials with like kind and quality of existing materials. *Id.* at Section VII(K)(3)(a).

**Plaintiff's waiver application does not meet the criteria for approval.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit any new documentation explaining how the additional uncompensated items were damaged by the flood or covered under her SFIP.

Accordingly, on July 31, 2008, after a comprehensive review of the claim, Plaintiff's waiver application was denied because Plaintiff failed to show that she was entitled to further compensation under her policy. *See* FEMA-000065 through FEMA-000066.

## IV. **Plaintiffs' Assertions**

Plaintiffs[2] assertions of error in the waiver denial are found in the Plaintiffs' Opposition (Document 646 at pages 13 to 16). Plaintiffs note that they signed a POL and were paid $37,948.19 (see FEMA 000143). Plaintiffs contend that they could not find contractors to perform the work they wanted done due to "the extensive damage and the low estimate" that had been provided to them. Document 646 at 14. The review by the Hurricane Task Force provided an additional $3,529.10 but the sum was viewed as inadequate to accomplish what Plaintiffs believed was needed to bring their home to full repair . They contend that they spoke to local

---

[2] Plaintiffs are denominated in the Opposition as John and Linda Kalb. See footnote 1 supra.

6

contractors and the amounts provided "would still not pay for the repairs needed to get the Kalbs' home back to its pre-flood condition." Id. The Plaintiffs believe that the pictures of the house, and the detailed list of damages to the property along with the estimates they provided should have convinced FEMA to pay more. They note that they paid a total of $65, 513.48 to repair their home. Id at 15.

The Plaintiffs take issue with the assertion that they did not provide a sufficient "unit cost breakdown" and that FEMA had enough information to pay the claim. Plaintiffs particularly disagree with FEMA's refusal to accept the estimates of L.M.S. Carpentry Inc. of $43,794. They believe the documentation provided is of the type that is usually and customarily provided in the construction industry. They state in their Opposition at page 15:

It must be remembered that many contractors provide little or not documentation. To reject it out of hand continues to confirm that FEMA is acting arbitrarily and capriciously in its decision regarding the Kalbs.

Plaintiffs seek summary judgment in the amount of $23,536.19. Document 646 at page 39.

V.  **Special Master's Analysis**[3]

It appears to the Special Master that the concerns raised by the Plaintiffs were reviewed by FEMA in its original handling of the claim, in the review by the Hurricane Isabel Task Force and in the waiver process.  The review by the Task Force lead to an additional amount being provided with an explanation for the adjustment.  There is clearly a difference of opinion between the Plaintiffs and FEMA about how much documentation should be required to support a claim with Plaintiffs believing that they have provided enough and FEMA contending that the estimates provided did not meet its standards and did not convince FEMA that more compensation should be provided.

As FEMA notes in its Reply (Document 647) at pages 5 to 7, it considered all the information presented, but did find the L.M.S. Carpentry Inc estimates wanting in detail and not sufficient for its purposes and additionally questions the relevance of it since L.M.S. Carpentry, Inc. apparently did not in fact do the work.  It is FEMA's position that Plaintiff's shortfall " is clearly not based on actual expenses since Plaintiff has now conceded that L.M.S. Carpentry did not perform any of the

---

[3] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

work." Id at 6. It appears that Plaintiff did the work on her own. FEMA also faults Plaintiff for failing to adjust the shortfall to the actual cash value of the loss since Plaintiff's structure was only insured up to approximately 52% of its value.

The Special Master sees no basis here for finding what FEMA did in this case meets the standards of being arbitrary or capricious or an abuse of discretion. FEMA considered all the evidence submitted by Plaintiff. They reviewed it and pointed out the deficiencies. When the case was reviewed by the Hurricane Isabel Task Force the amounts provided were increased based on a re-evaluation of the claim and acceptance of some of Plaintiff's arguments.

As in many other cases already reviewed it can be difficult for a property owner to support a claim with contractor's estimates when FEMA is looking for evidence that is of the type provided by a professional insurance adjustor. This is obviously frustrating especially when a claim is trying to be proven years after the flood, but it is within FEMA discretion to require the level and detail of proof that it deems necessary to implement its SFIP as long as it is treating similarly siturated claimants equally. FEMA approach here seems consistent with how it handled other claims of a similar nature that have been reviewed by the Special Master.

The rationale for the waiver denial as set out above in Part III is detailed and specific and appears to be in conformance with how other claims are

adjusted. FEMA denial of the waiver does not appear to the Special Master to be either arbitrary, capricious or an abuse of discretion.

**VI.    Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
| _June 26 , 2011_ | _____/S/_ |
| Date | Dennis M. Sweeney |
| | Special Master |