# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF JOEL G. KELLEY

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Joel G. Kelley pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 329 pages labeled FEMA-000001 to 000329.

### I.     Background

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 3000180896, directly from FEMA to insure his

residence and contents located at 4504 Todd Point Lane, Baltimore, MD 21219 ("insured structure") against damage caused by flooding. *See* FEMA-000123. This is known as a NFIP Direct-side policy. Plaintiff's policy was in effect from June 14, 2003 to June 14, 2004. *See* FEMA-000123. Plaintiff's structure was insured up to $127,500.00, and his contents were insured up to $30,500.00, each with a deductible of $1,000.00. *See* FEMA-000142.

On September 18, 2003, Hurricane Isabel struck the Mid-Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's residence. Plaintiff timely notified FEMA that he had suffered the flood loss of September 18, 2003. *See* FEMA-000203.

FEMA hired an independent adjuster, Jeremy W. Smith from Bellmon Adjusters Inc., to investigate Plaintiff's loss. *See* FEMA-000158. The independent adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *See* FEMA-000158-199. The adjuster noted the water height to the exterior of the structure was between 34 to 36 inches, and the water height to the interior was 18 inches. *See* FEMA-000169. The adjuster estimated the covered damage to the insured structure to be $48,511.36 (full cost of repair ($56,287.80), less depreciation ($6,776.44) less deductible ($1,000.00)). *See* FEMA-000172.

The adjuster also inspected Plaintiff's personal contents and prepared an itemized inventory of Plaintiff's damaged contents. *See* FEMA-000183 through FEMA-000194. The adjuster's inventory lists 217 types of items. *Id.* For each item type, the adjuster identified the quantity, the age, the replacement cost, the

depreciation of the item, and finally the actual case value for each item—the amount covered under the SFIP. *Id.* The adjuster estimated Plaintiff's contents damage to be $12,697.68 -- (recovery costs ($20,022.44), less depreciation ($6,324.7) and the deductible ($1000.00)). *See* FEMA-000194.

On or about October 28, 2003, Plaintiff submitted to FEMA a timely Proof of Loss for both building and contents loss in accordance with the loss estimates provided by the adjuster for a total of $61,209.04 ($48,511.36 for the building loss and $12,697.68 for the contents loss). *See* FEMA-000298. On November 7, 2003, FEMA paid Plaintiff $48,511.36 for his building loss. *See* FEMA-000027. On November 7, 2003, FEMA paid Plaintiff $12,697.68 for his contents loss. *See* FEMA-000028.

On or about October 28, 2003, Plaintiff also submitted a Building Replacement Cost Proof of Loss for $6,031.94.[1] *See* FEMA-000300. On June 24, 2004, FEMA paid Plaintiff an additional $6,031.94 for replacement costs for his structure. *See* FEMA-000029.

On or about March 14, 2004, Plaintiff submitted to FEMA a Proof of Loss for Increased Cost of Compliance ("ICC") as his insured structure was flood-damaged and the cost to repair exceeded 50% of the assessed value of his

---

[1] Under Plaintiff's SFIP, he is entitled to replacement cost because his insured structure is a single family dwelling that is his principal residence, and was insured for more than 80% of its full replacement costs. *See* 44 C.F.R. Pt. 61, App. A(1), Art. VII(V)(a) (2003). Replacement costs mean the insurer "will pay replacement costs after application of the deductible and <u>without deduction for depreciation</u>, but not more than the least of the following amounts: (1) The building limit of liability . . .; (2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and of like use; or (3) the necessary amount actually spent to repair or replace the damaged part of the dwelling for like use." *Id.* Art. VII(V)(a)(2)(emphasis added).

3

structure.[2] *See* FEMA-000026 and FEMA-000024. FEMA paid Plaintiff $30,000.00, policy limits, for the ICC coverage. *See* FEMA-000031 and FEMA-000032.

On or about April 13, 2004, Plaintiff submitted to FEMA a request to have his claim reviewed by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-0000119.

The Task Force reviewed the claim and determined additional coverage could be added for subflooring and sheetrock and recommended an additional payment of $2,323.11. *See* FEMA-000120 through FEMA-000122. As a result of the Task Force review, on July 16, 2004, Plaintiff submitted to FEMA a Proof of Loss in the amount of $2,323.11. *See* FEMA-000268. On July 21, 2004, FEMA paid Plaintiff an additional $2,323.11 for his building loss. *See* FEMA-000030.

## II. Waiver Claim and Denial

On or about February 22, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF JOEL G. KELLEY'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000107. Plaintiff sought a waiver of the Proof of Loss requirement to recover an additional $74,699.64 ($61,976.09 for his structure and $12,723.33 for his contents). *See* FEMA-000005. FEMA denied the request in an undated letter; see FEMA-000108 to 000109.

---

[2] In support of his ICC claim, Plaintiff submitted to FEMA a letter from the Baltimore County Department of Permits and Development Management to Plaintiff stating "it has been determined that the cost to repair exceeds 50% of the assessed value of your home. As a result, any reconstruction must comply with" certain local building codes. *See* FEMA-000023.

4

### III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶23-32 of the Supplemental Declaration of Karen Christian for the Claim of Joel G. Kelley (Document 615-2). It states:

> Plaintiff's insured structure was built in 1942 and was approximately 950 sq. ft. *See* FEMA-000033 and FEMA-000168. Plaintiff replaced his insured structure with a 1,892 square foot new upgraded home. *Id.*
>
> To identify the additional amount claimed, *i.e.,* structure shortfall, Plaintiff subtracted the amount of money FEMA paid him by the amount he alleges it would have cost him to replace the same square footage of home with a new building—(new construction cost of $119,842.50 less FEMA payment $56,866.41 equals shortfall of $61,976.09). *Id.* Specific to Plaintiff's request for additional structure coverage, Plaintiff included the following formula for identifying how he calculated his structure shortfall:
>
> $259,400.00 Turpin, Wachter & Associates, Incorporated contract
> +
> $700.00 (pre-construction labor)
> **$260,100.00 = Total cost of new home**
> -
> $30,000.00 ICC $$ received
> **$230,100.00 = Total cost minus ICC costs**
> /
> 1824 SQUARE FOOTAGE OF NEW HOME
> $126.12 price per square foot
> *
> 950 Original square footage of home[3]
> **$119,842.50 Cost to restore original home to pre-flood condition**
> -
> $56,866.41 NFIP compensation
> **$62,976.09 = Shortfall[4]**

---

[3] The square footage identified in Plaintiff's formula (950 sq. ft.) conflicts with the square footage identified in Plaintiff's appraisal (744 sq. ft.). See FEMA-000095.

[4] The "shortfall" identified in Plaintiff's Shortfall itemization is $1,000.00 more than the amount requested in his waiver application. Compare FEMA-000005 with FEMA-000033.

*See* FEMA-000033.

Plaintiff's formula includes upgrades and items not present in the original structure and simply computes the cost per square foot to build the new, larger and upgraded structure and applies it to the number of square feet in the old insured structure. *See* FEMA-000032 through FEMA-000059 (Plaintiff's Construction Contract).

Plaintiff's waiver does not include photographs, reports, or evidence demonstrating the flood resulted in a total loss of the building. Indeed, the adjuster's report demonstrates Plaintiff's structure was repairable.

Plaintiff's waiver does not include any photographs, reports, evidence, or itemized list identifying additional flood damage to the insured structure not covered by FEMA's payment.

Plaintiff's method of calculating his damages based on the cost of constructing a new upgraded structure is fundamentally flawed because it does not take into account any of the SFIP's coverage limits or exclusions. Further, Plaintiff simply deducts the $30,000.00 in ICC compensation from their grand total. *See* FEMA-000033. Plaintiff's "shortfall itemization" makes it impossible to separate out the compensable ICC expenses.

Specific to Plaintiff's waiver application to provide additional coverage for contents, Plaintiff provided a list of contents with their replacement cost, which is not recoverable under the SFIP because the SFIP only pays actual cash value for damage to contents. *See* FEMA-000060 through FEMA-000070. Plaintiff's list includes many of the items for which FEMA paid. *Compare* FEMA-00060 through FEMA-000070 (Plaintiff's list) *with* FEMA-000071 through FEMA-000081 (Adjuster's list). To identify only a few examples, for contents in the sunroom, FEMA paid Plaintiff actual cash value for the following: blue velvet sofa, Sharp TV, surfeit sofa cover, books, and Realistic AM/FM/Tape Deck, yet these and the other items are listed in Plaintiff's "shortfall" inventory with full replacement costs. *See* FEMA-000060 and FEMA-000071. Plaintiff does not dispute the actual cash value of these items, but instead appears to be asking for coverage beyond that provided by Art. VII, Section V(2)(e) of the SFIP.

Moreover, Plaintiff's Contents Shortfall includes items that if damaged <u>would not</u> be covered under contents coverage and, instead, are

6

covered under building coverage such as: a 10 yard enclosure; siding; central air; roof; duct work; fire place; fiberglass insulation, crawl space vents; wood treatment; plumbing; and duct work.[5] *See* FEMA-000063; 000065; *see also* 44 C.F.R. Pt. 61, App. A(1), Art. III, Coverage A. Plaintiff's Content Shortfall also includes items expressly excluded by the SFIP such as: soil; decks; patios; walkways; seawalls; and underground tanks. *See* FEMA-000063 and FEMA-000065.; *see also* 44 C.F.R. Pt. 61, App. A(1), Art. IV.

FEMA denied Plaintiff's waiver for both building and contents coverage because Plaintiff failed to demonstrate he suffered damage for which FEMA failed to pay him and failed to provide documentation supporting his request for additional payment. FEMA-000108 through FEMA-000109. Specifically, FEMA stated:

> Your request for a supplemental claim includes additional costs you have incurred to construct a new dwelling which is larger than the original structure. . . . Also, upgrades are not covered by the SFIP. With respect to the supplemental claim for personal property, the list provided is written at replacement cost and the SFIP allows only actual cash value. The [content] list also included many building items . . . Items such as the deck and room were claimed but did not incur damage by the flood event. The patio, sidewalk, seawall and soil are not covered by the SFIP. The adjuster was in possession of your contents list when he prepared the estimate for the personal property. There is no justification to issue an additional payment.

Id.

Accordingly, after another comprehensive review of their claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

---

[5] Moreover, Plaintiff did not provide documentation and there is no evidence demonstrating that these items were in fact damaged by flood and payable under his building coverage.

7

## IV. Plaintiffs' Assertions

Plaintiff's assertions are found in the Plaintiffs' Opposition (Document 646) at pages 16 to 19. Plaintiff takes exception with how Ms. Christian characterizes the October 6, 2004 "substantial damage" letter that was submitted with the ICC claim and her and FEMA's failure to give it more credence in considering the damage done to house for purposes of Part A coverage. Id at 16.

Plaintiff also finds fault with Ms. Christian's comments about whether or not a Proof of Loss claim was actually submitted. Id.

Plaintiff also contends that Ms. Christian's references to the square footage of the home at 950 square feet differs from other figures which report the square footage at 1,022 square feet. Plaintiff position remains that he believes that the square footage of his home was the same 950 square feet that Ms . Christian found. Id at 17.

Plaintiff notes several errors that he made in his submissions that result in revisions of his shortfall amounts and that some items that should have been under Coverage A were listed under Coverage B. Id at 17-18. Despite these errors, Plaintiff believes FEMA should readjust the claim and find the claims meritorious. Id at 18.

Plaintiff also asserts that there may be an issue about the decks and walkways as to whether they should be covered, but does not cite to the evidence for that assertion. Id.

Plaintiff also takes exception to Ms. Christian position about how the ICC claim and the Coverage A claim are resolved believing that FEMA did not give appropriate weight to some 53 pages of documents submitted with the claim.

Finally, Plaintiff believes the contents claim should be allowed since Mr. Kelley was given a form that called for replacement cost rather than actual cash value. It is asserted that FEMA's rejection of the claim was arbitrary and capricious.

Plaintiff seeks $66,794.64 in his motion for summary judgment. Document 646 at page 39.

V. **Special Master's Analysis**[6]

Plaintiff's waiver application was based on the square foot cost for new construction formula which this court has rejected. See FEMA-000033. That appeared to be the main if not exclusive basis for the waiver claim as to Part A coverage and was what FEMA directed itself to in explaining why it denied the waiver claim.

---

[6] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

Understandably, with that claim rejected by the U.S. District Court (Document 597 at pages 8 and 9), Plaintiff now attempts to recast the claim to point out other errors that in many cases are being raised for the first time in the current filings. Many of the arguments are quibbles with how Ms. Christian characterizes her position or basic disagreement with FEMA's position on matters such as the relationship between ICC claims and Part A coverage claims. The Special Master does not believe that these matters merit additional discussion with this claim and relies on what has previously been said on these issues. See footnote 6 supra.

As to the contents claims, FEMA's position as stated in their Reply memorandum (Document 647 at page 8) is convincing to the Special Master especially that the SFIP only pays for actual cash value for damage to contents. See SFIP, Section VII, V (2). The Special Master also agrees with FEMA that Plaintiff has not shown that the allowance of items under the contents coverage provision was either arbitrary or capricious or an abuse of discretion.

There is no evidence of a credible nature that the deck and walkways should be covered under the SFIP and were damaged in the flood. See FEMA's Reply at 8.

The reasons for the waiver denial given by Karen Christian in this case were unusually detailed and specific and show that the concerns raised by the Plaintiff and squarely put before FEMA at the time of the waiver application were carefully considered and dealt with by reasonable

explanations that were in conformance with the SFIP and the way FEMA has handled other claims of a similar nature. FEMA was not required to do more in evaluating a waiver claim.

## VI. Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| June 26, 2011 | /S/ |
|---|---|
| Date | Dennis M. Sweeney |
| | Special Master |