IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**REPORT AND RECOMMENDATION CONCERNING
WAIVER CLAIM OF WILLIAM AND KELLY KENNEY**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of William and Kelly Kenney pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 445 pages labeled FEMA-000001 to 000445.

**I.     Background**

Plaintiffs purchased a Standard Flood Insurance Policy ("SFIP" or

"Policy"), Policy Number 6004754617, from The Standard Fire Insurance Company ("Standard Fire") to insure their residence located at 3 Arundel Place, Glen Burnie, Maryland ("insured structure") from damage caused by flooding. See FEMA-000005. Plaintiffs' structure was insured up to $180,000.00, and their contents were insured up to $20,000.00, with both forms of coverage having a deductible of $1,000.00. *Id*.

On September 18, 2003, Hurricane Isabel struck the Mid-Atlantic States, causing damage along the coast of Maryland, including to the insured structure owned by Plaintiffs. See FEMA-000291. Plaintiffs' policy was effective August 27, 2003, through August 27, 2004, and thus, the insured structure was covered at the time of the loss. See FEMA-000279. On September 19, 2003, Plaintiffs notified Standard Fire of their loss, alleging their insurance structure was damaged by the flooding caused by Hurricane Isabel. See FEMA-000111. On or about September 21, 2003, Plaintiffs were contacted by an adjuster, Steven Taylor, who was assigned by Standard Fire to investigate Plaintiffs' loss. See FEMA-000290 to 000292.

On September 23, 2003, Standard Fire erroneously issued a $15,000.00 advance check for the damage to Plaintiffs' structure, which was voided and later reissued in the amount of $5,000.00 for the contents loss. See FEMA-000113. On September 24, 2003, Standard Fire issued a $5,000.00 advance check for Plaintiffs' contents loss. See FEMA-000119.

The adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. See

FEMA-000198 to 000216. The adjuster identified $95,468.50 in actual cash value-covered flood damages after applying the $1,000.00 deductible, plus contents loss in excess of the policy maximum of $20,000.00. See FEMA-000317.

On January 12, 2004, Plaintiffs submitted a Proof of Loss through their adjuster for a new claim of $125,705.41. See FEMA-000251. This Proof of Loss was annotated, "The insured reserves the right to amend this Proof as facts and circumstances become know." *Id*. It is FEMA's position that this caveat effectively nullified the Proof of Loss, because in its view an SFIP Proof of Loss must be for an unqualified amount certain.

On April 6, 2004, Plaintiffs submitted a request to have their claim reviewed by the Hurricane Isabel Task Force ("Task Force"). See FEMA-000030 to 000031.

On April 19, 2004, Plaintiffs submitted a new Proof of Loss without any annotation for a net claim of $115,468.50 -- $95,468.50 for the structure and $20,000.00 for the contents. See FEMA-000038. This Proof of Loss was untimely because it was submitted beyond the 120-day extended period in which to file a Proof of Loss. A waiver requested was submitted on behalf of Plaintiffs, which was approved to allow Standard Fire to issue payment for the amount claimed on the Proof of Loss. See FEMA-000185.

On April 28, 2004, FEMA received a letter from Plaintiffs addressed to the Federal Insurance Administrative requesting that their claim be closed. FEMA-000032.

On May 6, 2004, Standard Fire issued a check in the amount of $106,902.57 ($95,468.50 for the actual cash value of the loss, and $11,434.07 for the recoverable depreciation). See FEMA-000116. In addition, Standard Fire issued a check for $15,000.00 for the balance of Plaintiffs' contents claim. See FEMA-000115.

On May 20, 2004, FEMA confirmed receipt of Plaintiffs' letter to not reopen their claim for Task Force review, and closed their claim. See FEMA-000102.

On October 20, 2004, Standard Fire issued to Plaintiffs an advance of $15,000.00 under the Increased Cost of Compliance ("ICC") provision of their SFIP. Subsequently, on January 7, 2005, Standard Fire issued the final payment of $15,000.00 under the ICC coverage. FEMA-000112.

Plaintiffs were paid a new replacement cost total of $106,902.57 for their structure loss, $20,000.00 for their contents loss, and $30,000.00 under the ICC provision of their SFIP. Plaintiffs agree with these totals. FEMA-000005.

**II.  Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiffs submitted to FEMA a document entitled "PLAINTIFFS WILLIAM AND KELLY KENNEY'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." See FEMA-000001 to 000096. FEMA denied their request in a letter dated July 31, 2008. See FEMA-000097 to 000098.

4

### III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶21-30 of the Supplemental Declaration of Karen Christian for the Claim of William and Kelly Kenney (Document 616-2). It states:

> Plaintiffs claimed a shortfall of $26,156.83. *See* FEMA-000005. Plaintiffs contend they had to tear down their old home and replace it with new construction. *Id.*. Plaintiffs alleged they spent in excess of $134,059.40 to build their new home plus $30,000.00 for elevation. *Id.* Plaintiffs contend at FEMA-000006 that they spent in excess of $158,094.55 to build their new home.
>
> Plaintiffs calculated their shortfall by subtracting the cost of the new structure with upgrades from the structure loss and Increased Cost of Compliance payments they received from Standard Fire ($164,059.40-(30,000+$106,902.50)). *See* FEMA-000045.
>
> Plaintiffs state they received a letter from Anne Arundel County indicating their residence was substantially damaged. *See* FEMA-000005 and FEMA-000006. Of note, the Residential Substantial Damage Estimator the County based their substantial damage letter on the replacement cost of the structure, which was $95,620.27 with an actual cash value of $84,145.84 and the computed damages to the home were $64,849.67. *See* FEMA-000014. Plaintiffs were paid in excess of the County's estimate to replace the entire structure.
>
> Plaintiffs' method of calculating their damages based on the cost of constructing a new upgraded structure is fundamentally flawed because it does not take into account any of the SFIP's coverage limits or exclusions. Further, Plaintiffs simply deduct the $30,000.00 in Increased Cost of Compliance compensation from their grand total. *See* FEMA-000045. Plaintiffs' "shortfall itemization" makes it impossible to separate out the compensable Increased Cost of Compliance expenses.
>
> Plaintiffs' home was repairable. The adjuster's estimate was based on covered direct physical damages by or from flood in accordance with the coverage limits and exclusions found within the SFIP. *See* FEMA-000198 through FEMA-000216. The flood

water measured 45 inches on the exterior and the interior water height was 36 inches. *See* FEMA-000291 and FEMA-000292.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000097 and FEMA-000098. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiffs' shortfall calculation to replace their 63 year old building (*See* FEMA-000014) was based on the construction cost of a new upgraded dwelling, which included items not damaged by the flood (i.e., the roof) along with code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. See Exhibit A at ¶¶ 16 and 17. The SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and as noted above, Plaintiffs method of calculating their shortfall makes it impossible to separate out those expenses.

In the letter providing FEMA's determination on Plaintiffs' waiver application, the Administrator stated:

> … you claim your damages necessitated the demolition of your dwelling as a result of the flooding and request full payment of your building policy limit. To support the amount claimed, you provided an estimate for the replacement of your home. Your claim was originally reviewed by an independent adjuster, engineer, and subsequently reviewed by the Hurricane Isabel Task Force. You received payment from your Write Your Own

> Company, Travelers Insurance Company, for all covered flood damages as well as the full amount of coverage under the Increased Cost of Compliance claim for demolition of the insured structure. The documentation you submitted includes upgrades to the structure, which are not covered by the SFIP such as roofing materials, gutters, and foundation elements as well as material for building items not damaged by the flood. All reviews of your claim concluded your estimate does not support additional payment.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*See* FEMA-0000098.

Plaintiffs failed to demonstrate they met the criteria used to determine whether to grant a waiver. First, they failed to demonstrate any additional damages them sought were actually covered by their SFIP. Second, their line-item shortfall calculation was based on the cost of constructing a new home and not uncompensated damages caused directly by flooding to their original structure.

Accordingly, after another comprehensive review of their claim, FEMA determined no further compensation was warranted. *Id*. Plaintiffs' waiver application was denied for a multitude of reasons, but primarily because they failed to document any physical loss by or from flood covered under their SFIP for which they did not receive full compensation for.

## IV. Plaintiffs' Assertions

Plaintiffs make their claims in the Plaintiffs Opposition (Document 646) at pages 19 to 25. Plaintiffs are concerned that FEMA rejected the conclusions of Bafitis & Associates, Inc. which concluded that the storm surge and the impact from wave action had inflicted substantial and serious damage to the house. Id at 20. Bafitis recommended to the Plaintiffs that the dwelling should be removed and replaced. Id at 21. Plaintiffs did receive an estimate from Restoration and Construction Services, Inc. to repair the house for the amount of $143,336.98. Id. Plaintiffs also received a substantial damage letter from Anne Arundel County that indicated damages to the Kenney home at 99.48% of the adjusted tax assessed value of $95,620.27. Id. Plaintiffs acknowledge that the WYO's structural consultant, National Forensic Consultants reviewed the damage also and disagreed with the Bafitis report and particularly the contention that wave and surge damage occurred to the home. Id at 22. Plaintiffs believe that if in fact the damages observed were pre-existing of the flood as National Forensic Consultants concluded that the damage would have been noted on the standard home inspection when Plaintiffs purchased the home three weeks before the flood. Id at 23. Plaintiffs believe that the cost to replace rather than to rebuild was the more prudent and cost effective approach especially given the cost of repairs. Id.

Plaintiffs also point out errors they claim were made in the waiver denial letter about the amounts claimed and whether in fact the Hurricane Isabel Task Force reviewed the claim or whether the Plaintiffs withdrew their request for review before it was completed. Plaintiffs point to these problems to support its contention that there was an "absence of any real review at all..." Id at 24. At page 25 of the Opposition (Document 646), Plaintiffs substantially revise their shortfall claim so that it is reduced now to the amount of $8,636.05. Plaintiffs now seek this amount in their motion for summary judgment. Document 646 at page 39.

V. **Special Master's Analysis**[1]

This is another case where Plaintiffs original waiver claim was based on the cost of the new building. See FEMA 000005 and 000045. FEMA has rejected that analysis and the Special Master and the court in prior rulings has sustained FEMA position that the SFIP requires a different calculus to be made. FEMA's position is well articulated in the Supplemental Declaration of Karen Christian as is set out above in Part III. As stated there:

---

[1] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

> Plaintiffs' method of calculating their damages based on the cost of constructing a new upgraded structure is fundamentally flawed because it does not take into account any of the SFIP's coverage limits or exclusions. Further, Plaintiffs simply deduct the $30,000.00 in Increased Cost of Compliance compensation from their grand total. *See* FEMA-000045. Plaintiffs' "shortfall itemization" makes it impossible to separate out the compensable Increased Cost of Compliance expenses.

Apparently now realizing that their original arguments will not be successful with the court, Plaintiffs have recast their claim to argue matters not specifically made in the waiver application. They argue that the Bafits report should have been accepted by FEMA and that they should have rejected the contrary report from National Forensic Consultants. This choice of which report or expert to accept is for the agency to make. Their choice does not appear to be arbitrary or capricious or an abuse of discretion.

As for the report of the home inspector who would have looked at the house before the flood, FEMA notes that the report was never made part of the record of these proceedings and the issue itself was raised for the first time in Plaintiffs' Opposition. This argument of Plaintiffs was not part of the waiver claim and is not convincing in any event.

Plaintiffs assert that it was an appropriate for them to move to replace the home rather than rebuild it. This may well be the case but it does not change the way that FEMA adjusts claim where it looks to the standards of the SFIP which looks only to the physical damage caused by the flood waters and which excludes any upgrades and which allows only $30,000

for the Increased Cost of Compliance, an amount that Plaintiffs did receive in this case.

Plaintiffs claims that FEMA's handling of the waiver review was defective in not being complete or comprehensive enough are arguments that the court has rejected and the Special Master sees no reason to revisit them in the consideration of this claim.

Plaintiffs have recast their claim at this stage to now claim $8,636.05 which FEMA notes is a reduction of the claimed shortfall in the waiver application by over 75%. This reduction should be welcomed by FEMA but they are correct in their contention that this shows that Plaintiffs did not present a consistent theory supported by evidence in the waiver claim application. The denial of the waiver claim made by FEMA for the reasons stated by it in the Supplemental Declaration of Karen Christian (Document 616-2) was not arbitrary, capricious or an abuse of discretion. The arguments now made by Plaintiffs in the Opposition do not persuade the Special Master that FEMA's determination to deny the waiver is one that should be reversed by this court or remanded back to FEMA for further proceedings.

## VI. Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

<table>
<tr><td>  June 26 , 2011  </td><td>                      /S/     </td></tr>
<tr><td>Date</td><td>Dennis M. Sweeney<br>Special Master</td></tr>
</table>