# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.** |
| | ) | **8:05-CV-01547** |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, | ) | |
| ET AL. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF JOANNE K. KRAFT

This constitutes the Report and Recommendation to the Court concerning the

waiver claim of Joanne K. Kraft pursuant to Part 1.f of the Memorandum Order of

the Court (Document 467). In preparing this report, the Special Master reviewed

the motions, memoranda, affidavits and exhibits provided in connection with the

process specified in the Memorandum Order. As necessary, the Special Master

also reviewed other documents that are part of the Court filings in this case. The

Special Master was also provided by the Federal Emergency Management Agency

("FEMA") the computer disc of the "appropriate documents of record" for this

claim, as specified in Part 1.a of the Memorandum Order. In this case, the

documents consist of 1129 pages labeled FEMA-000001 to 001129.

## I.       Background

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or

"Policy"), Policy Number 990106711-2003, from the Hartford Fire Insurance

Company ("Hartford") to insure her residence located at 3738 Chestnut Road, Baltimore, Maryland, ("insured structure") from damage caused by flooding. *See* FEMA-000005 and FEMA-000006. Plaintiff's structure was insured up to $233,900.00, and her contents were insured up to $66,200.00. Both aspects of coverage had a $500.00 deductible. *Id.*

On September 18, 2003, Hurricane Isabel struck the coast of Maryland causing damage along the coast, including the insured structure owned by Plaintiff. On September 19, 2003, Plaintiff contacted Hartford and notified them of her loss, alleging the insured structure was damaged by flooding. As a result, Hartford assigned an independent insurance adjuster, Kris J. Paronto from RGA, Inc., to investigate Plaintiff's loss. The adjuster inspected the loss, took photographs, and prepared a line-by-line adjustment of the building and contents damages. *See* FEMA-000151 through FEMA-000269 and FEMA-000332 through FEMA-000362.

The adjuster identified $97,540.75 in covered flood damage to the building, and $36,612.85 in covered flood damages to the contents of the insured building (including $12,111.55 in recoverable depreciation), and prepared proofs of loss for these amounts. *Id*. Hartford paid Plaintiff these amounts in full. *See* FEMA-000040, FEMA-000041, FEMA-000043, and FEMA-000045 through FEMA-000047.

As to the contents portion of her claim, Plaintiff supplied a list of the damaged items she was claiming. *See* FEMA-000094 through FEMA-000108. The independent adjuster reviewed the list, took photographs of the items in the

2

house, prepared an inventory, and prepared a loss estimate using the information submitted. *See* FEMA-000332 through FEMA-000362. Plaintiff disputed the fact that the contents were paid on an Actual Cash Value (*i.e.* depreciated) basis instead of a Replacement Cost basis. *See* FEMA-000014 through FEMA-000015. It was FEMA's position that the SFIP only insures contents on an Actual Cash Value ("ACV") basis. *See* 44 C.F.R. § 61, App. A(1), Art. VII(V)(4)(3).

The independent adjuster assigned to the loss responded to Plaintiff's questions regarding depreciation of her contents and explained why full replacement cost was not provided for the items she listed. *See* FEMA-000021. The independent adjuster's contents estimate was reviewed, and found to be in-line with the damage to Plaintiff's contents damage with appropriate application of depreciation based on the age and condition of the property. *See* FEMA-000314. No further evidence was presented to support any additional compensation.

Plaintiff did submit a timely Proof of Loss for $299,900.00, which was $179,412.82 greater than the amount estimated by the independent adjuster. *See* FEMA-000296. On or about February 12, 2004, Hartford partially denied the Proof of Loss for the difference between the amount paid based upon the independent adjuster's estimate of covered damages and the amount claimed in the Proof of Loss ($179,412.82). *See* FEMA-000016 through FEMA-000017.

Plaintiff also made a claim for Increased Cost of Compliance ("ICC") benefits of $30,000.00, and Hartford paid Plaintiff this amount in full. *See* FEMA-000005. ICC provides funds to demolish, elevate, flood-proof, relocate,

or any combination of those activities, as may be required by state or local floodplain management laws. *See* 44 C.F.R. § 61, App. A(1), Article III, Coverage D.

Plaintiff disagreed with the adjustment and hired her own engineering expert, Callahan Associates, Inc., to prepare a report regarding the causation of the damages to the property. *See* FEMA-000891 through FEMA-000893. Hartford also consulted with an engineering expert, National Forensic Consultants, to assess the damages and causation. *See* FEMA-000120 through FEMA-000125. Both reports discussed design defects of the structure, prior existing damages and normal wear and tear to the property which were not caused by flood and were not covered losses.

Plaintiff requested two separate reviews of her claim by the FEMA Hurricane Isabel Task Force ("Task Force"). After the first review, the Task Force determined that an additional $14,386.05 could be paid on the loss. A Proof of Loss was submitted to Plaintiff for this amount, but Plaintiff did not sign it and return it to the WYO Carrier, so this amount was not paid to her. See FEMA-000618 through FEMA-000619 and FEMA-000622 through FEMA-000623.

After the second review, the Task Force determined that no additional amounts could be paid beyond the $14,386.05 from the first review, but Plaintiff still declined to sign a Proof of Loss. See FEMA-000032 through FEMA-000033.

**II.      Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF JOANNE K. KRAFT'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-000127. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000128 to 000129.

**III.      Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶15-23 of the Supplemental Declaration of Karen Christian for the Claim of Joanne K. Kraft (Document 618-2). It states:

> Plaintiff claimed a shortfall of $154,946.90 in her "Shortfall Itemization" submission made with the waiver request. See FEMA-000005 through FEMA-000006 and FEMA-000087. Plaintiff "elected to demolish her home and build new construction." *See* FEMA-000005 and FEMA-000006. Plaintiff asserted the cost to repair her home would have been $312,900.00 as compared to $228,665.00 to build a new home and that either calculation exceeds the policy limits under her SFIP. *Id.* and FEMA-000087. In addition, Plaintiff claims she demonstrated at least $78,008.50 in flood damaged contents loss, which exceeded the contents limits under her SFIP. Id.

> Plaintiff's "Shortfall Itemization" was based completely on the cost of her new upgraded home. See FEMA-000005 through FEMA-000006 and FEMA-000087. Plaintiff's "Shortfall Itemization" did not actually include any detailed itemization. Plaintiff supplied only two separate, one-page estimates from a single construction company (The Ambrose Company) to support the claim for damages. The first estimate

was for $225,362.00 to build a new house (*see* FEMA-000593) and the second handwritten estimate was for $362,900.00 to elevate and repair the insured building without any line by line detail, which would allow a meaningful comparison to the independent adjuster's estimate (*see* FEMA-000127).

Plaintiff presented no evidence requiring her to demolish her home. Plaintiff's own submission shows that she "elected" to rebuild a new house, and her focus was on receiving her SFIP policy limits. See FEMA-000005 through FEMA-000006 and FEMA-000087.

The SFIP is a single-risk policy that pays only for "direct physical loss by or from flood" and then only to the extent permitted by the terms of the SFIP and the controlling federal laws, rules and regulations. *See* 44 C.F.R. § 61, App. A(1).

Plaintiff's "shortfall" to replace her building was based on the cost of a new upgraded dwelling, which included code and material upgrades. *See* FEMA-000005 through FEMA-000006, FEMA-000087, FEMA-000127 and FEMA-000593. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* 44 C.F.R. § 61, App. A(1), Art. VII(V)(2)(a)(2). Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's shortfall submission makes it impossible to separate out these expenses. *Id.* at Art. III, Coverage D.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-0000128 and FEMA-000129. Specific to this case, the Administrator considered whether:

1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

In the July 31, 2008 letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> . . .you have not demonstrated additional covered damages exist for which you have not been paid.
>
> Specifically, you claim the covered flood repair damages exceed the amount allowed by your Write Your Own Company, Hartford Insurance. Your claim was originally reviewed by an independent adjuster, the Hurricane Isabel Task Force, and subsequently reviewed by a National Flood Insurance Program's General Adjuster which resulted in a supplemental adjustment of $14,386.05. You refused to sign the Proof of Loss, therefore the additional payment was not issued. The insured structure was also inspected twice by different engineers, and both identified pre-existing damage to the foundation as well as other structural problems not covered by the SFIP. You subsequently demolished the structure instead of repairing it. A claim was later filed for demolition benefits under the Increased Cost of Compliance coverage and you received the maximum payment from Hartford Insurance. All additional reviews of your claim concluded that the final adjustment is accurate.
>
> Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.
>
> To the extent you will accept the supplemental adjustment of $14,386.05 previously offered to you, FEMA is willing to waive the time in which to file a POL for that amount only. Otherwise, your request for a waiver of the time period in which to file a POL is denied.

*See* FEMA-000128 through FEMA-000129.

Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver. Plaintiff failed to demonstrate any additional damages she sought was actually covered by her SFIP. Plaintiff did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original building, but instead submitted a one page estimate based upon building a new house, and a separate one page estimate to repair all damages to the existing, insured structure (not just the damages resulting directly from the flood loss at issue). Accordingly, after two comprehensive review of the claim, FEMA determined Plaintiff was only entitled to the amount previously approved by Hartford and the Task Force.

Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation, or for which compensation was offered and which she refused to accept.

## IV.  **Plaintiffs' Assertions**

Plaintiff made the decision to build a new home at 3738 Chestnut Road in the Back River area. Plaintiff believes that FEMA should have accepted the December 16, 2003 report of Callahan Associates, Inc which is found at FEMA 000596 to 000598. Document 646 at page 26. She also points to the Baltimore County "substantial damage" letter. Id. Plaintiff asserts that Ms. Christian went too far in saying that "no evidence" was presented requiring her to demolish her home and that placing a new building on the home was "elected" by her. Id. Plaintiff feels that this decision was necessitated by the condition of the house which was "saturated with sewage and petroleum, an environment unsafe and unhealthy in which to live." Id at 27.

Plaintiff believes that her documentation with the shortfall claim which contained 21 pages (FEMA 000087 -000108) adequately supported her claim for additional payments based on either rebuilding the home or replacing it altogether. Id. Plaintiff also criticizes statements made by Ms. Christian which she believes are in error regarding the ICC work. Id at 27 to 28. Plaintiff also restates her claim to the $14,386.05 which FEMA agrees should be paid upon submission of a proper POL. Id.

Plaintiff seeks summary judgment in the amount of $154,946.90 or $140,560.85 if FEMA pays $14,386.05 which FEMA has indicated could be paid to Plaintiff if a POL for that amount is filed. Document 646 at page 40.

## V. Special Master's Analysis[1]

This case presents a closer case than most the Special Master has reviewed. The damage to the home was substantial and Baltimore County did issue a "substantial damage" letter. As FEMA notes while this is required for the ICC claim, it does not decide the Part A coverage claim.

---

[1] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594,596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

Additionally in this case there is the detailed engineering report from Callahan Associates, Inc cited by Plaintiff which would reasonably lead a homeowner to believe that the only way to go would be to replace the old building with a new one. Plaintiff's insurance agent also argued vigorously for Plaintiff's position (see e.g. FEMA 000615). Plaintiff's decision to proceed as she did is reasonable and understandable. If that was the question before the Special Master, then relief would be warranted.

However, the question before the Special Master is whether the decision made by FEMA to deny the waiver claim as not in compliance with the SFIP was arbitrary and capricious or an abuse of discretion. In this case while the Callahan Associates report is significant, FEMA or the WYO carrier after receiving it retained National Forensic Consultants, Inc to review the property. That firm issued a report which is dated March 25, 2004. FEMA 000647 to 000652. This report disputes many items of the Callahan report. It was FEMA's choice to accept the engineering report or portions of it that it found more convincing. FEMA clearly favored the positions taken by National Forensic Consultants, Inc and rejected much of the Callahan analysis. The Special Master cannot conclude that its choices were either arbitrary or capricious or abused its discretion.

Plaintiff points to the 21 pages she submitted in her waiver claim as "documentation" supporting her claims under Coverage A and B and under the ICC coverage of her SFIP policy (see FEMA 000087 -000108).

In FEMA's reply (Document 647) at pages 13 to 14, FEMA argues that these 21 pages do not supply adequate documentation that satisfies the SFIP and explains the reasons for its position on a page by page basis. The Special Master after reviewing FEMA 000087-000108 agrees that FEMA was entitled to take the position it did on the deficiency of this submission to prove a waiver claim. The record here is unusually extensive with over 1,100 pages submitted there is much to support Plaintiff's allegations, but also much that supports FEMA's analysis.

FEMA's arguments in its Supplemental Motion for Summary Judgment (Document 618) at pages 10 to 14 and its Reply (Document 647) at pages 12 to 15 as well as the reasons given by Karen Christian in her Supplemental Declaration (Document 618-2) as set above in Part III are convincing that FEMA did adequately consider Plaintiff's claim and made a decision that the court should not disturb as being arbitrary or capricious or an abuse of discretion.

FEMA also argues that Plaintiff's lawsuit before this court is untimely since it was partially denied on January 12, 2004 and not instituted until June 8, 2005. The Special Master takes no position on this issue since resolution of this issue is beyond the authority delegated to the Special Master by the U. S. District Court.

**VI.      Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.


 June 26, 2011                                                                          /S/
       Date                                              Dennis M. Sweeney
                                                         Special Master