IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, ET AL. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| COMPUTER SCIENCES CORPORATION, ET AL. | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF CHRISTINE LEE

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Christine Lee pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 399 pages labeled FEMA-000001 to 000399.

### I.     Background

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 3007993888, from Omaha Property and Casualty

Insurance Company ("Omaha") to insure her residence located at 205 Canal Street, Grasonville, Maryland ("insured structure") from damage caused by flooding. *See* FEMA-000172. Plaintiff's structure was insured up to $114,000.00 with a deductible of $1,000.00. *Id.* Plaintiff did not maintain contents coverage. *Id.*

On or about September 18, 2003, Hurricane Isabel struck the coast of Maryland, causing damage along the coast, including to the insured structure owned by Plaintiff. *See* FEMA-000172. Plaintiff's policy was effective September 30, 2002, through September 30, 2003, and was therefore covered at the time of the loss. *See* FEMA-000172.

On September 19, 2003, Plaintiff contacted her insurer, Omaha, and advised them of her loss, alleging her insured structure was damaged by the flooding caused by Hurricane Isabel on September 18, 2003. *See* FEMA-000230. On September 19, 2003, Plaintiff was contacted by an independent who was assigned by Omaha to investigate Plaintiff's loss. *See* FEMA-000205 through FEMA-000227 and FEMA-000337 through FEMA-000344.

On or about September 23, 2003, the adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *Id.* The adjuster identified $20,895.18 in replacement-cost covered flood damages after applying the $1,000.00 deductible. *See* FEMA-000170. On October 22, 2003, Plaintiff submitted a signed and notarized Proof of Loss for the $20,895.18. *See* FEMA-000383. On October 28, 2003, Omaha issued Plaintiff a check for the Proof of Loss in the amount of $20,895.18.

*See* FEMA-000240. On December 30, 2003, Omaha issued Plaintiff a supplemental check in the amount of $4,607.69 for building damage. *See* FEMA-000044 through FEMA-000045.

On or about June 14, 2004, Plaintiff requested review of her claim by the Hurricane Isabel Task Force ("Task Force") -- *see* FEMA-000248 through FEMA-000249 -- because there was "not enough money to fix" her house. *Id*. Specifically, Plaintiff had an issue with a cracked slab and with interior damage which was not compensated in her prior Proof of Loss. *Id*.

On July 26, 2004, the Task Force concluded its initial review. *Id*. The Task Force concluded that a supplemental payment in the amount of $33,624.99 was in order to reimburse for "floor structure, flooring covering, moldings, drywall, insulation to ceiling, cabinets, doors, and painting." FEMA-000142. The Task Force, however, conducted a subsequent review on August 2, 2004, and revised the amount of the supplemental payment to $32,099.82. FEMA-000248.

The Task Force reviewed the supplemental determination with Plaintiff who agreed with the supplemental amount, and a Proof of Loss for $32,099.82 was provided. *Id.* and FEMA-000251. On August 3, 2004, Omaha issued a check for a total of $32,099.82, which was the amount authorized by the Task Force. *See* FEMA-000297. Omaha reissued another check for the same amount on September 1, 2004, to correct a payee error on the check. *See* FEMA-000296.

Omaha paid Plaintiff a total of $27,859.20 for Increased Cost of Compliance coverage ("ICC"), and Plaintiff is not seeking any additional ICC funds. *See* FEMA-000004 through 000005. Plaintiff was paid in full on every

3

Proof of Loss she submitted to Omaha.

**II.     Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF CHRISTINE LEE'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-00009. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000099 to 000100.

**III.    Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶18-26 of the Supplemental Declaration of Karen Christian for the Claim of Christine Lee (Document 620-2). It states:

> Plaintiff claimed a shortfall of $55,397.31. *See* FEMA-000005. Plaintiff claims she had to remove and replace the old home and build new. *Id.* The cost of the new home exceeded $160,000. *Id.* Plaintiff determined her shortfall by using a formulaic calculation that took the square footage of the original structure and multiplied it by the cost per square foot of the new upgraded dwelling resulting in a replacement valuation of policy limits ($114,000.00) minus the prior Omaha payments ($57,602.69-structure and $27,859.20-ICC) for a claimed shortfall of $55,397.31. *Id.*
>
> Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of her new upgraded home. *See* FEMA-00005. Plaintiff's "itemization" did not actually include

4

any itemization that could be used for a meaningful comparison to the adjuster's estimate. *Id.*

Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.

Plaintiff presented no evidence requiring her to demolish her home and never challenged the repair estimates provided by Omaha and the Task Force. Plaintiff's sole focus was on receiving her policy limits.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000099 and FEMA-000100. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. The Plaintiff's formulaic shortfall calculation to replace her 25 year old building (*See* FEMA-000111) was based on the square footage cost of a new upgraded dwelling, which included code and material upgrades. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Further, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you identified settlement damage to the slab after your residence was demolished and rebuilt. You did not provide any substantiating evidence that this damage resulted from the Isabel flood event. Additionally, damage caused by settlement is not covered by the SFIP. Please refer to V. Exclusions C. 1-6 for clarification. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. All reviews of your claim concluded the foundation problem was not caused by the Hurricane Isabel flood event.
>
> *****
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*See* FEMA 000100.

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation.

## IV. Plaintiff's Assertions

Plaintiff argues that FEMA is incorrect when it states that Plaintiff's waiver application was based on the cost of a new upgraded home. Plaintiff claims that FEMA did not correctly construe the filing and that she was relying on a contract from Riverwest Construction Corporation to rebuild her existing home at the same square footage. Plaintiffs' Opposition at page 32.

Because of FEMA's misreading of the claim, Plaintiff also claims that Ms Christian's declaration confuses her arguments about how the ICC expenses should be factored in because of the initial miscalculation about the supposed formulaic argument that Ms. Christian perceived the Plaintiff to be making. Id at 33. Plaintiff argues that Plaintiff "did not use a square footage "formula" and nor did she fail to present itemized documentation associated with the cost covered under Coverage A of her SFIP or under her ICC claim. Id. As a result, Plaintiff seeks $55,397.31 by summary judgment. Document 646 at page 40.

V. **Special Master's Analysis**[1]

In its Reply (Document 647) at page 16-17, FEMA states the following about the allegations that FEMA and Ms. Christian did not make the correct decision on the waiver:

> While FEMA concedes that it mistakenly argued Plaintiff's usage of the formulaic calculation for a new upgraded dwelling in support of its motion, the underlying principle is exactly the same and the end result is also the same. The Riverwest contract was for a new upgraded structure without regard for actual physical loss by or from flood and without application of the coverages and exclusions found within the SFIP. The formula based claims fail because they disregard actual physical loss by or from flood and do not apply the coverages and exclusions found within the SFIP. As stated in the Court's February 17, 2011 Opinion, the formula "lacks specificity as to what direct physical damages were caused by or from the flood, *i.e.*, were covered by the SFIP." *See* Judge Messitte's Memorandum Opinion of February 17, 2011, Doc. No. 597 at 8 and 9. Plaintiff's waiver application request is based solely upon taking the cost to rebuild a new upgraded home at the same square footage, subtracting ICC benefits of $27,859.20, and then asserting that she was entitled to receive her claimed policy limits of $114,000.00 because the remaining estimated cost to rebuild ($160,000.00) exceeded her coverage limits. See FEMA-000078. Indeed, Plaintiff did **even less** to support her claim than those individuals relying upon the per-square-footage cost to rebuild.
>
> The SFIP is a **single risk policy** and only provides insurance coverage against "direct physical loss by or from flood." 44 C.F.R. Pt. 61, App. A (1), Section II (12). It is the policyholder's burden to prove her losses and provide sufficient documentation. *See* 44 C.F.R. Pt. 61, App. A (1), Section VII (J). As noted by the Court, "the burden is on the insured to demonstrate that additional work should be compensated consistent with the SFIP requirements. FEMA is not obliged to search the policy in an effort to discover the basis for further payments of a claim." *See* Judge Messitte's Memorandum Opinion of February 17, 2011.

---

[1] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

Doc. No. 597 at 2. Plaintiff, like the formula based plaintiffs, disregarded the coverages provided by her SFIP with applications of the appropriate exclusions.

Plaintiff's evidence/argument is insufficient to prove FEMA's determination on her waiver application was arbitrary, capricious or contrary to law. Accordingly, the Special Master should recommend summary judgment in favor of Defendants on her claim.

The Special Master has considered the arguments made by the Plaintiff and reviewed the materials pertaining to the Riverwest Construction Corporation contract. See FEMA 00005 and FEMA 000078-000091. In light of FEMA concession that it misconstrued the argument made by Plaintiff, the Special Master has considered whether it should recommend that the waiver claim should be remanded to FEMA for a redetermination of the waiver claim and a new determination be made on the waive claim.

After a review, the Special Master has concluded that a remand based on the current record would not result in any change more beneficial to the Plaintiff given the fact that the documentation submitted by Plaintiff including the Riverwest contract would not be considered a basis for FEMA to grant a waiver claim. This is based not only on what FEMA's counsel has stated in the Reply, but how FEMA has construed similar submissions made by other Plaintiffs in this review process.

The Special Master thus concludes that the denial of the waiver claim in this case was not arbitrary or capricious or an abuse of FEMA's discretion.

## VI. Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

 June 26, 2011                                             /S/
   Date                                      Dennis M. Sweeney
                                              Special Master