IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**REPORT AND RECOMMENDATION CONCERNING
<u>WAIVER CLAIM OF TINA R. MALARA</u>**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Tina R. Malara pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 520 pages labeled FEMA-000001 to 000520.

**I.       Background**

Plaintiff purchased Standard Flood Insurance Policy ("SFIP" or "Policy") Number 14-16023733 from Harleysville Insurance Company ("Harleysville") to

insure Plaintiff's house located at 703 South Morris Street, Oxford, Maryland (the "insured structure"). Plaintiff's structure was insured up to $110,000.00 with a deductible of $500.00 and no contents coverage under the SFIP. *See* FEMA-000140. Harleysville is a Write Your Own ("WYO") Program participating insurance company, authorized to issue the SFIPs as promulgated by FEMA.

On or about September 18, 2003, Hurricane Isabel struck the Mid-Atlantic States, including Maryland, causing damage along the coast, including to the insured structure owned by Plaintiff. *See* FEMA-000216. The insured property had flood water of 30 and 38 inches for approximately 48 hours. *Id.* Plaintiff's SFIP was in full force and effect at the time of the loss and provided coverage for the flood-related damages. *Id* .

Plaintiff contacted her insurer on September 19, 2003, notifying them of the loss, alleging her insured structure was damaged by the flooding caused by Hurricane Isabel. An independent adjuster, Kim Wilson from SIMSOL, was assigned to investigate the loss. *See* FEMA-000234. Harleysville assigned the independent adjuster to assist Plaintiff with her claim "as a courtesy only" in accordance with SFIP Article VII(J)(5), (7) and (8).

The SFIP normally allows the insured a total of sixty (60) days to submit a Proof of Loss with supporting documentation for a claim, but for the loss at issue, FEMA extended the time in which to present the Proof of Loss to a total of 120 days, or until January 16, 2004. *See* FEMA-000090 and FEMA-000091. A plaintiff also has two years (normally) to submit a claim for Increased Cost of

2

Compliance ("ICC") benefits pursuant to Article III, Coverage D of the SFIP. *See* 44 C.F.R. §61, App. A-1, Article III, Coverage D, §5(e).

The independent adjuster inspected the exterior of the structure, conducted a room-by-room inspection of the interior, took photographs, and adjusted the loss. *See* FEMA-000247 through FEMA-000265 and FEMA-000510 through FEMA-000520. The adjuster identified $51,581.14 as being the replacement cost amount of covered flood damages to the building, of which $43,616.57 was the actual cash value of the damages. The difference between the total damages and the actual cash value damages represented the recoverable depreciation, which represented the replacement cost of the building. Plaintiff signed a Proof of Loss for this amount. *See* FEMA-000264.

Plaintiff also signed a replacement cost proof of loss for $6,397.60 and submitted same to Harleysville. *See* FEMA-000037. Plaintiff was paid the full amount for her loss by Harleysville. However, Plaintiff indicated in her letter accompanying the Proof that she did not agree with the numbers on the Proof of Loss and that she was signing the Proof of Loss as only a "partial payment" on her claim. *See* FEMA-000018 and FEMA-000019. No other timely, signed and sworn Proofs of Loss for any amounts over and above the amount determined to be payable by Ms. Wilson were submitted by Plaintiff seeking damages under Coverage A as required by Article VII(J) of the SFIP.

Harleysville issued a letter on January 23, 2004, advising the insured that it was construing the Proof of Loss as being the amount claimed, because

3

otherwise, based upon the "partial payment" language, Harleysville would not have been able to pay anything to the insured. *See* FEMA-000033 and FEMA-000034. In this same January 23rd letter, Harleysville also denied any claim for amounts over and above the amount listed in the Proof of Loss, triggering the one-year period for the Plaintiff to file a lawsuit in accordance with Article VII(R) of the SFIP and 42 U.S.C. §4072. *Id.*

Plaintiff did submit a claim for Increased Cost of Compliance ("ICC") benefits under SFIP Article III, Coverage D for the maximum amount of coverage available - $30,000.00. *See* FEMA-0000286. Plaintiff was paid the full amount of $30,000.00 in ICC benefits by Harleysville. *See* FEMA-000045 through FEMA-000048.

Plaintiff availed herself of the FEMA Task force review process twice. The first review resulted in a finding in July 2004 that no additional amounts could be paid beyond what the adjuster allowed. Plaintiff then requested a second re-inspection by the FEMA Task Force, and in December of 2004, FEMA determined that an additional payment of $5,522.95 could be paid. *See* FEMA-000011, FEMA-000013, FEMA-000017, FEMA-00090 through FEMA-000094, and FEMA-000116.

On August 18, 2004, Plaintiff signed a Proof of Loss for $5,522.95, and Harleysville issued payment to the Plaintiff for this amount. *See* FEMA-000038.

As a result of the review of the loss by the independent adjuster from SIMSOL, by Harleysville's Claims Department, and two separate reviews by

FEMA's Task Force, Plaintiff was issued three checks by Harleysville for the flood-related damage to the building – a check for $43,616.57 for the actual cash value of the building damages, a check for $6,397.60 for the recoverable depreciation on the building damages (which resulted in the claim being paid on a replacement cost coverage basis), and a third check for $5,522.95 based upon the second FEMA Task-Force review of her property. *See* FEMA-000032, FEMA-000035, FEMA-000036, FEMA-000040, and FEMA-000041.

On July 7,2004,Plaintiff submitted an untimely Proof of Loss for $67,466.40. *See* FEMA- 000044. Harleysville reviewed the untimely $67,466.40 Proof of Loss, and determined that no additional amounts were due and owing to the insured over and above the amounts previously paid**.** *See* FEMA-000012.

On June 8, 2005, the instant lawsuit was filed by the Plaintiff. *See* First Complaint, Doc. No. 1.

**II.     Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF TINA MALARA'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* Doc. No. 243 and the subparts thereto. FEMA denied the request in a letter dated July 31, 2008. See FEMA-000090 to 000091.

5

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶24-37 of the Supplemental Declaration of Karen Christian for the Claim of Tina R. Malara (622-2). It states:

> In the waiver request, Plaintiff made the wholly conclusory and unsupported statement that she "had to remove and replace her old home and build new." *See* Doc. No. 243 at ¶ 17 and FEMA-000005.
>
> Plaintiff claimed a total shortfall of $53,462.88 as part of her waiver application. Id. This amount constitutes the remaining available coverage under the Plaintiff's Coverage A (Building Coverage) of her SFIP. *See* FEMA-000049 through FEMA-000051.
>
> Plaintiff's "Shortfall Itemization" did not actually include any itemization of phyiscal(sic) loss caused by or from flood. *Id.*
>
> Plaintiff did submit a two-page, non-itemized estimate in support of a request for greater benefits from Schuman's Quality Builders, Inc. ("Schuman") *Id.*
>
> Schuman listed a "block" estimate of $30,000.00 for materials necessary to complete the job without any detailed itemization. Id.
>
> The total costs (without overhead and profit) listed by Schuman was $100,870.00, and the contractor's overhead and profit was $48,630.00 which equates to a total overhead and profit rate of more than 48% (and industry standards is 10% overhead and 10% profit). *See* FEMA- 000050, FEMA-000051, and FEMA-000174.
>
> Plaintiff's "Shortfall Itemization" was based completely on the cost of rebuilding her damaged home anew as opposed to the actual scope and cost of flood related damages to the insured structure. *See* FEMA-000049 through FEMA-000051.

6

The "Shortfall Itemization" also claims an amount of to bring the electrical wiring up to current building code standards. *See* FEMA-000049 through FEMA-000051. This work is excluded by SFIP Article V ("Exclusions"), Section A, subparts 6 and 7, as well as Article III, Coverage D, Section 5, subsection (f).

Nothing in the Schuman estimate indicates where in the house the work was to be performed. *See* FEMA FEMA-000049 through FEMA-000051. The Plaintiff's property only had 38 inches of water in it. FEMA will not pay for incidental or consequential damages, but only for "direct physical loss by or from flood" under the SFIP.

Plaintiff presented no evidence requiring her to demolish her home and did not provide any evidence supporting a greater claims payment than what was allowed by the estimates provided by Harleysville and the Task Force review. The Plaintiff's shortfall calculation to replace her old building was based on the square footage cost of a new, upgraded dwelling, which included code and material upgrades. *See* FEMA-000049 through FEMA-000051. The SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* 44 C.F.R. §61, app. A-1, Article V(A) and Article VII, Section V, subpart 2(a)(2).

As there is nothing submitted that would allow FEMA to evaluate the basis for these claims, no amounts can be paid.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000090 through FEMA-000091. Specific to this case, in his July 31, 2008 letter the Administrator considered whether:

1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

7

>   3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

In the July 31, 2008 letter providing FEMA's determination on Plaintiff's waiver application, the Federal Insurance Administrator (David Maurstad) stated:

>   Based upon our review of your waiver request, I have determined that there are no additional items eligible for payment under your policy and that no further payment is due to you. It has been over four years since the deadline to submit a POL expired and you have not provided a reasonable explanation for the delay in submitting a timely POL. In addition you have not demonstrated additional covered damage exists for which you have not been paid.
>
>   Specifically, you claim your damages necessitated the demolition of your dwelling as a result of the flooding. To support the amount claimed, you provided an estimate for the replacement of your home. Your claim was originally reviewed by an independent adjuster, a General Adjuster with the National Flood Insurance Program, and subsequently reviewed by the Hurricane Isabel Task Force which resulted in a $5,522.95 supplemental payment. The General Adjuster's inspection of the property did not find damages that would require demolition of the structure. You did receive the maximum payment under the Increased Cost of Compliance Coverage from your Write Your Own Company, Harleysville Insurance Company. A review of the contractor's estimate by the Hurricane Isabel Task Force found that the costs presented were unexplained and lacked an itemization of the repairs needed. The contractor's charges for overhead and profit were more than double the insurance industry standard. No further documentation has been submitted to support your

8

> claim and a supplemental payment is not warranted.
>
> Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.
>
> Accordingly, your request for a waiver of the time period within which to file a POL is denied.

*See* FEMA-000090 through FEMA-000091.

Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver. First, she failed to demonstrate any additional damages she sought were actually covered by the SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding which exceeded the amount previously paid by Harleysville to Plaintiff for her loss. Third, she failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

Accordingly, after a comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to demonstrate that any of the criteria for the granting of a waiver were met, and she failed to document any physical loss by or from flood covered under the SFIP for which she did not previously receive full compensation from Harleysville.

9

## IV. Plaintiff's Assertions

Plaintiff in her Opposition (Document 646) at pages 35 to 41 complains that Ms. Christian in her declaration did not acknowledge the severity of the damage done to the home by the flood waters and gave short shrift to the Town of Oxford "substantial damage" determination. Id at 35 to 36. Plaintiff argues: " With flood water lapping over the countertops in her home for 2 full days, her home was severely and significantly damaged to the point where the replacement of her home was the only viable choice." Id at 36.

Plaintiff also expresses disagreement with FEMA's characterizations of the July 7, 2004 Proof of Loss as "untimely" since Plaintiff believes it was timely submitted under the circumstances of this case. Id at 38.

Plaintiff further states that contrary to Ms. Christian's statements the house was substantially damaged with water contamination for two full days and this resulted in damages that are due to direct physical loss by flood pursuant to the SFIP. Id at 38. Plaintiff also contends that her detailing of the itemization of the damages was sufficient and should not have been rejected by FEMA. Id at 39. Plaintiff seeks $53,462.88 in her motion for summary judgment. Document 464 at page 40.

## V. Special Master's Analysis[1]

FEMA's reasons for waiver denial as set about above in Part III are lengthy and unusually detailed and, in the Special Master's view, show careful consideration of the claim under the standards of the SFIP. None of Plaintiff's arguments are persuasive and some are not relevant to the Special Master's review of the denial of the waiver claim. In Plaintiff's waiver application the claim was based on the cost of new construction, see FEMA 000049 and 000005 to 000006. The reasons given in Part III above are more than sufficient to explain why FEMA did not agree with Plaintiff's position. The Special Master does not believe that further discussion is necessary.

Plaintiff spends much of her argument explaining why the July 7, 2004 POL was timely filed. This issue is significant for purposes of whether Plaintiff timely filed her action in this court, but as the Special Master understands the court's directions to the Special Master it is not for the Special Master to make determinations about whether the underlying complaint in the U.S. District Court was filed in a timely fashion under the statutory standards. The Special Master will thus make no

---

[1] In their Oppositions at Document No. 646 at Pages 3 to 9, Group Four Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596 and 597) and the previously filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

recommendation as to whether the July 7, 2004 POL was timely made or the complaint in this court was timely filed.

As to the denial of the waiver claim, the Special Master finds that FEMA denials for the reasons stated are neither arbitrary, capricious or an abuse of discretion.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| June 26, 2011 | /S/ |
|---|---|
| Date | Dennis M. Sweeney |
| | Special Master |