# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, et al. | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. PJM 05-1547 |
| | * | |
| COMPUTER SCIENCES | * | |
| CORPORATION, et al. | * | |
| | * | |
| Defendants | * | |

## MEMORANDUM OPINION

[*OPINION ON SUMMARY JUDGMENT AS TO CLAIMS OF GROUP 2 HOUSEHOLDERS.*]

The Court adopts and incorporates by reference its Opinion With Respect to Plaintiffs' General Objections to the Reports and Recommendations of the Master, filed on February 17, 2011 (Document No. 597).

It now considers the Group 2 Plaintiffs' Objections (Exceptions) to Reports and Recommendations of the Special Master.

11) <u>Deaver</u>[1]

As to Plaintiff Deaver, the Special Master has submitted a 13-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her building was $67,300. Plaintiff was paid $38,809 for such damage.

---

[1] As with Group 1 Plaintiffs, the Court will refer only to the name of the first householder on a given claim if more than one name appears on a single claim. Throughout, monetary inventory amounts here have been rounded to the nearest dollar.

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 (Paper [596]), Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $26,491, the difference between the policy limit for flood damage to her building (less a $1,000 deductible) and the $39,809 she in fact received for such damage.[2]

Plaintiff claims she spent a total of $83,631 to repair her property and submitted a multi-page contract with estimates and addenda. She disputes the validity of the inspections and estimates prepared by FEMA operatives, as well as their qualifications; claims that full repairs for such items of plastering were necessary even for plaster above the water damage level; and contends that she was sufficiently specific and provided adequate documentation as to unreimbursed damages.

FEMA argues, *inter alia*, that Plaintiff failed to identify what portion or portions of the SFIP she desired waived; submitted the same documentation she submitted previously which had been reviewed and rejected previously; sought recovery for some items either not covered by the SFIP or which duplicated overhead and profit already compensated, the latter claim in any case being "well above the industry standard"; and failed to provide line item identification of physical losses caused by flood.

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

In his review of the record, the Master could not find where Plaintiff had identified specific items that had not been covered under the SFIP but which should have been, and the Court, in its own review, has been similarly unable to do so. Moreover, insofar as Plaintiff

---

[2] Plaintiff was paid the policy limit for damaged contents of the property, $14,800.

attempted to show, for the first time in her opposition to FEMA's determination, that plastering and siding were specified items, the Master found and here, too, the Court agrees, that this came too late, since agency action had already been taken. Other than her disagreement with FEMA's determinations, Plaintiff has not demonstrated either the invalidity of the conclusions of FEMA's investigators or cost estimators.

The Court would yet again remind, as stated in its Opinions as to the Group 1 Plaintiffs, that the SFIP is not a private insurance policy subject to "equitable glosses." It covers losses that private insurance does not cover and can fairly limit its coverage strictly to repairing losses covered by flood, even if, as to a given item that includes portions not damaged by flood, total repair of the item is reasonable.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff Deaver's claim.

12) <u>Dickey</u>

As to Plaintiff Dickey, the Master has submitted a 13-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her building was $135,000. She was paid $53,718 for such damage.[3]

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff objects to the Master's findings that she is not entitled to an additional payment of $80,282, the difference between the policy limit for flood damage to her dwelling (less a $1,000 deductible) and the $53,718 she received for such damage.

---

[3] In addition, Plaintiff received the $30,000 maximum due under the Increased Cost of Compliance ("ICC") provision of the policy.

Plaintiff claims she spent a total of $174,527 to demolish and rebuild the dwelling on its original footprint. She contends that she had no choice but to rebuild because a new structure was the only safe and economical alternative to repairing and elevating her home. She initially requested $21,133 in her waiver application, using a formula based on the square footage cost of building a new home and applying it to the square footage of the pre-existing home. Plaintiff later realized that the $21,133 request did not reflect the correct square footage of the dwelling and arrived at a substantially higher figure, $142,969, in her second set of calculations.[4] Because that figure exceeded her policy limit, Plaintiff then requested a waiver for the sum of $80,282.

Plaintiff takes issue with the estimates of replacement costs prepared by FEMA operatives; disputes FEMA's rejection of the square footage cost formula for constructing her new dwelling; and contends that she provided sufficiently specific and adequate documentation as to the building costs.

FEMA argues, *inter alia*, that Plaintiff failed to demonstrate that any additional damages she sought were actually covered by her SFIP; failed to submit a detailed line-item documentation of damages caused directly by flooding to her dwelling, using instead an unscientific formula to calculate the replacement cost of her new dwelling; and failed to establish that she proceeded in good faith and with reasonable explanation for the delay.

The Court has considered the Master's rationale and concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

FEMA is not required to adopt the formula Plaintiff used to calculate her loss. Rather, the

---

[4] Plaintiff arrived at her the second estimate of the cost of damages by taking the claimed total cost of the new home ($174,527) and subtracting the ICC payment ($30,000), arriving at $144,527. She then divided that figure by the square footage of the new home (1,816 square feet), arriving at a cost of $79.56 per square foot. Plaintiff then multiplied the square footage cost by the square footage of the original dwelling (1,797 square feet) and arrived $142,969, as the cost to restore the original home to its pre-flood condition.

agency may use other methods and formulas. In FEMA's judgment, the formula Plaintiff puts forth is contrary to the SFIP. In any case, as the Master noted, Plaintiff failed to offer any expert opinion or evidence that would support the use of the formula she proposed. The Court finds Plaintiff has not met her burden to show that FEMA should have allowed her claim.

As it stated in its Opinion of February 17, 2011 [Paper No. 597] as to the Group 1 Plaintiffs, particularly the section of the Court's opinion addressing Plaintiff Bonner's claims, FEMA is permitted to reject as "unscientific" those methods for calculating losses it finds are not accepted by industry or that do not take into account the coverage and exclusions provisions of the SFIP. The square footage for construction formula proposed by Plaintiff, "unscientific" or not, was not a formula FEMA was obliged to accept.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff Dickey's claim.

13) Dieux

As to Plaintiff Dieux, the Master has submitted a 13-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her dwelling was $76,300.[5] Plaintiff was paid $68,621 for such damage. Additionally, Plaintiff received $15,000 under the ICC provision of the policy, under the policy limit of $30,000

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff objects to the Master's findings that she is not entitled to a shortfall payment of $52,379, which is the total of (1) the difference

---

[5] Plaintiff disputes the amount of the policy limit and claims that it is $107,000, not $76,300. Because the Court holds that Plaintiff has failed to show how her claimed shortfall was covered under the SFIP, the amount of the policy limit is immaterial.

between the policy limit Plaintiff claims is accurate ($107,000) and the $68,621 she received for such damage (amounting to a claim of $37,379 owed, after the $1,000 deductible), plus (2) the remaining $15,000 available under the ICC provision of the policy.

Plaintiff claims that she spent a total of $465,521 to demolish her dwelling and build a new structure on the original footprint. Plaintiff initially submitted a waiver application for an additional $44,457 but later, for the first time in her Opposition [Paper No. 556], took the position that these calculations were incorrect and requested a payment of $52,379.

Plaintiff disputes the validity of the estimates for replacement costs prepared by FEMA operatives and claims that FEMA's review of her claim has been "lackluster" and deficient.

FEMA argues, *inter alia*, that Plaintiff failed to demonstrate that any additional damages that she sought were actually covered by their SFIP and that she submitted no new documentation explaining how the additional uncompensated items were covered under the SFIP.

The Court has considered the Master's rationale and concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

In his review of the record, the Master found, and so does the Court, that Plaintiff had not identified with specificity in her waiver application the additional damages that she claimed were not paid but were clearly due under the SFIP. Plaintiff now agrees that her original waiver application was deficient and has asked the Master and the Court to accept the new shortfall itemization set forth in her Opposition—one that was not reviewed by FEMA in the administrative process. As the Master notes, and the Court concurs, there is no reason why Plaintiff should not have been prepared to submit a fully articulated claim to FEMA in her waiver application. In addition, Plaintiff still does not provide the necessary level of specificity in the new shortfall itemization and otherwise fails to show how the claim made is covered under the

SFIP. She has not met her burden to show that FEMA should have allowed her waiver claim.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

14) <u>Dolgow</u>

In a 13-page Report and Recommendation, the Master found nothing arbitrary or capricious as to FEMA's denial of this Plaintiff's waiver application.

Plaintiff had a $125,000 policy limit for flood damage to building property and a $30,000 limit for damage to personal property, both subject to a $500 deductible. She was paid $21,051 for building damage and $0 for personal property damage. In addition, she also received a net $13,266 advance payment on an ICC claim.[6]

In addition to generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that FEMA did not act arbitrarily in rejecting her contents claim. She claims that she is entitled to an additional $103,449 for building damage and $28,703 for contents damage.

Plaintiff says FEMA did not adequately consider portions of engineering reports indicating the extent and source of damage to her foundation and that FEMA erred in deciding that the damage to the foundation caused by mold should not be covered. Plaintiff also claims personal property damage and has submitted an inventory list of cost estimates.

---

[6] The current status of the ICC claim is unclear from court filings. The fact that the $13,266 – which comprised a $15,000 payment less $1,734 for underpayment of premiums – was an advance payment might suggest that Plaintiff is due the rest of the $30,000. However, in its Reply to Plaintiff's Opposition to Summary Judgment, FEMA takes the position that Plaintiff had two years from the date of the loss to complete the work, and since she has demolished and not rebuilt her home, she actually needs to reimburse FEMA the $15,000 ICC payment. While it does appear that Plaintiff may owe the amount of the advance to FEMA, insofar as FEMA believes that an overpayment is due the Court will leave it to FEMA to pursue the matter independently of this lawsuit.

FEMA's position is that the foundation damage to Plaintiff's real estate predated the flooding damage and that she failed to mitigate the mold damage after the floodwaters receded. FEMA also argues that Plaintiff's contents damage claim was not adequately supported, that items for which she sought coverage were discarded before they could be inspected, and that required documentation was never submitted. Moreover, Plaintiff's claim was unsigned and unsworn. FEMA also noted that Plaintiff had no basis for seeking a waiver at all, since she had already submitted a timely Proof of Loss for additional building and contents damages to the company through which she purchased the flood insurance, a request which was rejected.

The Court has considered the Master's findings and concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

The Court finds, as did the Master, that Plaintiff's contents damage was insufficiently documented. She disposed of her damaged personal property before an insurance adjuster could inspect it, in violation of the SFIP, and did not provide receipts as an alternative method of proof. While she said she disposed of the property out in order to mitigate her mold problem because it took the insurance adjuster 10 days to come to inspect it, she never informed her insurance company about this, nor did she request an expedited inspection. Lastly, Plaintiff's contents claim, while setting forth cost estimates, was accompanied by neither photos nor receipts.

The Master also found that, while there were differing expert viewpoints as to the extent of the flooding and whether or not the flooding had caused damage to the foundation of Plaintiff's dwelling, FEMA considered those issues and reached its determination in a careful manner which specifically included review of the reports prepared by Plaintiff's experts. Indeed, the Court considers the level of review in this case extraordinary, with multiple engineers and insurance adjusters examining the damage. The Master found that FEMA's conclusion that Plaintiff failed

to mitigate the mold was similarly reasonable, and the Court agrees.

The Court concludes that there was sufficient evidence on the record to support FEMA's denial of Plaintiff's waiver application.

15) <u>Fenton</u>

The Master has submitted an 11-page Report and Recommendation finding that FEMA's denial of Fenton's building damage claim was not arbitrary and capricious but recommending that this Plaintiff's ICC claim be remanded to FEMA for redetermination.

Plaintiff's policy limit for flood damage to his building was $70,000, subject to a $1,000 deductible. FEMA paid out $51,014 for such damage.

In addition to generic objections common to all plaintiffs which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff objects to the Master's finding that he is not entitled to an additional payment of $17,987, the difference between the policy limit for damage to his building (less the $1,000 deductible) and the $51,014 paid by FEMA. He also asserts that he is entitled to the $30,000 policy limit for ICC because the first floor of his house was elevated.

In addition to his ICC claim, Plaintiff maintains that the shortfall he claims for building damage was well supported because he submitted proof of all costs associated with the replacement of his home. He argues that FEMA acted in bad faith by ignoring his invitation to inspect his photos showing hurricane damage to his home and the repair and compliance work done.

FEMA counters that Plaintiff did not adequately demonstrate that the building damage work was covered by his policy—for example, that the material used was of like kind and quality—and otherwise provided no evidence there was remaining building damage not covered

by the $51,014 already paid. FEMA also argues that the mere fact that Plaintiff incurred further expense upgrading and rebuilding his home does not automatically entitle him to additional compensation. As to the ICC claim, FEMA originally denied the claim because Plaintiff never provided a copy of the local ordinance to support his contention that the structure needed to be elevated. However, FEMA now concedes that it will pay the ICC claim if sufficient documentation is provided.

Otherwise the Court has considered the Master's findings and reasoning and concludes *de novo* that it is in agreement with him.

Plaintiff's shortfall itemization was insufficiently specific to show coverage under the SFIP. FEMA had no obligation to review Plaintiff's photos at his invitation; rather, the burden was on Plaintiff to show he was entitled to further compensation.

As to Plaintiff's ICC claim, given FEMA's concession that it will consider documentation for that portion of Plaintiff's claim, that particular matter is remanded to FEMA for redetermination.

The Court concludes that FEMA was not arbitrary and capricious and did not abuse its discretion when it denied Plaintiff's additional building damage claim of $17,987. The Court remands Plaintiff's ICC claim to FEMA for a redetermination consistent with the agency's representations to this Court.[7] If FEMA ultimately denies the ICC claim, that denial will be subject to further judicial review.

16) Ferguson[8]

As to Plaintiff Ferguson, the Master has submitted a 12-page Report and Recommendation

---

[7] Plaintiff has advised the Court that he is already working with FEMA to conclude the ICC claim payment.
[8] Ferguson has passed away and his claim is being pursued by Reginald McNeely, administrator of Ferguson's estate.

finding that FEMA's denial of his claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage was $150,000 for his building and $10,000 for its contents, each subject to a $1,000 deductible. Plaintiff was paid $24,906 for the building damage and $10,000 for personal property damage.

In addition to the generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that he is not entitled to an additional payment of $45,622, the difference between the total cost to repair his home (less a $1,000 deductible) and the $24,906 he in fact received for such damage.

Plaintiff claims he spent a total of $71,528 to repair his home and submitted a waiver application with invoices and cost estimates for the repairs.[9] Plaintiff claims that he is entitled to coverage for damage to the foundation of his home, the stairs and landing leading into his basement, the crawlspace of his home, and the foundation of his garage.

FEMA argues, *inter alia*, that Plaintiff failed to identify specific damage covered by SFIP in his original waiver application; sought extensive coverage for damage to his basement, which receives only limited coverage under the SFIP; improperly revised his claim to add specificity and new grounds for coverage after the original waiver application was denied (e.g. in his original claim, Plaintiff never mentioned foundation or structural damage); and, in his revised claim, relied on new evidence, including a County inspection report, that was insufficient to prove structural damage covered by the policy, and which, among other things, was not restricted to damage caused by flooding.

The Court has considered the Master's rationale and concludes *de novo*, both on the facts

---

[9] Plaintiff originally claimed he spent a total of $121,200 to repair his home. In response to FEMA's denial of his waiver application, Plaintiff revised his original claim by eliminating certain items and adding detail to others.

-11-

and the law, that it is in agreement with the Master.

By revising the amount and specificity of his claim, Plaintiff substantially recast his original waiver application, introducing new claims and theories that were not articulated in the original application for waiver. Though Plaintiff claims the original waiver application contained an overview of his expenses and that the revision added specificity only available after the development of the administrative record, the Court finds that the revisions are too substantial to be allowed at this late stage in the proceeding. Moreover, as the Master noted, critical information contained for the first time in Plaintiff's revised claim, such as the County inspection report, appears to have been available to him at the time he filed his original waiver application.

As to FEMA's decision to deny the original waiver application, the Master found, and the Court agrees, that the application for waiver and the attachments submitted with it in 2008 failed to include sufficient proof of entitlement to coverage. Since Plaintiff failed to show that he was entitled to further compensation under the policy, FEMA did not act arbitrarily or capriciously in denying the waiver claim.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

17) Fiterman

As to Plaintiff Fiterman, the Master has submitted an 11-page Report and Recommendation finding that FEMA's denial of their claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to his building was $221,000 and $29,000 for contents, each subject to a $1,000 deductible. Plaintiff was paid $146,542 under the building coverage provision and $16,371 for contents.[10]

---

[10] Plaintiff also received $15,000 under the ICC provision of his policy.

In addition to the generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that he is not entitled to an additional payment of $73,458, the difference between the policy limit for his building (less a $1,000 deductible) and the $146,542 he in fact received for such damage.[11]

Plaintiff claims that the flood damage to his house and the subsequent breaking of a 300-gallon oil tank on the property made restoration impossible. Plaintiff believes he is entitled to recover the full policy limit because the house replacement cost plus the oil remediation costs exceed the policy limit. He claims that FEMA did not adequately account for the damage done and the dangers posed by oil contamination.

FEMA argues, *inter alia*, that it did consider the entirety of the damages caused by the flooding and the oil contamination when it awarded compensation to repair Plaintiff's home. It notes that Plaintiff provided estimates for the full cost of repairing the storm damage and remediating the oil contamination that, in fact, totaled less than the amount he actually received. Because SFIP only covers the cost of repair and remediation, FEMA argues, Plaintiff is not entitled to recover the full value of his home simply because he chose to demolish the house instead of repair it.

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

FEMA gave careful consideration to the damages caused not only by the flooding but also the oil contamination. Though Plaintiff obtained opinions from independent experts as to the oil contamination damage, FEMA was not required to accept these opinions, given that they conducted their own review and concluded otherwise. Finally, while Plaintiff's decision to

---

[11] Plaintiff initially sought a $85,087 shortfall, but adjusted it to $73,458.

demolish his house and relocate may have been reasonable, that did not require FEMA to alter its evaluation methodology, which, according to the narrow limits of the SFIP, was properly confined to assessing the cost of repair damages directly caused by the flood.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

    18)    Gagnon

As to Plaintiff Gagnon, the Master has submitted an 11-page Report and Recommendation finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her building was $246,300 and $76,200 for contents, both subject to a $500 deductible. Plaintiff was paid $149,698 under the building coverage provision and $66,548 under the contents coverage provision.

In addition to the generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to coverage for damage to contents in her garage in the amount of $9,152, and for damage to her pool house in the amount of $56,509.

Plaintiff submits that the attached garage and pool house were covered by the SFIP. In addition, she rejects FEMA's claim that she was overcompensated $80,000 as a result of an adjuster's error.[12] Plaintiff further alleges that her application for waiver was sufficiently detailed and claims that FEMA refused to accept her invitation to review pictures during the review process. Lastly, Plaintiff notes that FEMA failed to state specifically which items are not covered under the SFIP.

In response, FEMA argues, *inter alia*, that Plaintiff failed to demonstrate that any

---

[12] A FEMA insurance examiner concluded that Plaintiff was overcompensated by over $80,000. *See* Doc. No, 317-2.

-14-

additional damages she sought were actually covered by her SFIP, e.g., under the terms of her SFIP, her pool house was not a covered item under the flood policy for her home; did not submit any documentation explaining how the alleged additional uncompensated items were covered under the SFIP; did not file a Proof of Loss seeking additional damages on her flood claim as required by her policy; and was actually overpaid $80,000 on her Hurricane Isabel-related flood claim.

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that for the most part it is in agreement with the Master.

The Court finds, as did the Master, the Plaintiff's pool house is not part of the new house merely because it was connected to the main house by "an elevated walkway." The presence of the walkway makes no difference. Not only is Plaintiff's argument unpersuasive, it was not even made in the waiver application, but was presented for the first time in Plaintiff's Opposition to FEMA's determination after the waiver application was submitted. Although the Master agreed with FEMA that Plaintiff was overpaid by more than $85,000 because the pool house was not covered by the SFIP, since FEMA has indicated that it will take no action to recoup this amount, the Court finds it unnecessary to decide the issue. The Master also noted, as does the Court, that the contents of the garage for which further payment is sought were not mentioned in the waiver application or in the shortfall itemization.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

19) <u>Gielner</u>

As to Plaintiff Gielner, the Master has submitted an 11-page Report and Recommendation finding that FEMA's denial of his claim was not arbitrary and capricious.

Plaintiff's policy limits for flood damage to his building was $84,000 and $30,000 for contents damage, both subject to a $5,000 deductible. Plaintiff was paid $43,176 for building damage and $24,665 for contents.[13]

In addition to the generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that he is not entitled to an additional payment of $35,824, the difference between the policy limit of $84,000 for flood damage to his building (minus the $5,000 deductible) and the payment of $43,176 he received for such damage.

Plaintiff contends that he spent a total of $126,979 to demolish his house and rebuild on the original footprint. He claims he had no option but to rebuild. In fact, he alleges that he was told by both FEMA and Baltimore County officials that they were not able to repair his house because to elevate the existing structure would destroy the building entirely. He also disputes the validity of the inspections and estimates prepared by FEMA operatives, as well as their qualifications; denies that his formula for calculating damages based on square footage is "unscientific;" complains about FEMA's failure to solicit more information from him once his waiver application was submitted, and says FEMA failed to recognize that the claim at issue is only for Coverage A of the SFIP.

FEMA argues, *inter alia*, that Plaintiff has not demonstrated that any additional damages he seeks were actually covered by his SFIP; failed to submit a detailed line-item documentation of uncompensated damages caused directly by flooding to his original building, relying instead on an unscientific formula to calculate his loss; and failed to establish that he proceeded in good faith and with reasonable explanation for the delay in submitting his application.

---

[13] In addition, Plaintiff received the maximum $30,000 due under the ICC provision of the policy.

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

FEMA has consistently rejected the square footage method put forth by Plaintiff to calculate his losses, and the Court has sustained FEMA's position throughout. The Court agrees that Plaintiff had the right to demolish his damaged house and erect a new one if he so chose but, given the restricted coverage of the SFIP, there is no reason why FEMA should be obliged to accept or fund Plaintiff's decision.[14]

As stated in the Court's Opinions as to the Group 1 Plaintiffs, particularly the section addressing Plaintiff Bonner's claim, the SFIP is a government program that specifically covers losses that private insurance does not cover. As such it can fairly choose to limit its coverage strictly to the cost of repairing losses caused directly by flood.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

A separate order will be entered implementing these decisions.

June 30, 2011                                   _____/s/_____
                                                PETER J. MESSITTE
                                                UNITED STATES DISTRICT JUDGE

---

[14] Plaintiff says he relied on statements made by FEMA officials to the effect that the house must be replaced. No evidence supporting this claim accompanied Plaintiff's waiver application since the claim was presented for the first time in Plaintiff's opposition to FEMA's Motion for Summary Judgment. Even if the statements attributed to FEMA agents had been made (though the precise words and context would obviously be significant), there is no way that statements such as those could expand the scope of SFIP's coverage.