# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS L. MOFFETT, II, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. PJM 05-1547 |
| COMPUTER SCIENCES CORPORATION, et al. | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

[*OPINION ON SUMMARY JUDGMENT AS TO CLAIMS OF GROUP 3 HOUSEHOLDERS.*]

The Court adopts and incorporates by reference its Opinion With Respect to Plaintiffs' Generic Objections to the Reports and Recommendations of the Special Master, filed on February 17, 2011 [Paper No. 596].

It now considers the Group 3 Plaintiffs' Objections (Exceptions) to Reports and Recommendations of the Special Master.

20) <u>Folderauer</u>[1]

As to Plaintiff Folderauer, the Special Master has submitted a 10-page Report and Recommendation, finding that FEMA's denial of his claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage was $84,000 for his building and $5,000 for its contents, both subject to a $1,000 deductible. In December 2003, Plaintiff submitted a claim for $24,043 for building damage and $5,000 for insured contents. Plaintiff was paid $24,043 for the building and the maximum allowed under the contents provision for personal property ($5,000).

---

[1] As with Group 1 and Group 2 Plaintiffs, the Court will refer only to the surname of the first householder on a given claim if more than one name appears on a single claim. Throughout, monetary inventory amounts here have been rounded to the nearest dollar.

1

On or about February 22, 2008, Plaintiff asked for an additional $26,957 under building coverage.

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that he is not entitled to an additional payment of $26,957, the difference between his latest estimated cost of repair for his building, $52,000 (less a $1,000 deductible), and the $24,043 he in fact received for such damage.

Plaintiff claims that he was not fully compensated for the full cost to repair his home, including septic repairs, damage to vehicles, soil contamination, and damage to a shed, fence, and gazebo. He claims he personally expended $30,000 worth of labor to fully repair his home and that the SFIP payments he has received do not cover the entirety of these labor costs.

FEMA's position is that the individual components of Plaintiff's claim, including repairs to Plaintiff's septic system, vehicles, soil, shed, fence, and gazebo, are not covered by SFIP's structural damage provision; that Plaintiff has provided no documentation or evidence demonstrating that he actually performed $30,000 for labor or that the cost of his repairs actually exceeded the payments he has received; and that Plaintiff has provided no explanation whatsoever for his failure to submit documentation four years after the Proof of Loss submission deadline expired.

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that he is correct.

In his review of the record, the Master concluded that Plaintiff has failed to prove that any component of his claim is entitled to further coverage under the SFIP, including the failure to provide detailed records to support the $30,000 for labor charges. Without such records,

FEMA was not required to accept Plaintiff's simple assertion that he performed that amount of labor. Moreover, the Master found that the compensation Plaintiff received already ($24,043) included a component for the labor necessary to make covered repairs. The Court agrees with the Master's finding that Plaintiff has not demonstrated that he is entitled to further coverage for repairs covered by SFIP that were not originally compensated.

FEMA was neither arbitrary nor capricious in handling Plaintiff Folderauer's claim.

21) Godlewski

The parties have advised the Court that they have reached a settlement with respect to the only contested issue in the case, i.e., the payment of $63,705. Accordingly, the Court will dismiss the action as to Plaintiff Godlewski.

22) Goodman

As to Plaintiff Goodman, the Special Master has submitted a 13-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage was $80,000 for her building, subject to a $1,000 deductible. She did not have a policy covering damage to the contents of her building. Plaintiff was ultimately paid $33,829[2] for the building damage.[3]

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $45,371, the difference between the policy limit for flood damage to her building (less the $1,000 deductible) and the $33,629 she claims she received for such damage.

---

[2] Plaintiff claims she was paid $33,629, and uses this figure to calculate her claimed shortfall. According to the record, the verified payments made to Plaintiff total $33,829.

[3] In addition, Plaintiff received the $30,000 maximum due under the Increased Cost of Compliance ("ICC") provision of the policy.

Plaintiff says she had to demolish her old home and build a new one at a cost of over $285,000 and that she is entitled to reimbursement for the cost of the new home. Plaintiff calculates the value of the claimed reimbursement by multiplying the total square footage of the old home by the cost-per-square-foot to construct the new home. Because her policy limit for building damage ($80,000) amounts to less than the discounted replacement value of her home, she says she is entitled to receive the full policy limit for damage to her original home.

FEMA argues, *inter alia*, that Plaintiff has not demonstrated that the damages she seeks were covered by SFIP and did not provide detailed line-item documentation of repairs for damage allegedly caused by the flood, but instead used a formulaic approach based on the square-footage cost of a substantially-improved new home. Indeed, FEMA claims that the new home, which is three times the size of the old one, required code and material upgrades, neither of which is covered by SFIP.

The Court has considered the Master's rationale and, concludes *de novo*, he is right both on the facts and the law.

The Master concluded that Plaintiff failed to provide a specific basis for why she is entitled to additional funds under SFIP. The Master noted that Plaintiff's claim is based entirely on a square-footage formula that the Court has previously rejected in its Opinion of February 17, 2011 [Paper No. 596] as to the Group 1 Plaintiffs, particularly the section of the Court's opinion addressing Plaintiff <u>Bonner</u>'s claims. As the Court has stated, FEMA is permitted to reject, as "unscientific," methods for calculating losses it finds are not accepted by industry or those that do not take into account the coverage and exclusions provisions of the SFIP. The square footage for construction formula proposed by Plaintiff, "unscientific" or not, was not a formula FEMA was obliged to accept.

Absent a showing that she is entitled to additional funds based on a specific provision of the SFIP, the Court rejects Plaintiff's claim that she is entitled to recover the replacement value of her home as calculated by a formula that uses the value of Plaintiff's substantially-improved new home.

In response to FEMA's request for itemization of repairs for damage covered under SFIP, Plaintiff points to the administrative record. However, as the Master noted, Plaintiff made no showing that the original adjustment that FEMA relied on in making its payout determination was incorrect or otherwise not in accord with the law. Additionally, while the administrative record contains ample documentation in the form of invoices, receipts, and cancelled checks, all that these appear to do is to itemize Plaintiff's costs in constructing her new home. They do not, as required under the SFIP, demonstrate that the costs of repairs were necessitated by direct physical loss from or by flood damage. Though Plaintiff's decision to rebuild her home may have been a reasonable one, FEMA is under no obligation to compensate her for her choice to rebuild, rather than repair.

Plaintiff, in the alternative, claims that she should receive $19,929, the difference between the Replacement Cost Value ("RCV") of her home, as determined by the adjuster, and the amount she received. However, the Master noted that since Plaintiff did not have a "valued policy" under SFIP, her policy coverage was limited to actual physical loss. Therefore, FEMA's decision to only provide coverage for the costs of repairs of actual damage, and to deny coverage based on the replacement value of the home, was reasonable.

In sum, FEMA's decision was neither arbitrary nor capricious.

23) Greenhawk

As to Plaintiff Greenhawk, the Master has submitted an 11-page Report and Recommendation, finding that FEMA's denial of his claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to his building was $202,700, with a deductible of $1,000.[4] He was paid $54,796 for such damage. Plaintiff's insurance policy also included a policy limit of $30,000 under the ICC provision.

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff (1) excepts to the Master's findings that he is not entitled to an additional payment of $30,000, the maximum due under the ICC provision of the policy, and (2) argues that the Master has no authority to advise Plaintiff how to collect a payment under his ICC coverage.

Plaintiff claims that he spent $35,730 on post-loss demolition, elevation, relocation, and flood-proofing work, which entitles him to the maximum amount under the ICC provision. The ICC provision of his policy covers these types of expenses if certain conditions are met, including the location of the home in a designated Special Flood Hazard Area and evidence that the repair costs exceeded 50 percent of the home's replacement cost. According to Plaintiff, the town administrator evaluated Plaintiff's home following Hurricane Isabel and estimated that the damage to the home was more than 50 percent of the home's value. In addition, Plaintiff objects to the Master's finding that Plaintiff did not assert an ICC claim at the time FEMA denied the waiver application.

---

[4] The policy limit of $202,700 was under "Coverage A" of Plaintiff's policy. Plaintiff initially requested $59,419 in his waiver application, but later realized that this request reflected "mathematical errors" and included expenses that he had already been paid for under the initial $54,796 payment. Plaintiff agrees that all monies due under Coverage A of the policy have been paid in full.

6

FEMA argues, *inter alia*, that Plaintiff failed to meet any of the criteria for granting a waiver; failed to demonstrate that the claimed costs on the waiver application exceeded the payments Plaintiff received from the insurer; and, because he failed to submit a Proof of Loss under the ICC provision at the time of the damage, failed to preserve the right to file an ICC claim on his waiver application. FEMA also argues that, in any case, Plaintiff does not qualify for the ICC compensation because the costs of the repairs to Plaintiff's home do not meet the 50 percent threshold and the town administrator's evaluation to the contrary does not affect the terms of the SFIP. Finally, FEMA argues that Plaintiff's revised calculations suggest that he has in fact been overpaid by $20,766.[5]

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that it is in agreement with him.

Even though Plaintiff presented costs related to elevation of the building when he sought to recover $59,419 in shortfall under Coverage A of the policy, he never filed a claim under the ICC provision before he submitted his waiver application. Therefore, the Court agrees with the Master that FEMA's denial of his waiver application did not amount to a denial of the merits of any potential ICC claims. Indeed, in its letter denying the waiver, FEMA informed Plaintiff that he should pursue any ICC claims through his insurer, not through the waiver process. FEMA's denial of any ICC claim in the waiver process cannot have been arbitrary or capricious because at the time of the requested waiver, no ICC claim had been properly presented to FEMA. The

---

[5] The total cost of repairing Plaintiff's home, as reported by Plaintiff in his waiver application, was $84,715. FEMA subtracted the $35,730 post-loss costs from the total reported cost because they were not covered by that provision of the policy and arrived at $48,985. FEMA subtracted two other claimed costs because they were deemed non-allowable—$10,500 for window replacement and $4,456 for electrical wiring—and arrived at $34,030 as the maximum potential total eligible costs to repair Plaintiff's house. Given that Plaintiff was initially paid $54,796 for flood damage, FEMA argues that he was overpaid by $20,766. FEMA, however, does not appear to be seeking to recover the alleged overpayment.

Court concludes that Plaintiff has not met his burden to show that FEMA should have allowed his claim.

FEMA was neither arbitrary nor capricious in handling Plaintiff Greenhawk's claim.

24) Hallanan

As to Plaintiff Hallanan, the Special Master has submitted an 11-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her building was $119,000. The policy limit for the ICC provision under the policy was $30,000. Plaintiff's insurer issued checks amounting to $71,121 for flood damage and $30,000 for the ICC provision, amounting to a total of $102,121. Plaintiff claims she spent over $372,000 to demolish and rebuild her dwelling; a home, as it happens, that ended up being more than double the square footage of the original structure. In her waiver application, Plaintiff claims she is entitled to $45,879,[6] relying on a formula based on the square footage cost of building a new home and applying it to the square footage of the pre-existing home.

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $45,879, the difference between the policy limit for flood damage to her building (less a $1,000 deductible) and the $71,121 in payments her insurance provider authorized.

In addition to disputing FEMA's rejection of the square footage cost formula for constructing her new dwelling, Plaintiff also says she provided sufficiently specific and adequate documentation as to the building costs.

---

[6] Plaintiff initially requested $85,518 in her waiver application but later realized that the $85,518 request did not account for the $39,639 in checks already issued by the insurer but not cashed by her.

FEMA's position is that Plaintiff failed to submit a detailed line-item documentation of damages caused directly by or from flooding to her building, relying instead on an unscientific formula to calculate the replacement cost of her new dwelling. Although Plaintiff submitted nine pages of itemized costs with her waiver application, FEMA noted that the costs were based on the square footage formula and were therefore an insufficient basis on which to grant the waiver request. Finally, in its Reply [Paper No. 633], FEMA acknowledged Plaintiff's request that the uncashed checks should be reissued and stated that it would forward the request to Plaintiff's insurer.[7]

The Court concludes *de novo* that the Master is correct both on the facts and the law.

Plaintiff's waiver claim was based on the square footage formula based on new construction. As the Court stated in its Opinion of February 17, 2011 [Paper No. 596] as to the Group 1 Plaintiffs, particularly the section of the Court's opinion addressing Plaintiff Bonner's claims, FEMA is permitted to reject as, "unscientific," those methods for calculating losses it finds are not accepted by industry or that do not take into account the coverage and exclusions provisions of the SFIP. The square footage for construction formula proposed by Plaintiff, "unscientific" or not, was not a formula FEMA was obliged to accept.

FEMA was neither arbitrary nor capricious in handling Plaintiff Hallanan's claim and the Court adopts the Master's recommendation.[8]

25) Healan

As to Plaintiff Healan, the Special Master has submitted a 12-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

---

[7] Plaintiff stated that as of July 5, 2011, she has yet to receive the reissued checks. *See* Plaintiff's Objections to Special Master's Report [Paper No. 682].

[8] The Court notes that the Master conditioned his recommendation on FEMA's assertion that it will promptly issue the checks already due Plaintiff. The Court also conditions its findings on FEMA's fulfillment of this commitment.

Plaintiff's policy limit for flood damage to her building was $185,900. She was paid $45,285 for such damage (after a $1,000 deductible).[9]

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $139,615, the difference between the policy limit for flood damage to her building (less a $1,000 deductible) and the $45,285 in payments her insurance provider authorized.

Plaintiff claims she spent $278,277 to partially demolish and rebuild her dwelling and to remodel the remaining section of the home.[10]

Plaintiff takes issue with the estimates of overhead and profit costs prepared by FEMA operatives; disputes FEMA's rejection of the square footage cost formula for constructing her new dwelling; and contends that she provided sufficiently specific and adequate documentation as to the building costs. She also argues that she should not be held responsible for the construction company's failure to supply her with line-item documentation of its work.

FEMA says that Plaintiff failed to demonstrate that any additional damages she sought were actually covered by her SFIP and failed to submit a detailed line-item documentation of damages caused directly by flooding to her building, relying instead on an unscientific formula to calculate the replacement cost of her new dwelling.

The Court concludes *de novo*, both on the facts and the law, that it is in agreement with the Master.

---

[9] In addition, Plaintiff received $28,795 under the ICC provision of the policy.

[10] Plaintiff initially reported a cost of $441,168 in her waiver application but later realized that these calculations were incorrect. Regardless, both figures exceeded Plaintiff's policy limit, so she requested a waiver for the sum of $139,615.

FEMA is not required to adopt the square footage formula Plaintiff used to calculate her loss. As the Court has already stated in its Opinion of February 17, 2011 [Paper No. 597] as to the Group 1 Plaintiffs, particularly the section of the Court's opinion addressing Plaintiff Bonner's claims, FEMA is permitted to reject as "unscientific" those methods for calculating losses it finds are not accepted by industry or that do not take into account the coverage and exclusions provisions of the SFIP. The square footage for construction formula proposed by Plaintiff, "unscientific" or not, was not a formula FEMA was obliged to accept. In any case, as the Master noted, Plaintiff's shifting estimate of the costs of constructions has made it difficult to assess her claim, which in any event finds insufficient support in the record. Further, although it is unfortunate that Plaintiff's construction company may not have supplied her with the type of information FEMA required for the waiver application, it was Plaintiff's burden to obtain that information from the contractor and submit it to FEMA. The Court finds that Plaintiff has not met her burden to show that FEMA should have allowed her claim.

FEMA was neither arbitrary nor capricious in handling Plaintiff Healan's claim.

26) Helmer

As to Plaintiff Helmer, the Master has submitted an 11-page Report and Recommendation finding that FEMA's denial of his claim was neither arbitrary nor capricious.

Plaintiff's policy limit for flood damage to his building was $220,200, subject to a $2,000 deductible. His contents were insured up to $61,700, subject to a $1,000 deductible. Plaintiff was paid $93,996 for his building loss and $34,761 for his contents loss.[11]

---

[11] Plaintiff does not dispute his claim for contents loss and seeks no additional compensation under that coverage.

In addition to the general objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that he is not entitled to additional coverage for damage to his building in the amount of $88,758.[12]

Plaintiff asserts that there was no consistency or uniformity in the way repairs to his property were adjusted and compensated. In particular, he points to the manner in which his custom kitchen repairs were adjusted, saying, in connection with the bid of Kenwood Kitchens, Inc., that FEMA should have allocated more money for the damage to the kitchen. Plaintiff asserts that the Master was wrong in upholding FEMA's decision not to have done so. He also asserts that he is entitled to recover for light fixtures, gutter repair, and general demolition.

FEMA says Plaintiff failed to demonstrate any additional damages he sought were actually covered by his SFIP; did not submit detailed line-item documentation of uncompensated damages caused directly by or from flooding to their original structure; and failed to establish that he proceeded in good faith or give a reasonable explanation for the delay in submitting his request.

The Master is right both on the facts and the law.

The Court finds, as did the Master, that it was well within FEMA's discretion to rely on the estimate provided by the independent adjuster, Bellmon Adjusting, rather than the one submitted by Plaintiff. Moreover, FEMA was correct in finding that Plaintiff's claim included items that simply were not compensable under the SFIP, given the evidence Plaintiff submitted to support the waiver request and given that the water in Plaintiff's house only reached a height of 29 inches on the exterior and 24 to 28 inches in the interior. Lastly, there is no indication that

---

[12] Plaintiff initially requested $92,758 but subtracted $4,000 after acknowledging that roof repairs are not compensable under his policy.

FEMA's handling of Plaintiff's waiver claim was inconsistent with the way other similarly situated claims have been handled. Remand is not appropriate in this case.

FEMA was neither arbitrary nor capricious in handling Plaintiff's claim.

27) Hinefelt

As to Plaintiff Hinefelt, the Special Master has submitted a 7-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to her building was $86,600. She was paid $41,917 for such damage. Plaintiff also received a $30,000 payment under the ICC provision of the policy.

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $33,744, the difference between the total repair costs (less a $1,000 deductible) and the payments she received for flood damage and the ICC provision ($41,917 and $30,000, respectively).

Plaintiff claims she spent a total of $106,661 to repair her property. She informed FEMA in her waiver application in February 2008 that she had hundreds of receipts to support the claimed costs and would submit those documents to the agency. She claims she was not notified of or provided an opportunity for supplying additional information, and therefore disputes FEMA's denial of her waiver for insufficient documentation. She submits that FEMA's stated reasoning for denying her claim amounts to an after-the-fact basis for denial of her claim.

FEMA argues that Plaintiff failed to meet any of the criteria for granting a waiver; failed to provide sufficient documentation of the repair costs; and failed to explain how any uncompensated losses meet the SFIP criteria.

On *de novo* review, the Court cannot disagree with the Master.

The Master found, and so does the Court, that Plaintiff in fact had full opportunity to supply information to FEMA as part of the waiver process but failed to do so. Otherwise, the administrative record shows a detailed and comprehensive adjustment of Plaintiff's claim by FEMA and its determination appears consistent with how it applies the SFIP to claims.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff Hinefelt's claim.

28) Horne

As to Plaintiff Horne, the Master has submitted a 14-page Report and Recommendation and a 2-page Supplemental Report finding that FEMA's denial of his claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage to his building was $81,000, subject to a $1,000 deductible. He was paid $36,217 under the building provision.[13][14]

The Court overrules Plaintiff's generic objections common to all Plaintiffs, which the Court rejected in its Opinion of February 17, 2011 [Paper No. 596].

Unscrambling Plaintiff's somewhat confusing history of claims, Plaintiff presumably excepts to the Master's finding that he is not entitled to the difference between the $80,000 policy limit for damage to his building and the $36,217 he received (after application of the $1,000 deductible), i.e., $42,783.

Plaintiff contends that the conclusions of his appraiser should have been accepted over those of the adjuster selected by FEMA.

---

[13] In addition, Plaintiff received the maximum $30,000 due under the ICC provision of the policy.

[14] Until recently, Plaintiff spent considerable time denying or not recalling whether he actually received compensation for claims totaling $6,619, but after the Master issued his report, Plaintiff advised through counsel that, in fact, the check had been received, endorsed, and deposited into his bank account.

14

FEMA argues that it comes too late in the day for Plaintiff to argue that his appraiser's estimates should prevail over those of FEMA's adjuster and, in any case, that FEMA could fairly rely on its adjuster's estimates, and further that Plaintiff failed to itemize precisely which physical losses were directly caused by or from the one to two inches of flood water that entered his home; employed an improper method of calculating his damages, i.e., multiplying the square footage of his original structure by the cost per square foot of the new, upgraded structure; failed to take into account SFIP's coverage limits or exclusions; and failed to establish that he proceeded in good faith or that he gave a reasonable explanation for the delay.

Again the Court concludes *de novo*, both on the facts and the law, that the Master has it right.

As to Plaintiff's argument based on differences between his appraiser's and the adjuster's calculations, that argument was not made in the waiver application and as such FEMA was not obligated to review it. Nor is it obliged to deal with it at this late stage in the proceedings. In any event, FEMA's reliance on its own adjuster's estimates was not unreasonable. Beyond that, Plaintiff's waiver application was solely based on the square foot formula for new construction, which FEMA has consistently rejected and the Court has consistently sustained. The square footage for construction formula proposed by Plaintiff is not a formula FEMA was obliged to accept.

The Court concludes that FEMA was neither arbitrary nor capricious in its handling of Plaintiff's claim.

29) Jackson

As to Plaintiff Jackson, the Special Master has submitted a 10-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

15

Plaintiff's policy limit for flood damage was $185,000 for her building and $60,000 for her contents, both subject to a $500 deductible. Plaintiff was paid $123,620 for the building and $18,208 for personal property.[15]

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $60,880, the difference between the policy limit for flood damage to her building (less a $500 deductible) and the $123,620 she in fact received for such damage.

Plaintiff claims she had to demolish her old home and build a new one at a cost of $720,088. Plaintiff says that she is entitled to reimbursement for the cost of the new home. She calculates the value of the claimed reimbursement by multiplying the total square footage of the old home (897 sq. ft.) by the cost-per-square-foot to construct the new home ($296) and subtracting the previously-received ICC compensation of $30,000 to arrive at a replacement valuation of $235,543. Because her policy limit for building damage ($185,000) is less than the discounted replacement value of her home, she claims she is entitled to receive the full policy limit for damage to her original home.

FEMA argues that Plaintiff did not demonstrate that the damages sought were specifically covered by SFIP; did not provide detailed line-item documentation of repairs for damage caused by the flood, using a formulaic approach based on the square-footage cost of a substantially-improved new home; and did not provide reasonable explanations for the delay in filing her claim. FEMA additionally claims that Plaintiff was overcompensated for the damage to her building due to an earlier miscalculation of the replacement cost, and that this overpayment

---

[15] In addition, Plaintiff received the $30,000 maximum due under the ICC provision of the policy.

of $15,531 would offset any claimed underpayment.[16]

The Court has considered the Master's rationale and, concludes *de novo*, both on the facts and the law, that it agrees with him.

The Master concluded that Plaintiff failed to provide a specific basis for why she is entitled to additional funds under SFIP. He noted that her claim is based on a square-footage formula that the Court has previously rejected as to all Plaintiffs. The square footage for construction formula proposed by Plaintiff is not a formula FEMA was obliged to accept.

Absent a showing that Plaintiff is entitled to additional funds based on a specific provision of SFIP, the Court rejects Plaintiff's claim that she is entitled, generally, to recover the replacement value of her home, as calculated by a formula based on the value of Plaintiff's substantially-improved new home.

The Court concludes that FEMA was neither arbitrary nor capricious in handling Plaintiff Jackson's claim.

30) Jasinski

As to Plaintiff Jasinski, the Special Master has submitted a 10-page Report and Recommendation, finding that FEMA's denial of her claim was not arbitrary and capricious.

Plaintiff's policy limit for flood damage was $135,000 for her building, subject to a $2,000 deductible. She was paid $74,415 for damage to her building caused by the flood.[17]

In addition to the generic objections common to all Plaintiffs, which the Court overruled in its Opinion of February 17, 2011 [Paper No. 596], Plaintiff excepts to the Master's findings that she is not entitled to an additional payment of $25,525 under her building coverage, namely

---

[16] It appears that FEMA is not seeking reimbursement for the alleged overpayment.
[17] In addition, Plaintiff received the $30,000 maximum due under the ICC provision of the policy.

the difference between the $100,032 she alleges was the cost of repair (less a $2,000 deductible)[18] and the $72,507 she says she received for such damage[19].

Initially, Plaintiff claims she was awarded $1,843 plus $461 in depreciation but she is unsure about receiving a check for $1,843 and says she does not know how to obtain the $461.

FEMA says that Plaintiff was issued a check for $1,843. It further says that Plaintiff will receive the additional payment of $461 in recoverable depreciation if she contacts her insurer and requests that amount. As to the requested supplemental payment for the full cost of repair to Plaintiff's home, FEMA argues that Plaintiff did not include any documentation with her waiver application and has failed to indicate whether she believes her insurer failed to pay for specific covered items or whether she simply disagrees with the amount of coverage provided by her insurer.

The Court has considered the Master's Report and, concludes *de novo*, both on the facts and the law, that it is in agreement with him.

The Master concluded that FEMA in fact did pay Plaintiff the $1,843 she was owed. As to Plaintiff's request for supplemental funds to cover the alleged cost of repair to her home, the Master found that Plaintiff failed to comply with her obligation under SFIP to submit full documentation supporting her claim for additional funds by identifying specific costs of repair entitled to coverage. The Court agrees with the Master's analysis and concludes, as did he, that FEMA's denial of Plaintiff's waiver claim was not arbitrary and capricious.[20]

---

[18] This figure does not account for $30,000 in costs that have already been paid under the ICC provision of Plaintiff's policy.

[19] The Master noted that Plaintiff omitted a payment of $1,843 in her calculation of what she received, but there also appears to be a discrepancy of approximately $64 between the amount Plaintiff claims she received and the amount FEMA claims she received, less the $1,843 payment. What accounts for the discrepancy is uncertain, but it does not affect the Court's ultimate finding.

[20] This finding is contingent on FEMA's payment of the $461 in recoverable depreciation.

A separate **ORDER** will be entered implementing these decisions.


August 3, 2011                                         /s/
                                              PETER J. MESSITTE
                                         UNITED STATES DISTRICT JUDGE