IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF MICHELLE PETRO

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Michelle Petro[1] pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 307 pages labeled FEMA-000001 to 000307.

---

[1] The waiver claim was filed by Michelle Petro. FEMA000001 to 000009. This claim has also been referred to as the claim of David Markham and this report deals with the claim of both individuals that are before the court as well as any related individuals as are discussed in footnote 1 of FEMA's Supplemental Memorandum of Law. Document 636-1.

I.  **Background**

Plaintiff's property located at 1191 Grove Avenue, Shady Side, Maryland, was insured directly by Standard Fire Insurance Company ("Standard Fire") in its capacity as a Write Your Own ("WYO") Program insurance company participating in the National Fire Insurance Program ("NFIP") under Standard Flood Insurance Policy ("SFIP") Number 6001370615. Plaintiff did not maintain any contents coverage under her SFIP.

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. Plaintiff reported her loss to Standard Fire, who assigned an independent adjuster to assist the insured with the loss pursuant to SFIP Article VII(J)(5), (7) and (8). The independent adjuster was Jim Hardy from J.E.J, Inc. See FEMA-00010. A separate independent adjuster, Nathan Smith from American Frontline Incorporated, was assigned to Plaintiff's Increased Costs of Compliance ("ICC") claim under Article III, Coverage D of the SFIP. See FEMA-000075.

Plaintiff submitted a one-page engineering report from E. G. Germanos to support her claim that the building was damaged to the point of having to be razed and rebuilt. See FEMA-00021. The WYO Carrier then hired John Garner from G&A Engineering to examine the building. See FEMA-000095 through FEMA-000124. He concluded that not all of the damages were caused by the flood at issue, that some of the damages to the pier and beam system pre-dated the flood, that some of the piers that were displaced or knocked over were not load bearing, and most importantly, that the building did not need to be demolished

and could be repaired. *Id.*

As a result of the inspections by Jim Hardy, Nathan Smith and John Garner, Plaintiff was paid $33,015.35 for the damages to her building under Coverage A of her SFIP, and an additional $29,482.64 under the Increased Cost of Compliance provision (Coverage D) of her SFIP. Plaintiff signed Proofs of Loss for these amounts and received the full amounts then claimed. *See* Doc. No. 304-2.[2]

Plaintiff did not submit an additional timely, signed and sworn Proof of Loss to support additional claim payments beyond the $33,015.35 for the damages to her building that were previously claimed by Plaintiff and paid by Standard Fire. *Id.*

Plaintiff did not request a review of her claim by the Hurricane Isabel Task Force ("Task Force"), but was provided notice of this review being made available to her. *Id.*

**II.   Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF MICHELLE PETRO'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." *See* FEMA-000001 through FEMA-0000037. The waiver application requested that

---

[2] This document is the Declaration of Scott Holmes who handled the matter for Standard and submitted the declaration earlier in this litigation.

FEMA compensate Plaintiff an additional $68,484.65. *See* FEMA-000005. FEMA denied the request in a letter dated October 28, 2008. See FEMA-000038 to 000039.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶14-23 of the Supplemental Declaration of Karen Christian for the Claim of Michelle Petro.Document 636-2.[3] It states:

> Plaintiff based this amount solely upon the two-page estimate provided to her by John Maurice Roberts, Inc. to construct a new home for $134,000.00. See FEMA-000019 through FEMA-000020. The estimate was based on a new home and not damage to her existing home. Plaintiff's shortfall was calculated by taking the $134,000.00 estimate to build a new upgraded home, subtracting ICC benefits of $30,000.00 (but Plaintiff was paid $29,482.64 in ICC benefits), and then asserting that she was entitled to receive her claimed policy limits of $102,000.00. See FEMA-000018. Plaintiff did <u>even less</u> to support her claim than those individuals relying upon the cost per square foot formula calculation.
> Plaintiff's "Shortfall Itemization" was based completely on the cost of her new upgraded home. *See* FEMA-000018 through FEMA-000020.
>
> Plaintiff's method of calculating her damages does not take into account any of the SFIP's coverage limits or exclusions.
>
> Plaintiff presented no evidence requiring her to demolish her home. To the contrary, Plaintiff actually secured estimates to elevate the existing house. See FEMA-000157 and FEMA-000175. Plaintiff's sole focus was on receiving compensation based on the cost of building a substantially improved structure.
>
> The SFIP is not a valued policy per SFIP Article II ("Definitions"), number 28. A valued policy pays an agreed-to

---

[3] Ms. Christian relied, in part, on the declaration filed in this case of Scott Holmes who was with the WYO carrier. See Document 344-2.

amount if the insured property is substantially damaged. The SFIP is a single-risk policy that only pays for direct physical loss by or from flood, and all that a substantial damage determination does is render the insured eligible for a maximum possible payment under Article III, Coverage D of the SFIP of $30,000.00 for Increased Cost of Compliance benefits.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000038 and FEMA-000039. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's claim is based on the cost of a new dwelling without regard to the actual loss caused by the flooding and includes code and material upgrades. In addition to only insuring against loss caused by or from flood, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's methods of calculating her shortfall makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application the Administrator stated:

> You claim your damages necessitated the demolition of your dwelling s a result of the flooding. To support the amount claimed, your attorney provided documentation for the cost associated with the replacement of a new structure.

> Your claim was originally reviewed by an independent adjuster and subsequently reviewed by an engineer hired by your Write Your Own Company, Travelers Insurance Company (Travelers). The engineer's findings of the additional damages resulted in the $27,373.51 supplemental payment issued by Travelers. You have received a total of $33,015.35 for flood related damages to the structure and $29,482.64 for the covered expenses incurred under your Increased Cost of Compliance (ICC) claim. The maximum amount of coverage under ICC is $30,000. You did not request a review of your claim by the Hurricane Isabel Task Force.
>
> Further, your waiver request resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. The Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original home, but instead based the claim solely on a two-page estimate to construct a new home.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation.

IV. **Plaintiff's Assertions**

In Plaintiff's Opposition (Document 677) at pages 9 to 13, Ms. Petro states the reasons why she believes that FEMA's determination on the waiver was arbitrary and capricious. Plaintiff first cites the Declaration of Karen

6

Christian (Document 636-2) and states that FEMA's rejection of the report from E.G. Germanos is wrong. Plaintiff states her belief that Ms. Christian statements are "patently untrue" and accuse her of "blatant lying and blatantly misleading the Court." Id. at page 9.

Plaintiff believes that FEMA and the WYO carrier, Standard Fire, should have accepted the Germanos report. Plaintiff further argues that the G & A Engineering Report obtained by Standard Fire can be fairly read to support her claim for replacement of the house. Plaintiff also points to the report from the Anne Arundel County Government which found the house to be "significantly damaged". Id at page 11. Plaintiff asserts that FEMA and specifically Ms. Christian have engaged in a "slanted interpretation" of the G & A Engineering Report especially as it pertains to foundational and structural issues. Plaintiff concludes that "FEMA and Standard (Travelers) did not like the claim Markham/Petro presented to them and they, well after the storm, went about creating and fabricating documentation to low-ball the claim."

Plaintiff does acknowledge a minor miscalculation of the amount received for the ICC claim. It was stated as $30,000, but they agree they received $29, 482.64. Id at page 13.

Plaintiffs seek the entry of summary judgment in their favor in the amount of $68,484.65. Id at page 50.

V. **Special Master's Analysis**[4]

Plaintiff's claim for waiver was originally based on the square footage formula derived from the cost of new construction. FEMA 000018. In this case the new home had the same square footage as the demolished home. This formula has however been repeatedly rejected by the District Court . See,e.g. Memorandum Opinion at to Group 3 Householdrs filed August 3, 2011. Document 693. In apparent recognition of this rejection,Plaintiff has now shifted her arguments in the opposition filed to FEMA's motion for summary judgment to attempt to raise other issues.

Plaintiff now claims, as the Special Master reads it, that FEMA and Standard (Travelers) were engaged in a conspiracy to deny this claim and ignore the evidence that Plaintiffs had submitted shortly after the flood in favor of other reports subsequently obtained. Plaintiff makes various claims of "blatant lying" and "blatantly misleading the Court" by Ms. Christian and FEMA which presumably would also extend to FEMA's counsel of record. Document 677 at page 9.

In the Special Master's view these assertions are overwrought, not supported by the evidence of record and detract from the purpose of the

---

[4] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

review of the waiver claim that is at issue. They are little more than bald allegations about the process of claim analysis and review of the waiver applications. These claims have been rejected to this point by the U.S. District Court.

There is no doubt that the report obtained by Plaintiff in September, 2003 was very supportive of her claim. The one page report was by E.S. Germanos, a professional engineer with Associated Designers, Inc. (FEMA 000021). The engineer concluded that the house would have to be demolished and rebuilt, but the report contained no detail nor supporting analysis. When the report was submitted to the adjuster he concluded that his own inspection of the property did not support the conclusions of the report and he recommended that Standard engage an engineering firm to do a full analysis. The narrative reports in the file do not show any conspiracy to deny the claim, but a recognition that the Germanos report although not in line with the adjuster analysis,would have to be evaluated and that the best way to do it was to hire an engineering firm to evaluate the property. See FEMA 000263 and 000270 to 000272. This was done and G &A Engineering Consultants provided a comprehensive report that on review does not appear to be one sided. FEMA 000022 to 000030[5]. This report concluded that not all of the damages were caused by the flood at issue, that some of the damages to the pier and beam system pre-dated

---

[5] The full G &A report is in the record at FEMA 000095 to 000124 which includes the drawings and photos which were attached to it.

the flood, that some of the piers that were displaced or knocked over were not load bearing, and most importantly, that the building did not need to be demolished and could be repaired. *Id.*

As Plaintiff herself notes, G &A did agree with some of the findings of Plaintiff's engineer, but disagreed with others. G & A found that that the damage could be repaired and set out what the repairs would entail. Comparing the Germanos report and the G &A side by side, it is hard to fault FEMA for giving more weight to the very detailed G &A report since it is documented in great detail while the Germanos report is simply conclusions with no analysis. If detail behind the Germanos report does exist, there is no explanation as to why it was not submitted with the waiver application in 2008.

As FEMA notes in their Reply (Document 688) at page 6, Plaintiff's January 14, 2004 Proof of Loss was based on the adjuster's review of the interior damage and the repairs recommended by G &A. In addition, they were paid $29,482.64 on their ICC claim. These claims were paid in full on these submissions and as FEMA notes this Plaintiff although possessing the engineering report days after the flood surprisingly did not seek any review by the Hurricane Isabel Task Force which was available to her at no cost and made no further claim until the waiver application was filed in 2008 as a result of this court's ruling.

Plaintiffs' objections appear to be that FEMA and Standard (Traveler's) chose to accept the engineering report they obtained rather than the report that Plaintiff presented. There is no indication that the G & A engineering firm was in any way not conducting a professional and good faith analysis. To the extent that there were conflicting evidence and opinions, FEMA was entitled to evaluate the reports and accept those reports or portions of reports it found most persuasive and in accord with the requirements of the SFIP. There is no indication of any personal animus to the Plaintiff or of any conspiracy to "low ball" the adjustment. A review of the record including the full file of the adjusters that has been presented instead appear to support an attempt to adjust the claim in a fair and balanced fashion.

Plaintiffs also rely on the significant damage report submitted by Anne Arundel County's Department of Inspections and Permits, FEMA 000275 to 000276, which was a necessary pre-condition for the ICC payment. The ICC payment under Part D was made based on this report and, as has been stated many times in the review of these cases, these letters do not establish that Part A claims must be paid. As FEMA notes, the Anne Arundel County estimate of damage was $45,888.41 (FEMA-000033) which is significantly less than Plaintiffs' current claim for policy limits of $102,000.00. FEMA Reply at page 6.

## VI.  Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.


  August 4 , 2011                                                    /S/
     Date                                             Dennis M. Sweeney
                                                         Special Master