# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF ANTHONY MARZOCCHI

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Anthony Marzocchi pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 250 pages labeled FEMA-000001 to 000250.

**I. Background**

Plaintiff's property located at 9200 North Point Road, Fort Howard, Maryland, was insured by State Farm Fire and Casualty Company ("State Farm") under Policy Number 90-20-9019-1, with a coverage limit of $165,000.00 for his building with a $1,000.00 deductible. *See* FEMA-000005. Plaintiff did not maintain any contents coverage. *Id.*

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. *See* DeWitt Declaration, Attachment A-2 at ¶ 48.

On October 22, 2003, State Farm paid Plaintiff $50,214.64. *See* Exhibit A-2 at ¶ 50. On December 19, 2003, State Farm paid Plaintiff $3,361.17. *See* Exhibit A-2 at ¶ 52. On June 21, 2004, State Farm paid Plaintiff a further $1,787.41. *See* Exhibit A-2 at ¶ 54. Plaintiff concedes he was compensated a total of $55,363.22 for his structure and $30,000.00 under the Increased Cost of Compliance ("ICC") provision of his policy. *See* FEMA-000005.

Plaintiff provided a contract from Nicely Contracting to perform all the repairs in accordance with the State Farm estimate for $51,924.59. *See* FEMA-000124.

**II. Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF ANTHONY MARZOCCHI'S INDIVIDUAL

APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." The waiver application requested that FEMA compensate Plaintiff an additional $108,636.78. *See* FEMA-000005. FEMA denied the request in a letter dated October 28, 2008. See FEMA-000113 to 000114.

**III.   Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶10-18 of the Supplemental Declaration of Karen Christian for the Claim of Anthony Marzocchi.[1] Document 638-2. It states:

> Plaintiff based this amount [$108,638.78] upon his assertion that it cost him $296,500.00, not inclusive of personal labor, to construct a new substantially improved and larger home. *Id.* Plaintiff then deducted the Increased Cost of Compliance payment he received and divided the square footage of the new upgraded home by the remaining $266,500.00 to arrive at $88.95 per square foot to construct the new upgraded home. *See* FEMA-000036. He then multiplied the cost per square foot of the new upgraded home by the square footage of his old home (2760 square feet) to arrive at a cost to restore the old home of $245,502.00. *See* FEMA-000037. Plaintiff concluded this amount exceeded his policy limit of $165,000.00. *Id.* Plaintiff then deducted State Farm's payments totaling $55,363.22 and his $1,000.00 deductible from his policy limit to arrive at a shortfall of $108,636.78. *Id.*
>
> Plaintiff stated on February 25, 2008, he was ". . . gathering supporting documentation showing costs to rebuild and intends to submit in timely fashion." *See* FEMA-000005. Almost five years after the storm, Plaintiff did not have documentation to support his claim and to date, Plaintiff still has not provided the promised supporting documentation.
>
> Plaintiff's method of calculating his damages by taking the square footage of his original structure and multiplying it by the

---

[1] Ms. Christian also relied on the Declaration of Patricia Dewitt of State Farm already of record in this litigation at Document 294-3 which discusses the claim of this Plaintiff as well as others.

cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions. Plaintiff's "itemization" did not actually include any itemization that could be used for a meaningful comparison to the adjuster's estimate.

Plaintiff presented no evidence challenging the repair estimates provided by State Farm. To the contrary, Plaintiff provided an estimate from Nicely Contracting to perform the necessary repairs in accordance with State Farm's estimate. Plaintiff provides no explanation why Nicely Contracting did not perform the repairs or why the repairs could not be completed.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000113 and FEMA-000114. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's supplemental claim is based on the square footage cost of a new upgraded dwelling without regard to the actual physical loss caused by or from the flooding. In addition to only insuring against physical loss by or from flooding, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality, which Plaintiff's formula disregards. *See* Exhibit A at ¶¶ 16 and 17. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

4

> ... you claim your damages exceed the flood damages determined by your carrier, State Farm Fire and Casualty (State Farm) as a result of the flooding. You did not submit a request to the Hurricane Isabel Task Force to review your claim to determine if you were owed an additional payment. However, a comprehensive review of your file was conducted by a FEMA Insurance Examiner and the findings were that the information provided by your attorney does not support a supplemental payment. State Farm issued payments to you totaling $55,363.22 for the covered flood damage to the structure and $30,000, the maximum amount of coverage available, for your Increased Cost of Compliance (ICC) claim. Although you demolished the original home and built a new structure, the additional expenses you have incurred during this process are not covered as they have exceeded the maximum amount of coverage under ICC. The Insurance Examiner found no basis to set aside the original findings

*Id.*

**Plaintiff failed to demonstrate he met any of the criteria used to determine whether to grant a waiver.** First, he failed to demonstrate any additional damages he sought were actually covered by his SFIP. Second, he stated he would provide documentation to support his claim when it became available and never did. Finally, he took a formulaic approach based on the cost per square foot of a substantially improved home to calculate his loss that did not take into account the coverages and exclusions found within his SFIP.
Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

IV. **Plaintiffs' Assertions**

At this juncture, Plaintiff argues that the the administrative record and the affidavit of Ms. Christian demonstrate "a prime example of the high pressure, low-ball tactics that FEMA and State Farm have used to avoid full payment of coverage" to Plaintiff. Document 677 at page 14. Plaintiff argues that he could not afford to have the work needed done for the amount of money paid him under the claim. Id, Plaintiff argues that the Nicely Contracting proposal of $171,195.00 should have been accepted by FEMA in the waiver application and that it provides sufficient evidence to counter the State Farm analysis which FEMA relies upon. Plaintiff points to the letters and determinations on substantial damage from the Baltimore County government and 46 pages of documents submitted at FEMA 000036 to 000081 as support that his claim should have been granted in full for the total amount of coverage. Id at page 15. Plaintiff argues that while the square footage of the damaged home was 2,760 the new home was only slightly larger at 2,996 and that the cost per square foot construction of $88.95 was well within "the norm for construction costs per square foot for the area..." Id at page 16.

## V. Special Master's Analysis[2]

As FEMA notes in its reply at page 8, this claim is one where the waiver application was premised entirely on the argument that the square foot formula for new construction should be applied. This argument has been rejected not only by FEMA, but also by the Special Master and the U.S. District Court in the February 17, 2011 opinion and the July 1, 2011 memorandum opinion. The Court has again rejected this argument in a memorandum filed August 3, 2011 on the Group 3 Householders. Document 693.

As is demonstrated in Part III above, FEMA's analysis of why it rejected the formulaic approach for this Plaintiff is detailed and comprehensive. There is no need to go over these arguments again in any detail since Plaintiff's contention has been repeatedly rejected in this litigation.

Plaintiff in their opposition have now tried to recast his claim to suggest that FEMA did not fairly evaluate the evidence and that it applied pressure tactics to the Plaintiff to have him accept State Farm and FEMA's determinations. There is no evidence of a credible nature in this record to support such allegations and in any event these claims were not made in

---

[2] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

the waiver application that is the sole subject of this review. There is no indication that the waiver denial in this case was either arbitrary, capricious or an abuse of discretion.

## VI.     Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
| _August 4 , 2011_ | _____/S/_ |
| Date | Dennis M. Sweeney |
| | Special Master |