# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF MONICA McCALL

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Monica McCall pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 147 pages labeled FEMA-000001 to 000147.

**I.      Background**

Plaintiff's property located at 932 Seneca Park Road, Middle River, Maryland, was insured directly by FEMA under Policy Number 3000204561 with

a coverage limit of $172,700.00 for her building, subject to a $1,000.00 deductible. *See* FEMA-000005. Plaintiff did not maintain any contents coverage. *Id.*

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. *See* FEMA-000200. Plaintiff reported her loss to FEMA and on September 25, 2003, an independent adjuster inspected the loss. *Id.*

On October 28, 2003, Plaintiff requested a $5,000.00 advance payment. *See* FEMA-000252. On October 29, 2003, FEMA issued a check for $5,000.00. *See* FEMA-000276.

On November 21, 2003, G & A Engineering Consultants, LLC completed a detailed inspection of Plaintiff's home and issued its Engineering Report. *See* FEMA-000123 through FEMA-000137. The engineer found that the structure had been deteriorating for a long time, and that there was evidence of past foundation movement. *See* FEMA-000125. The engineer also concluded that the damage to the roof was from wind. *Id.* There was also evidence of significant past repair work to the foundation, with jacks holding up portions of the home. *See* FEMA-000126. The engineer concluded the home itself was not in bad condition and could be repaired. *See* FEMA-000127 and FEMA-000128.

On December 27, 2003, the adjuster completed his final report and noted that two inches of water entered Plaintiff's home. *Id.* In addition, he reviewed the report from G & A Engineering Consultants discussed above. *See* FEMA-000200. He concluded Plaintiff should be paid $43,438.39, less her

$1,000.00 deductible, and an additional $11,128.59 for recoverable depreciation, if eligible. *See* FEMA-000285.

On December 31, 2003, in accordance with the adjuster's recommendation, Plaintiff submitted a Proof of Loss for $42,438.39, and an undated Statement as to Full Cost of Repair or Replacement for $11,128.59 for compensation of the recoverable depreciation portion of her loss. *See* FEMA-000050 through FEMA-000052.

On January 28, 2004, FEMA issued a partial denial on Plaintiff's claim. *See* FEMA-000211. The overhead and profit was deducted from the adjuster's estimate because Plaintiff's Overhead and Profit Affidavit (*See* FEMA-000205) was incorrectly calculated (*See* FEMA-000214). Plaintiff's claim was reduced to $36,625.03, and her recoverable depreciation was reduced to $10,849.93. *See* FEMA-000211. She was notified that since a portion of her claim was rejected, she had one year from the date of the denial to file suit. *Id.* Plaintiff was paid the reduced amount ($36,625.03) on the actual cash value of the loss, but inadvertently paid the original replacement value cost of $11,128.59. *See* FEMA-000053 and FEMA-000055.

Plaintiff requested review by the Hurricane Isabel Task Force ("Task Force") claiming she had unpaid foundation damage based on two engineers' opinions. *See* FEMA-000014.

On August 24, 2004, the Task Force completed its review. *See* FEMA-000163. The Task Force made some adjustments to the claim allowing an additional $2,926.35. *Id.* When the Task Force informed Plaintiff of their

determination, she stated she agreed and understood.  *Id.*  On September 11, 2004, Plaintiff submitted a Proof of Loss for the supplemental amount the Task Force approved.  *See* FEMA-000051.  On January 28, 2004, FEMA paid Plaintiff in full that POL.  *See* FEMA-000058.

Plaintiff was paid a total of $55,679.97 for the damage to her structure ($5,000.00, $36,625.03, $11,128.59, and $2,926.35) plus $26,095.00 under the Increased Cost of Compliance ("ICC") provision of her SFIP.  *See* FEMA-000005.

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA.  *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007.  On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF MONICA McCALL'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS."  The waiver application simply requested that FEMA compensate Plaintiff an additional $67,491.77.  *See* FEMA-000005.  FEMA denied the request in an undated letter.  See FEMA-000067 to 000068.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶16-26 of the Supplemental Declaration of Karen Christian for the Claim of Monica McCall.  Document No. 639-2.[1]  It states:

---

[1] Ms. Christian also relies on the declaration of Suzanne Woods which was filed earlier in this case explaining the reasons for FEMA's actions. . See Document No. 298-2.

Plaintiff based her loss on a formula, which was based on her assertion that it cost her $200,450.00 to construct a new substantially improved and larger home, deducted the Increased Cost of Compliance payment she received, and divided that number by the square footage of the new upgraded home to arrive at a cost of $78.54 per square foot. *See* FEMA-000068. She then multiplied the cost per square foot of the new home by the square footage of her old home (1581 square feet) to arrive at a cost to restore the old home of $124,171.74. *Id.* Plaintiff then deducted the NFIP payments totaling $55,679.97 and applied her $1,000.00 deductible to arrive at a shortfall of $67,491.77. *Id.*

Plaintiff's formulaic "Shortfall Itemization" was based completely on the cost of her new upgraded home. *Id.* Plaintiff's "itemization" did not actually include any itemization that could be used for a meaningful comparison to the adjuster's estimate. *Id.*

Plaintiff's method of calculating her damages by taking the square footage of her original structure and multiplying it by the cost per square foot of the new upgraded structure does not take into account any of the SFIP's coverage limits or exclusions.

Plaintiff presented no evidence challenging the repair estimates provided by FEMA and the Task Force. Plaintiff's sole focus was on receiving compensation based on the cost of building a substantially improved structure.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000148 and FEMA-000149. Specific to this case, the Administrator considered the following whether:

1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's formulaic shortfall calculation fails to account for the fact that only two inches of water entered her structure and that her home was built in July of 1965 (*See* FEMA-000166). Plaintiff's supplemental claim is based on the square footage cost of a new upgraded dwelling without regard to the actual loss caused by the flooding and includes code and material upgrades. In addition to only insuring against loss caused by or from flood, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality. *See* Exhibit A at ¶¶ 16 and 17. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's formula makes it impossible to separate out these expenses.

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your actual building damages exceed the amount allowed by the National Flood Insurance Program Servicing Agent (NFIPSA). Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. A supplemental payment in the amount of $2,926.35 was recommended by the Task Force for an increase in the cleaning allowance. You also received $26,095 for demolition benefits under your Increased Cost of Compliance (ICC) claim. The supplemental claim documents show that your original dwelling at 1581 square feet was replaced with a larger structure at 2,200 square feet. Costs attributed to the increased square footage are considered an upgrade which is not covered under the SFIP. You have been paid for all covered damages as a result of the flood event including a portion of the foundation after the inspection of the dwelling by a structural engineer.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

>Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver. First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation of uncompensated damages caused directly by flooding to her original structure, but instead took a formulaic approach based on the cost per square foot of a substantially improved home to calculate her loss.
>
>Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

IV. **Plaintiffs' Assertions**

In her Opposition (Document 677 at pages 16 to 20), Plaintiff raises several contentions which do not appear to be directly stated in the waiver application.

Plaintiff faults Bellmon Adjusters, Inc for using what she contends is the "controversial" Marshall and Swift residential estimating program and disagrees with the values found by the application of that program. Plaintiff also asserts that the report she obtained from McCon Engineering, Inc should have been given more weight since it was "clear as to the cause, effect and damage sustained by Ms. McCall's home." Id at page 18. Plaintiff believes that the estimate submitted on her behalf by William McCubbin Community Builders for $117,820 should have been accepted as the basis for payment. Plaintiff faults Mr. Charles Mikell, the

General Adjuster and NFIP Servicing Agent for not accepting the reports she supplied but instead hiring an engineer from a firm, G &A Engineering Consultants, LLC from Dallas, Texas. Plaintiff believes this was an effort by FEMA to "find a way to lowball payment to Ms McCall". Id at page 19.

Plaintiff made the decision to build a new structure and contracted with C & D Sherman Homes. She now seeks $67,491.77 in her motion for summary judgment. Id at page 50.

V.  **Special Master's Analysis**[2]

As FEMA correctly notes it its reply(Document 688), the Plaintiff's waiver application was based entirely on the square footage formula based on the cost of new construction which Plaintiff asserts should set the amount paid to her when it is applied to the square footage of the house that is replaced. This formula has been repeatedly rejected by FEMA, the Special Master, and the court in its memorandum opinions. See,e.g. Memorandum Opinion on Group 3 Householders, Document No. 693

---

[2] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

(August 3, 2011). As is demonstrated in Part III above, FEMA has explained in Plaintiff's denial letter and in the affidavit filed with this court why Plaintiff's claim can not be granted. Little more needs to be said.

Plaintiff has attempted in her opposition to recast the claim, now suggesting that it was not fair for FEMA to seek out another engineering opinion rather than accepting the one Plaintiff obtained. Plaintiff sees this as an attempt to "low ball" claimants and relies on the fact that the firm that performed the review is from Texas. The report done however is signed by a Maryland professional engineer and it appears quite comprehensive and detailed. FEMA 000123 to 000137. It is mere speculation by Plaintiff to suggest that there is anything irregular about the process followed. It is FEMA's province to decide what evidence it needs to evaluate a claim and the fact that it was not satisfied to rely solely on the Plaintiff's engineering report does not demonstrate that the denial of the waiver was arbitrary or capricious or an abuse of discretion.

Likewise, Plaintiff's suggestions that Bellmon Adjusters, Inc.'s use of the Marshall and Swift estimating program is not appropriate is an argument that has also been rejected previously in other cases that have been reviewed since the charge remains only an accusation with no expert analysis or proof to support it.

## VI. Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

| | |
|---|---|
|  August 4 , 2011 |      /S/ |
| Date | Dennis M. Sweeney |
| | Special Master |