# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF JOANNE McKENZIE

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Joanne McKenzie pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 183 pages labeled FEMA-000001 to 000183.

I.     Background

Plaintiff's property located at 2800 7th Street, Baltimore, Maryland was insured by Harleysville under policy number 0157643502 with a coverage limit of

$85,000.00 for her building with a $5,000.00 deductible. *See* FEMA-000005 and FEMA-000109. Plaintiff did not maintain any contents coverage. *Id.*

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. *See* FEMA-000141. Plaintiff reported her loss to FEMA and on September 20, 2003, an independent adjuster inspected the loss. *Id.* and FEMA-000109.

On September 24, 2003, Plaintiff was issued a $10,000.00 advance payment. *See* FEMA-000120 and FEMA-000121.

On October 31, 2003, the independent adjuster completed his estimate on Plaintiff's loss and issued his report. *See* FEMA-000141 through FEMA-000155. The report noted that the building was constructed in 1984. *See* FEMA-000141. The exterior water height was measured at 42 inches and the interior water height was measured at six inches. *Id.*

The Independent Adjuster concluded Plaintiff should be paid $38,506.99 in actual cash value after application of the $5,000.00 deductible and an additional $5,894.27 for recoverable depreciation, if eligible. *See* FEMA-000155. Plaintiff submitted an affidavit to receive overhead and profit on her claim, which totaled $23,004.72. *Id.* and FEMA-000160. Plaintiff stated that a licensed General Contractor would complete the repairs to receive payment. *See* FEMA-000160. If the work was not done by a licensed General Contractor, Plaintiff agreed to reimburse Harleysville. *Id.*

On November 15, 2003, Plaintiff submitted a Proof of Loss for the

$38,506.99 for the actual cash value of her loss and a Statement as to Full Cost of Repair or Replacement in the amount of $5,894.27 for the recoverable deprecation portion of her claim.  *See* FEMA-000130 and FEMA-000132.

On December 8, 2003, Plaintiff was paid $28,506.99 in addition to the previously paid $10,000.00 advance referenced above.  *See* FEMA-000116.  On April 29, 2004, Plaintiff was paid the $5,894.27 in recoverable depreciation.  *See* FEMA-000118.

Plaintiff did not request a review by the Hurricane Isabel Task Force.  *See* FEMA-000104.

## II.    Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA.  *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007.  On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF JOANNE MCKENZIE'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS."  The waiver application requested that FEMA compensate Plaintiff an additional $41,493.01.  *See* FEMA-000005.  FEMA denied the request in a letter dated July 31, 2008.  See FEMA-000103 to 000104.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶14-23 of the Supplemental Declaration of Karen Christian for the Claim of Joanne McKenzie[1] Document 640-2. It states:

> Plaintiff's shortfall was based on her assertion that it cost her $35,256.00 in materials and $50,000.00 in labor to rebuild her former structure. *Id.* Plaintiff deducted her claimed payment of $38,506.99 from the total cost to rebuild to arrive at her claimed shortfall amount.
>
> First, Plaintiff failed to include the payment of $5,894.27 in her calculation, which reduces the claimed shortfall by that amount. Plaintiff was actually paid a total of $44,401.26 ($10,000.00, $28,506.99 and $5,894.27).
>
> Second, Plaintiff now claims she repaired the home herself with the help of thirty eight family members, friends and co-workers. As noted above, Plaintiff submitted an affidavit certifying the use of a licensed General Contractor to receive Overhead and Profit. *See* FEMA-000160. Plaintiff agreed to reimburse Harleysville the profit amount in the event she did not use a licensed General Contractor. There is no evidence in the file that the services of Norman Anderson were used for the reconstruction of her home. Harleysville can require Plaintiff reimburse it for the overhead and profit payment it issued. *See* FEMA-000155.
>
> Third, Plaintiff provided a number of invoices, and receipts without explaining how the claimed expenses related to any direct physical loss by or from the six inches of floodwater that entered the interior of her structure. Further, the documentation submitted included repairs, which would be considered improvements or upgrades, which are not covered under the SFIP. *See* FEMA-000104.

---

[1] Ms. Christian also relied on the Declaration filed by Kim Berger of Harleysville which is of record in this case. Document 312-2.

Fourth, Plaintiff seeks $50,000.00 for her "Estimated labor calculation of 38 workers over 5 months." *See* FEMA-000005 and FEMA-000028. There is no precision in this so called "estimate." There is simply no explanation or itemization for this extraordinary labor expense. Plaintiff is not entitled to compensation for this labor since labor, including overhead and profit, was included in the independent adjuster's estimate.

Finally, Plaintiff was paid a total of $44,401.26 based on actual physical loss caused by or from flood as detailed in the independent adjuster's final report. Plaintiff's shortfall calculation lacks any explanation of how this amount is insufficient based on her SFIP.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000103 and FEMA-000104. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your repair damages exceeded the payment received as a result of the flooding. To support the amount claimed, you provided documentation and estimates for the repair of your home. The bids and invoices you submitted for improvements and upgrades to the structure are not covered by the SFIP. Your claim was originally reviewed by an independent adjuster, but there is not a record that the Hurricane Isabel Task Force

> was ever involved in the claim review. Also, there is no indication that you provided your Write Your Own Company, Harleysville Insurance with supplemental claim documents. All reviews of your claim conclude the carrier's estimate of damage was accurate
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff's waiver application does not meet the criteria for approval.** First, she failed to demonstrate any additional damages she sought were actually covered by her SFIP. Second, she did not submit detailed line-item documentation supporting the particular additional amounts being sought were for covered damages, but instead submitted a collection of unexplained invoices, estimates and receipts along with an "estimated" claim of $50,000.00 for labor performed by friends, family and co-workers.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation for.

IV. **Plaintiffs' Assertions**

Plaintiff in her Opposition (Document 677) at page 24 reduced her shortfall calculation to $29, 706.73 agreeing with FEMA that certain items should not have been included. Plaintiff argues that the house was rebuilt with the help of 38 family, friends and co-workers who volunteered their time, and she claims that the value of their time which she estimates at $50,000 should be recognized by FEMA. Id at 24. Plaintiff believes that it

was not appropriate for FEMA to question the overhead and profit affidavit that stated she was using a licensed general contractor simply because the contractor was a family member and she was using other family, friends and co-workers to actually do the work. Plaintiff also believes that she provided sufficient invoices and receipts to support her claim and that they were sufficiently tied to the SFIP requirements. Plaintiff claims that it "should have been abundantly obvious to anyone reviewing Ms. McKenzie's claim that, if her materials were $35,992.62 and she was only paid $44, 401.26, she would be left with roughly $8,400.00 available to pay contractors." Plaintiff believes that since the work required for contracting was $50,882 based on her calculations that she should be compensated accordingly.

V.  **Special Master's Analysis**[2]

In the denial of the waiver claim, FEMA explained why it denied the request for labor costs for Plaintiff's family, friends and co-workers who it is alleged provided labor for rebuilding the home.

FEMA states:

"Plaintiff seeks $50,000.00 for her "Estimated labor calculation of 38 workers over 5 months."  See FEMA-000005 and FEMA-000028.  There is no precision in this so called "estimate."  There is simply no explanation or itemization for this extraordinary labor expense.  Plaintiff is not entitled to compensation for this labor since labor, including overhead and profit, was included in the independent adjuster's estimate.

Plaintiff in its opposition for the first time sets out a method of calculation based on an estimated number of hours worked per week and calculating the wages at the then prevailing minimum wage.  FEMA still rejects the calculations because it fails to explain "what work was actually performed, how the work was performed, how the work was attributable to a direct loss by or from the flood and why it was only an "estimate".  FEMA Reply(Document 688) at page 11.  The Special Master agrees with FEMA that the effort in the waiver application to claim $50,000 for labor was insufficient and it was not error for FEMA to refuse to accept this claim.  Plaintiff's documentation of this claim was non existent in the

---

[2] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

waiver application. Plaintiff has now suggested that an average number of hours be used for the 38 people involved and the wages be pegged at the minimum wage. These are new arguments and were not made in the waiver application and even if they had, it would not have been error for FEMA to refuse to accept these vague and unsubstantiated representations.

As to Plaintiff's claims for overhead and profit, these claims are refuted by FEMA's Reply (Document No.688) which states:

Third, Plaintiff argues FEMA improperly denied her waiver application because her claim for overhead and profit was for work performed by family, friends and co-workers and not a licensed general contractor. Id. at 22 and 23. Plaintiff claims she did use a licensed general contractor, Norman Anderson, to perform reconstruction work at her home and that he was a member of Plaintiff's friends and family who assisted her in rebuilding her home. Id. According to Plaintiff, much of the work performed by Plaintiff and her family was performed under Mr. Anderson's guidance. Id. This is another new argument that was not presented in Plaintiff's waiver application that should be disregarded.
Nevertheless, Plaintiff is not entitled to overhead and profit for work done by friends and family even if performed under the guidance of a family member or friend who happens to be a licensed general contractor. "Overhead and profit represents the normal industry mark-up for using a general contractor. FEMA allows for a 10% increase to the claim when a home repair will require three or more trades, e.g., plumber, roofer, and electrician." Dwyer v. Fidelity National Property and Casualty Insurance Company, 2011 U.S. App. LEXIS 10038 at *3 (5th Cir. 2011). Moreover, the NFIP Adjuster Claims Manual, (Change 1 - January 1, 2004) provides that "overhead and profit is warranted only if a general contractor has been hired to make repairs." (emphasis added). In this case, Plaintiff's failure to specifically use a licensed general contractor warrants a denial of her claim for overhead and profit. Even if Mr. Anderson provided "guidance" on the reconstruction work, Plaintiff provided no explanation on how much he billed Plaintiff or if he anticipated payment for his work. Further, Plaintiff provided no explanation of exactly what work he assisted with, or

9

how he oversaw the repairs that would enable FEMA to determine if his work was covered under the SFIP.

Id at pages 11 and 12. The Special Master finds this analysis persuasive and adopts it.

As to other issues raised, the Special Master finds that in Part III above, FEMA adequately explains why it denied the waiver claim filed by Plaintiff. The Special Master finds that the denial was neither arbitrary or capricious nor an abuse of discretion.

## VI.  Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|   August 4 , 2011   |                    /S/         |
|---------------------|--------------------------------|
|        Date         | Dennis M. Sweeney              |
|                     | Special Master                 |