IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **THOMAS L. MOFFETT, II, ET AL.** | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 8:05-CV-01547 |
| v. | ) | |
| | ) | |
| **COMPUTER SCIENCES CORPORATION, ET AL.** | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPORT AND RECOMMENDATION CONCERNING
## <u>WAIVER CLAIM OF THOMAS MOFFETT</u>

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Thomas Moffett pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 448 pages labeled FEMA-000001 to 000448.

**I.     Background**

Plaintiff's property located at 40549 Old Berton Beach Road, Leonardtown, Maryland, was insured by Nationwide Mutual Fire Insurance Company

("Nationwide") under Policy Number 5000737576, with a coverage limit of $163,400.00 on his structure and $55,100.00 on his contents, each subject to a $500.00 deductible. See FEMA-000346. The policy was effective August 19, 2003 through August 19, 2004. *Id.*

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiff's home. *See* FEMA-000331. An independent adjuster from American Frontline, Inc., was assigned to adjust the loss. FEMA-000240.

On September 29, 2003, Plaintiff requested a $10,000.00 advance payment on his claim. *See* FEMA-000243. On October 7, 2003, Nationwide issued the requested $10,000.00 advance payment. *See* FEMA-000285.

On January 9, 2004, the independent adjuster completed his estimate on Plaintiff's loss and issued his report. *See* FEMA-000297 through FEMA-000299 and FEMA-000409 through FEMA-000423. The report noted that the building was constructed in 1968. *See* FEMA-000297. The exterior water height was measured at 43 inches and the interior water height was measured at 11 inches and up to 43 inches in the attached garage. Id.

The independent adjuster concluded Plaintiff should be paid $60,586.32 in actual cash value for the structure damage after application of the $500.00 deductible, and an additional $6,927.74 for recoverable depreciation, if eligible. See FEMA-000409. In addition, the independent adjuster concluded Plaintiff's contents loss was $27,677.96 after application of the $500.00 deductible. *See* FEMA-000423. Accordingly, Plaintiff was provided a Proof of Loss for $88,264.28,

which he signed on January 13, 2004. *See* FEMA-000028. In addition, Plaintiff was provided a Statement as to Full Cost of Repair or Replacement for the $6,927.74, which he signed on January 13, 2004. *See* FEMA-000030.

In addition to the $10,000.00 advance, Nationwide issued the following payments to Plaintiff: $27,677.96 for Plaintiff's contents claim on February 3, 2004 (*See* FEMA-000281), $48,586.32 for Plaintiff's structure claim on February 3, 2004 (*See* FEMA-000284), $1,623.00 for Plaintiff's structure claim on March 11, 2004 (*See* FEMA-000283), and $6,927.74 for the recoverable depreciation portion of Plaintiff's claim on June 30, 2004 (*See* FEMA-000031).

Plaintiff was paid a total of $94,815.02. The difference between the amount claimed by Plaintiff on his timely Proof of Loss and the amount paid by Nationwide was $377.00 ($94,815.02 minus ($88,264.28 for the structure plus $6,927.74 recoverable depreciation)). Plaintiff's property was not properly rated, which resulted in Plaintiff owing Nationwide additional premiums. *See* FEMA-000327. $377.00 was deducted from the payments to Plaintiff to account for the premium shortage. *Id.* and FEMA-000282.

On February 11, 2004, Nationwide acknowledged Plaintiff's intent to file an Increased Cost of Compliance ("ICC") claim and the receipt of a Substantial Damage letter submitted on Plaintiff's behalf by the Department of Land Use and Growth Management of St. Mary's County. *See* FEMA-000019. Initially, it was determined that Plaintiff's home was located in a Zone B and ineligible for any ICC compensation. *Id.*

On February 24, 2004, Plaintiff received a letter demonstrating that the Zone determination was in error and that he *was* eligible for ICC compensation. *See* FEMA-000110. On January 11, 2005, the independent adjuster issued a report noting that Plaintiff requested ICC compensation, but that Plaintiff had indicated he was not prepared to begin his ICC claim. *See* FEMA-000331. On September 10, 2005, the adjuster sent a letter to Plaintiff advising him that if he wanted to pursue his ICC claim, he was going to have to provide the required documentation and that he had two years from the date of loss to complete the work. *See* American Frontline, Inc., letter dated September 10, 2005, Doc. No. 291-7.

On March 10, 2006, Nationwide issued a letter to Plaintiff advising that his ICC claim had been open in excess of two years, and that under Section III(D)(5)(e), Plaintiff only had two years to complete the Increased Cost of Compliance measures. *See* FEMA-000027. Nationwide thereupon closed Plaintiff's ICC claim. *Id.* Plaintiff did not pursue the ICC claim, and he never submitted a Proof of Loss for payment under that provision of his SFIP. *See* FEMA-000120.

Plaintiff requested a review of his claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000186. On July 12, 2004, the Task Force completed its review of Plaintiff's claim. *See* FEMA-000184. The Task Force allowed for a supplemental claim amount of $12,390.01, and allowing additional compensation for floor joists, wall sheathing, sub-flooring, wall paneling and an exterior door. *Id.* Plaintiff was not satisfied. *Id.* Plaintiff never submitted the Proof of Loss that was

4

provided by the Task Force and did not receive this additional payment of $12,390.01. *See* FEMA-000120.

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF THOMAS L. MOFFETT, II'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." The waiver application requested that FEMA compensate Plaintiff an additional $125,762.94. *See* FEMA-000005. FEMA denied the request in a letter dated August 18, 2008. See FEMA-000080 to 000081.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶17-25 of the Supplemental Declaration of Karen Christian for the Claim of Thomas Moffett. Document 641-2. It states:

> Plaintiff's shortfall calculation is utterly unsound. The "Proposal" from Lincoln Contractors, Inc. includes, at a minimum, $32,500.00 (Demolition) in Increased Cost of Compliance expenses, which has a policy limit of $30,000.00.[1] *See* FEMA-00068. The "Proposal" is not sufficiently detailed to determine if any other Increased Cost of Compliance expenses are included. Plaintiff also made a significant mathematical error by deducting the payments from Nationwide totaling $67,137.06 plus his $500.00 deductible from the $214,500.00 to arrive at a shortfall of $95,762.94, but then adding an additional $30,000.00 for the Increased Cost of Compliance expenses that were already included

---

[1] Increased Cost of Compliance as defined under 44 C.F.R. § 61 App. A(1) at Art. III(D)(1) are activities such as elevation, floodproofing, relocation or demolition (or any combination of these activities). The policy limit for Increased Cost of Compliance activities is $30,000.00

5

in the $214,500.00. *See* FEMA-000067. This error results[in] a duplication of the Increased Cost of Compliance expense and an extra $30,000.00 included in the shortfall.

Further, Plaintiff's inclusion of any Increased Cost of Compliance compensation in his shortfall is improper because he never followed up on or submitted a proper Proof of Loss for this type of compensation. *See* FEMA-000331 and FEMA-000120.

The remainder of Plaintiff's shortfall calculation is based on a proposal from Lincoln Contractors to demolish his home and rebuild it at a cost of $214,500.00. Plaintiff was compensated for direct physical loss caused by or from flood with application of the proper coverages and exclusions of the SFIP. Plaintiff's shortfall disregards the actual damage caused by the flood and is based solely on building a new upgraded home. Plaintiff's shortfall calculation lacks any explanation of how the compensation provided by Nationwide was insufficient to repair his original structure under the terms of his SFIP.

Of note, Plaintiff provided a repair estimate from the same contractor totaling $90,678.75, which is substantially less than the reconstruction estimate of $214,500.00. *See* FEMA-000258 and FEMA-000259. The estimate was not sufficiently detailed to conduct a side by side comparison with the independent adjuster's detailed estimate and nearly 2/3 of the estimate was labor costs ($59,700.00 for labor and $30,978.75 for materials). Nevertheless, it demonstrates Plaintiff's home was repairable.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000118 and FEMA-000119. Specific to this case, the Administrator considered the following whether:

1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and

3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

6

*Id.*

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your flood damages necessitated the demolition of your dwelling and are requesting payment of the full policy limits of your building coverage. You did not pursue a claim for Increased Cost of Compliance coverage with your Write Your Own Company, Nationwide Insurance. To support the amount claimed, you provided an estimate for the demolition of your structure and construction of a new foundation. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. A supplemental estimate for additional building damages was prepared in the amount of $12,390.01. However, you were not in agreement with the amount and did not sign a proof of loss.
>
> All reviews of your claim concluded the supplemental offer of payment for building damages was accurate.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.
>
> To the extent you will accept the supplemental adjustment of $12,390.01, previously offered to you, FEMA is willing to waive the time in which to file a POL for that amount only. Otherwise your request for a waiver of the time period within which to file a POL is denied.

*Id.*

As previously noted, the SFIP is not a valued policy, which means there is no set amount of compensation in the event of a total loss. *Id.* at Section II (B) (28). The SFIP only provides compensation for the *lesser* of the policy limit, the replacement cost

7

of the damaged part of the dwelling with materials of ***like kind and quality***, or the amount actually spent to repair or replace the damaged part of the dwelling. *Id.* at Section VII (V) (2) (a). Plaintiff's "Proposal" (*See* FEMA-000068) is clearly based on an upgraded, modernized structure without regard to the actual physical loss caused by or from the flood with application of the coverages and exclusions found within his SFIP.

**Plaintiff's waiver application does not meet the criteria for approval.** First, he failed to provide evidence there was any uncompensated damages covered by his SFIP. Second, he did not submit detailed line-item documentation supporting the particular additional amounts being sought, but instead submitted a "Proposal" to demolish and rebuild his home for $214,500.00. The "Proposal" included Increased Cost of Compliance expenses for which Plaintiff never completed a Proof of Loss to be eligible to receive.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

IV. **Plaintiffs' Assertions**

Plaintiff asserts that he is entitled to payment of the ICC claim given that he never relinquished his request for ICC payment and in fact paid $4,117.00 in additional insurance premiums when it was noted that his property was not properly rated as a zone B location. These payments would have entitled him to be eligible for the ICC payment upon application which Plaintiff contends he did pursue. Opposition (Document 677) at page 26. Plaintiff also contends that he was eligible for at least the initial $15,000 ICC payment which was never made. Id at page 27. He argues that failure to make this payment prevented him from proceeding

8

with the repairs he desired to make and to this date he has not been able to make the repairs or rebuild.

Mr. Moffett claims that he is also entitled to receive $12,390.01 and that FEMA has indicated that to receive the payment he must relinquish his other claims in this case a condition which he believes is not in accordance with the law or prior statements by FEMA . Id at page 29.

Plaintiff also claims that FEMA was in error in rejecting the report of Bob Taylor Engineering which concluded that a new foundation system was needed and concluding that a proposal from Lincoln Contractors, Inc for repair of the existing home for $90,678.75 could not be accepted. Plaintiff also noted that St. Mary's county government found the property to be "substantially damaged". Id at page 32.

Plaintiff notes that to this day he "lives in a small apartment built, with the inadequate compensation provided him on his flood claim, atop his garage." Id. He has not been able to pursue further reconstruction due to lack of funds. He believes that FEMA continues to "stonewall" him. Id.

Plaintiff seeks the remainder of his flood claim under Coverage A of the SFIP and payment in full of his ICC claim under Coverage D.

Plaintiff's motion for summary judgment seeks a total of $95,726.94.

V.  **Special Master's Analysis**[2]

At first reading, Plaintiff's claim for the ICC payments appears to have merit since he did take early action to make the claim and it appears he would have been eligible if he had proceeded to repair his home. There was a zoning error and Plaintiff was found to be eligible to submit an ICC claim after he paid additional premiums. As FEMA notes in its reply, the independent adjuster in January, 2005 issued a report noting that Plaintiff requested ICC compensation, but Plaintiff at that time indicated that he was not prepared to begin his ICC claim. In September, 2005, the adjuster sent a letter to Plaintiff advising him that if he wanted to pursue the ICC claim he would need to provide the required documentation and warned the Plaintiff that he had only two years from the date of the loss to complete the work. Again in March, 2006, Plaintiff was again advised of the two year deadline and did not follow up and the ICC portion of the claim was closed.

---

[2] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

FEMA position is stated in its Reply memorandum (Document 688) at page 14 as follows:

Plaintiff was given over two years to actually submit a Proof of Loss along with supporting documentation for an Increased Cost of Compliance claim and he never pursued it. Plaintiff's lengthy arguments in his Opposition are meritless and contrary to the actual facts related to this claim. Plaintiff contends in his Opposition that:
"It was wholly improper for FEMA and Nationwide to err in denying Mr. Moffett his ICC claim because his property was miss-zoned, deny him ICC coverage, correct the zoning problem, bill him for additional premiums to ensure the ICC claim is active, accept the additional premiums and then deny to pay him the rightful monies due him."
See Plaintiffs' Opposition, Doc. No. 677 at 27.

As the facts demonstrate, this is not an accurate statement. Plaintiff's Increased Cost of Compliance claim was not denied because of a zoning error, but because he never pursued the claim.
 When evaluating the application for the waiver, FEMA considered the relevant factors and whether Plaintiff was entitled to compensation under the Increased Cost of Compliance provision of his SFIP. See Karen Christian Declaration, Doc. No. 641-2 at ¶ 21. Increased Cost of Compliance compensation is not provided as compensation for the direct physical loss caused by or from the flood, which is provided under Coverage A. It is also not an entitlement. It is provided to assist a policy holder to comply with State or Local floodplain management laws or ordinances which affect the repair or reconstruction of a damaged home. See 44 C.F.R. § 61, App. A(1), Art. III(D)(1). Plaintiff concedes he has not repaired or reconstructed his home within two years of the loss as required for this form Increased Cost of Compliance compensation. See Plaintiffs' Opposition, Doc. No. 677 at 32.

In the context of the full record, the Special Master cannot conclude that FEMA's decision in the waiver application to deny the ICC claim was either arbitrary or capricious or an abuse of discretion. The two year deadline has long past and Plaintiff was not in the process of rebuilding when the waiver application was filed nor had the proper documentation

1

been supplied. In this context, FEMA determination must be upheld even though it is unfortunate that it appears that if Plaintiff had proceeded with construction within the two year period the ICC claim would and should have been paid.

Plaintiff has also disagreed with FEMA about how they evaluated the report from Bob Taylor Engineering and the proposal from Lincoln Contractors, Inc. to demolish and rebuild the house. FEMA and its adjusters did review these reports and either disagreed with the conclusions or found them insufficient to meet the requirements of the SFIP. As FEMA notes in its Reply(Document 688) at page 15, the Lincoln Contractors, Inc. proposal was for a new upgraded structure without regard for the coverages and exclusions found within Plaintiff's SFIP. Using this proposal to calculate the loss, is similar to relying on the cost of new construction formula approach that has been discredited in this litigation. As is shown in Part III above, FEMA's explanation for why this waiver claim was denied is fully explained.

The parties seem to agree that Plaintiff can obtain the $12,390.01 which was also acknowledged in the August 18, 2008 waiver determination letter. They appear to disagree over how the payment should be made. Plaintiff seeks to have FEMA simply forward a check to his counsel to satisfy this claim. FEMA demands that a Proof of Loss be filed by the Plaintiff for this amount and that as part of that filing that Plaintiff must

also sign a settlement agreement terminating his involvement in this litigation and extending any release not only to FEMA but to Nationwide. FEMA also demanded that Plaintiff act on this demand within 30 days of it filing its Reply. See Document 688 at page 17.

The Special Master believes that it is beyond the scope of the delegation given to him to determine whether FEMA may condition the payment of the $12,390.01, which would be otherwise due to Plaintiff, upon Plaintiff agreeing to release FEMA and Nationwide from all other claims in this litigation including those not included within the waiver claim review. In the view of the Special Master this is an issue that should be taken up by the U.S. District Court perhaps after receiving briefs from the parties on the issue.

As to all other issues presented, the Special Master believes that FEMA was not arbitrary or capricious in the denial of the waiver application nor did FEMA abuse its discretion in denying the waiver application.

**VI.     Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the

Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted except as to the claim for the $12,309.01 which the Special Master recommends be reviewed by the U.S. District Court as to the matter and terms by which FEMA will make the payment; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

    August 4, 2011                                         /S/
      Date                                          Dennis M. Sweeney
                                                   Special Master