# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF DALE AND GEORGIA POLING

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Dale and Georgia Poling pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 606 pages labeled FEMA-000001 to 000606.

**I.     Background**

Plaintiffs' property located at 8808 Hinton Avenue, Baltimore, Maryland, was insured by Harleysville Mutual Insurance Company ("Harleysville") under

Policy Number 014951242001, with a coverage limit of $190,000.00 for their structure subject to a $1,000.00 deductible. *See* FEMA-000005 and FEMA-000120. The home was constructed in 1960. *See* FEMA-000120.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home. *See* FEMA-000311. An independent adjuster, Mike Maroney, from SIMSOL Insurance was assigned to adjust the loss. *See* FEMA-000311 and FEMA-000312.

On October 10, 2003, an advance payment of $7,500.00 was issued by Harleysville. *See* FEMA-000441. On December 22, 2003, Harleysville issued an additional advance payment of $20,000.00. *See* FEMA-000439.

As part of their claim, Plaintiffs submitted a proposal dated November 3, 2003, from Rolyn Construction Corporation to repair their home. *See* FEMA-000190 through FEMA-000195 and FEMA-000215 through FEMA-000223. Rolyn's total repair proposal was $96,077.44. *See* FEMA-000222. The estimate included upgrades and replacement of items that were not a direct physical loss by or from flood. As noted below, Plaintiffs conceded that the Rolyn estimate was inflated.

Plaintiffs provided another proposal from Rolyn Construction Corporation in support of their Increased Cost of Compliance ("ICC") claim. *See* FEMA-000358 through FEMA-000363. The total for this estimate was $57,566.95. *See* FEMA-000363. The policy limit for ICC-related improvements is $30,000.00, which Plaintiff was paid in full by Harleysville. *See*

FEMA-000005.

On December 30, 2003, Plaintiffs submitted a Proof of Loss prepared by their public adjuster totaling $80,850.48. *See* FEMA-000303.

On January 7, 2004, the independent adjuster issued his closing report -- *see* FEMA-000311 through FEMA-000328 -- noting that the exterior water line measured 53 to 54 inches and the interior water height was 28 to 29 inches. *See* FEMA-000311 and FEMA-000312. He also noted that Plaintiffs' public adjuster was uncooperative. The detailed report concluded the actual cash value of the required repairs to Plaintiffs' home was $69,545.22, with an additional $8,871.50 available under the replacement cost provision of the SFIP.

On January 8, 2004, Plaintiffs submitted a Proof of Loss based on the independent adjuster's estimate (*See* FEMA-000320) for a total of $69,545.22. *See* FEMA-000080. In addition, Plaintiffs submitted a Statement as to Full Cost to Replace or Repair for the replacement cost totaling $8,871.50. *See* FEMA-000300.

On January 18, 2004, Plaintiffs released their public adjuster. *See* FEMA-000424. Interestingly, Plaintiffs accused their public adjuster of inflating prices for repairs in the adjustment sent to Harleysville and inflating overhead and profit to 20% each instead of 10% each. *Id.*

On January 29, 2004, Harleysville rejected Plaintiffs' December 30, 2003, Proof of Loss. *See* FEMA-00014. The letter also summarized the claim payments and deductions to that point: Total Covered Damages - $70,545.22 minus a $27,500.00 advance payment, $638.00 for policy reformation, and the

$1,000.00 deductible resulting in a remaining payment of $41,407.22. *Id.*

Plaintiffs requested a review of their claim by the Hurricane Isabel Task Force ("Task Force"). *See* FEMA-000240.

On April 17, 2004, a general adjuster conducted a re-inspection of the loss and reviewed the Rolyn Construction Corporation estimate which Plaintiffs provided. *See* FEMA-000481. The general adjuster recommended an additional payment of $7,401.38 actual cash value. *Id.*

On April 24, 2004, the Task Force completed its review of Plaintiffs' claim. *Id.* The Task Force agreed with the general adjuster and allowed for a supplemental claim amount of $7,401.38 for the detached garage, increasing unit costs and correcting repair from sheetrock to plaster. *Id.* Plaintiffs were contacted and a negotiated settlement amount of $10,230.94 was agreed to. *Id.*

On May 6, 2004, in accordance with the terms of the offer to settle their claim made by the Task Force, Plaintiffs returned a Proof of Loss for $10,230.94. *See* FEMA-000258. On May 17, 2004, Harleysville issued payment to the plaintiffs for the $10,230.94. *See* FEMA-000411.

As of May 20, 2004, Plaintiffs were paid a total of $88,647.66[1] for the damage to their building ($7,500.00 on October 13, 2003; $20,000.00 on December 23, 2003; $638.00 for policy reformation; $41,407.22 on January 29, 2004; $8,871.50 on April 23, 2004; and $10,230.94 on May 17, 2004). *See* FEMA-000450. In addition, Plaintiffs were paid $30,000.00 under the ICC provision of their SFIP.

---

[1] The final compensation amount exceeded the $80,850.48 listed as the net claim on Plaintiffs' December 30, 2004 Proof of Loss (*See* FEMA-000303).

Plaintiffs requested a second Task Force review of their claim. *See* FEMA-000227. On October 5, 2004, FEMA informed Plaintiffs that the $88,009.66 payment for their structure plus the $30,000.00 in Increased Cost of Compliance compensation fully compensated them for their loss. *Id.*

**II.  Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Doc. No. 196 and Doc. No. 197, Order of December 4, 2007. On February 25, 2008, Plaintiffs submitted to FEMA a document entitled "PLAINTIFFS DALE AND GEORGIA A. POLING'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." The waiver application requested that FEMA compensate Plaintiffs an additional $100,990.34. *See* FEMA-000005. FEMA denied the request in a letter dated August 18, 2008. See FEMA-000111 to 000112.

**III.  Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶20-26 of the Supplemental Declaration of Karen Christian for the Claim of Dale and Georgia Poling[2]. Document 645-2. It states:

> Plaintiffs were compensated for direct physical loss caused by or from flood with application of the proper coverages and exclusions of the SFIP. Plaintiffs' claimed shortfall is based on their claim that the cost to repair their home was $222,841.64

---

[2] Ms. Christian also relied in her review on the documents submitted by Harleysville Mutual Insurance Company with this court . Document No. 312-2.

without any detailed itemization or explanation of how the newly claimed expenses related to the flood. *See* FEMA-000092. Plaintiffs' waiver application lacked any detail for a meaningful comparison to the estimates provided by Harleysville and the Task Force upon which Plaintiffs were compensated. *See* FEMA-000424. Plaintiffs simply deducted their claimed repair expenses of $222,841.64 from the payments made by Harleysville, which were $88,009.66 for their structure, and $30,000.00 for Increased Cost of Compliance compensation, plus their $1,000.00 deductible to arrive at their shortfall.

$222,841.64 is well in excess of their first Proof of Loss based on the estimate from Rolyn Construction Corporation submitted by Plaintiffs' Public Adjuster that Plaintiffs complained was inflated. *See* FEMA-000424.

Further, Plaintiffs fail to explain why the proposal from Rolyn Construction Corporation that they provided as part of their claim for the damage to their building and the Increased Cost of Compliance part of their claim was now insufficient.

When reviewing Plaintiffs' waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000111 and FEMA-000112. Specific to this case, the Administrator considered the following whether:

>1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
>2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
>3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

In the letter providing FEMA's determination on Plaintiffs' waiver application, the Administrator stated:

> ... you claim your flood damages exceeded the amount paid by your Write Your Own company, Harleysville Insurance Company. To support the amount claimed, you provided an estimate/contract from the contractor who performed the repairs. The

estimate is not specific and does not adequate detail the repairs made. Without more information it cannot be determined if the repair costs are for covered flood damages or upgrades and improvements to the property. Some improvements were found in the itemization list. Improvements and upgrades are not covered by the SFIP.

It also appears that you incurred additional expenses in excess of the $30,000 maximum amount of coverage you received for the Increased Cost of Compliance claim. These costs cannot be paid under your flood insurance coverage. Your claim was originally reviewed by an independent adjuster, the Hurricane Isabel Task Force, and the National Flood Insurance Program's General Adjuster. Their recommendations resulted in two supplemental payments. All subsequent reviews of your claim concluded that no further payment was due.

Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiffs' waiver application does not meet the criteria for approval.** First, they failed to provide evidence there was any uncompensated damages covered by their SFIP. Second, they did not submit detailed line-item documentation supporting the particular additional amounts being sought, but instead made a request for supplemental compensation without any explanation of how their newly claimed damages were a direct physical loss caused by or from flood with application of the SFIP's coverages and exclusions.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiffs' waiver application was denied for a multitude of reasons, but primarily because they failed to document any physical loss by or from flood covered under their SFIP for which they did not receive full compensation for.

IV.  **Plaintiffs' Assertions**

The Plaintiffs assert that FEMA should have accepted the documentation submitted by Chesapeake Home Builders who repaired the home. Document 677 at pages 43 to 50. Plaintiffs reject FEMA's assertions that the documentation was insufficient to show that the repairs met the criteria of the SFIP.   The Plaintiffs point to the original contract for $118,000 from Chesapeake Home Builders, Id at pages 43 to 45, and to a supplemental contract for $20,000. Id at page 45.  Plaintiffs argue that both the original contract and the supplemental contract contain no upgrades and that compensation should have been allowed. Id.

Plaintiffs do agree that their shortfall calculation needs to be restated due to failure to back out the payments due for elevation of their home that was paid to contractors.  In their Opposition, Plaintiffs now restate their shortfall calculations to indicate a revised shortfall of $80,155.98. Of this amount, the Chesapeake Home Builders contract and addendum account for a shortfall of $49, 990.34.

Plaintiffs also note that there are differences in the damage estimates of Mike Maroney (see FEMA 000546-000555) and that of Rolyn Corporation (see FEMA 000567 to 000583) and that in any event the estimates omitted compensable damages and some omissions were because the damage could not be determined at the time.   Plaintiffs

contend that if the two damage estimates are compared and omissions are added in that additional money is due to them. Id at 47.

Plaintiffs also raise the fact that the administrative record as filed with the court contains seven pages of documentation that do not pertain to the Polings or their claim. While these documents were flagged as not being in the appropriate file by FEMA's counsel, Plaintiffs assert that this mistake shows deficiencies in the review by FEMA and further "call all such documents, sworn to be correct and true, into serious question, at least to the point that no presumption of accuracy should be afforded." Id at 49. Plaintiffs seek to have their motion for summary judgment granted in the amount of $80,155.98.

V.  **Special Master's Analysis**[3]

FEMA argues that Plaintiffs' current claim should be put into context. Plaintiffs originally submitted a Proof of Loss with the assistance of their own public adjuster where the amount of $80,850.48 was claimed. Plaintiffs were granted not only this amount but a total amount of $88,647.66 after the Hurricane Isabel Task Force review. FEMA argues that Plaintiffs were actually paid more than they requested. It was only when the waiver process was provided that Plaintiffs presented another claim for an additional $80, 155.98.

FEMA in the declaration of Ms. Christian, see Part III above, explains why it was not persuaded by the waiver submission made by the Plaintiffs:

> Plaintiffs' waiver application lacked any detail for a meaningful comparison to the estimates provided by Harleysville and the Task Force upon which Plaintiffs were compensated. *See* FEMA-000424. Plaintiffs simply deducted their claimed repair expenses of $222,841.64 from the payments made by Harleysville, which were $88,009.66 for their structure, and $30,000.00 for Increased Cost of Compliance compensation, plus their $1,000.00 deductible to arrive at their shortfall.
>
> $222,841.64 is well in excess of their first Proof of Loss based on the estimate from Rolyn Construction Corporation submitted by Plaintiffs' Public Adjuster that Plaintiffs complained was inflated. *See* FEMA-000424.

---

[3] In their Oppositions at Document No. 677 at Pages 3 to 9, Group Five Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

> Further, Plaintiffs fail to explain why the proposal from Rolyn Construction Corporation that they provided as part of their claim for the damage to their building and the Increased Cost of Compliance part of their claim was now insufficient.

In FEMA's response, FEMA examines nine contentions made by the Plaintiffs now and why they are not compensable. Reply at pages 24 to 26. It appears to the Special Master that FEMA's explanations for why more damages were not provided in the waiver process are reasonable and in compliance with the way that FEMA has applied and interpreted the SFIP that is applicable in this case.

FEMA also contends that the arguments now made about the comparison between the Rolyn Corporation and the Mike Maroney's estimates are new arguments not presented in the waiver application and should not be considered since they are being brought up for the first time in Plaintiffs' Opposition rather than in the waiver application process. The Special Master agrees with FEMA that these arguments are new ones and should not be considered at this stage.

Finally, Plaintiffs suggestion that the inclusion of seven pages of records that do not belong in the administrative record in what was filed in this case demonstrates that FEMA review process was inadequate or done in bad faith is not convincing and do not form a basis in the Special Master opinion for a recommendation that the Court refuse to affirm FEMA's determinations.

After a review of this matter, the Special Master does not find that FEMA's determination on the waiver claim is either arbitrary, capricious or an abuse of discretion.

VI. **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

|  |  |
|---|---|
|     August 4 , 2011     |     /S/  |
| Date | Dennis M. Sweeney |
|  | Special Master |