**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **THOMAS L. MOFFETT, II, ET AL.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.** |
| | ) | **8:05-CV-01547** |
| **v.** | ) | |
| | ) | |
| **COMPUTER SCIENCES CORPORATION,** | ) | |
| **ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION CONCERNING**
**WAIVER CLAIM OF GERARDO AND DEBRA SIMON**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Gerardo and Debra Simon pursuant to Part 1.f of the Memorandum Order of the Court (Document 467).   In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order.   As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case.   The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order.   In this case, the documents consist of 531 pages labeled FEMA-000001 to 000531.

**I.      Background**

Plaintiffs' property located at 6928 River Drive Road in Baltimore, Maryland, was insured under a Standard Flood Insurance Program ("SFIP") issued by the Hartford Fire Insurance Company as Policy Number 87-01637540-02 with a coverage limit of $177,000.00 for their building. Declaration of Kim Berger (Document 3-14-2)[1] at  ¶2.  Plaintiffs did not maintain at contents coverage.  *Id.*

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home.

Plaintiffs maintain they were paid $77,955.21 for their structure plus an additional $30,000.00 under the Increased Cost of Compliance provision of their SFIP.  *See* FEMA-00005.  There is a slight discrepancy between the checks Hartford issued for $9,460.73, $10,167.24 ($149.00 was deducted for additional premiums due as a result of a policy reformation that Plaintiffs approved.  See FEMA–000382), $5,975.60 and $52,547.97 totaling $78,151.54.  *See* Doc. No. 314-2 at 11 through 14.

Plaintiffs did not submit any other timely Proof of Loss.  *Id.* at ¶15.

## II.    Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA.  *See* Order of December 4, 2007, Doc. No. 196

---

[1] In her Supplemental Declaration (Document 660-1), Karen Christian relies on this declaration to support the reasons for FEMA's denial.

and Doc. No. 197.

On February 25, 2008, Plaintiffs submitted to FEMA a document entitled "PLAINTIFF DEBRA SIMON'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS."  The waiver application requested that FEMA compensate Plaintiffs an additional $12,250.15.  *See* FEMA-000005.

> Plaintiffs' waiver application provided:
>
> Applicant was paid $77,955.21 in benefits for damages to the structure located at 6928 River Drive Road, Baltimore, MD and incurred a deductible of $5,000.00.  Applicant was required to demolish her home and build new construction.  Shortfall is determined by calculating the square footage of the new construction and further calculating the costs per square foot of the prior structure.  Applicant's shortfall is $12,250.15.

*See* FEMA-00005.

Plaintiffs also provided a breakdown of the formulaic calculation.  *See* FEMA-000071 and FEMA-000072.

FEMA denied the request for a waiver of the proof of loss requirements in a letter August 18, 2008.  *See* FEMA-000106 to 000107.

**III.    Reasons for Waiver Denial**

The claim as noted above was denied in a letter dated August 18, 2008. The reasons for the denial of the Waiver Claim are found at ¶¶47-50 of the Supplemental Declaration of Karen Christian for the Claims of Dorothea Reilly, James and Barbara Richmond, John and Frances Schmidt, Edward and Tammy Schwartz, and Gerardo and Debra Simon.  It states:

> Plaintiffs' method of calculating their damages by taking the square footage of their original structure and multiplying it by the cost per square foot of their new upgraded structures fails to account for the

SFIP's coverage limits and exclusions. Plaintiffs' "Shortfall Itemization" lists do not actually include any detailed itemization that could be used for a meaningful comparison to the adjusters' estimates.

Plaintiffs presented no evidence challenging the repair estimates provided by their insurers. The SFIP only covers direct physical loss caused by or from flooding. Plaintiffs' supplemental claims are based on the square footage cost of a new upgraded dwelling without regard to the actual physical loss caused by or from the flooding. In addition to only insuring against physical loss by or from flooding, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality, which Plaintiffs' formula based claims disregard. *See* General Declaration of Karen Christian, Exhibit A at ¶¶ 16 and 17, Doc. No. 474-1. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiffs' formula based claims make it impossible to separate out those expenses.

Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver. They failed to demonstrate any additional damages they sought were actually covered by their SFIP. They all based their supplemental claims on a formula that took the cost per square foot of a substantially improved home to calculate their loss that did not take into account the coverages and exclusions found within their SFIPs.

Accordingly, each of the aforementioned Plaintiffs' claims received a comprehensive review as a result of their waiver application. FEMA determined none of these Plaintiffs were entitled to additional compensation. Plaintiffs' waiver applications were denied for a multitude of reasons, but primarily because they all failed to document any physical loss by or from flood covered under their SFIPs for which they did not receive full compensation for.

IV.   **Plaintiffs' Assertions**

Plaintiffs contentions appear at pages 28 to 35 of the Plaintiffs' Oppositions (Document 713). Plaintiffs note that the insurance company,

Hartford, concluded that their home was more than 50% damaged by the storm and that Baltimore County determined that the home was "substantially damaged". Id at 28.   Plaintiffs assert that their home was saturated with fuel oil and were left with "uninhabitable living conditions."

Plaintiffs note that they attempted to repair their property acting as their own contractors and they hired a contractor to elevate the property who did an inadequate job that lead to further damage to the home and no certificate of occupancy could be obtained. Id at 29.   They then had to demolish the property and begin anew.  They state:

"What little they had received as "benefits" from their flood policy had gone to waste in the effort to repair than replace. In essence, they were left unprotected by Hartford and FEMA and financially ruined."   Id at 30. Plaintiffs contend that the cost per square foot  for the rebuilt property of $68.79 was "very reasonable" and FEMA should not have required the Plaintiffs to repair rather than rebuild. Id.

Plaintiffs in the waiver application sought $12, 250.15 and they submitted 105 pages of documentation including 14 pages of what they described as "detailed shortfall itemization".  Id at 31.

Plaintiffs contend that they were able to separate out their ICC expenses from the shortfall claim under coverage A and that FEMA was in error to deny that they had not. Id at 32.  Plaintiffs also claim that there was not a

"true review" of the claim and that sufficient documentation was submitted to support the claim. Id.

Plaintiffs disagree with FEMA's determination that the new home was "substantially improved" over the old home as FEMA claims. Id at 32 to 33.   Again, the Plaintiffs contend that they submitted adequate documentation to support their claim.  Id.  Plaintiffs repeat the arguments made by Plaintiff Reiley, Plaintiffs Richmond, Plaintiffs Schmidt which contest the methods used by FEMA and FEMA's rejection of the claims when parties rebuilt rather than repair.

Plaintiffs seek that the court award them $12,250.25 by summary judgment. Id at 46.

## V.    Special Master's Analysis[2]

There is no question that Plaintiffs' waiver application was based on the theory that Plaintiffs should be compensated based on the price per square foot of new construction.  This appears to be the only argument advanced in the 2008 waiver application by Plaintiffs that is now being reviewed.

---

[2] In their Oppositions at Document No. 713 at Pages 3 to 9, Group Six Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups.   To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

See FEMA 000005 and 000071 to 000072. As FEMA notes in its Reply (Document 715) at page 4, the "simplistic formula approach has been repeatedly rejected by the Special Master and this Court."  FEMA points to the Memorandum Opinions of the court dated February 17, 2011, July 1, 2011 and August 3, 2011 which conclude that FEMA is permitted to reject this method of calculating losses.

Plaintiffs' arguments in their Opposition (Document 713) as outlined above in Part IV are complaints about how Plaintiff believes that FEMA did not  correctly review their claim or unfairly rejected the documentation submitted that supported the new construction costs.  These arguments are however  in support of  Plaintiff's claim for  $12,250.25, see Opposition (Document 713) at page 46, and are still premised on the contention that the square foot cost of new construction is the formula for compensation. This theory having been repeatedly rejected in this litigation by the special master and the court is not viable no matter how recast in Plaintiffs' opposition.

Plaintiffs also raises a point about work done by a contractor they retained to elevate the house that proved to be "inadequate" and that caused further harm and damages.  This is unfortunate, but it is not a basis to support additional compensation from FEMA under the limited terms of the SFIP at issue in this case.

**VI.      Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

 September 18, 2011                                     /S/
       Date                                Dennis M. Sweeney
                                       Special Master