IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMPUTER SCIENCES CORPORATION, ) <br> ET AL. ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

### REPORT AND RECOMMENDATION CONCERNING
### <u>WAIVER CLAIM OF LISA RAY</u>

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Lisa Ray pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 671 pages labeled FEMA-000001 to 000671.

**I.**   **Background**

Plaintiff's property located at 7641 Bay Street, Pasadena, Maryland, was

insured by First Community Insurance Company ("First Community")[1] under Policy Number 19000956392603 with a coverage limit of $151,000.00 for her building and $100,000.00 for her contents, with each subject to a $500.00 deductible. *See* FEMA-000005.

On September 18, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home. *Id*.

First Community paid Plaintiff $5,000.00 as advance payment on her contents claim. *See* FEMA-000005. On November 10, 2003, First Community issued Plaintiff two checks in the amounts of $41,251.25 and $5,569.24 as part of her building claim. *See* FEMA-000054. On November 10, 2003, First Community also paid Plaintiff $15,333.57 for the remainder of her contents claim. *See* FEMA-000054. In addition, as a result of the Hurricane Isabel Task Force review, Plaintiff was issued two more checks for $5,699.08 (*See* FEMA-00040) and $841.88 (*See* FEMA-000052) for a total payment of $53,361.45.

First Community further issued Plaintiff two checks for the Increased Cost of Compliance policy limit of $30,000.00 ($15,000.00 on February 9, 2004 and $15,000.00 on July 23, 2004). Plaintiff acknowledges that she was compensated a total of $53,361.45 for her building claim, $20,333.57 for her contents claim, and $30,000.00 under the Increased Cost of Compliance ("ICC") provision of her policy. *See* FEMA-000005.

---

[1] First Community Insurance was purchased by Fidelity Property Casualty Insurance Company and is Plaintiff's current insurer, but for purposes of this declaration, Plaintiff's insurer will be identified as First Community Insurance. *See* Doc. No. 320-1.

FEMA notes that on October 27, 2003, Plaintiff sent a fax to her adjuster in which she praised his estimate after her review of it and found the only thing she believed to be missing was acoustical ceiling tile and carpet/padding for the Utility Room. *See* FEMA-000481. She then asserts the adjuster "did a very thorough job and it looks good!" *Id.*

## II. Waiver Claim and Denial

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Order of December 4, 2007, Doc. No. 196 and Doc. No. 197. On February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF LISA RAY'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." The waiver application requested that FEMA compensate Plaintiff an additional $87,229.72 due to a shortfall for her building claim ($79,704.83) and contents claim ($7,524.89). *See* FEMA-000005. FEMA denied the request for a waiver of the proof of loss requirements in a letter dated July 31, 2008. See FEMA-0000260 to 0000261.

## III. Reasons for Waiver Denial

The reasons for the denial of the Waiver Claim are found at ¶¶9-19 of the Supplemental Declaration of Karen Christian for the Claim of Lisa Ray. It states:

> Plaintiff based her shortfall amount on her assertion that it cost her $163,566.28 to repair and elevate her home. *Id.* Plaintiff subtracted the amounts her insurer paid under her building coverage ($79,704.83), Increased Cost of Compliance coverage ($30,000.00) plus her $500.00 deductible from her claimed cost to

3

repair her home ($163,566.28) to arrive at her claimed shortfall of $79,704.83.  *See* FEMA-000005 and FEMA-000078.  In addition, Plaintiff asserts a shortfall of $7,524.89 under the contents portion of her claim, which brings her total claimed shortfall to $87,229.72.  *Id.*

Plaintiff's method of calculating her building damages by simply taking her claimed cost of repairs and subtracting First Community's total building payments does not take into account any of the SFIP's coverage limits or exclusions.  Plaintiff provided copious receipts with her claim and waiver application, but fails to address how the claimed loses were caused by or from the flood.

Plaintiff made substantial upgrades to her home.  As noted by Plaintiff, she added an additional floor to comply with flood plain requirements.  *See* FEMA-000020.  She was also moved all of the home systems up.  *Id.*  Plaintiff's shortfall calculation simply subtracts $30,000.00 from her total repair costs, but fails to sufficiently itemize her claim to actually account for expenses related to elevation and upgrade costs.

In addition, Plaintiff's repair estimate includes items not damaged by the flood.  These items include roof replacement and skylights, gutters and downspouts, the extension of the chimney, a new entrance and stairs to the third floor, new flooring associated with the relocation of appliances, restoration of her lawn, walks and parking.  *See* FEMA-000031 and FEMA-0000032.

Plaintiff presented no new evidence challenging the repair estimates provided by First Community.  Plaintiff's sole focus was on receiving compensation based on the cost of building a substantially improved structure.

In regards to Plaintiff's claimed shortfall for the damage to her contents, her application falls woefully short.  Again, Plaintiff did not provide any new documentation, but relies on the same contents list she provided to the adjuster during the initial claim adjustment.  The adjuster prepared his estimate using Plaintiff's contents list.  *See* FEMA-000653 through FEMA-000664.  The adjuster allowed for all covered contents items at the costs listed by the insured.  *Id.*  The adjuster did not allow for non-covered items, nor did he allow for the building items Plaintiff included on her list.  Plaintiff provided no evidence to support her claimed contents shortfall of $7,524.89.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000260 and FEMA-000261. Specific to this case, the Administrator considered the following whether:

1. Policy holder demonstrated additional damages exist that are covered by the SFIP;

2. Policy holder submitted appropriate document-tation supporting the additional compensation being requested; and

3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

The SFIP only covers direct physical loss caused by or from flooding. Plaintiff's claimed building shortfall fails to explain how her claimed uncompensated damages relate to the actual physical loss caused by or from the flooding. In addition to only insuring against physical loss by or from flooding, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality, which Plaintiff's shortfall calculation disregards. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiff's shortfall calculation makes it impossible to separate out these expenses. *See* FEMA-000078.

In the letter providing FEMA's determination on Plaintiffs' waiver application, the Administrator stated:

> ... you claim your actual flood damages exceed the amount paid by your Write Your Own Company, Fidelity National Property and Casualty. You also received payment for the maximum amount of coverage for the Increased Cost of Compliance claim filed for the demolition of the insured structure. To support the supplemental amount claimed, you provided estimates for repair. Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. All reviews of your

5

> claim conclude your estimates do not warrant additional payment. They include many non-covered items, modifications to the residence not associated with flood damages, and improvements to the structure, which are not covered by the SFIP.

*Id.*

**Plaintiff failed to demonstrate she met any of the criteria used to determine whether to grant a waiver.** First, she failed to demonstrate any additional building damages were direct physical losses caused by or from flooding. Second, her building shortfall calculation did not take into account the coverages and exclusions found within her SFIP, which does not provide compensation for upgrades. With respect to Plaintiff's contents shortfall calculation, she failed to submit any new documentation to explain why the adjuster's estimate was insufficient for covered items or what items the adjuster failed to consider in his estimate that Plaintiff believes should have been compensated.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because she failed to document any physical loss by or from flood covered under her SFIP for which she did not receive full compensation.

IV. **Plaintiff's Assertions**

Plaintiff's contentions are found at pages 9 to 12 of the Plaintiffs' Oppositions (Document 713). Plaintiff notes that she made the decision to "sacrifice the first floor of her dwelling and use that level as the elevation and then replace that living space by adding a story above what had been the second story...." Id at 11. She spent $163,566.28 to restore her home to its pre-flood square footage by adding the extra floor and using the first floor as the necessary elevation. Plaintiff contends that

FEMA even by its own calculations should recognize the actual cash value of the damages of at least $100,939.70.

Plaintiff points to internal comments by two FEMA representatives which she feels amounts to acknowledgements that she had been underpaid. Id at 12.

Plaintiff seeks $87,229.72 to be awarded by summary judgment. Id at 46.

V. **Special Master's Analysis**[2]

As FEMA notes in its Reply (Document 715), the supplemental payment of $87,229.72 sought by Plaintiff is composed of two elements: $79,704.83 for the structure and $7,524.89 for the contents. As to the contents claim, Plaintiff does not present any argument in her Opposition as to why the contents claim determination is erroneous. There is no basis for determining that FEMA's rejection of the additional contents claim is either arbitrary or capricious. Its earlier determination on this aspect of the claim does not appear to be in error.

As to the structure claim, the detailed and comprehensive explanation given by FEMA and set out in Part III above explaining the rationale for

---

[2] In their Oppositions at Document No.713 at Pages 3 to 9, Group Six Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

its waiver decision is convincing and not refuted by Plaintiff's Opposition. The case does present an unusual situation since Plaintiff decided to gut her first floor to comply with the flood plain requirements and utilize that floor as her elevation and then add a third floor to account for the lost square footage of habitable space.

FEMA notes that there was no damage to the second floor and argues that it did in fact compensate Plaintiff for the direct physical losses caused by or from the flooding subject to the coverages and exclusions provided by the SFIP. FEMA argues that the remodeling of her home to comply with local floodplain ordinances falls under the Increased Cost of Compliance provision of her SFIP and is limited to $30,000 which she was paid.

FEMA's position concerning how the ICC claim and Plaintiff's eligibility for compensation under Coverage A are stated on page 8 of FEMA's Reply (Document 715). As FEMA notes, "the constructive total loss doctrine" does not apply to FEMA's claims. This equitable argument would certainly aid the Plaintiff here were it available, but it has been established in this litigation that the doctrine does not pertain to FEMA's claim which compensate only for direct physical loss or for the limited amount provided under the ICC coverage. FEMA's position may seem harsh and as noted by FEMA state courts have developed doctrines to recognize the overall picture of loss incurred by the insured. This however is not the case with the FEMA policy which is strictly limited by its express terms and limitations. There is no indication that given these limits that FEMA

has acted in an arbitrary or capricious manner to deny additional money for the Coverage A claim.[3] FEMA's determinations on the waiver as explained in Part III above and in the Reply filed by FEMA are sufficient to sustain the denial of the waiver in the view of the Special Master.

**VI.    Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

September 18, 2011  /S/
   Date  Dennis M. Sweeney
  Special Master

---

[3] Plaintiff does argue that there may have been some internal disagreements among those reviewing the claim and point to certain communications in the record. This may have been the case, but the Special Master task is to review the ultimate decision made by FEMA on the waiver claim and determine whether that final decision is within the discretion of FEMA to render.