IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **THOMAS L. MOFFETT, II, ET AL.** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **COMPUTER SCIENCES CORPORATION,** ) <br> **ET AL.** ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. <br> 8:05-CV-01547 |

**REPORT AND RECOMMENDATION CONCERNING**
**WAIVER CLAIM OF FREDERICK STAIGERWALD**

This constitutes the Report and Recommendation to the Court concerning the waiver claim of Frederick Staigerwald[1] pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 488 pages labeled FEMA-000001 to 000488.

---

[1] At various points the parties refer to Clarence and Garnetta Staigerwald as also pursuing this claim as co-owners with Frederick Staigerwald. The determination here applies to all these persons.

I.  **Background**

Plaintiff's property located at 9203 Cuckold Point Road, Baltimore, Maryland, was insured under a Standard Flood Insurance Policy ("SFIP" or "Policy"), Policy Number 1947155378, which was purchased directly from FEMA. *See* FEMA-000005. Plaintiff's structure was insured up to $198,700.00 and his contents were insured up to $32,100.00, with each subject to a $1,000.00 deductible. *Id.*

On September 18, 2003, Hurricane Isabel struck the coast of Maryland, causing damage along the coast including the insured structure owned by Plaintiff. *See* FEMA-000079. Plaintiff's policy was effective July 20, 2003 through July 20, 2004 and was covered at the time of the loss. *See* FEMA-000124.

On or about January 6, 2004, Bryan Shober, an independent adjuster from Bellmon Adjusters, Inc., completed his adjustment of Plaintiff's claim and issued his report. *See* FEMA-000393 through FEMA-000411. The adjuster concluded Plaintiff's contents loss exceeded policy limits and that the Actual Cash Value of the damage to the structure was $82,875.75 after application of $15,428.88 in depreciation and Plaintiff's $1,000.00 deductible. *See* FEMA-000393. The adjuster also concluded that the full replacement cost of the structure was $139,773.12 with an actual cash value of $111,818.50. *Id.*

On January 14, 2004, Plaintiff submitted a Proof of Loss for $114,975.75 with the words "CONTESTING AMOUNT" written on the bottom, which was rejected. *See* FEMA-000413. Plaintiff also notated "Plus excess over contents

policy Limits" next to Line 8. *Id.*

On February 11, 2004, FEMA issued a partial denial of Plaintiff's claim. *See* FEMA-000345. Plaintiff was informed that checks would be issued for $82,875.75 to cover the damage to his building and for the remainder of his contents policy limit of $32,100.00. *Id.* Plaintiff was notified that he had one year from the date of this partial denial letter to file a lawsuit. *Id.*

On March 19, 2004, Plaintiff was sent a letter notifying him that the adjuster requested a special assistance review to facilitate the completion of his claim. *See* FEMA-000331. Plaintiff was reminded that his claim was partially denied on February 11, 2004 and that he had to file a lawsuit within one year of that date. *Id.*

On April 14, 2004, FEMA notified Plaintiff that it was in receipt of the re-inspection report. *See* FEMA-000315. The re-inspection resulted in a recommendation for additional compensation, and the report was being sent back to Bellmon Adjusters, Inc. for completion of the supplemental claim. *Id.* Plaintiff was once again reminded that if he was going to file a lawsuit, he had one year from the date of the original denial of February 11, 2004. *Id.*

On April 20, 2004, Michael Bellmon, an independent adjuster from Bellmon Adjusters completed a supplemental adjustment of Plaintiff's claim based on the re-inspection report. *See* FEMA-000115 through FEMA-000119. Mr. Bellmon increased the actual cash value of the building loss claim by $11,659.48.

At about the same time, Plaintiff requested review by the Hurricane Isabel Task Force. On June 3, 2004, the Task Force determined Plaintiff was entitled to

3

additional compensation totaling $50,865.16. *See* FEMA-000111. On June 18, 2004, Plaintiff was paid the full $50,865.16. *See* FEMA-000022.

On July 20, 2004, a FEMA examiner reviewed the estimates Plaintiff provided from Palmer Contracting Company and C.W. Over & Sons, Inc. *See* FEMA-000186 and FEMA-000187. The examiner concluded the home was poorly constructed. *Id.* FEMA contends that The Palmer Contracting estimate did not provide a sufficient breakdown to do a detailed comparison. *Id.* C.W. Over & Sons' estimate contained pricing that was significantly inflated, and after adjusting the costs, the C.W. Over & Sons estimate was reduced to $121,133.17 (*see* FEMA-000227 through FEMA-000229), which was less than the $149,169.79 Plaintiff was compensated. *Id.*

On July 21, 2004, Plaintiff submitted another Proof of Loss based on the supplemental claim prepared by Mr. Bellmon. *See* FEMA-000112. This supplemental Proof of Loss was not timely and it was annotated: "Actual Loss - $233,000.00. PARTIAL PAYMENT". *Id.*

On September 7, 2004, Plaintiff was sent a letter informing him that the adjuster from Bellmon was unaware of the Task Force review when he provided the supplemental claim documents. *See* FEMA-000097. The items and figures included in the supplemental claim from the Task Force included all the items the adjuster included in his supplemental report. *Id.* Accordingly, Plaintiff's July 21, 2004 Proof of Loss was denied. *Id.*

Plaintiff requested a second review of his claim. *See* FEMA-0000079. On October 7, 2004, FEMA notified Plaintiff he had been paid $149,169.79 for the

damage to his building plus an additional $32,100.00 for his contents loss, and Plaintiff was not entitled to any additional compensation under his policy. *Id.* In addition, Plaintiff was paid the policy limit of $30,000.00 under the Increased Cost of Compliance provision of his policy. *See* FEMA-000005.

**II.    Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Order of December 4, 2007, Doc. No. 196 and Doc. No. 197. On or about February 25, 2008, Plaintiff submitted to FEMA a document entitled "PLAINTIFF FREDERICK STAIGERWALD'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS REQUIREMENTS." FEMA denied the request for a waiver of the proof of loss requirements in an undated letter. See FEMA-000075 to 000076.

**III.   Reasons for Waiver Denial**

The reasons for the denial of the Waiver Claim are found at ¶¶18-23 of the Supplemental Declaration of Karen Christian for the Claim of Frederick Staigerwald. It states:

> Plaintiff submitted the same estimates that were thoroughly reviewed during the claims and Task Force review process. In addition, Plaintiff claimed his cost to repair ballooned to over $350,000.00, but did not submit a single document to support or explain this new amount.
>
> Plaintiff calculated his shortfall of $48,530.21 by taking his policy limit and deducting FEMA's payments for the damage to his structure. He claimed his undocumented repair costs plus the estimates from Palmer Contracting and C.W. Over & Sons, Inc. justified compensation of his policy limits. *See* FEMA-000044. Both of these estimates were reviewed and considered over the course of the review process. A detailed review of these estimates

5

by a FEMA Claims Examiner, as discussed above, was completed during the review of this claim. *See* FEMA-000186 and FEMA-000187.

When reviewing Plaintiff's waiver application, the Administrator evaluated the facts and circumstances relating to the request. *See* FEMA-000075 and FEMA-000076. Specific to this case, the Administrator considered the following whether:

> 1. Policy holder demonstrated additional damages exist that are covered by the SFIP;
>
> 2. Policy holder submitted appropriate documentation supporting the additional compensation being requested; and
>
> 3. Policy holder provided a reasonable explanation for the delay in submitting the POL.

*Id.*

In the letter providing FEMA's determination on Plaintiff's waiver application, the Administrator stated:

> ... you claim your actual damages exceeded the amount allowed by the National Flood Insurance Program Servicing Agent (NFIPSA). Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force. A supplemental payment was approved by the Task Force and paid by the NFIPSA. You also received $30,000, the maximum amount of coverage for your Increased Cost of Compliance claim. Your supplemental claim is documented with two contractor estimates that do not provide justification that additional monies are owed. A lump sum cost without any explanation is not acceptable. Another includes upgrades to the property and does not identify specific rooms or measurements. Upgrades are not covered by the SFIP.
>
> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance

> Examiner. After further review, the Insurance Examiner found no basis to set aside the original findings.

*Id.*

**Plaintiff failed to demonstrate he met any of the criteria used to determine whether to grant a waiver. Plaintiff's waiver application was based on the same documents that were thoroughly reviewed during the claims process plus his undocumented claim that he incurred expenses over $350,000.00 repairing his home. Plaintiff** failed to document any additional damages he sought were actually covered by his SFIP. Plaintiff did not provide any documentation of his actual expenses for the repairs and simply claimed his costs exceeded $350,000.00 to repair his home.

Accordingly, after another comprehensive review of the claim, FEMA determined no further compensation was warranted. *Id.* Plaintiff's waiver application was denied for a multitude of reasons, but primarily because he failed to document any physical loss by or from flood covered under his SFIP for which he did not receive full compensation for.

IV.   **Plaintiffs' Assertions**

Plaintiffs' contentions are set out in the Plaintiffs' Opposition (Document 713) at pages 35 to 42. Plaintiffs recount the damage to the home caused by the flood including the structural damage to the home, Id at 35 to 36, and the difficulties that elevation of the residence would present. Id at 37. They note that they received a substantial damage determination from Baltimore County which indicated that elevation would have to occur. FEMA hired its own engineering consultants. Plaintiffs found various deficiencies in the FEMA engineering report. Plaintiffs claim that the

7

Proof of Loss signed by Mr. Staigerwald was "under protest". He received a total payment of $114,875.75, which included policy limits of $32,100 for contents and $83,875.75 for structure damage. The Plaintiffs also received a recoverable depreciation hold back of $15,428.88. Id at 39.

These amounts were not sufficient to cover the estimates that Mr. Staigerwald secured for repair of his home. Id at 39 to 40. After a reinspection of the home, Plaintiffs were paid an additional payment of $11,659.48 for structure damage and $1,874.21 for recoverable depreciation. Id at 40. Further review by the Hurricane Isabel Task Force lead to Plaintiffs receiving an additional amount of $50,865.16.

A second review by the Task Force was requested by Plaintiffs and the claim was reviewed. Plaintiffs believe that the waiver claim should have been granted. They believe that the only evidence in the record was that the existing structure could not be elevated. Plaintiffs note that Mr. Staigerwald decided upon the advice of his engineers to demolish the home and rebuild on the same footprint. They claim that in excess of $350,000 was spent on rebuilding the home. Plaintiffs claim that FEMA was incorrect that structural damages are to be covered by the ICC payment. Plaintiffs contend that FEMA was arbitrary and capricious in their "blanket denial" of the waiver application. Id at 42. Plaintiffs seek an entry of summary judgment in their favor in the amount of $48,530.21. Id at 46.

V.  **Special Master's Analysis**[2]

FEMA in its Reply (Document 715) notes correctly that Plaintiffs' Opposition is largely a recitation of the history of the claim and a contention at the conclusion that Plaintiffs did not receive sufficient funds which Plaintiffs continue to claim.    The Plaintiffs received  several reviews including one by the Hurricane Isabel Task Force that resulted in them receiving an additional $50, 865.15.

FEMA explained in its letter denying the waiver claim why it was not accepting Plaintiffs' claim:

> ... you claim your actual damages exceeded the amount allowed by the National Flood Insurance Program Servicing Agent (NFIPSA).   Your claim was originally reviewed by an independent adjuster and subsequently reviewed by the Hurricane Isabel Task Force.  A supplemental payment was approved by the Task Force and paid by the NFIPSA.  You also received $30,000, the maximum amount of coverage for your Increased Cost of Compliance claim.  Your supplemental claim is documented with two contractor estimates that do not provide justification that additional monies are owed.  A lump sum cost without any explanation is not acceptable.   Another includes upgrades to the property and does not identify specific rooms or measurements.  Upgrades are not covered by the SFIP.

---

[2] In their Oppositions at Document No. 713 at Pages 3 to 9, Group Six Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups.  To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

> Further, your waiver resulted in a comprehensive review of your claim by a FEMA Insurance Examiner.  After further review, the Insurance Examiner found no basis to set aside the original findings.

FEMA was not required to accept the arguments and estimates provided by the Plaintiffs and their engineering consultants. As the Special Master has noted in earlier cases, when FEMA is faced with conflicting expert reports, they are entitled to make the judgment as to which to credit in whole or part.  They evaluated the evidence and had a sufficient basis to make the determinations they did. As noted, upon review, FEMA accepted some of Plaintiffs' arguments and provided greater payments. Ultimately, when presented with the waiver claim, they made a decision based on the SFIP and FEMA's analysis of the documentation submitted in the waiver application.  There is no indication that the determination was arbitrary or capricious or an abuse of discretion.

### VI.  Recommendation of the Special Master

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiffs' Motion for Summary Judgment be denied.

| | |
|---|---|
| September 18 , 2011 | /S/ |
| Date | Dennis M. Sweeney |
| | Special Master |