# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| THOMAS L. MOFFETT, II, ET AL. ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | 8:05-CV-01547 |
| v. ) | |
| ) | |
| COMPUTER SCIENCES CORPORATION, ) | |
| ET AL. ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION CONCERNING
## WAIVER CLAIM OF JOHN AND FRANCES SCHMIDT

This constitutes the Report and Recommendation to the Court concerning the waiver claim of John and Frances Schmidt pursuant to Part 1.f of the Memorandum Order of the Court (Document 467). In preparing this report, the Special Master reviewed the motions, memoranda, affidavits and exhibits provided in connection with the process specified in the Memorandum Order. As necessary, the Special Master also reviewed other documents that are part of the Court filings in this case. The Special Master was also provided by the Federal Emergency Management Agency ("FEMA") the computer disc of the "appropriate documents of record" for this claim, as specified in Part 1.a of the Memorandum Order. In this case, the documents consist of 634 pages labeled FEMA-000001 to 000634.

I.     **Background**

Plaintiff's property located at 3833 Clarks Point in Baltimore, Maryland, was insured under a Standard Flood Insurance Program ("SFIP") issued by FEMA as Policy Number 2030131995 with a coverage limit of $224,100.00 for their building. Declaration of Suzanne Woods (Document 298-2)[1] at ¶¶73 and 74. Plaintiffs did not maintain any contents coverage. *Id.*

On September 19, 2003, Hurricane Isabel struck the Middle Atlantic States, including Maryland, which caused flooding resulting in damage to Plaintiffs' home.

Plaintiffs submitted Proofs of Loss for $47,824.90, $1,853.74 and $7,726.58 and FEMA paid all of these in full. *Id.* at ¶¶ 76 through 80. In addition, Plaintiffs were paid $7,942.41 which includes recoverable depreciation in the amount of $7,844.85 plus $97.56 for the supplemental estimate. *See* FEMA-000380.

Plaintiffs did not submit any other timely Proof of Loss. *Id.* at ¶ 81.

II.    **Waiver Claim and Denial**

On December 3, 2007, this Court permitted Plaintiffs to submit applications for waivers to FEMA. *See* Order of December 4, 2007, Doc. No. 196 and Doc. No. 197. On February 25, 2008, Plaintiffs submitted to FEMA a document entitled "PLAINTIFFS JOHN J. AND FRANCES V. SCHMIDT'S INDIVIDUAL APPLICATION FOR WAIVER OF PROOF OF LOSS

---

[1] This declaration was relied on by Karen Christian in her Supplemental Declaration (Document 660-1) to support FEMA's Supplemental Motion for Summary Judgment.

REQUIREMENTS." The waiver application requested that FEMA compensate Plaintiffs an additional $91,785.05. *See* FEMA-000005.

Plaintiffs' waiver application provided:

> Applicants were paid $65,347.63 in benefits for damages to the structure located at 11242 Bird Grove Road[2], White Marsh, MD and incurred a deductible of $2,000.00. Applicant's demolished their former home and built a larger residence. Shortfall was determined by calculating the costs per square foot of the new structure and determining the costs to replace the former structure. Applicant's shortfall is $91,785.05.

*See* FEMA-00005.

Plaintiffs also provided a breakdown of the calculation. *See* FEMA-000052 and FEMA-000040.

FEMA denied the request for a waiver of the proof of loss requirements in an undated letter. *See* FEMA-000035 to 000036.

### III. Reasons for Waiver Denial

The denial was made in the letter referred to above. The reasons for the denial of the Waiver Claim are found at ¶¶47-50 of the Supplemental Declaration of Karen Christian for the Claims of Dorothea Reilly, James and Barbara Richmond, John and Frances Schmidt, Edward and Tammy Schwartz, and Gerardo and Debra Simon. It states:

> Plaintiffs' method of calculating their damages by taking the square footage of their original structure and multiplying it by the cost per square foot of their new upgraded structures fails to account for the SFIP's coverage limits and exclusions. Plaintiffs' "Shortfall Itemization" lists do not actually include any detailed itemization that could be used for a meaningful comparison to the adjusters'

---

[2] The prior full paragraph references 3833 Clark's Point Road, Baltimore, MD, which is consistent with the insured property identified in the Woods' Declaration.

3

estimates.

Plaintiffs presented no evidence challenging the repair estimates provided by their insurers. The SFIP only covers direct physical loss caused by or from flooding. Plaintiffs' supplemental claims are based on the square footage cost of a new upgraded dwelling without regard to the actual physical loss caused by or from the flooding. In addition to only insuring against physical loss by or from flooding, the SFIP excludes coverage for upgrades and requires the use of material that is of like kind and quality, which Plaintiffs' formula based claims disregard. *See* General Declaration of Karen Christian, Exhibit A at ¶¶ 16 and 17, Doc. No. 474-1. Finally, the SFIP has a policy limit of $30,000.00 for Increased Cost of Compliance expenses and Plaintiffs' formula based claims make it impossible to separate out those expenses.

**Plaintiffs failed to demonstrate they met any of the criteria used to determine whether to grant a waiver.** They failed to demonstrate any additional damages they sought were actually covered by their SFIP. They all based their supplemental claims on a formula that took the cost per square foot of a substantially improved home to calculate their loss that did not take into account the coverages and exclusions found within their SFIPs.

Accordingly, each of the aforementioned Plaintiffs' claims received a comprehensive review as a result of their waiver application. FEMA determined none of these Plaintiffs were entitled to additional compensation. Plaintiffs' waiver applications were denied for a multitude of reasons, but primarily because they all failed to document any physical loss by or from flood covered under their SFIPs for which they did not receive full compensation for.

IV. **Plaintiffs' Assertions**

Plaintiffs contentions are found in the Oppositions filed by the Plaintiffs at pages 21 to 26. Plaintiffs note the substantial damage done to their home

which was substantiated by Baltimore County, Id at 21, the letter from Bafitis & Associates which recommended that the home be "removed and replaced in its entirety." Id at 22. Plaintiffs contend that they submitted as part of the waiver application sufficient documentation to support their decision to rebuild including 34 pages of documents and 7 pages of detailed shortfall itemization. Id at 23. Plaintiffs contend that they did separate out the ICC expenses of $30,000 from the shortfall claim made. Id. They also assert that no "true review" of the claim was made by FEMA in the waiver process. Id at 24. As with the claims of Plaintiff Reiley and Plaintiffs Richmond, these Plaintiffs similarly attack the rationale for why FEMA pays claims on coverage A to repair the property rather than allow full coverage for rebuilding the property as the more economically feasible option. Id at 24 to 26. Plaintiffs believe that repairing rather than rebuilding results in "unsafe , unhygienic structures" and that Plaintiffs would have been left with inadequate compensation to complete the project. Id at 26.

Plaintiff seeks the grant of a motion for summary judgment in the amount of $91,785.05. Id at 46.

## V. Special Master's Analysis[3]

There is no question that Plaintiffs' waiver application was based on the theory that Plaintiffs should be compensated based on the price per square foot of new construction. This appears to be the only argument advanced in the 2008 waiver application by Plaintiffs that is now being reviewed. See FEMA 000005 and 000025. As FEMA notes in its Reply (Document 715) at page 4, the "simplistic formula approach has been repeatedly rejected by the Special Master and this Court." FEMA points to the Memorandum Opinions of the court dated February 17, 2011, July 1, 2011 and August 3, 2011 which acknowledge that FEMA is permitted to reject this method of calculating losses.

Plaintiffs' arguments in their Opposition (Document 713) as outlined above in Part IV are complaints that FEMA did not correctly review their claim or unfairly rejected the documentation submitted that supported the new construction costs. These arguments are however in support of Plaintiffs' claim for $91,785.05, see Opposition (Document 713) at page 46, and are still premised on the contention that the square foot cost of new construction is the formula for compensation. This theory having

---

[3] In their Oppositions at Document No. 713 at Pages 3 to 9, Group Six Plaintiffs have raised what they term to be twenty-four "common issues" that the Court has previously considered or resolved in consideration of prior groups. To the extent that these issues are not further cited in the individual Plaintiffs' discussion of their particular cases, the Special Master will not specifically address these issues in this Report and Recommendation, but will incorporate and rely on the Court's prior rulings on these issues (see Documents 594, 596, 597 and 679) and the previously-filed Memorandum on Role of the Special Master and Report and Recommendation of the Special Master on General Issues Raised by Plaintiffs and Defendants (Document 563).

been repeatedly rejected in this litigation by the special master and the court is not viable no matter how recast in Plaintiffs' opposition.

VI.  **Recommendation of the Special Master**

After a review and a consideration of the matter and the arguments presented by the parties, it is the recommendation of the Special Master that the Defendants' Motion for Partial Summary Judgment affirming FEMA's determination of Plaintiff's waiver application be granted; and it is further recommended that Plaintiff's Motion for Summary Judgment be denied.

 September 18 , 2011                                                    /S/
      Date                                            Dennis M. Sweeney
                                                          Special Master